1   PETER D. KEISLER
    Assistant Attorney General
2   Civil Division

3   SCOTT N. SCHOOLS
    United States Attorney
    Northern District of California

4
    VINCENT M. GARVEY
5   Deputy Branch Director

6   JACQUELINE COLEMAN SNEAD
    Trial Attorney
    Federal Programs Branch, Civil Division
7   U.S. Department of Justice
    20 Massachusetts Avenue, N.W. Rm 7214
    Washington, DC 20530
8   Tel: (202) 514-3418

9                   Attorneys for the Defendants.

10

11                       UNITED STATES DISTRICT COURT

12                       NORTHERN DISTRICT OF CALIFORNIA

13

14

15   **JULIA CHATTLER,**                      Case No. 07-4040

16       **PLAINTIFF**                        Notice of Motion to Dismiss and
                                              Memorandum of Law in Support of
17       **v.**                               Defendants' Motion to Dismiss
                                              Hearing Date: TBD
18
     **UNITED STATES OF AMERICA,**
19   **DEPARTMENT OF STATE,**

20       **DEFENDANTS.**

21

22

23

24

25

26

27   *Chattler v. United States of America,*                    Case No. 07-4040
     Defendants' Motion to Dismiss
28

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................... -ii-

NOTICE TO PLAINTIFF AND HER COUNSEL OF RECORD: ............................... 1

INTRODUCTION ........................................................................................... 1

REGULATORY BACKGROUND FOR PASSPORT APPLICATIONS ...................... 3

    Overview of Passport Application Process: ...................................................... 3

    Passport Processing Fees and Refunds: .......................................................... 5

    New Travel Document Requirements: ............................................................. 6

STATEMENT OF FACTS ................................................................................. 8

ARGUMENT ................................................................................................. 8

I.      THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR
       CONSEQUENTIAL AND SPECIAL DAMAGES FOR LACK OF
       JURISDICTION OR ALTERNATIVELY FOR FAILURE TO STATE A
       CLAIM. ................................................................................................ 8

      A.    Plaintiff Cannot Recover Special and Consequential Damages
          Under the Department of State's Regulations Governing
          Expedited Passport Processing. ............................................. 10

      B.    Plaintiff Cannot Recover Special and Consequential Damages
          Under an Implied Contract Theory. ......................................... 13

II.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR
       RETURN OF THE EXPEDITE FEE BECAUSE PLAINTIFF
       FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES. ................... 16

      A.    Requiring Plaintiff to Present Her Claim to the Department
          Likely Will Obviate the Need for Judicial Involvement. ......................... 17

      B.    The Department's Existing Refund Process Is Preferable to
          Any Alternative System This Court Might Establish. ............................. 19

CONCLUSION ............................................................................................. 21

1

## TABLE OF AUTHORITIES

2  **CASES**                                                                                  **PAGE(s)**

3  *Alliance of Descendants of Texas Land Grants v. United States,*
       37 F.3d 1478 (Fed. Cir. 1994) ....................................................................... 13

4

5  *Ancman v. United States,*
       77 Fed. Cl. 368 (2007) ......................................................................... 9, 10, 12

6  *El Dorado Springs v. United States,*
       28 Fed. Cl. 132 (1993) .................................................................................. 10

7

8  *FDIC v. Meyer,*
       510 U.S. 471, 114 S. Ct. 996, 127 L. Ed. 308 (1994) .................................... 9

9  *Federal Crop Ins. Corp. v. Merrill,*
       332 U.S. 380, 68 S. Ct. 1, 92 L. Ed. 10 (1947) ............................................ 13

10

11 *Ferreiro v. United States,*
       __ F.3d __, 2007 WL 2683679 (Fed. Cir., Sept. 14, 2007) ............................ 10

12 *Fisher v. United States,*
       402 F.3d 1167 (Fed. Cir. 2005) ..................................................................... 12

13

14 *H.F. Allen Orchards v. United States,*
       749 F.2d 1571 (Fed. Cir. 1984) ..................................................................... 13

15 *Helash v. Ballard,*
       638 F.2d 74 (9th Cir. 1980) .......................................................................... 13

16

17 *Hercules, Inc. v. United States,*
       516 U.S. 417, 116 S. Ct. 981, 134 L. Ed. 47 (1996) ................................ 8, 13

18 *Huang v. Ashcroft,*
       390 F.3d 1118 (9th Cir. 2005) ....................................................................... 16

19

20 *Lavin v. Marsh,*
       644 F.2d 1378 (9th Cir. 1981) ....................................................................... 13

21 *Marathon Oil Co. v. United States,*
       807 F.2d 759 (9th Cir. 1986) ......................................................................... 16

22

23 *Montes v. Thornburgh,*
       919 F.2d 531 (9th Cir. 1990) ......................................................................... 16

24 *Moose v. United Sates,*
       674 F.2d 1277 (9th Cir. 1982) .................................................................... 9, 15

25

26 *Pan Am. Co. v. Sycuan Band of Mission Indians,*
       884 F.2d 416 (9th Cir. 1989) ........................................................................... 8

27

28                                                      -ii-

*Puga v. Chertoff,*
    488 F.3d 812 (9th Cir. 2007) ............................................................ 16

*Schism v. United States,*
    316 F.3d 1259 (Fed. Cir. 2002) ................................................... 13, 14

*Schism v. United States,*
    972 F. Supp. 1398 (N.D. Fla. 1997) ........................................... 13, 15

*Shafmaster Fishing Co. v. United States,*
    28 Fed. Cl. 699 (1993) ..................................................................... 10

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ........................ 11, 12

*United States v. California Care Corp.,*
    709 F.2d 1241 (9th Cir. 1983) .......................................................... 16

*United States v. Mitchell,*
    463 U.S. 206, 103 S. Ct. 2961, 77 L. Ed. 580 (1983) ........................... 9

*United States v. Testan,*
    424 U.S. 392, 96 S. Ct. 948, 47 L. Ed. 114 (1976) ........................... 9, 10

*Zucker v. United States,*
    758 F.2d 637 (Fed. Cir. 1985) ......................................................... 14

**STATUTES**

10 U.S.C. § 1074(b) ........................................................................... 15

22 U.S.C. § 214 ................................................................................... 5

22 U.S.C. § 1980 ................................................................................ 10

28 U.S.C. § 1346(a)(2) ................................................................... 9, 13

71 Fed. Reg. 68412 (Nov. 24, 2006) ................................................... 6

72 Fed. Reg. 45888 (Aug. 16, 2007) ................................................... 11

22 C.F.R. § 22.1 ................................................................................... 5

22 C.F.R. § 51.63 .......................................................................... passim

22 C.F.R. ¶ 51.66 ................................................................ 4, 10, 11, 17

**TO PLAINTIFF AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendants hereby move this Court for an order dismissing this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure or alternatively pursuant to Rule 12(b)(6). Pursuant to this Court's rules of procedure, any hearing date will be set by the Court upon this filing.

Dismissal is warranted here because (1) the United States has not waived sovereign immunity as to Plaintiff's claims for consequential and special damages; and (2) Plaintiff has not exhausted her administrative remedies as to her claim for a refund of the additional fee paid for expedited processing of her passport application. This motion is supported by this Notice, the following Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, the attached Declaration of Ann Barrett, and the record in this case.

## INTRODUCTION

The 9/11 Commission, charged with responsibility for preparing a full and complete account surrounding the September 11, 2001 terrorist attacks, recommended that the federal government implement specific measures to address national security, including strengthening the requirement of travel documents in the Western Hemisphere. The Commission concluded that "[t]he current system enables non-U.S. citizens to gain entry by showing minimal identification" and the 9/11 experience tragically demonstrated that "terrorists study and exploit America's vulnerabilities." [1] That and other recommendations provided the foundation for the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), which the President signed into law on December 17, 2004. Section 7209 of the IRTPA, as amended, required that the Department of Homeland Security ("DHS"), in consultation with the Secretary of State, develop and implement a plan to require travelers entering the United States to present a passport. The Western Hemisphere Travel Initiative ("WHTI") implements that requirement.

---

[1] The 9/11 Commission Report at 388.

*Chattler v. United States of America,*                                    Case No. 07-4040
Defendants' Motion to Dismiss

1    Effective January 2007, the first phase of WHTI required all United States citizens and

2    nonimmigrant aliens from Canada, Bermuda, and Mexico departing from or entering the United

3    States from within the Western Hemisphere to present a valid passport at air ports-of-entry.

4    Anticipating that this requirement would cause increased demand for passports, the Department of

5    State ("the Department") hired additional personnel and increased the size and hours of its passport

6    processing facilities.  In just the first month of phase one's implementation, the volume of passport

7    applications doubled over the previous month, to almost two million applications.  This exponential

8    jump in demand far exceeded the Department's predictions and caused an enormous strain on the

9    agency's resources.  In the months that followed, the average period from the submission of the

10   application to the applicant's receipt of the issued passport increased to up to twelve weeks for

11   routine applications.

12       Many more Americans began requesting expedited processing of their applications, a service

13   that historically has reduced that period to two or three weeks.  By regulation, expedited processing

14   requires that the period commencing when the passport application reaches the passport agency and

15   ending when the passport is mailed to the applicant not exceed a specified amount of time – until

16   recently, three business days.  If the Department fails to provide that service, the applicant is entitled

17   to a refund of the additional fee paid for such service.  This year, the number of expedited

18   applications reached an historic high of over 5.5 million, almost double the total such applications in

19   Fiscal Year 2006.  In most instances, the Department processed expedited applications in

20   significantly less time than routine applications but not always within three business days.

21       In the wake of these events, Plaintiff Julia Chattler complains that the Department did not

22   process her expedited passport application within three days.  Plaintiff filed on behalf of herself and

23   a purported class of similarly situated individuals this action under the Little Tucker Act alleging that

24   the Department's failure to process her application within that time frame violated the agency's

25   passport regulations and breached an implied contract.  For that alleged violation and breach,

26   Plaintiff seeks not only a refund of the additional fee paid for expedited processing but special and

27   *Chattler v. United States of America,*                                Case No. 07-4040
     Defendants' Motion to Dismiss
28                                                2

1  consequential damages. Defendants, however, have not waived sovereign immunity as to her claim

2  for such damages. This Court accordingly lacks jurisdiction over Plaintiff's claim for special and

3  consequential damages and that claim accordingly should be dismissed.

4        However, because by regulation, a passport applicant may be entitled to a refund of the

5  expedite fee, that regulation gives rise to this Court's jurisdiction under the Little Tucker Act only as

6  to Plaintiff's claim for a refund. Nevertheless that claim should be dismissed as a prudential matter.

7  This action is nothing but an end-run around the Department's established procedure for refunding

8  expedite fees. That procedure requires nothing more than that Plaintiff submit a request to the

9  Department containing basic information such as present contact information, passport number, and

10  approximate dates she submitted her application. Refunds are generally issued within six weeks of

11  an applicant's submission of a legitimate refund request – far shorter than litigating a claim for a

12  refund. The doctrine of prudential exhaustion compels dismissal of this action to require that

13  Plaintiff first present that claim to the agency. Indeed, requiring that Plaintiff exhaust her

14  administrative remedies may well obviate the need for this action. Accordingly, the Court should

15  grant Defendants' motion and dismiss this action in its entirety.

16              **REGULATORY BACKGROUND FOR PASSPORT APPLICATIONS**

17  <u>**Overview of Passport Application Process:**</u>

18        The Department of State maintains fifteen regional passport agencies and three passport

19  processing centers that are responsible for processing passport applications and issuing passports.

20  *See* Declaration of Ann Barrett ("Barrett Decl.") ¶ 6, attached hereto. The majority of passport

21  applications, approximately 60-65%, are submitted to one of approximately 9000 authorized

22  passport application acceptance facilities located throughout the United States. Barrett Decl. ¶ 7.

23  Personnel at such facilities mark the applications for the appropriate passport agency and then route

24  them to a facility known as a lockbox. Barrett Decl. ¶ 7. The lockbox provides a "secure,

25  centralized system" for sorting and further routing of passport applications. Barrett Decl. ¶ 8. At

26  that location, the "passport applications are routed to the appropriate passport agencies, while the

27  *Chattler v. United States of America,*                                    Case No. 07-4040
    Defendants' Motion to Dismiss
28                                              3

1   associated fees are forwarded to the Department of Treasury." Barrett Decl. ¶ 8. Once the

2   appropriate passport agency receives the application, the information and supporting documentation

3   provided are reviewed. Barrett Decl. ¶ 9. On average, applicants receive their passports

4   approximately six to eight weeks after submitting their completed applications. Barrett Decl. ¶ 11.

5        Since 1994, the Department has offered applicants that require their passports in a shorter

6   time frame the opportunity to pay an additional fee ("the expedite fee") for expedited processing of

7   their applications. Barrett Decl. ¶ 12. Department regulations define "[e]xpedited passport

8   processing." *See* 22 C.F.R. ¶ 51.66 (Apr. 1, 2005). Historically, that phrase has meant "completing

9   processing within 3-business days commencing when the application reaches a Passport Agency or,

10   if the application is already with a Passport Agency, commencing when the request for expedited

11   processing is approved." 22 C.F.R. ¶ 51.66.

12        The expedite process can be invoked through a passport acceptance facility, by mail, or at a

13   passport agency. *See* Barrett Decl. ¶ 13. If an applicant requests expedited service by mail or at a

14   passport acceptance facility, the word "EXPEDITE" must be clearly written on the exterior of the

15   application envelope to ensure proper routing. *See* Barrett Decl. ¶ 16. Expedited applications

16   receive priority over routine applications at the sorting facilities. Barrett Decl. ¶ 12. The failure of

17   the applicant or the personnel at the acceptance facilities to identify the application "as one requiring

18   expedited processing may result in delays." Barrett Decl. ¶ 16.

19        Individuals also may submit expedited applications in person at a passport agency. Barrett

20   Decl. ¶ 17. Agencies accept in-person applications by appointment only. Barrett Decl. ¶ 17. All in-

21   person applications, approximately 10-15% of the total applications annually processed, are expedite

22   requests. *See* Barrett Decl. ¶ 17.

23        An additional number of applicants request an upgrade to expedited service after submitting

24   an application for regular processing. *See* Barrett Decl. ¶ 18.

25

26

27   *Chattler v. United States of America,*
   Defendants' Motion to Dismiss

28                                                   4

Case No. 07-4040

1    On average, applicants who request expedited processing receive their passports in

2  approximately two to three weeks after submitting their applications. Barrett Decl. ¶ 19. This period

3  includes the historic three days of processing at the passport agency as well as the time required for

4  the application to reach the agency and the issued passport to reach the applicant. *See* Barrett Decl. ¶

5  15. Expedited applications have accounted for roughly a quarter of all passports issued each year.

6  *See* Barrett Decl. ¶ 6.

7  **Passport Processing Fees and Refunds:**

8    The Department is authorized by statute to charge applicants fees to process passport

9  applications. *See* 22 U.S.C. § 214. The schedule of applicable fees is set forth in 22 C.F.R. § 22.1.

10  With few exceptions, none of the fees is refundable. By regulation, however, the Department will

11  refund certain "erroneously collected" fees and the "passport expedite fee . . . if the Passport Agency

12  does not provide the requested expedited processing as defined in § 51.66." 22 C.F.R. § 51.63.

13    The Department's longstanding practice for refunding expedite fees relies on an applicant's

14  request for a refund "as a means of triggering an inquiry into the processing history of a given

15  individual application." Barrett Decl. ¶ 46. There is currently "no automated mechanism for

16  identifying everyone who did not receive three-day processing, verifying that each person who

17  requested expedited processing paid the fee, and generating a refund." Barrett Decl. ¶ 50. The

18  Department examines every refund request on a case-by-case basis. *See* Barrett Decl. ¶ 24.

19    The requester, however, "does not bear the burden of showing the number of days that the

20  passport application was at the passport agency." Barrett Decl. ¶ 25. Instead, applicants who believe

21  they may be entitled to a refund need only submit to the Department a written request that contains

22  their passport number, if available, name, date and place of birth, approximate date(s) they applied

23  for their passport and received their passport, and current contact information. *See* Barrett Decl. ¶ 23

24  & Ex. A.1. If, after examining its records, the Department "determines that the applicant paid for

25  and did not receive expedited service, an order for a refund check of $60 to be issued to the applicant

26  is forwarded to the Department of the Treasury." Barrett Decl. ¶ 25.

27  *Chattler v. United States of America,*                            Case No. 07-4040
   Defendants' Motion to Dismiss
28                                               5

1    In the years since this process has been in place, "it has proven to be an efficient method of

2    ensuring that applicants who do not receive expedited processing receive a prompt refund of the

3    expedited service fee." Barrett Decl. ¶ 46. Applicants entitled to such refunds on average receive

4    them within six weeks of submitting their request. *See* Barrett Decl. ¶ 43. The Department,

5    however, continues to improve the efficiency of the process. *See* Barrett Decl. ¶¶ 42-43. For

6    example, since June 2007, individuals may submit refund requests electronically through a link on

7    the Department's website. *See* Barrett Decl. ¶ 42.

8    The Department does not – nor has it ever – reimbursed applicants for missed travel. *See*

9    Barrett Decl. ¶ 20.

10   **New Travel Document Requirements:**

11   As part of a congressional mandate to strengthen border security, the Department of

12   Homeland Security and Department of State implemented in January 2007, phase one of the Western

13   Hemisphere Travel Initiative ("WHTI"). *See* Barrett Decl. ¶ 26; *see also* 71 Fed. Reg. 68412, 68412

14   (Nov. 24, 2006). As of January 2007, "all United States citizens and nonimmigrant aliens from

15   Canada, Bermuda, and Mexico departing from or entering the United States from within the Western

16   Hemisphere at air ports-of-entry . . . [are] required to present a valid passport." 71 Fed. Reg. 68412.

17   In Fiscal Years 2005 and 2006, in anticipation of increased demand for passports following

18   implementation of that requirement, the Department began expanding its passport operations.

19   Specifically, the Department hired additional personnel, increased the size and hours of operation of

20   several passport centers, added two new passport processing facilities, and expanded its lockbox

21   service by adding a second lockbox site and operating both sites twenty-four hours a day, seven days

22   a week. Barrett Decl. ¶¶ 27-30.

23   The actual demand for passports following implementation of the WHTI far exceeded the

24   Department's predictions. *See* Barrett Decl. ¶ 31. In the first three months of 2007, the Department

25   received approximately 5.5 million passport applications, slightly over 45% of the *total passports*

26   *issued* in Fiscal Year 2006. Barrett Decl. ¶¶ 6 & 31. That exponential increase in applications

27
     *Chattler v. United States of America,*                          Case No. 07-4040
     Defendants' Motion to Dismiss
28                                                6

1  "placed an enormous strain on the passport processing system." Barrett Decl. ¶ 31. Initially,

2  significant delays occurred at the lockbox facilities – *before the application reached the passport*

3  *agency* – where lockbox operators forward applications to the appropriate passport agencies; those

4  delays "in turn, led to additional, cumulative delays at each of the next steps in the process of

5  passport adjudication, processing, and production." Barrett Decl. ¶ 32. The average time from an

6  applicant's submission of a passport application to receipt of the issued passport increased from six

7  to eight weeks "to up to twelve weeks." Barrett Decl. ¶ 33.

8        As a result, the demand for expedited processing increased. The total such applications

9  between Fiscal Year 2006 and Fiscal Year 2007 jumped from 2,964,895 to 5,543,166. *See* Barrett

10  Decl. ¶ 33. The Department processed expedited applications on a faster timetable than regular

11  passport applications. At each stage in the process, expedited applications "were moved toward the

12  head of the line, in front of the regular applications" and then further "prioritized according to when

13  the applicant stated that he or she needed to travel." Barrett Decl. ¶ 39. In most instances, applicants

14  who requested expedited service after January 2007 "received their passports significantly faster than

15  the twelve weeks it took to process routine applications at the height of the surge." Barrett Decl. ¶

16  39. In July 2007, the Department decided to change its regulations to adopt a more flexible

17  definition of "expedited passport processing." Barrett Decl. ¶ 41. The regulations now require that

18  expedited applications be "process[ed] within a number of business days periodically published on

19  the Department's website." Barrett Decl. ¶ 14.

20        The Department acted quickly to implement additional measures in an "effort[] to return to

21  normal processing times," including "expand[ing] the hours of operations at all 15 passport agencies

22  and the three passport centers," "institut[ing] mandatory overtime at all passport agencies in order to

23  provide maximum staffing at all times," and "hir[ing] additional personnel." Barrett Decl. ¶¶ 34-36.

24  In early September 2007, the Department announced that it had restored passport service to the

25  standard six to eight week processing time for routine passport applications and no more than three

26  weeks for expedited service. *See* Barrett Decl. ¶ 11.

27  *Chattler v. United States of America,*                                    Case No. 07-4040
    Defendants' Motion to Dismiss
28                                              7

1    In Fiscal Year 2007, which ended September 30, the Department issued over 18 million

2  passports as compared to the 12.1 million issued the previous fiscal year. *See* Barrett Decl. ¶ 33.

3                              **STATEMENT OF FACTS** [2/]

4    Plaintiff Julia Chattler applied for a passport on June 11, 2007. Complaint ("Compl.") ¶ 26.

5  In addition to processing, execution, and security fees, Plaintiff paid $60 for expedited processing of

6  her passport application. Compl. ¶ 27.

7    Seven weeks after submitting her application, Plaintiff re-applied for her passport in person

8  at the San Francisco passport agency. Compl. ¶ 28. Although she received her passport faster than

9  she otherwise would have and in time for her scheduled travel on August 3, 2007, Plaintiff contends

10  that she "did not receive the benefit of her payment for expedited service." Compl. ¶¶ 28 & 29.

11    Rather than apply to the Department of State for a refund of her expedite fee, Plaintiff filed

12  this action seeking a refund as well as special and consequential damages. *See* Barrett Decl. ¶ 44.

13                                  **ARGUMENT**

14  **I.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR CONSEQUENTIAL**
      **AND SPECIAL DAMAGES FOR LACK OF JURISDICTION OR ALTERNATIVELY**
15    **FOR FAILURE TO STATE A CLAIM.**

16    Defendants have not waived sovereign immunity as to Plaintiff's claims for consequential

17  and special damages. *See, e.g.,* Compl. ¶ 67 (alleging losses including "overnight shipping costs,

18  and other costs incurred due to the delay"); Compl. ¶ 69 (requesting "full damages, including all

19  consequential and special damages"). As sovereign, the United States "is immune from suit save as

20  it consents to be sued . . . and the terms of its consent to be sued in any court define that court's

21  jurisdiction to entertain the suit." *Hercules, Inc. v. United States*, 516 U.S. 417, 422, 116 S. Ct. 981,

22  985, 134 L. Ed. 47, 56 (1996). Absent a valid and applicable waiver of sovereign immunity, a district

23  court lacks subject-matter jurisdiction over a claim against the United States. *See FDIC v. Meyer,*

24  _____

25    [2/]    The Statement of Facts is based on the allegations in the Complaint and the attached
      Declaration of Ann Barrett, which this Court properly may consider in ruling on a motion to dismiss for
26    lack of jurisdiction. *See Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 420 n.2 (9th
      Cir. 1989) ("Materials outside the pleadings which relate to jurisdiction can be considered on a motion
27    to dismiss for lack of jurisdiction.").

*Chattler v. United States of America,*                                    Case No. 07-4040
28  Defendants' Motion to Dismiss
                                        8

1    510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 308, 316 (1994) ("[s]overeign immunity is

2    jurisdictional in nature"); *United States v. Mitchell*, 463 U.S. 206, 212, 103 S. Ct. 2961, 2965, 77 L.

3    Ed. 580, 588 (1983) ("the United States may not be sued without its consent and [] the existence of

4    consent is a prerequisite for jurisdiction").

5         Although the Little Tucker Act confers upon district courts jurisdiction over certain claims

6    "not exceeding $10,000 in amount, founded either upon . . . any regulation of an executive

7    department, or upon any . . . implied contract with the United States," that Act "does not create any

8    substantive right enforceable against the United States for money damages." 28 U.S.C. § 1346(a)(2);

9    *United States v. Testan*, 424 U.S. 392, 398, 96 S. Ct. 948, 953, 47 L. Ed. 114, 121 (1976); *see also*

10   *Moose v. United States*, 674 F.2d 1277, 1280 (9th Cir. 1982) (noting that the Tucker Act "is 'only a

11   jurisdictional statute; it does not create any substantive right enforceable against the United States for

12   money damages'"). Thus, the Act, "standing alone, does not permit this [C]ourt's exercise of

13   jurisdiction." *Ancman v. United States*, 77 Fed. Cl. 368, 374 (2007). Instead, Plaintiff must rely on

14   some other federal law or contract "to create the substantive right – the asserted entitlement to

15   money damages." *Moose*, 674 F.2d at 1280.

16        In determining whether the Plaintiff properly has invoked this Court's jurisdiction, the Court

17   must determine whether that law or contract "can fairly be interpreted as mandating compensation by

18   the Federal Government for the damage sustained." *Id.*; *see, e.g., Testan*, 424 U.S. at 398, 96 S. Ct.

19   at 955, 47 L. Ed. at 123 (describing that determination as "whether the [] other federal statutes that

20   are invoked . . . confer a substantive right to recover money damages from the United States").

21   Neither the regulations nor the alleged implied contracts on which Plaintiff relies can be interpreted

22   as allowing recovery for consequential and special damages. Plaintiff's claims for such damages

23   accordingly should be dismissed for lack of jurisdiction.

24

25

26

27   *Chattler v. United States of America,*                                          Case No. 07-4040
     Defendants' Motion to Dismiss
28                                                       9

1      **A.      Plaintiff Cannot Recover Special and Consequential Damages Under the
             Department of State's Regulations Governing Expedited Passport Processing.**

2          Plaintiff erroneously invokes the Department's regulations governing expedited passport

3   processing as authorizing her claim for special and consequential damages. *See* Compl. ¶ 78

4   ("seek[ing] to recover [] full damages for the Department's regulatory violations in amounts to be

5   proven at trial, but not to exceed $10,000 for any individual"); *see also* 22 C.F.R. § 51.66; 22 C.F.R.

6   § 51.63. Where a plaintiff is "not suing for money improperly exacted or retained, the basis of the

7   federal claim whether it be the Constitution, a statute, or a regulation does not create a cause of

8   action for money damages unless . . . that basis in itself . . . can fairly be interpreted as mandating

9   compensation by the Federal Government for the damage sustained." *Testan*, 424 U.S. at 401-02, 96

10  S. Ct. at 955, 47 L. Ed. at 123. A statute or regulation "is money-mandating for jurisdictional

11  purposes if it can fairly be interpreted as mandating compensation for damages sustained as a result

12  of the breach of the duties [it] impose[s]." *Ferreiro v. United States*, __ F.3d __, 2007 WL 2683679,

13  at *2 (Fed. Cir., Sept. 14, 2007) (internal quotations omitted); *Ancman*, 77 Fed. Cl. at 373 ("In order

14  to find that a statute or regulation is money-mandating, the allegation must be that the particular

15  provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a

16  certain sum." (internal quotations omitted)). If nothing in the language of the statute or regulation

17  invoked mandates the particular recovery sought, the claim should be dismissed for lack of

18  jurisdiction. *See, e.g., Shafmaster Fishing Co. v. United States*, 28 Fed. Cl. 699, 700 (1993)

19  (dismissing for lack of jurisdiction claim under 22 U.S.C. § 1980 for damages resulting from

20  government's untimely reimbursements because statute only authorized monetary compensation for

21  damaged commercial fishing gear not "redress if the Secretary fails to meet the sixty day initial

22  determination requirement of 22 U.S.C. § 1980(d)(1)"); *El Dorado Springs v. United States*, 28 Fed.

23  Cl. 132, 136 (1993) (dismissing for lack of jurisdiction claim for lost profits and other consequential

24  damages resulting from agency's rejection of plaintiff's application for mortgage insurance because

25  nothing in the statute or regulations on which plaintiff relied created a substantive right to such

26  damages).

27  *Chattler v. United States of America,*                                Case No. 07-4040
    Defendants' Motion to Dismiss

28                                          10

1       The Department's regulations governing expedited passport processing clearly do not

2   mandate compensation for special and consequential damages. *See* 22 C.F.R. § 51.63; 22 C.F.R. §

3   51.66. At the time Plaintiff allegedly submitted her passport application, [3/] those regulations

4   provided that "[e]xpedited passport processing shall mean completing processing within 3 business

5   days commencing when the application reaches a Passport Agency or, if the application is already

6   with a Passport Agency, commencing when the request for expedited processing is approved." [4/]   22

7   C.F.R. § 51.66(b) (Apr. 1, 2005). An additional fee is charged for such service. *See* 22 C.F.R. §

8   51.66(c). By regulation, however, if the Department fails to provide the service set forth in 22

9   C.F.R. § 51.66 and the applicant paid the expedite fee, "[t]he passport expedite fee will be

10   refunded." 22 C.F.R. § 51.63(c). Nothing in that language or elsewhere in the regulations governing

11   expedited passport applications requires the Department to compensate the applicant for the passport

12   application and execution fees, missed travel, or other special or consequential damages. In the

13   absence of such, this Court lacks jurisdiction over Plaintiff's claims for such damages. Accordingly,

14   Plaintiff's claim for special and consequential damages based on Defendant's alleged violation of 22

15   C.F.R. § 51.66 and 22 C.F.R. § 51.63 should be dismissed.

16

17   _____

18   [3/] In August 2007, the Department changed its regulations. *See* 72 Fed. Reg. 45888 (Aug. 16, 2007). This interim final rule "changes the definition of 'expedited passport processing' from the 3-business day period to a number of business days as may be published from time to time on the Department's Web site, http://www.travel.state.gov." *Id.* at 45888. That change is intended "to ensure that the Department can continue to offer this service consistent with its regulations, despite increases in demand for it." *Id.*

21   [4/] The regulation does not impose any requirement on the time before the expedited passport application reaches the passport agency or the time after the agency mails the issued passport to the applicant. *See* 22 C.F.R. § 51.66(b); *see also* Barrett Decl. ¶ 15 (explaining that the "required 3-day processing does not include the time it takes for an application to arrive at the passport agency or the time it takes for the issued passport to reach the applicant"). Thus, "an applicant who received the three-day processing may receive the passport two or three weeks after the application was submitted." Barrett Decl. ¶ 15; *see also* Barrett Decl. ¶ 19 ("Normally, an applicant who receives the three-day expedited service will receive the passport in approximately two to three weeks. This period takes into account the time needed for the application to go from the acceptance facility or through the mail to the lockbox; for the application and payment to be sorted at the lockbox; for the application to be *processed* at the agency or center (where the three days are counted); and to mail the passport to the applicant." (emphasis added)).

*Chattler v. United States of America,*                                              Case No. 07-4040
Defendants' Motion to Dismiss

11

1    This Court alternatively should dismiss that claim for failure to state a claim under Rule

2  12(b)(6) of the Federal Rules of Civil Procedure.  Courts have suggested that whenever a plaintiff

3  asserts jurisdiction based on a money-mandating statute or regulation – whether or not it authorizes

4  the particular recovery sought – that "ends the [C]ourt's jurisdictional inquiry" and the Court should

5  proceed to the merits of the claim. [5/]  *Ancman*, 77 Fed. Cl. at 374; *see also Fisher v. United States*,

6  402 F.3d 1167, 1173 (Fed. Cir. 2005) ("If the court's conclusion is that the Constitutional provision,

7  statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction

8  over the cause, and shall then proceed with the case in the normal course.").  If, as here, the invoked

9  regulation "does not provide the appropriate mechanism for the relief requested," then dismissal for

10  failure to state a claim is warranted. *Ancman*, 77 Fed. Cl. at 375; *see also Fisher*, 402 F.3d at 1175-

11  76 (noting that "the consequence of a ruling by the court on the merits, that plaintiff's case does not

12  fit within the scope of the [money-mandating] source, is simply this: plaintiff loses on the merits for

13  failing to state a claim on which relief can be granted").  "It is not sufficient for a statute to be

14  money-mandating; rather, the relief sought . . . must be the same kind of relief or remedy provided

15  by the statute." *Id.*

16    As already discussed, Plaintiff's claim for consequential and special damages is well outside

17  the scope of the compensation authorized by the Department's regulations governing expedited

18  passport processing.  *See* 22 C.F.R. § 51.63(c) (providing only that "[t]he passport expedite fee will

19  be refunded if the Passport Agency does not provide the requested expedited processing as defined in

20  §51.66").  Thus, this Court alternatively should dismiss that claim for failure to state a claim upon

21  which relief can be granted.

---

24   [5/]  This approach, however, is not unlike a practice "denominated . . . assuming jurisdiction for the purpose of deciding the merits" which the Supreme Court flatly rejected in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998), as "beyond the bounds of authorized judicial action." *Id.* at 94, 118 S. Ct. at 1012, 140 L. Ed. 2d at 227; *see also id.* at 101-02, 118 S. Ct. at 1016, 140 L. Ed. 2d at 231-32 (noting that "[f]or a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires").

**B.    Plaintiff Cannot Recover Special and Consequential Damages Under an Implied Contract Theory.**

Plaintiff's claim for such damages under implied contract theory fares no better. *See, e.g.*, Compl. ¶ 66 (alleging that "[t]he Department of State breached its contracts with plaintiffs when it failed to provide its processing service within the promised and required amount of time"); Compl. ¶ 84 (alleging that "[t]he Department of State breached its contracts with plaintiffs when it failed to return their passports within twenty one days"); Compl. ¶ 97 (alleging that "the Department has breached the covenant of good faith and fair dealing implied in the contract for expedited service by depriving plaintiffs of the value of their contracts in order to further its own self-interest"). The Little Tucker Act confers jurisdiction upon the district courts to hear claims under $10,000 against the United States founded upon any express or implied contract with the United States. *See* 28 U.S.C. § 1346(a)(2). Such jurisdiction "extends only to contracts either express or implied in fact." *Hercules*, 516 U.S. at 423, 116 S. Ct. at 985, 134 L. Ed. at 56. A contract implied in fact "is founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Id.* at 424, 116 S. Ct. at 986, 134 L. Ed. at 56 (internal quotations omitted). Each material term or contractual obligation, as well as the contract as a whole, is subject to these requirements. *See id.* at 423, 116 S. Ct. at 985, 134 L. Ed. at 56.

Thus, to state a claim of an implied-in-fact contract, Plaintiff must allege a mutuality of intent, consideration, and an unambiguous offer and acceptance. *See Alliance of Descendants of Texas Land Grants v. United States*, 37 F.3d 1478, 1483 (Fed. Cir. 1994) ("An implied-in-fact contract with the Government requires: (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and acceptance."); *see also Helash v. Ballard*, 638 F.2d 74, 75 (9th Cir. 1980). An implied-in-fact contract is not formed, however, where it is purportedly based on government promises contrary to a governing statute or regulation. *See Schism v. United States*, 316 F.3d 1259, 1273-74 (Fed. Cir. 2002); *Schism v. United States*, 972 F. Supp. 1398, 1403 (N.D. Fla. 1997). "Persons dealing with the government are charged with knowing government statutes and

*Chattler v. United States of America,*                                    Case No. 07-4040
Defendants' Motion to Dismiss
13

1    regulations, and they assume the risk that government agents may exceed their authority and provide

2    misinformation." *Lavin v. Marsh*, 644 F.2d 1378, 1383 (9th Cir. 1981); *see also Federal Crop Ins.*

3    *Corp. v. Merrill*, 332 U.S. 380, 384-85, 68 S. Ct. 1, 3-4, 92 L. Ed. 10, 15-16 (1947). Therefore, "the

4    limitations imposed . . . by [] statute override any representations made by the government, since any

5    promises in contradiction of the statute would be beyond the authority of government agents to carry

6    out." *Schism*, 972 F. Supp. at 1404; *see also H.F. Allen Orchards v. United States*, 749 F.2d 1571,

7    1575 (Fed. Cir. 1984). Similarly, here, the alleged implied-in-fact contracts cannot be contrary to the

8    Department's passport regulations by entitling Plaintiff to recover more than the fee paid for

9    expedited processing. [6/]

10       Plaintiff alleges that two separate implied-in-fact contracts were formed and allegedly

11   breached in connection with her expedited passport application. *See* Compl. ¶¶ 62-69, 79-87. The

12   first such contract allegedly was formed when Plaintiff accepted the Department's alleged "promise

13   in the passport application . . . to provide expedited service within a set amount of time in exchange

14   for a fee," and Plaintiff purportedly "provided consideration by [] payment of the additional fee."

15   Compl. ¶¶ 63-64. A second implied contract allegedly was formed when Plaintiff accepted the

16   Department's alleged "promise in its forms and on its website that applicants who paid for expedited

17   service and mailing would receive their passports 'within about two weeks,'" and Plaintiff

18   purportedly "provided consideration by [] payment of the additional fee." Compl. ¶¶ 80-81.

19   Plaintiff further alleges that implicit in both contracts was "[a] covenant of good faith and fair

20   dealing" that the Department allegedly breached "by depriving plaintiffs of the value of their

21   contracts in order to further its own self-interest." Compl. ¶ 97. For all three alleged breaches,

22

23

24   [6/] To the extent Plaintiff claims an implied-in-fact contract that entitles her to a refund of the
     expedite fee, that claim is unfounded because that recovery is governed by regulation and not contract

25   principles. *Cf. Zucker v. United States*, 758 F.2d 637, 640 (Fed. Cir. 1985) ("entitlement to retirement
     benefits must be determined by reference to the statute and regulations governing these benefits, rather

26   than to ordinary contract principles"); *Schism*, 316 F.3d at 1278 (noting that "[i]t is well settled that the
     existence of an express contract precludes the existence of an implied-in-fact contract dealing with the

27   same subject matter").

     *Chattler v. United States of America,*                                    Case No. 07-4040

28   Defendants' Motion to Dismiss
                                            14

1  Plaintiff "seek[s] to recover [] full damages, including all consequential and special damages . . . but

2  not to exceed $10,000." Compl. ¶¶ 69, 87, 98.

3      Even assuming Plaintiff's allegations are sufficient to establish a contract offer, such

4  damages clearly are beyond the amount mandated by the Department's regulations when the

5  Department fails to provide expedited service for which an applicant paid. Specifically, those

6  regulations limit the Department's liability under those circumstances to refund of the expedite fee.

7  *See* 22 C.F.R. § 51.63 ("The passport expedite fee will be refunded if the Passport Agency does not

8  provide the requested expedited processing as defined in §51.66."). Plaintiff therefore cannot

9  override that limitation by claiming more generous terms under an implied contract. *See, e.g.,*

10  *Schism*, 972 F. Supp. at 1404 (dismissing implied-in-fact contract claim for military benefits of those

11  retirees who began service after enactment of 10 U.S.C. § 1074(b) because "the limitations imposed

12  on [such] benefits by the statute override any representations made by the government" on which the

13  retirees relied). This Court accordingly should dismiss Plaintiff's breach-of-contract claims for

14  special and consequential damages as lacking the predicate implied-in-fact contract necessary for this

15  Court's jurisdiction. *See Moose*, 674 F.2d at 1280 (noting that the district court's jurisdiction under

16  the Tucker Act requires that plaintiff rely on some other source that creates the substantive right to

17  money damages).

18      Alternatively, these same reasons compel dismissal for failure to state a claim. None of the

19  allegations in the Complaint demonstrates the requisite meeting of the minds as to damages for

20  breach of the alleged contracts. Plaintiff contends that she is entitled to "recover [] full damages,

21  including all consequential and special damages" because the Department allegedly failed to process

22  her expedited passport within three business days and allegedly "failed to return [her] passport[]

23  within twenty one days." Compl. ¶¶ 65, 69, 84, 87. Yet, Plaintiff concedes that the Department's

24  regulations provide that only a refund of the expedite fee is payable if the agency fails to provide the

25

26

27  *Chattler v. United States of America,*                                    Case No. 07-4040
    Defendants' Motion to Dismiss
28                                          15

1  required service to an applicant who paid that fee. [7/] *See* Compl. ¶ 73; *see also* 22 C.F.R. § 51.63.

2  Such allegations demonstrate that a meeting of the minds as to damages is utterly lacking.  Plaintiff

3  accordingly has not sufficiently pled an implied-in-fact contract with the Department.  Thus, whether

4  the Court analyzes Plaintiff's claim for special and consequential damages as a matter of jurisdiction

5  or failure to state a claim, that claim should be dismissed with prejudice.

6  **II.  THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR RETURN OF THE
       EXPEDITE FEE BECAUSE PLAINTIFF FAILED TO EXHAUST HER
7  ADMINISTRATIVE REMEDIES.**

8        Plaintiff's invocation of this Court's jurisdiction over her claim for a refund of the expedite

9  fee circumvents the Department's established process for refunding expedite fees.  This Court should

10  not sanction such conduct and instead should dismiss that claim for failure to exhaust administrative

11  remedies.  The exhaustion requirement "can spring from an Act of Congress that designates an

12  exclusive administrative avenue of appeal.  When that is the case the administrative proceedings are .

13  . . a precondition to federal court jurisdiction[, and t]he court[] lack[s] power to undertake judicial

14  review until the proceedings have been completed."  *United States v. California Care Corp.*, 709

15  F.2d 1241, 1248 (9th Cir. 1983).  However, even where such exhaustion is not statutorily mandated,

16  courts may require it as a prudential matter.  *See Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir.

17  1990); *see also Marathon Oil Co. v. United States*, 807 F.2d 759, 768 (9th Cir. 1986) (distinguishing

18  between "administrative exhaustion requirements that are based on a statutory directive and those

19  that are judicially imposed").  Prudential exhaustion "is not a jurisdictional prerequisite but instead is

20  within the discretion of the district court."  *Montes*, 919 F.2d at 537.  Such exhaustion is typically

21  required where "(1) agency expertise makes agency consideration necessary to generate a proper

22  record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate

23  bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to

24  correct its own mistakes and to preclude the need for judicial review."  *California Care*, 709 F.2d at

25

26      [7/]  On the Department's website, moreover, the agency explains that "applicants are not entitled
27  to reimbursement of fees or compensation for missed travel."  Barrett Decl. ¶ 20.

*Chattler v. United States of America,*                                                    Case No. 07-4040
Defendants' Motion to Dismiss

28

1   1248; *see also Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Huang v. Ashcroft*, 390 F.3d

2   1118, 1123 (9th Cir. 2005).  Consideration of these factors here compels dismissal of the sole claim

3   over which this Court may exercise jurisdiction, Plaintiff's claim for a refund of the expedite fee.

4   **A.    Requiring Plaintiff to Present Her Claim to the Department Likely Will Obviate the Need for Judicial Involvement.**

5   The Department has an efficient and established process for refunding the expedite fee to

6   applicants who failed to receive the required service.  *See* Barrett Decl. ¶¶ 21-25 (explaining the

7   Department's refund process).  "Fees for expedited processing are returned to customers who request

8   a refund, who have paid the expedited processing fee, and whose applications were not processed in

9   the specified time period for expedited processing." [8/]  Barrett Decl. ¶ 21.  The Department's

10   longstanding practice for refunding expedite fees has "relie[d]" on an applicant's request "as a means

11   of triggering an inquiry into the processing history of a given individual application."  Barrett Decl. ¶

12   46.  Over the years that this practice has existed, "it has proven to be an efficient method of ensuring

13   that applicants who do not receive expedited processing receive a prompt refund of the expedited

14   service fee." [9/]  Barrett Decl. ¶ 46.

15   The Department's website explains how an applicant can request a refund of the expedite fee.

16   *See* Barrett Decl. ¶ 22; *see also* Barrett Decl. Ex. A.1.  Applicants who "[p]aid the $60 fee for

17   expedited service and [ h]ave reason to believe that they did not receive expedited service" need only

18   "submit a written request with their passport number, if available, name, date and place of birth, and

19   approximate date(s) they applied for their passport and received their passport (if applicable)."

20

---

21

22   [8/]  At the time that Plaintiff allegedly submitted her expedited passport application, Department regulations defined expedited passport processing as "completing processing within 3-business days commencing when the application reaches a Passport Agency or, if the application is already with a Passport Agency, commencing when the request for expedited processing is approved." 22 C.F.R. § 51.66.

23

24

25   [9/]  The requirement of a request from the applicant ensures that the Department has current contact information for the applicant because contact information for many applicants may have changed since submission of their passport application.  *See* Barrett Decl. ¶ 53 ("many applicants supply temporary addresses in their applications for the mailing of their passports, such as the address of a friend or relative they are staying with as part of their travel plans").

26

27   *Chattler v. United States of America,*                                    Case No. 07-4040
     Defendants' Motion to Dismiss

28                                            17

1    Barrett Decl. Ex. A.1. The submission also should include the applicant's mailing address and

2    phone number. *See* Barrett Decl. Ex. A.1. These same instructions are provided to applicants who

3    call the National Passport Information Center to inquire about expedite fees they have paid. *See*

4    Barrett Decl. ¶ 22.

5        Contrary to Plaintiff's suggestion, (Compl. ¶ 45), the "requester does not bear the burden of

6    showing the number of days that the passport application was at the passport agency." Barrett Decl.

7    ¶ 25. However, "[e]very expedited fee refund request is examined on a case-by-case basis." Barrett

8    Decl. ¶ 24. There is currently "no automated mechanism for identifying everyone who did not

9    receive three-day processing, verifying that each person who requested expedited processing paid the

10   fee, and generating a refund." Barrett Decl. ¶50. "If the Department determines that the applicant

11   paid for and did not receive expedited service, an order for a refund check of $60 to be issued to the

12   applicant is forwarded to the Department of the Treasury." Barrett Decl. ¶ 25. At present, this

13   process "takes approximately six weeks from the time a request is received at the Service Refund

14   Center until a refund is issued by the Department of Treasury to the qualifying applicant." Barrett

15   Decl. ¶ 43. Since June 2007, the Department has implemented several measures to facilitate this

16   process. *See* Barrett Decl. ¶ 43. The Department "has assigned three full-time Department

17   employees to assist in handling the [refund] requests . . . and plans to reassign an additional three

18   contractors to assist in th[at] work in the near future." Barrett Decl. ¶ 43. The Department now

19   processes all expedited fee refund requests directly through Washington, D.C., rather than through

20   the passport agencies; "[p]reviously, agencies processed the requests and then forwarded them to

21   Washington for completion." Barrett Decl. ¶ 41. The Department since June even accepts electronic

22   requests for refunds from a link directly on its website. *See* Barrett Decl. ¶ 42 ("The Department

23   also began accepting requests for refunds for expedited processing by e-mail in June, and has posted

24   a link on the State Department website . . . to enable applicants to request a refund electronically

25   directly from there").

26

27   *Chattler v. United States of America,*                                    Case No. 07-4040
     Defendants' Motion to Dismiss

28                                              18

1    Despite the ease of the Department's existing process, Plaintiff has not availed herself of that

2    process and instead invokes the limited resources of this Court to resolve a claim that the

3    Department clearly ought to decide in the first instance. *See* Barrett Decl. ¶ 45 ("Julia Chattler has

4    not requested a refund of the expedited service through the Department's refund process."). If

5    Plaintiff is entitled to a refund, the administrative process outlined above is designed to provide that

6    recovery with far less effort than litigating that claim would require. *See* Barrett Decl. ¶46. Thus,

7    dismissal of Plaintiff's claim for failure to exhaust her administrative remedies likely would obviate

8    the need for any judicial involvement.

9    **B.      The Department's Existing Refund Process Is Preferable to Any Alternative
            System This Court Might Establish.**

10

11    The Department's existing system for processing refunds has a demonstrated history of

12    ensuring that individuals who are entitled to a refund receive it in a timely manner. *See* Barrett Decl.

13    ¶ 46 ("Over the years that this procedure has been in place, it has proven to be an efficient method of

14    ensuring that applicants who do not receive expedited processing receive a prompt refund of the

15    expedited service fee."). Indeed, in as few as six weeks, that system issues refunds to applicants

16    entitled to a refund. *See* Barrett Decl. ¶ 43. Yet, Plaintiff, who has not even applied for a refund,

17    urges the Court to require the Department to suspend "its current refund operations in favor of a new

18    system that would have to be devised from the ground up." Barrett Decl. ¶ 48. Apart from the

19    reasons already discussed, this Court clearly should reject that invitation because of the problems

20    attendant with such an administrative change.

21    The public is well aware of the existing system through the Department's website and recent

22    public statements of agency officials. *See* Barrett Decl. ¶ 22 ("Assistant Secretary Maura Harty

23    discussed the refund when she testified before the Senate Foreign Relations Committee in June

24    2007"); Barrett Decl. ¶ 22 ("The State Department website explains how to obtain a refund of the

25    expedite fee if an applicant believes he or she has not received expedited processing."); Barrett Decl.

26    ¶ 22 ("State Department officials [] recently have discussed the availability of refunds for the

27    expedited processing fee in their public statements."). As a result, "many people have already

*Chattler v. United States of America,*                                              Case No. 07-4040
Defendants' Motion to Dismiss

28
                                                    19

1   applied for a refund and have already received a refund or are awaiting the processing of their

2   requests." Barrett Decl. ¶ 47. Public confusion likely would result if the Department were forced to

3   suspend its current operations in favor of a new system. *See* Barrett Decl. ¶ 47 (noting that because

4   of the public's familiarity with the current system, individuals "may apply for a refund in the future

5   without realizing that a court-ordered process may have been established").

6   　　　　Any new system, moreover, would have to take into account the Department's limitations

7   that preclude it from automatically issuing refunds when the agency fails to provide expedited

8   service. *See* Barrett Decl. ¶¶ 50-53. The Department has no automated system for "identifying

9   everyone who did not receive three-day processing, verifying that each person who requested

10  expedited processing paid the fee, and generating a refund." Barrett Decl. ¶ 50. The Department

11  currently processes such refund requests "manually and cross-checks records from different

12  databases in order to determine whether a refund is due." Barrett Decl. ¶ 50; *see also* Barrett Decl. ¶

13  52 (noting that "the application records and the refund records are maintained in two separate

14  databases that contain different sets of data" that "[d]epartment personnel must manually cross-check

15  . . . to determine whether a particular applicant has already received a refund"). The current system's

16  requirement that applicants submit a request also ensures that the Department has a current address

17  for applicants entitled to a refund. *See* Barrett Decl. ¶ 53. Many applicants request that their

18  passports be sent to temporary addresses, such as the address of a friend or relative. *See* Barrett

19  Decl. ¶ 53. Therefore, the address supplied in their applications not only may not be current, but

20  may not be the applicant's own address. *See* Barrett Decl. ¶ 53 (explaining one benefit of requiring

21  that applicants submit a refund request as "avoid[ing] the risk that checks may be sent to third parties

22  who may fraudulently cash them or fail to forward them to the passport applicant").

23  　　　　Thus, any new system this Court might require must also identify applicants who paid for but

24  did not receive expedited processing, ensure that the Department does not issue refunds to applicants

25  who already have received one through the current system, and determine the current address of

26  applicants entitled to a refund. *See* Barrett Decl. ¶¶ 47-53. Even assuming such a system could be

27  *Chattler v. United States of America,*                                      Case No. 07-4040
    Defendants' Motion to Dismiss
28  　　　　　　　　　　　　　　　　　　　　　20

1   devised – let alone, one superior to the existing one – the time and resources required to implement

2   the new system necessarily would delay the issuance of refunds. *See* Barrett Decl. ¶ 54 ("The

3   Department's system of processing refunds avoids the possibility of diverting the Department's

4   resources from passport processing by permitting it to focus its resources on those expedite requests

5   for which there is reason to believe that expedited processing may not have occurred. The current

6   process of refunding fees based on requests is therefore likely to result in faster refunds to those who

7   qualify for them than a new procedure."). Such additional considerations compel judicial restraint

8   here and dictate dismissal of Plaintiff's refund claim.

9                                         **CONCLUSION**

10          For the foregoing reasons, Defendants respectfully request that the Court grant this motion

11  and dismiss this action.

12  Date: October 9, 2007                          Respectfully submitted,

13

14                                                 PETER D. KEISLER
                                                   Assistant Attorney General
15                                                 Civil Division

16                                                 SCOTT N. SCHOOLS
                                                   United States Attorney
17                                                 Northern District of California

18                                                 VINCENT M. GARVEY
                                                   Deputy Branch Director
19

20                                                      /s /Jacqueline Coleman Snead

21                                                 JACQUELINE COLEMAN SNEAD
                                                   (D.C. Bar No. 459548)
22                                                 Trial Attorney
                                                   Federal Programs Branch, Civil Division
23                                                 U.S. Department of Justice
                                                   20 Massachusetts Avenue, N.W. Rm. 7214
24                                                 Washington, DC 20530
                                                   Tel: (202) 514-3418
25

26                                                 **Attorneys for Defendants**

27  *Chattler v. United States of America,*                              Case No. 07-4040
    Defendants' Motion to Dismiss
28                                                   21

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JULIA CHATTLER,**<br><br>**PLAINTIFF**<br><br>**V.**<br><br>**UNITED STATES OF AMERICA,**<br>**DEPARTMENT OF STATE,**<br><br>**DEFENDANTS.** | **Case No. 07-4040-JL**<br><br>**Proposed Order** |

Upon consideration of Defendants' Motion to Dismiss [and the opposition thereto], it is hereby

ORDERED that Defendants' Motion to Dismiss is GRANTED, and this action is hereby dismissed.

SO ORDERED.

Dated: _____

_____
UNITED STATES DISTRICT
COURT JUDGE

*Chattler v. United States of America,*                                    Case No. 07-4040
Defendants' Motion to Dismiss

1

**CERTIFICATE OF SERVICE**

2          This is to certify that a true and correct copy of the foregoing Defendants' Motion

3    to Dismiss was served electronically on October 9, 2007 through the Northern District of

4    California Electronic Case File System (ECF) and that the document is available for

5    viewing and downloading on that system.

6                                                          /s /Jacqueline Coleman Snead
                                                          Jacqueline Coleman Snead
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    *Chattler v. United States of America,*                    Case No. 07-4040
      Defendants' Motion to Dismiss
28