1  REED R. KATHREIN (139304)
   SHANA E. SCARLETT (217895)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
3  715 Hearst Avenue, Suite 202
   Berkeley, CA 94710
4  Telephone: (510) 725-3000
   Facsimile: (510) 725-3001
5  reed@hbsslaw.com
   shanas@hbsslaw.com
6
7  ROBERT B. CAREY (*Pro Hac Vice*)
   HAGENS BERMAN SOBOL SHAPIRO LLP
8  2425 East Camelback Road, Suite 650
   Phoenix, AZ  85016
9  Telephone: (602) 840-5900
   Facsimile: (602) 840-3012
10 rob.carey@att.net
11 STEVE W. BERMAN (*Pro Hac Vice*)
   HAGENS BERMAN SOBOL SHAPIRO LLP
12 1301 Fifth Avenue, Suite 2900
   Seattle, WA  98101
13 Telephone: (206) 623-7292
   Facsimile: (206) 623-0594
14 steve@hbsslaw.com
15 Attorneys for Plaintiff
16 [Additional counsel listed on signature page]
17              UNITED STATES DISTRICT COURT
18           NORTHERN DISTRICT OF CALIFORNIA
19              SAN FRANCISCO DIVISION

20 JULIE CHATTLER, On Behalf of Herself and   )   No. C 07-04040 SI
   All Others Similarly Situated,             )
21                                            )   OPPOSITION TO MOTION TO
                                Plaintiff,    )   DISMISS
22                                            )
           v.                                 )   DATE:  December 21, 2007
23                                            )   TIME:  9:00 a.m.
   THE UNITED STATES OF AMERICA and           )   DEPT:  Courtroom 10, 19th Floor
24 THE UNITED STATES DEPARTMENT OF            )
   STATE,                                     )   ACTION FILED: August 7, 2007
25                                            )
                               Defendants.    )
26 _____ )
27
28

001980-11 210969 V1

1

## TABLE OF CONTENTS

2

INTRODUCTION ............................................................................................................... 1

3

SUMMARY OF FACTUAL ALLEGATIONS AND REGULATORY BACKGROUND ................ 1

4

ARGUMENT ...................................................................................................................... 4

5

I.      THE PLAINTIFF'S FULL COMPENSATORY DAMAGES, INCLUDING SPECIAL
6       AND CONSEQUENTIAL DAMAGES, ARE RECOVERABLE ......................................... 5

7       A.      The Plaintiff Is Entitled to All Damages She Can Prove Under the Applicable
                Money Mandating Regulations ........................................................................ 6

8       B.      The Full Range of Contract Damages are Available Against the Government for
9               Breach of Contract .......................................................................................... 9

                1.      The Complaint Alleges Facts Sufficient to Establish the Formation and
10                      Breach of a Contract with the Government ........................................... 9

11              2.      Under the Applicable Principles of Contract Law, Plaintiff Is Entitled to
                        Collect All Reasonably Foreseeable Damages Flowing from the Breach ...... 10
12

II.     THE PRUDENTIAL EXHAUSTION DOCTRINE DOES NOT REQUIRE DISMISSAL
13      OF PLAINTIFF'S CLAIMS ............................................................................................. 14

14      A.      A Balancing of Factors Does Not Support Applying the Prudential Exhaustion
                Doctrine ............................................................................................................. 14
15
                1.      Agency Expertise Is Not Necessary to Resolve Legal Issues or Generate a
16                      Proper Record for Subsequent Judicial Review .................................. 15

17              2.      Permitting the Case to Proceed in this Court Will Not Encourage Deliberate
                        Bypass of Administrative Procedures .................................................. 16
18
                3.      Administrative Exhaustion Is Unlikely to Cause the Department to Correct
19                      Its Own Mistakes or Preclude the Need for Subsequent Judicial Review ...... 18

20      B.      This Court Should Not Require Administrative Exhaustion Because the Existing
                Administrative Remedy Is Inadequate .............................................................. 19
21

III.    PLAINTIFF SHOULD BE PROVIDED THE OPPORTUNITY TO PRESENT A
22      COMPLETE RECORD ................................................................................................... 20

23

CONCLUSION ................................................................................................................. 23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AT&T Commc'ns of the Southwest, Inc. v. Austin*
   975 F. Supp. 928 (W.D. Tex. 1997) ................................................................ 20

*Agredano v. United States*
   70 Fed. Cl. 564 (2006) .............................................................................. 12

*Aleknagik Natives Ltd. v. Andrus*
   648 F.2d 496 (9th Cir. 1980) ...................................................................... 18

*Alltel Information Services, Inc. v. Federal Deposit Insurance Corp.*
   194 F.3d 1036 (9th Cir. 1999) .................................................................... 12

*Bell Atlantic Corp. v. Twombly*
   __ U.S. __, 127 S. Ct. 1955 (2007) ............................................................. 9

*Bowen v. City of New York*
   476 U.S. 467 (1986) .......................................................................... 16, 17

*Bowen v. Massachusetts*
   487 U.S. 879 (1988) ............................................................................. 20

*Bowen v. Michigan Academy of Family Physicians*
   476 U.S. 667 (1986) ............................................................................. 20

*Centex Corp. v. United States*
   395 F.3d 1283 (Fed. Cir. 2005) .................................................................. 12

*El Dorado Springs v. United States*
   28 Fed. Cl. 132 (1993) ............................................................................ 8

*El Rescate Legal Serv., Inc. v. Executive Office of Immigration Review*
   959 F.2d 742 (9th Cir. 1992) ................................................................ 16, 18

*Federal Crop Insurance Corp. v. Merrill*
   332 U.S. 380 (1947) ............................................................................. 13

*Fisher v. United States*
   402 F.3d 1167 (Fed. Cir. 2005) ............................................................. 5, 6, 7

*Gompper v. VISX, Inc.*
   298 F.3d 893 (9th Cir. 2002) ...................................................................... 9

*Grulke v. United States*
   228 Ct. Cl. 720 (1981) ........................................................................... 14

*Hansen Bancorp Inc. v. United States*
   367 F.3d 1297 (Fed. Cir. 2004) .................................................................. 11

*Hercules, Inc. v. United States*
   516 U.S. 417 (1996) .............................................................................. 9

1

*Hills Material Co. v. Rice*
  982 F.2d 514 (Fed. Cir. 1992) ...........................................................................14

2

*Hughes Commc'ns Galaxy, Inc. v. United States*
  998 F.2d 953 (Fed. Cir. 1993) ...........................................................................14

3

*Indiana Michigan Power Co. v. United States*
  422 F.3d 1369 (Fed. Cir. 2005) ...................................................................5, 11

4

5

*Johnson v. Shalala*
  2 F.3d 918 (9th Cir. 1993) ............................................................................16, 17

6

*Kelly v. City & County of San Francisco*
  No. C 05-1287 SI, 2005 U.S. Dist. Lexis 31110 (N.D. Cal. Nov. 21, 2005) ...........19

7

8

*Kirk v. United States*
  451 F.2d 690 (10th Cir. 1971) ...........................................................................10

9

*Laing v. Ashcroft*
  370 F.3d 994 (9th Cir. 2004) .......................................................................5, 19

10

11

*Lavin v. Marsh*
  644 F.2d 1378 (9th Cir. 1981) ...........................................................................13

12

*Lynch v. United States*
  292 U.S. 571 (1934) ...........................................................................................11

13

14

*McCarthy v. Madigan*
  503 U.S. 140 (1992) ...........................................................14, 15, 16, 18, 19

15

*McGee v. United States*
  402 U.S. 479 (1971) ...............................................................................14, 16

16

17

*McNary v. Haitian Refugee Ctr., Inc.*
  498 U.S. 479 (1991) ...........................................................................................20

18

*Montes v. Thornburgh*
  919 F.2d 531 (9th Cir. 1990) ...................................................................5, 15, 19

19

20

*Montgomery v. Rumsfeld*
  572 F.2d 250 (9th Cir. 1978) .......................................................................14, 16

21

*Morris v. Commodity Futures Trading Commission*
  980 F.2d 1289 (9th Cir. 1992) ...........................................................................16

22

23

*Nehmer v. United States Veterans Admin.*
  118 F.R.D. 113 (N.D. Cal. 1987) ..................................................................17, 18

24

*Orlosky Inc. v. United States*
  68 Fed. Cl. 296 (2005) .......................................................................................12

25

26

*Perry v. United States*
  294 U.S. 330 (1935) ...........................................................................................11

27

28

*Precision Pine & Timber, Inc. v. United States*
    72 Fed. Cl. 460 (Fed. Cl. 2006)..........................................................................11, 12

*Ritza v. International Longshoreman's & Warehousemen's Union*
    837 F.2d 365 (9th Cir. 1988)..........................................................................21

*S. Cal. Federal Savings & Loan Association v. United States*
    422 F.3d 1319 (Fed. Cir. 2005)..........................................................................12

*Schism v. United States*
    316 F.3d 1259 (Fed. Cir. 2002)..........................................................................13

*Shafmaster Fishing Co. v. United States*
    28 Fed. Cl. 699 (1993)..........................................................................8

*Steel Co. v. Citizens for a Better Environment*
    523 U.S. 83 (1998)..........................................................................7

*Sunswick Corp. v. United States*
    75 F. Supp. 221 (Ct. Cl. 1948)..........................................................................11

*Trauma Serv. Group v. United States*
    104 F.3d 1321 (Fed. Cir. 1997)..........................................................................10, 11

*United States v. Boswick*
    94 U.S. 53 (1876)..........................................................................11

*United States v. Mitchell*
    463 U.S. 206 (1983)..........................................................................8

*United States v. Navajo Nation*
    537 U.S. 488 (2003)..........................................................................8

*United States v. Westerbrand-Garcia*
    35 F.3d 418 (9th Cir. 1994)..........................................................................13

*United States v. White Mountain Apache*
    537 U.S. 465 (2003)..........................................................................5, 6, 7, 8, 9

*United States v. Winstar Corp.*
    581 U.S. 839 (1996)..........................................................................13

*Weinberger v. Salfi*
    422 U.S. 749 (1975)..........................................................................16

*Wyatt v. Terhune*
    315 F.3d 1108 (9th Cir. 2003)..........................................................................21

*Zamani v. Carnes*
    491 F.3d 990 (9th Cir. 2007)..........................................................................9

1

# FEDERAL STATUTES

2    71 F.R. 68412 ...............................................................................................................2

3    22 C.F.R. § 51.63...............................................................................................2, 4, 7, 8

4    22 C.F.R. §§ 51.66........................................................................................1, 4, 8, 10

5    28 U.S.C. 1346(a)(2) .............................................................................................4, 5, 6

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2          This is a simple case.  Plaintiff Chattler and the class paid for the expedited processing of

3    their passport applications, and did not receive the three-day processing for which they paid.  The

4    Defendants breached their express and implied contracts with Plaintiff and the class members and

5    breached their regulatory duties to provide the service requested and paid for.  ¶¶ 2-6.[1]  In spite of

6    the obvious breaches of its obligations, the United States Department of State ("State Department"

7    or "Department") has failed to refund expedited processing fees as required by regulation and

8    refused to pay damages that Plaintiff and other class members incurred as a result of the

9    Department's breach of its contractual and regulatory obligations.

10          The governing facts and law are clear and, to a large extent, are not contested between the

11    parties.  Defendants do not dispute that they have not provided thousands of applicants with

12    expedited processing, despite the collection of the $60 fee.  Rather, Defendants argue that this

13    Court must eliminate particular remedies for lack of jurisdiction or failure to state a claim, and

14    should not exercise its jurisdiction without requiring the Plaintiff to seek an alleged administrative

15    remedy which is not mandated by statute or regulation, has never been adequately advertised or

16    explained, does not clearly incorporate the correct terms of the government's obligation, and does

17    not provide a full remedy.  On these facts, this Court should exercise its jurisdiction over Plaintiff's

18    claims for full compensatory damages.

19    **SUMMARY OF FACTUAL ALLEGATIONS AND REGULATORY BACKGROUND**

20          Pursuant to regulation, the State Department is permitted to offer expedited service for the

21    processing of passport applications.  ¶ 2; 22 C.F.R. §§ 51.66, 22.1.  At times relevant to this

22    lawsuit, expedited service was defined as three business days, "commencing when the application

23    reaches a Passport Agency, or . . . when the request for expediting processing is approved."  ¶ 3; 22

24    C.F.R. § 51.66.  State Department publications also informed applicants that they would receive

25    their passports within about two weeks when they paid for expedited service and overnight mail.

26    

---

[1]          All "¶" references are to the Class Action Complaint for Breach of Contract, Regulatory
27    Violation, and Breach of the Implied Covenant of Good Faith and Fair Dealing ("Complaint"),
filed on August 7, 2007.

28

1    ¶ 5. State Department regulations require that "[t]he expedite fee **will be refunded** if the Passport

2    Agency does not provide the requested expedited processing as defined in § 51.66." ¶ 6; 22 C.F.R.

3    § 51.63.[2]

4         Although Plaintiff Chattler paid the fee to have her passport application expedited, she did

5    not receive her passport for over seven weeks. ¶¶ 26-28. In order to finally secure her passport,

6    she had to take a full day off of work to go in person to reapply, losing a full day of pay. Chattler

7    Decl., ¶ 3.[3] In all of her searching of the State Department's website and contact with agency

8    employees concerning her passport status, she never found anything that indicated she could obtain

9    a refund from the Department. Chattler Decl., ¶ 4. Plaintiff brings this action against the United

10    States of America and the State Department as a class action on behalf of herself and all others

11    similarly situated, who paid an extra fee to secure expedited processing of their passports and

12    whose passport were not processed within the required three-day period or were not delivered

13    within the promised time. ¶ 1. Plaintiff seeks her full damages stemming from the government's

14    breach of its obligations.

15         While the problem of passport delays has existed for years, it came to the forefront in

16    January 2007, when the Western Hemisphere Travel Initiative, mandated by Congress in the

17    Intelligence Reform and Terrorism Prevention Act of 2004, went into effect to strengthen border

18    security. ¶ 8. The travel initiative requires all citizens of the United States, Canada, Mexico,

19    Bermuda or the Caribbean to present a valid passport when entering the United States by air. ¶ 8.

20    Despite three years between the passing of the bill and its implementation, and commentators'

21    concerns that the State Department would not "be able to issue several million new passports in the

22    timeframe required and without significant delay," the State Department failed to take sufficient

23    measures to process the increase in passport applications. ¶ 10; 71 F.R. 68412. As a result, mass

24    delays in passport processing plagued travelers, delayed travel, and eventually resulted in the

25    temporary suspension of the passport requirements for international travelers. ¶ 10. At certain

---

26    [2]    All internal quotations and citations omitted, and all emphasis added, unless otherwise
    indicated.

27

28    [3]    "Chattler Decl." refers to the Declaration of Julia Chattler in Support of Plaintiff's
    Opposition to Defendants' Motion to Dismiss, filed concurrently with this motion.

1   points in time, citizens were waiting a month or more, despite paying the extra fee for three-day

2   processing.  ¶ 10.  And yet, regardless of their inability to process requests for expedited

3   processing, Defendants continued to collect expedited processing fees.  ¶¶ 9-11.  The government,

4   however, has not refunded improperly collected expedited processing fees to thousands of citizens

5   who did not receive their passports within the promised timeframe, as required by regulation.  ¶ 10.

6       In June 2007, largely as a result of political pressure and public criticism by Senator

7   Charles Schumer of New York and others, the State Department wrote certain members of

8   Congress informing them that it would refund fees for expedited services for those individuals who

9   did not receive their passports within 14 days.  ¶¶ 12, 13.  The Department did not otherwise

10  publicize this action.  Again, Senator Schumer voiced the frustration of millions, stating that the

11  Department should have been "shouting this refund policy from the rooftops, not whispering it in

12  the wind."  ¶ 13.

13      This refund scheme, however, does not address the harm caused to members of the class

14  and suffers from numerous deficiencies.  The scheme was only announced in June 2007, and even

15  then, without any effort to inform the public at large.  ¶¶ 12-13.  The Department does not notify

16  individuals who experienced delays prior to that time, or who looked for information on refunds

17  prior to that time, of the process or the availability of a refund – instead, it "relies on applicants" to

18  contact them.  Barrett Decl., ¶ 46.[4]  The Department has no intention of altering that practice and

19  informing individuals who did not receive refunds that they are available.  Barrett Decl., ¶¶ 48-50.

20  Individuals who specifically contacted the Department asking for refunds have been told they

21  could not get them, or have been unable to get a response.  Humphrey Decl., ¶ 5; Robinson Decl.,

22  ¶ 4; Andrade Decl., ¶¶ 3-4.[5]  Due to these flaws and misrepresentations, hundreds of thousands of

23

24  [4]      "Barrett Decl." or "Barrett Declaration" refer to the Declaration of Ann Barrett In Support
    of Defendants' Motion to Dismiss, filed on October 9, 2007.

25

26  [5]      "Humphrey Decl." refers to the Declaration of Pamela Humphrey in Support of Plaintiff's
    Opposition to Defendant's Motion to Dismiss, filed concurrently herewith.  "Robinson Decl.,"
27  refers to the Declaration of Regina Robinson in Support of Plaintiff's Opposition to Defendant's
    Motion to Dismiss, filed concurrently herewith.  "Andrade Decl." refers to the Declaration of Sean
28  Andrade in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss, filed concurrently
    herewith.

1    citizens who are owed the money on undisputed facts have not and will not receive monies owed to

2    them under the Department's program.  ¶ 15.

3        In addition, the State Department has not agreed to refund fees for expedited processing for

4    those passports taking longer than three days to process.  ¶ 12.  Responses to inquiries about the

5    availability of refunds inform applicants that they are entitled only when the passports took longer

6    than three weeks, a time frame wholly unrelated to the Department's refund obligation.  Humphrey

7    Decl., ¶ 6.  The Defendants themselves have been wholly inconsistent on what entitles an applicant

8    to a refund, claiming in their recent Joint Case Management Statement ("Joint CMS") that they

9    offer refunds based on a violation of the three-day processing obligation, whereas in news accounts

10   the government has stated that refunds would be available only if the processing took longer than

11   two to five weeks.  *Compare* Joint CMS at 5 *with* Carey Decl., Exs. B-D; Humphrey Decl., Ex. A.[6]

12   The Department has also refused to pay any damages stemming from its breaches beyond the

13   refund of the expedited fee.

14       In this lawsuit, Plaintiff seeks to recover full damages for herself and class members.  She

15   brings claims for relief of breach of contract, damages under the money mandating regulations of

16   22 C.F.R. §§ 51.63, 51.66 and breach of the implied covenant of good faith and fair dealing.  ¶¶ 62-

17   98.

18                                  **ARGUMENT**

19       Defendants have moved to dismiss Plaintiff's claims, suggesting that the government has

20   not waived sovereign immunity for Plaintiff's claims for consequential and special damages, and,

21   in addition, that the prudential exhaustion doctrine requires Plaintiff to seek relief with the State

22   Department.

23       The Plaintiff has properly invoked the jurisdiction of this Court under 28 U.S.C.

24   § 1346(a)(2) and has stated claims for relief for breach of contract and under a money-mandating

25   regulation for all her compensatory damages, including special and consequential damages.  The

26   Plaintiff's claims fall squarely within the Tucker Act's grant of jurisdiction and waiver of

27   ------
     [6]      "Carey Decl." refers to the Declaration of Robert B. Carey In Support of Opposition to
28   Motion to Dismiss and Plaintiff's Motion to Stay Ruling on Motion to Dismiss, filed concurrently
     herewith.

1    sovereign immunity.  *United States v. White Mountain Apache*, 537 U.S. 465, 472 (2003); *Fisher v.*

2    *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).  There is no authority to suggest that there

3    must be a separate waiver of sovereign immunity for each element of damages of her claims, or

4    that her damages on either her breach of contract claims or her money-mandating regulation claims

5    are limited to a refund of the fee.  Plaintiff is entitled to all damages that she can prove flow from

6    the breach of the government's obligations.  *White Mountain Apache*, 537 U.S. at 474-76; *Indiana*

7    *Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005).

8            The prudential exhaustion doctrine likewise does not require dismissal.  All the relevant

9    factors support denying Defendants' motion to dismiss.  *See Montes v. Thornburgh*, 919 F.2d 531,

10   537 (9th Cir. 1990).  The issues presented do not require agency expertise, this suit is not likely to

11   encourage the deliberate bypass of administrative procedures, and it is clear that the Department

12   has no intention of changing its process to address its flaws or providing appropriate remedies to

13   individuals who sustained damages due to the government's breach of its duties.  Furthermore,

14   administrative exhaustion is inappropriate where the State Department's refund scheme is

15   inadequate and does not address the claims of Plaintiff and the class.  *See Laing v. Ashcroft*, 370

16   F.3d 994, 1000 (9th Cir. 2004).  Finally, Defendants' motion should not be granted until a

17   complete record is developed, assuming such factual issues are necessary to resolve the motion.

18   **I.     THE PLAINTIFF'S FULL COMPENSATORY DAMAGES, INCLUDING SPECIAL**
         **AND CONSEQUENTIAL DAMAGES, ARE RECOVERABLE**

19
20           Defendants' argument that the government has not waived its sovereign immunity as to

21   "Plaintiff's claims for consequential and special damages" is incorrect.  Defs.' Mem. at 8.[7]

22   Plaintiff has not pled a separate claim or claims for special and consequential damages; Plaintiff

23   has alleged facts establishing cognizable claims for breach of contract (in the First and Third

24   Claims for Relief); breach of the implied covenant of good faith and fair dealing (in the Fourth

25   Claim for Relief); and damages under a money-mandating statute or regulation (in the Second

26   Claim for Relief).  The Tucker Act establishes jurisdiction and waives the government's sovereign

27   immunity for those claims.  28 U.S.C. § 1346(a)(2); *White Mountain Apache*, 537 U.S. at 472;

28   _____
     [7]      "Defs.' Mem." or "Motion to Dismiss" refer to the Notice of Motion to Dismiss and
     Memorandum of Law in Support of Defendants' Motion to Dismiss, filed October 9, 2007.

1  *Fisher*, 402 F.3d at 1172.  There is no requirement that the government waive sovereign immunity

2  for particular types of damages on such claims, and the Plaintiff is entitled to prove what damages

3  flow from the government's breach of its regulatory and contractual duties.

**A.  The Plaintiff Is Entitled to All Damages She Can Prove Under the Applicable Money Mandating Regulations**

The Defendants' argument – apparently aimed at the Plaintiff's Second Claim for Relief –

that the court lacks jurisdiction to award special or consequential damages under the pertinent

regulations, or that the Plaintiff has failed to state a claim for such damages, is incorrect.  The

Plaintiff has properly established the jurisdiction of the Court and stated a valid claim for damages

under applicable money-mandating regulations, and she is entitled to whatever damages resulted

from the government's breach of its obligations.

The Little Tucker Act confers jurisdiction upon this Court for claims brought against the

United States "founded either upon the Constitution, or any Act of Congress or any regulation of

an executive department," and waives the government's sovereign immunity for those actions.  28

U.S.C. § 1346(a)(2); *Fisher*, 402 F.3d at 1172.  The Tucker Act does not create a substantive right

for damages; rather, a plaintiff must identify a separate statute or regulation that provides the right

to such damages.  *White Mountain Apache*, 537 U.S. at 472.  A regulation or statute provides a

basis for damages when it is "reasonably amenable to the reading that it mandates a right of

recovery in damages."  *Id*. at 473.

As the Defendants concede, for a claim based on a money-mandating statute or regulation,

the initial inquiry is only whether the authority relied upon is money-mandating.  *Fisher*, 402 F.3d

at 1173.

> If the court's conclusion is that the . . . regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course.  For purposes of the case before the trial court, the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action.

1  *Id.* Therefore, the question on Defendants' Motion to Dismiss is only whether Plaintiff has

2  adequately invoked the Court's jurisdiction and stated a claim by relying on a regulation that is

3  money-mandating.[8]

4      In this case, Defendants do not dispute that 22 C.F.R. § 51.63 is a money-mandating

5  regulation for the purposes of the Little Tucker Act.  The Plaintiff's reliance on this regulation

6  establishes the Court's jurisdiction and states a valid claim for relief.  Defendants instead contend

7  the Court should dismiss claims for any additional damages because no others are expressly

8  provided for in the regulations.  However, it is not required that the regulation or statute relied

9  upon specify particular damages or even state that damages are available.  Rather, the question, as

10  formulated by the Supreme Court, is whether the statute or regulation "raise[s] the fair implication

11  that the substantive obligations imposed on the United States by those statutes and regulations were

12  enforceable by damages."  *White Mountain Apache*, 537 U.S. at 473-74.

13      For example, in *White Mountain Apache*, the Court found that a statute declaring that land

14  would be held in trust for the tribe was a money-mandating statute even though it lacked any

15  specific provision for damages because it created a fiduciary duty on the part of the United States.

16  *Id.* at 474.  According to the Court, "[g]iven this duty on the part of the trustee . . . it naturally

17  follows that the Government should be liable in damages for breach of its fiduciary duties."  *Id.* at

18  475-76.  The Court also refused to rule out specific types or measures of damages in making the

19  determination that the statute was money mandating, but rather remanded for a determination of

20  what damages could be proved.  *Id.* at 476 n.4, 478-79.

21      The Court in *White Mountain Apache* rejected the argument the government makes here

22  that the remedy the plaintiff seeks must be explicitly authorized by the statute:

23          To the extent that the Government would demand an explicit
            provision for money damages to support every claim that might be
24          brought under the Tucker Act, it would substitute a plain and explicit
            statement standard for the less demanding requirement of fair

25  ─────────────────────
26  [8]    The Defendants' argument that this is akin to the procedure disapproved of in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), is incorrect.  Defs.' Mem. at 12 n.5.  The Court in *Steel Co.* addressed whether a plaintiff's ultimate failure to state a valid cause of action under the Emergency Planning and Community Right-To-Know Act could affect the subject matter jurisdiction of the court, finding that the failure of the cause of action does not undermine the court's power to hear the case.  *Steel Co.*, 523 U.S. at 89-90.

1

2

                     inference that the law was meant to provide a damages remedy for breach of a duty.

*Id*. at 477.[9]  As described in another case, "the analysis must train on specific rights-creating or

duty-imposing statutory or regulatory prescriptions.  Those prescriptions need not, however,

expressly provide for money damages; the availability of such damages may be inferred."  *United*

*States v. Navajo Nation*, 537 U.S. 488, 506 (2003).  The proper test, as articulated by the Supreme

Court, is whether the regulations can be fairly interpreted as imposing a substantive obligation

enforceable by damages.  *White Mountain Apache*, 537 U.S. at 474.

       In this case, the regulations are fairly read as mandating compensation for damages

sustained due to the government's breach of its duty.  The regulations governing expedited

passport processing at the time Plaintiff requested it established a substantive duty to complete

processing within three business days of the time the passport reached the passport agency.  22

C.F.R. § 51.66(b).  The regulation further provides that the expedited service request should be

accepted only when the applicant documents urgent departure plans, and that Agency may decline

to accept a request if "it is apparent at the time it is made that the request cannot be granted."  22

C.F.R. § 51.66(d).  These provisions recognize that individuals requesting expedited service have

urgent departures and that delay of their passports could cause losses including missed travel.

Taken together, these provisions are reasonably read as establishing a substantive duty to provide

expedited service or to alert individuals when the service cannot be performed, and this duty is

enforceable by money damages for the losses incurred when the duty is not fulfilled.  The fact that

the return of the refund fee is mandatory under 22 C.F.R. § 51.63(c) shows that the duty itself was

intended to be enforceable, and the Plaintiff is entitled to those damages she can prove flowed from

---

[9]      Rather than citing to controlling Supreme Court precedent, Defendants rely in the Motion to Dismiss on cases from the Court of Federal Claims that were decided ten years prior to *White Mountain Apache* and *Navajo Nation* (*See* Defs.' Mem. at 10, relying on *El Dorado Springs v. United States*, 28 Fed. Cl. 132 (1993), and *Shafmaster Fishing Co. v. United States*, 28 Fed. Cl. 699 (1993)); one of which does not even address the issues at hand but focuses on whether there is a second waiver of sovereign immunity in any of the source statutes – a requirement rejected by the Supreme Court.  *See White Mountain Apache*, 537 U.S. at 472 ("Because the Tucker Act supplies a waiver of immunity for claims of this nature, the separate statutes and regulations need not provide a second waiver of sovereign immunity, nor need they be construed in the manner appropriate to waivers of sovereign immunity." (quoting *United States v. Mitchell*, 463 U.S. 206, 218-19 (1983)); *El Dorado Springs*, 28 Fed. Cl. at 135-36.

1    the government's failure to perform its duties as required by the regulation. *See White Mountain*

2    *Apache*, 537 U.S. at 474.

3       Plaintiff has invoked a money-mandating regulation and has made sufficient allegations

4    that she was entitled to receive the expedited processing under the regulation, that the government

5    failed to provide it, and that she suffered damages as a result of the government's breach of its

6    duties. The Plaintiff has therefore properly established the jurisdiction of the Court and stated a

7    claim for relief.

8    **B.  The Full Range of Contract Damages are Available Against the Government for**
       **Breach of Contract**

9

10      The Defendants next argue that the Court should dismiss Plaintiff's "breach-of-contract

11   claims for special and consequential damages," apparently addressing Plaintiff's First, Third and

12   Fourth Claims for Relief. The government is incorrect. The Plaintiff in this case has properly

13   invoked the jurisdiction of this Court under the Little Tucker Act, and has alleged facts sufficient to

14   state a claim for breach of contract, which the Defendants do not challenge. The question of what

15   damages are available to the Plaintiff is a matter of federal common law, and the government has

16   not shown that any damages are unavailable as a matter of law.

17      A well pleaded complaint must only contain sufficient factual allegations to state a claim to

18   relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955,

19   1974 (2007). On a motion to dismiss, the reviewing court accepts the allegations of the complaint

20   as true and construes them in the light most favorable to the plaintiff. *Gompper v. VISX, Inc.*, 298

21   F.3d 893, 895 (9th Cir. 2002). A dismissal under Rule 12(b)(6) is proper "only where there is no

22   cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

23   theory." *Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007).

24      **1.  The Complaint Alleges Facts Sufficient to Establish the Formation and Breach**
       **of a Contract with the Government**

25      The government does not contest that the Plaintiff in this case sufficiently alleges that she

26   formed an express or implied-in-fact contract with the United States for expedited service in the

27   processing of her passport. Jurisdiction under the Tucker Act extends to contracts that are express

28   or implied-in-fact. *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996). The requirements

1    for an express and an implied-in-fact contract with the government are identical: the complainant

2    must show mutual intent to contract, including an offer, an acceptance, and consideration; and must

3    also show that the agent making the contract had actual authority to do so. *Trauma Serv. Group v.*

4    *United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).  The difference is primarily one of proof: an

5    express contract is proven by evidence showing an explicit offer and acceptance, whereas an

6    implied-in-fact contract is inferred from the acts of the parties showing an intent to contract.  *Kirk*

7    *v. United States*, 451 F.2d 690, 695 (10th Cir. 1971).

8    Here, although the Defendants limit their analysis to an implied-in-fact contract, Plaintiff

9    has alleged facts showing an express offer and acceptance.  The Passport Application, attached as

10   Ex. A to the Complaint, contains an explicit offer to provide expedited processing in exchange for

11   an additional fee, and further defines that service as processing the application within three days of

12   its arrival at the passport agency.  Complaint, Ex. A at 2.  Plaintiff has also alleged that she

13   explicitly accepted that offer and provided the necessary consideration by payment of the

14   additional fee.  ¶¶ 27, 64, 81.  Furthermore, Plaintiff has shown that the State Department had

15   actual authority to make such an offer and promise, as the pertinent regulations authorized and

16   indeed required that precise offer.  *See* 22 C.F.R. § 51.66.  Plaintiff also alleged that the

17   government did not fulfill its duty to process her passport within the promised amount of time.

18   ¶¶ 29, 66.  These allegations, if true, are sufficient to show both the formation and breach of a

19   contract for expedited processing of her passport application.[10]  The Plaintiff has therefore stated a

20   valid claim for relief and properly invoked this Court's jurisdiction under the Little Tucker Act,

21   and she is entitled to present her case and pursue all contract damages she can prove on behalf of

22   herself and the proposed class.

23            **2.    Under the Applicable Principles of Contract Law, Plaintiff Is Entitled to
                      Collect All Reasonably Foreseeable Damages Flowing from the Breach**
24

25   Although apparently conceding that the Plaintiff has sufficiently alleged the formation and

26   breach of a contract, the Defendants ask this Court to eliminate certain remedies for the breach of

     _____

27   [10]      While Plaintiff argues that her allegations prove an express contract, they also may show an
     implied-in-fact contract in the event this Court finds there is no express contract.  In addition to a
28   contract for three-day processing, Plaintiff has also alleged facts sufficient to show an express or
     implied-in-fact contract for return of her passport within about two weeks. ¶¶ 79-87.

1    contract claims at the outset of the litigation, arguing that there must be a "meeting of the minds"

2    as to the specific damages to which a party may be entitled in the event of breach in order to state a

3    claim. Defs.' Mem. at 16. Defendants are incorrect. When the United States enters into a

4    contract, it is governed by the same principles of contract law that apply to private contracts, a

5    principle long recognized by the Supreme Court. *See, e.g., Perry v. United States*, 294 U.S. 330,

6    351 (1935); *Lynch v. United States*, 292 U.S. 571, 579 (1934). The federal courts have, for over

7    one hundred years, applied the traditional rules governing damages for breach of contract to

8    contracts formed with the United States. *See, e.g., Indiana Michigan Power Co.*, 422 F.3d at 1369;

9    *Hansen Bancorp Inc. v. United States*, 367 F.3d 1297 (Fed. Cir. 2004); *Sunswick Corp. v. United*

10   *States*, 75 F. Supp. 221 (Ct. Cl. 1948); *United States v. Boswick*, 94 U.S. 53, 68-69 (1876).

11          Contrary to the government's argument in this case, there is no requirement that the parties

12   promise, implicitly or expressly, to pay for particular damages in breach in order for them to be

13   recoverable against the government. *Precision Pine & Timber, Inc. v. United States*, 72 Fed. Cl.

14   460, 476 (Fed. Cl. 2006). Nor is a specific agreement on damages an element for proving the

15   formation of a contract or establishing a claim for breach of contract. S*ee Trauma Services Group*,

16   104 F.3d at 1325.

17          In a breach-of-contract action against the government, all reasonably foreseeable damages

18   are available ***regardless of whether they were specifically agreed to or were actually foreseen by***

19   ***the breaching party***. *Precision Pine & Timber, Inc.* 72 Fed. Cl. at 476. As with an action against a

20   private party, "[t]he remedy for breach of contract is damages sufficient to place the injured party

21   in as good a position as it would have been had the breaching party fully performed." *Indiana*

22   *Michigan Power Co.*, 422 F.3d at 1373. Federal contract law recognizes various types of contract

23   damages, including expectation, reliance and restitution damages intended to remedy the breach.

24   *Hansen Bancorp, Inc.*, 367 F.2d at 1308. However they are described, all losses that were

25   reasonably foreseeable by the breaching party at the time of the contract, that were caused by the

26   breach, and that can be shown with reasonable certainty are recoverable. *Indiana Michigan Power*

27   *Co.*, 422 F.3d at 1373. A loss is foreseeable when it follows from the breach in the ordinary course

28   of events, or where there are special circumstances beyond the ordinary course of events that the

1    party in breach had reason to know.  *Precision Pine & Timber, Inc.*, 72 Fed. Cl. at 460.

2    Foreseeability of damages is a question of fact.  *S. Cal. Fed. Savings & Loan Ass'n v. United*

3    *States*, 422 F.3d 1319, 1337 (Fed. Cir. 2005).

4          In fact, where the government seeks to limit its damages when entering into contracts, it

5    does so by specific agreement or enactment.  *See, e.g., Alltel Info. Servs., Inc. v. Fed. Deposit Ins.*

6    *Corp.*, 194 F.3d 1036 (9th Cir. 1999) (discussing and enforcing the express limitations on damages

7    contained in 12 U.S.C. § 1821(e)(1), (2)).  Here, there are no such applicable limitations and the

8    Plaintiff is entitled to her chance to prove what reasonably foreseeable damages flowed from the

9    Defendants' breach of their contract.  It is a question of fact whether such damages as the costs

10   incurred in having to file another application, paying the initial passport fee if the applicant would

11   not have traveled if the passport were delayed, or losing wages while taking time to secure a

12   passport directly from the passport office, were foreseeable and were caused by the Defendants'

13   breach.  Plaintiff is entitled to prove that they are.

14         The same is true of the Plaintiff's claim for breach of the implied covenant of good faith

15   and fair dealing.  The covenant is part of every contract, and applies to the government as well as

16   to private contracting parties.  *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005).

17   Federal courts have recognized that upon a showing of the breach of the implied covenant of good

18   faith and fair dealing by the government, plaintiffs can recover all reasonably foreseeable damages

19   flowing from the government's breach.  *See, e.g., Agredano v. United States*, 70 Fed. Cl. 564, 575-

20   77 (2006) (describing the various reasonably foreseeable damages plaintiffs may pursue for breach

21   of the implied covenant of good faith and fair dealing); *Orlosky Inc. v. United States*, 68 Fed. Cl.

22   296 (2005).

23         Nor is there any support for the government's contention that the regulation mandating a

24   refund serves to limit the liability of the government in damages for breach of contract.  There is

25   nothing in the regulation that purports to limit the liability of the government for contract damages.

26   Nor has the Plaintiff ever conceded that her regulatory damages are limited only to a refund, as the

27   Defendants assert.  *See* Defs.' Mem. at 15.  The cited paragraph of the complaint accurately quotes

28

1    the regulation that mandates a refund, and contains no concessions as to any other damages that

2    may be available.

3        None of the Defendants' cases hold that in every contract, the government must agree to

4    particular damages or have statutory authorization for specific damages.  The cases stand for the

5    simple proposition that the act promised in the contract itself must not exceed or violate applicable

6    statutes or regulation.  For example, the *Schism* case addressed whether military recruiters could

7    make promises that the government would provide free medical benefits for life to the plaintiffs

8    and their dependents, even though such a promise was contrary to statute.  *Schism v. United States*,

9    316 F.3d 1259, 1262, 1272-73 (Fed. Cir. 2002).  Because the promise itself contradicted governing

10    statute, and because military enlistment involves a change in legal status that is not subject to

11    contractual principles generally, the court refused to find a valid contract.  *Id*. at 1304-05.

12    Defendants' other cases are similarly distinguishable:  *Lavin v. Marsh,* 644 F.2d 1378, 1382-84

13    (9th Cir. 1981), held that the principle of equitable estoppel could not create a contract for military

14    pay that was directly contrary to governing statute; and in *Federal Crop Ins. Corp. v. Merrill*, 332

15    U.S. 380, 384-85 (1947) the Court held that could be no contract by estoppel for insurance that

16    exceeded that authorized by statute.

17       Here, in contrast, the promise contained in the government's offer – to process the

18    expedited passport within three days of its arrival at the Agency – is the precise promise authorized

19    in the statute and regulation.  The Plaintiff has alleged a contract that is specifically authorized by

20    statute and regulation and that incorporates terms of those regulations.  If the Plaintiff's allegations

21    are proven, this contract is binding and the issue of what damages are recoverable is governed by

22    traditional principles of contract law.

23        To the extent the government also argues that the contracts in this case are invalid due to

24    the existence of the regulations, those arguments also fail.  Case law shows that the United States

25    routinely enters into contracts that incorporate regulatory terms and requirements or that overlap

26    with those requirements and that those contracts are enforced and treated like any other contracts in

27    actions for breach.  *See*, *e.g.*, *United States v. Winstar Corp.*, 581 U.S. 839, 862-866 (1996)

28    (discussing ability to incorporate particular regulatory terms into contract); *United States v.*

1    *Westerbrand-Garcia*, 35 F.3d 418, 420-21 (9th Cir. 1994) ("The fact that the parties do not bargain

2    for the terms of the agreement, but must take the terms as set forth in [the statute] does not mean

3    that the agreement is not a contract."); *Hughes Commc'ns Galaxy, Inc. v. United States*, 998 F.2d

4    953, 957-59 (Fed. Cir. 1993); *Hills Material Co. v. Rice*, 982 F.2d 514 (Fed. Cir. 1992).  In fact,

5    even in the area of military enlistment, which the courts have generally found to be controlled by

6    statute and legal status, binding contracts can be made.  *See Grulke v. United States*, 228 Ct. Cl.

7    720 (1981) (recognizing enlistment agreement as a contract).  The Plaintiff in this case has alleged

8    the existence of a contract or contracts that are authorized by regulation and that include the

9    pertinent regulatory terms, and that contract is valid and binding.

10        Defendants' request that this Court dismiss "Plaintiff's breach-of-contract claims for special

11    and consequential damages" must be denied.  Plaintiff has not pled a separate claim for special and

12    consequential damages; Plaintiff has alleged facts supporting a cognizable claim for breach of

13    contract, which Defendants apparently concede.  The question of what damages she may be

14    entitled to if she proves her claim is a merits issue that does not affect whether she has adequately

15    stated a claim for breach of contract or properly invoked the jurisdiction of the court.

16        **II.    THE PRUDENTIAL EXHAUSTION DOCTRINE DOES NOT REQUIRE**
            **DISMISSAL OF PLAINTIFF'S CLAIMS**

17
    **A.    A Balancing of Factors Does Not Support Applying the Prudential Exhaustion**
18        **Doctrine**

19        Where there is no statute requiring exhaustion, as in this case, "sound judicial discretion

20    governs" the application of such a requirement.  *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).

21    Courts should not lightly divest themselves of jurisdiction, however, as "federal courts are vested

22    with a virtually unflagging obligation to exercise the jurisdiction given them."  *Id.*  Federal courts

23    have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which

24    is not given."  *Id.*

25        The mainstay of the judicially-developed doctrine of "prudential exhaustion" is a case-by-

26    case "balancing analysis which considers both the interests of the agency . . . and the interests of

27    private parties in finding adequate redress for their grievances."  *Montgomery v. Rumsfeld*, 572

28    F.2d 250, 253 (9th Cir. 1978).  *See also McGee v. United States*, 402 U.S. 479, 485 (1971)

(instructing courts to engage in a "discrete analysis . . . to see whether there is a governmental interest compelling enough to justify the forfeiting of judicial review"). Courts "may" require exhaustion under the prudential exhaustion doctrine if:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Montes,* 919 F.2d at 537. Defendants acknowledge these factors, and assert that "[c]onsideration of these factors here compels dismissal of the sole claim over which this Court may exercise jurisdiction, Plaintiff's claim for a refund of the expedite fee." Defs.' Mem. at 16-17.[11] Curiously, however, Defendants do not actually discuss the application of any of those three factors to this case. Defs.' Mem. at 16-21. In fact, contrary to Defendants' bald assertion, consideration of those factors does not support, much less "compel," this Court's exercise of its discretion to decline jurisdiction under the prudential exhaustion doctrine.

### 1. Agency Expertise Is Not Necessary to Resolve Legal Issues or Generate a Proper Record for Subsequent Judicial Review

The first factor of the prudential exhaustion doctrine looks to whether agency expertise makes agency consideration necessary to generate a proper factual record and reach a proper decision. *Montes*, 919 F.2d at 537. This is to ensure that agencies, not courts, have primary responsibility for administering programs that Congress charged them to administer – particularly "when the agency proceedings in question allow the agency to apply its special expertise." *See McCarthy*, 503 U.S. at 144.

No agency expertise is necessary in the present case. The Court is being asked to determine (a) whether the government breached its contracts or regulatory duties for expedited processing; and (b) if so, what damages (including refunds) are to be awarded for such breaches. These are legal matters, ideally suited to resolution by this Court. *See, e.g., Montes*, 919 F.2d at 537 (legal

---

[11]    Since the Complaint asserts four claims for relief, all of which seek damages that include (among other things) the refund of the expedited-processing fee, Plaintiff assumes that Defendants are contending that this Court should decline jurisdiction over any and all claims to the extent that such claims are seeking a refund.

1    issues not within the particular expertise of the Attorney General); *Morris v. Commodity Futures*

2    *Trading Comm'n*, 980 F.2d 1289, 1293 (9th Cir. 1992) (deference to agency expertise not

3    warranted where courts have special competence, such as in the common law).  They are not

4    complex or technical issues requiring the development of a factual record for subsequent judicial

5    review.  *Cf. McCarthy*, 503 U.S. at 145; *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

6         Moreover, where an agency "applies a systemwide policy that is inconsistent in critically

7    important ways with established regulations, nothing is gained from permitting the compilation of a

8    detailed factual record, or from agency expertise."  *Johnson v. Shalala*, 2 F.3d 918, 922 (9th Cir.

9    1993).  Here, the complaint is alleging, among other things, that the Department's systemwide

10   policies and practices are, and have been in the past, inconsistent with its own regulations.  *See,*

11   *e.g.,* ¶¶ 71-76.  Whether the Department's policies and practices breach its own regulations does

12   not depend on the particular facts of any one case, so there is no benefit from "permitting the

13   compilation of a detailed factual record."  *See Bowen v. City of New York*, 476 U.S. 467, 485

14   (1986).  Requiring administrative exhaustion of remedies here would bring no special expertise

15   into this dispute, nor would it facilitate this Court's subsequent consideration of the claims.

16   Agency expertise and fact-finding do not support a requirement for administrative exhaustion here.

17        **2.    Permitting the Case to Proceed in this Court Will Not Encourage Deliberate
              Bypass of Administrative Procedures**

18        Courts are also instructed to consider whether hearing the Plaintiff's case will encourage

19   future litigants to bypass the agency's own procedures.  *See Montgomery*, 572 F.2d at 253.  The

20   Supreme Court has warned that the fear of "frequent and deliberate flouting" should not be

21   overblown, "since in the normal case a registrant would be 'foolhardy' indeed to withhold a valid

22   claim from administrative scrutiny."  *McGee*, 402 U.S. at 485.

23        Because Plaintiff Chattler has challenged the actions of the State Department on behalf of a

24   class, and does not simply request relief from the Court for her individual claims, this factor carries

25   little weight.  *See El Rescate Legal Serv., Inc. v. Executive Office of Immigration Review*, 959 F.2d

26   742, 747 (9th Cir. 1992) (where plaintiff alleged that an agency "pattern and practice" violated the

27   rights of a "class of applicants," "relaxing the exhaustion requirement would not significantly

28

1  encourage bypassing the administrative process").  *See also Bowen*, 476 U.S. at 473-74, 477, 484

2  (declining to require administrative exhaustion where plaintiffs alleged that the Secretary of Health

3  and Human Services had adopted an unlawful policy that was never published in the federal

4  register but rather was implemented through various internal memoranda; distinguishing case from

5  one "in which a claimant sues in district court, alleging mere deviation from the applicable

6  regulations in his particular administrative proceeding"); *Johnson*, 2 F.3d at 920-22 (declining to

7  require administrative exhaustion where plaintiffs challenged, as contrary to statute, the Social

8  Security Administration's policy of treating in-kind loans and cash loans differently in determining

9  income; plaintiff's challenge to the policy rose and fell on its own, "separate from the merits of [the

10  plaintiff's] claim for benefits," so administrative exhaustion was inappropriate); *Nehmer v. United*

11  *States Veterans Admin.*, 118 F.R.D. 113, 124 (N.D. Cal. 1987) (no exhaustion required where a

12  "challenge to the agency action is collateral to, or independent of, the individual class member's

13  entitlement to benefits").

14        Here, Plaintiff challenges a systemic policy – Defendants' collection of fees for the

15  expediting of passport applications, failure to process passports within required time periods,

16  failure to apply the appropriate refund standard, and failure to refund money.  ¶¶ 1-18.  This

17  challenge is collateral to any redress available to any one person, including Plaintiff Chattler.

18  Accordingly, because Plaintiff is challenging "procedural irregularities," the doctrine of

19  administrative exhaustion does not apply.

20        Moreover, there is obviously very little risk that this case will cause numerous other

21  individuals to file their own lawsuits in federal court before they seek refunds or other redress

22  through administrative channels.  Indeed, as Defendants have acknowledged in the Joint Case

23  Management Statement, at Section X, filed on November 28, 2007, there are no other known

24  lawsuits filed on this issue, despite the fact that this case was announced in the Andrews Class

25  Action Reporter.  *See* Carey Decl., Ex. A.  Furthermore, if successful, this class action will obviate

26  the need for separate judicial or administrative actions to resolve individual claims of class

27  members.

28

**3.     Administrative Exhaustion Is Unlikely to Cause the Department to Correct Its Own Mistakes or Preclude the Need for Subsequent Judicial Review**

The exhaustion doctrine "also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *See McCarthy*, 503 U.S. at 145. Where resort to the agency would likely be futile, however, "the cause of overall efficiency will not be served by postponing judicial review, and the exhaustion requirement need not be applied." *Nehmer*, F.R.D. at 122. Futility exists where the agency's "established position [would] render administrative review meaningless." *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 500 (9th Cir. 1980). Even if the agency had the authority to change the challenged procedures, "exhaustion is not necessary when it is unrealistic to expect that the agency would consider substantial changes in the current administrative procedures at the behest of a single applicant." *El Rescate*, 959 F.2d at 747.

In the case at hand, it is – to say the least – "unrealistic to expect that the agency would consider substantial changes in the current administrative procedures at the behest of a single applicant." *Id*. Indeed, in its motion to dismiss, the Department itself has stated, in bold print, that "**The Department's Existing Refund Process Is Preferable to Any Alternative System This Court Might Establish.**" Defs.' Mem. at 19. Furthermore, the declaration submitted with the motion makes it very clear that the Department has no intention of changing its system. *See, e.g.,* Barrett Decl., ¶¶ 46-54.

If the Department is already stating, in bold print, that this Court cannot possibly establish a better refund process than the one that currently exists, then it is patently obvious that the Department is not going to commit to substantial changes in its procedures at the behest of Plaintiff Chattler or any other individual passport applicant who seeks redress on her own, without judicial assistance, through administrative channels.

Even if the Department were to correct its procedures from this point forward, that would not preclude the need for judicial review. The Department has expressed no intention to provide refunds to class members who, in past months and years, were not given expedited service in

OPP'N TO MOT. TO DISMISS - NO. C 07-04040 SI          - 18 -

accordance with the law and were not thereafter given refunds.  Nor has the Department expressed

any intent to provide notice of the availability of such refunds to those individuals.  Moreover, the

Department has been very clear in its position that, apart from a refund of the expedited processing

fee, no applicant will receive compensation for any damages, such as costs incurred for express

mail charges.  Indeed, in its motion to dismiss, the Department is apparently taking the position

that such damages are unavailable as a matter of law, and that this Court is actually prohibited from

awarding them.  Defs.' Mem. at 8-16.

    To summarize: It is clear that the Department is asking this Court to decline jurisdiction in

order to delay and ultimately avoid remedial action, not to effectuate it.  There is no agency

expertise needed to resolve the issues presented, no legitimate concern that this suit will encourage

the deliberate bypass of administrative procedures, and – most importantly – no likelihood that the

Department will, on its own, correct its own procedures or provide appropriate remedies to those

class members whose contractual and regulatory rights have been violated.  There is no good

reason for this Court to decline jurisdiction.

### B. This Court Should Not Require Administrative Exhaustion Because the Existing Administrative Remedy Is Inadequate

    In addition to the factors outlined in *Montes*, 919 F.2d at 537, courts have routinely rejected

administrative remedies that are inadequate or not efficacious.  *See Laing*, 370 F.3d at 1000.  *See

also Kelly v. City & County of San Francisco*, No. C 05-1287 SI, 2005 U.S. Dist. Lexis 31110

(N.D. Cal. Nov. 21, 2005) (finding that where there was no adequate administrative remedy, the

requirement to exhaust administrative remedies did not apply).  An administrative remedy "may be

inadequate because of some doubt as to whether the agency was empowered to grant effective

relief."  *See McCarthy*, 503 U.S. at 147.  This includes where the "challenge is to the adequacy of

the agency procedure itself, such that the question of the adequacy of the administrative remedy is

for all practical purposes identical with the merits of the plaintiff's lawsuit."  *Id.*  Here, that

question is a legal question far more suited to resolution by a federal court than by the agency,

which has no expertise in the area and no desire to change it.  Beyond that, access to the district

court would provide greater redress and broader opportunity to develop the claims of this suit.  The

1    Supreme Court has repeatedly upheld an aggrieved party's prompt access to the district court in

2    such circumstances.  *See, e.g., Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988); *McNary v.*

3    *Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496-97 (1991); *Bowen v. Michigan Acad. of Family*

4    *Physicians*, 476 U.S. 667, 670 (1986).

5           Plaintiff has alleged that for years the government has refused to automatically refund

6    expedite fees when the three-day standard is not met (a fact bolstered by the government's website,

7    which implies that only those whose passport took three or more **weeks** are entitled to a refund) and

8    that it fails to notify applicants it concedes are owed refunds of the right to a refund.  Given these

9    allegations, the government finds its remedy "preferable" because it ignores the rights of the

10   hundreds of thousands it agrees are owed refunds to have the action resolved expeditiously and

11   efficiently.  An analysis of adequacy must consider such interests.  *AT&T Commc'ns of the*

12   *Southwest, Inc. v. Austin*, 975 F. Supp. 928 (W.D. Tex. 1997).  In particular, the government's

13   proposed remedy is that citizens of the United States entitled to their money back will not get it

14   unless they ascertain that the processing was insufficient – which requires knowledge outside of

15   their control and wholly within the government's – and then assume the burden of providing the

16   government with information unrelated to the refund obligation.  A class action lawsuit, on the

17   other hand, would easily assess who is entitled to a refund as a matter of law and promptly refund

18   to all who did not get the service they paid for.  The government's remedy is really no remedy for

19   virtually every citizen who is concededly owed a refund – it is a transparent attempt to avoid

20   paying monies concededly not earned by ignoring the obligation.

21          The government's program guarantees people will not receive a refund (¶¶ 38-40), it does

22   not provide adequate notice of entitlement to refunds or the availability of refunds (¶¶ 40-43), it

23   improperly places the burden on the applicants (¶ 44).  It simply is not responsible, adequate, or

24   prudent.

25   **III.     PLAINTIFF SHOULD BE PROVIDED THE OPPORTUNITY TO PRESENT A
              COMPLETE RECORD**

26

27          If this Court finds the factual issues relating to prudential exhaustion are necessary to

28   resolve Defendants' motion, then Plaintiff should be entitled to discovery of the facts relating to the

1  government's stated refund process. *Ritza v. Int'l Longshoreman's & Warehousemen's Union,* 837

2  F.2d 365, 368 (9th Cir. 1988); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).[12]  As

3  explained in *Wyatt*, in deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the

4  court must ensure that "[the plaintiff] has fair notice of his opportunity to develop a record."

5  *Wyatt*, 315 F.3d at 1120 n.14.  Indeed, the court there expressed "concern with the magistrate

6  judge's refusal to grant [plaintiff's] informal request, contained in his opposition to defendants'

7  motion for summary judgment, for a stay pending discovery," after the federal judge assigned the

8  case had suggested that would be appropriate if it were shown that the facts necessary to oppose a

9  motion similar to the instant motion were not available.  *Id*. at 1115 n.7.

10      In this case, all material facts for the refund process are in the ***exclusive possession*** of the

11  Defendants.  Yet, based just on the limited facts available in the public record, there are obvious

12  discrepancies, calling into question the scope, adequacy, extent, consistency, and reliability of the

13  government's refund process.  News accounts announced in June 2007, as "breaking news," an

14  agreement by the government to refund passports not received within fourteen days, yet

15  Defendants refer to it as long-standing.  *Compare* Carey Decl., Ex. B *with* Barrett Decl., ¶ 46.

16  Passport applicants have been refused refunds or promised but not been provided a refund.  *See*

17  Humphrey Decl., ¶ 5; Robinson Decl., ¶ 4; Andrade Decl., ¶¶ 3-4.  One of the applicants, a clerk of

18  the court in Nevada was told on several occasions that the Department did not give refunds, and

19  then on another occasion that she could only get one if she faxed her request in within forty-five

20  minutes.  Humphrey Decl., ¶ 5.  These applicants indicate that the government's refund program is

21  not working as described in the Barrett Declaration.

22      In addition, many of the critical assertions in the Barrett Declaration regarding how the

23  process works are not independently verifiable without discovery.  For example, the statement that

24  "[o]ver the years that this procedure has been in place, it has proven to be an efficient method of

25  ensuring that applicants who do not receive expedited processing receive a prompt refund" (Barrett

26  Decl., ¶ 46) is a conclusion that is not supported by any facts as to what proportion of applicants

27  _____

28  [12]    Plaintiff has filed, contemporaneously with this opposition, a conditional motion to stay any ruling on Defendants' Motion to Dismiss until a complete record is developed.

who have not received expedited passport processing over the years have actually received refunds and in what amount of time. A cursory review of the public record reveals that Ms. Barrett has been quoted in news accounts as "promis[ing] that **any person** whose application was received by the State Department within the regular processing time will not be required to pay an expedited fee," and "commit[ing] to refunds for **any person** who paid such fee for a passport submitted five weeks. . . ." *See* Carey Decl., Ex. C. Yet the Barrett Declaration establishes that thousands of citizens who received regular processing time will in fact pay such fees. The commitment to refund to "any person" in reality means any person who unearths the Department's breach, is aware of the refund obligation, and discovers and complies with the refund process. The government's recent statements in the Joint Case Management Statement, where they claim to offer refunds based on a violation of the three-day processing obligation, also reveal an inconsistency with news accounts showing that the goverment exclusively represents to the public that refunds would be available only if the processing took longer than two to five weeks. *Compare* CMS at 5 *with* Carey Decl., Exs. B-D; Humphrey Decl., Ex. A. Plaintiff's counsel could not find one public statement where the government explained its obligation to process within three days or refund if not done.

Because the relevant information is controlled by Defendants and the adequacy of the refund program goes to the heart of the prudential exhaustion analysis, a more complete record is a must. Consequently, a ruling on Defendants' motion to dismiss should be deferred until after a complete record is developed, unless this Court finds that, based on the parties' factual allegations and legal arguments, the alleged remedy is inadequate, which would obviate the need for such discovery.

1

**CONCLUSION**

2        For all the reasons stated above, Plaintiff respectfully requests that Defendants' Motion to

3   Dismiss be denied in its entirety, or, in the alternative, that any ruling on the motion be deferred

4   until appropriate discovery can be completed, as requested in Plaintiff's Motion to Stay Ruling on

5   Motion to Dismiss, filed concurrently with this opposition.

6   DATED:  November 30, 2007                    HAGENS BERMAN SOBOL SHAPIRO LLP

7

8                                                      _____/s/ Robert B. Carey_____
                                                       ROBERT B. CAREY

9
                                                       2425 East Camelback Road, Suite 650
10                                                     Phoenix, AZ  85016
                                                       Telephone: (602) 840-5900
11                                                     Facsimile: (602) 840-3012
                                                       rob.carey@att.net
12
                                                       Reed R. Kathrein (139304)
13                                                     Shana E. Scarlett (217895)
                                                       HAGENS BERMAN SOBOL SHAPIRO LLP
14                                                     715 Hearst Avenue, Suite 202
                                                       Berkeley, CA  94710
15                                                     Telephone: (510) 725-3000
                                                       Facsimile: (510) 725-3001
16                                                     reed@hbsslaw.com
                                                       shanas@hbsslaw.com
17
                                                       Steve Berman (*Pro Hac Vice*)
18                                                     HAGENS BERMAN SOBOL SHAPIRO LLP
                                                       1301 Fifth Avenue, Suite 2900
19                                                     Seattle, WA  98101
                                                       Telephone: (206) 623-7292
20                                                     Facsimile: (206) 623-0594
                                                       steve@hbsslaw.com
21
                                                       Megan E. Waples (*Pro Hac Vice*)
22                                                     THE CAREY LAW FIRM
                                                       2301 East Pikes Peak Avenue
23                                                     Colorado Springs, CO  80909
                                                       Telephone:  (719) 635-0377
24                                                     Facsimile:  (719) 635-2920
                                                       mwaples@careylaw.com
25
                                                       Attorneys for Plaintiff
26

27

28

1

        I, Shana E. Scarlett, am the ECF User whose ID and password are being used to file this

2

OPPOSITION TO MOTION TO DISMISS.  In compliance with General Order 45, X.B., I hereby
attest that Robert B. Carey has concurred in this filing.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on November 30, 2007, I electronically filed the foregoing with the

3    Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-

4    mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby

5    certify that I have mailed the foregoing document or paper via the United States Postal Service to

6    the non-CM/ECF participants indicated on the attached Manual Notice List.

7

8                                                    /s/   Shana E. Scarlett
                                                  SHANA E. SCARLETT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:07-cv-04040-SI

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Steve W. Berman**
  steve@hbsslaw.com,robert@hbsslaw.com,heatherw@hbsslaw.com

- **Robert B. Carey**
  rob.carey@att.net

- **Jacqueline E. Coleman Snead**
  Jacqueline.Snead@usdoj.gov

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com

- **Megan Waples**
  mwaples@careylaw.com,agostnell@careylaw.com

## Manual Notice List

The following is the list of attorneys who are **not**
on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)