JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
Civil Division

SCOTT N. SCHOOLS
United States Attorney
Northern District of California

VINCENT M. GARVEY
Deputy Branch Director

JACQUELINE COLEMAN SNEAD
Trial Attorney
Federal Programs Branch, Civil Division
U.S. Department of Justice
20 Massachusetts Avenue, N.W. Rm 7214
Washington, DC 20530
Tel: (202) 514-3418

Attorneys for the Defendants.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **JULIA CHATTLER,** | Case No. 07-4040 |
| **PLAINTIFF** | |
| **v.** | Reply Memorandum of Law in Support of Defendants' Motion to Dismiss<br>Hearing Date: December 21, 2007 |
| **UNITED STATES OF AMERICA, DEPARTMENT OF STATE,** | |
| **DEFENDANTS.** | |

*Chattler v. United States of America,*                          Case No. 07-4040
Defendants' Reply in Support of Motion to Dismiss

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION........................................................................................................... 1

ARGUMENT. ................................................................................................................ 1

I.    PLAINTIFF CANNOT CIRCUMVENT THE REGULATORY
      LIMIT ON THE AVAILABLE RECOVERY FOR ANY FAILURE BY THE
      DEPARTMENT TO PROVIDE EXPEDITED PASSPORT
      PROCESSING. ...................................................................................................... 1

      A.    Plaintiff Has Not Invoked a Regulation That Authorizes
            Claims Against the United States for Special, Consequential,
            or Compensatory Damages. ...................................................................... 2

      B.    Plaintiff Cannot Use Contract Theory to Circumvent the Regulatory Limitation
            on Recovery for Any Failure by the Department to Provide
            Expedited Service. .................................................................................... 6

II.   PLAINTIFF SHOULD BE REQUIRED TO EXHAUST HER
      ADMINISTRATIVE REMEDIES BEFORE RESORT TO COURT. ............................... 9

      A.    This Court Should Not Excuse Plaintiff's Failure to Present
            Her Refund Claim to the Department Because She Purports
            to Bring This Action on Behalf of a Class. ............................................. 10

      B.    Plaintiff's Claims of the Futility of Administrative Exhaustion
            Are Unfounded.......................................................................................... 11

      C.    Plaintiff's Claims that the Department's Refund Process Is
            Inadequate Are Unsubstantiated. ............................................................. 12

      D.    The Department's Requirement of a Written Request for
            a Refund Does not Violate 22 C.F.R. § 51.63.. ...................................... 13

CONCLUSION. ............................................................................................................. 15

*Chattler v. United States of America,*                                   Case No. 07-4040
Defendants' Reply in Support of Motion to Dismiss

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                                          **PAGE(S)**

3    *Ancman v. United States*, 77 Fed. Cl. 368 (2007). .......................................................................... 3

4    *Anderson v. United States*, 344 F.3d 1343 (Fed. Cir. 2003). ........................................................ 6

5    *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 102 S. Ct. 2118,
6    72 L.Ed 2d 520 (1982). ...................................................................................................... passim

7    *Baker v. United States*, 50 Fed. Cl. 483 (2001). ......................................................................... 7, 9

8    *Beverage Distribs., Inc. v. Olympia Brewing Co.*, 440 F.2d 21 (9th Cir. 1971). .......................... 7

9    *Carr v. Pacific Maritime Ass'n*, 904 F.2d 1313 (9th Cir. 1990). ................................................ 12

10   *Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust*,
      50 F.3d 1478 (9th Cir. 1995). ...................................................................................................... 12

11   *Eastport Steamship Corp. v. United States*, 178 Ct. Cl. 599 (1967). ........................................... 5

12   *El Dorado Springs v. United States*, 28 Fed. Cl. 132 (1993). ............................................... 3, 4, 5

13   *Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005). ............................................................ 3

14   *Griffin v. United States*, 215 Ct. Cl. 710 (1978). ........................................................................ 8

15   *H.F. Allen Orchards v. United States*, 749 F.2d 1571 (Fed. Cir. 1984). ..................................... 7

16   *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298 (9th Cir. 1992). ........................................... 12

17   *Huang v. Ashcroft*, 390 F.3d 1118 (9th Cir. 2004). ................................................................... 11

18   *Johnson v. Shalala*, 2 F.3d 918 (9th Cir. 1993). ................................................................... 10, 11

19   *Marathon Oil Co. v. United States*, 807 F.2d 759 (9th Cir. 1986). ........................................... 10

20   *Minehan v. United States*, 75 Fed. Cl. 249 (2007). ..................................................................... 7

21   *Montes v. Thornburgh*, 919 F.2d 531 (9th Cir. 1990). ............................................................... 10

22   *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007). ...................................................................... 11

23   *Schism v. United States*, 972 F. Supp. 1398 (N.D. Fla. 1997). .................................................... 7

24   *Sun v. Ashcroft*, 370 F.3d 932 (9th Cir. 2004). ......................................................................... 11

25   *Testan v. United States*, 424 U.S. 392, 96 S. Ct. 948, 47 L.Ed 2d 114 (1976). ................. 3, 4, 5, 7

26   *United States v. California Care Corp.,* 709 F.2d 1241 (9th Cir. 1983). ............................... 10, 11

27   *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 123 S. Ct. 1126,
      155 L.Ed 2d 40 (2003). ................................................................................................................ 4, 5

28

**STATUTES**

10 U.S.C. § 1124............................................................................................... 8

**RULES AND REGULATIONS**

7 C.F.R. § 91.43(c).......................................................................................... 13

10 C.F.R. § 205.283(a)..................................................................................... 14

14 C.F.R. § 389.27(b). ..................................................................................... 14

19 C.F.R. § 24.23(b)(4)(iii)(A). ....................................................................... 13

22 C.F.R. § 51.63............................................................................................ passim

22 C.F.R. § 51.66............................................................................................ passim

37 C.F.R. § 1.296. ........................................................................................... 13

38 C.F.R. § 21.5064(b)(3)(ii)........................................................................... 14

43 C.F.R. § 1823.12(b). ................................................................................... 13

43 C.F.R. § 2933.24. ....................................................................................... 14

72 Fed. Reg. 45888 (Aug. 16, 2007)................................................................ 2

*Chattler v. United States of America,*                          Case No. 07-4040
Defendants' Reply in Support of Motion to Dismiss
                                          iii

1

**INTRODUCTION**

2          In less than the time it has taken the parties to brief Defendants' Motion to Dismiss, Plaintiff

3    Julia Chattler could have applied for *and received* a refund of the fee she allegedly paid for expedited

4    processing of her passport application through the Department of State's established refund process.

5    Instead, she improperly invokes the jurisdiction of this Court seeking not only a refund of that fee

6    without resort to that process but compensatory, consequential, and special damages.  Federal

7    regulation, however, limits any recovery to which Plaintiff may be entitled for any failure by the

8    Department to provide expedited service to a refund of the $60.00 expedite fee.  Plaintiff attempts to

9    circumvent that express limitation by contending that the Department breached an implied contract

10   to provide such service and that she therefore is entitled to all foreseeable contract damages under

11   the Little Tucker Act.  Such circumvention is precluded as a matter of law by the doctrine of

12   sovereign immunity.  Thus, as Defendants demonstrated in their Motion to Dismiss, the only claim

13   over which this Court may exercise jurisdiction is Plaintiff's claim for a refund of the expedite fee.

14   Since the Department has an established process for issuing such refunds, there is no need to litigate

15   Plaintiff's refund claim before this Court.  Plaintiff should be required to present that claim first to

16   the Department.  Her unsubstantiated claims of that process' inadequacy and futility are insufficient

17   bases for excusing her continued refusal to invoke that process and potentially obviate any need to

18   litigate her refund claim.  Accordingly, the Court should dismiss this action in its entirety for lack of

19   subject-matter jurisdiction and failure to exhaust.

20

**ARGUMENT**

21   **I.   PLAINTIFF CANNOT CIRCUMVENT THE REGULATORY LIMIT ON THE
          AVAILABLE RECOVERY FOR ANY FAILURE BY THE DEPARTMENT TO**
22        **PROVIDE EXPEDITED PASSPORT PROCESSING.**

23          Notwithstanding the clear regulatory language governing expedited passport processing,

24   Plaintiff contends that she is entitled to more than a refund of the $60.00 expedite fee if the

25   Department failed to provide that service.  *See* Plaintiff's Opposition to Motion to Dismiss ("Pl.

26   Opp.") at 5-14 (alleging that Plaintiff's "full compensatory damages, including special and

27   *Chattler v. United States of America,*                                         Case No. 07-4040
     Defendants' Reply in Support of Motion to Dismiss
28

1  consequential damages, are recoverable"). The regulations in effect when Plaintiff submitted her

2  passport application belie that contention. *See* 22 C.F.R. §§ 51.63, 51.66. Section 51.63 provides

3  that the "passport expedite fee will be refunded if the Passport Agency does not provide the

4  requested expedited processing as defined in § 51.66." 22 C.F.R. § 51.63. At the time Plaintiff

5  submitted her application, Section 51.66 in turn provided that

6          [e]xpedited passport processing shall mean completing processing within 3- business days
         commencing when the application reaches a Passport Agency or, if the application is already
7        with a Passport Agency, commencing when the request for expedited processing is approved.
         The processing will be considered completed when the passport is ready to be picked up by
8        the applicant or is mailed to the applicant.

9  22 C.F.R. § 51.66(b). [1/] Together these provisions establish both what constitutes expedited

10 processing and the available recovery in the event the Department fails to provide that service.

11 Plaintiff attempts to circumvent both these limitations here by seeking to redefine what constitutes

12 expedited processing and expand the available recovery to include special, compensatory, and

13 consequential damages. Her efforts are unavailing. This Court lacks jurisdiction over her claims to

14 anything more than a refund of the $60.00 expedite fee for the Department's alleged failure to

15 process her application within three business days of its receipt at a passport agency. None of the

16 authorities on which Plaintiff relies in her Opposition is to the contrary. Thus, with the exception of

17 her claim for a refund of the expedite fee, Plaintiff's claims are jurisdictionally deficient.

18          **A.      Plaintiff Has Not Invoked a Regulation That Authorizes Claims Against the
                  United States for Special, Consequential, or Compensatory Damages.**

19
20          Plaintiff contends that by invoking a money-mandating regulation, specifically 22 C.F.R. §

21 51.63, she is entitled to "all contract damages she can prove" under the Tucker Act. *See* Pl. Opp. at

22 9-10. The Supreme Court, however, has rejected the argument that the Tucker Act "waives

23 sovereign immunity with respect to any claim invoking a constitutional provision or a federal statute

24          [1/]   In August 2007, the Department changed the regulation defining expedited passport
25 processing. *See* 72 Fed. Reg. 45888 (Aug. 16, 2007). The new rule "change[d] the definition of
   'expedited passport processing' from the 3-business day period to a number of business days as may be
26 published from time to time on the Department's Web site, http://www.travel.state.gov." *Id.* at 45888.
   That change was intended "to ensure that the Department c[ould] continue to offer this service consistent
27 with its regulations, despite increases in demand for it." *Id.*

1    or regulation, and makes available any and all generally accepted and important forms of redress,

2    including money damages." *Testan v. United States*, 424 U.S. 392, 400, 96 S. Ct. 948, 954, 47 L.Ed

3    2d 114, 122 (1976). Rather, the rule in *Testan* requires that where "the plaintiff is not suing for

4    money improperly exacted or retained," the basis of the claim for damages "whether it be the

5    Constitution, a statute, or a regulation . . . in itself . . . [must be] fairly [] interpreted as mandating

6    compensation by the Federal Government for the damages sustained." *Id.* at 401-02, 96 S. Ct. at

7    954, 47 L.Ed 2d at 123; *see also Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 739, 102

8    S. Ct. 2118, 2125, 72 L.Ed 2d 520, 529 (1982) ("As *Testan* makes clear, jurisdiction . . . cannot be

9    premised on the asserted violations of regulations that do not specifically authorize awards of money

10   damages."). The regulatory provision Plaintiff invokes here clearly does not permit such an

11   interpretation.

12        Nothing in 22 C.F.R. § 51.63 authorizes the panoply of damages Plaintiff seeks. Instead, that

13   provision expressly limits her recovery to a refund of the expedite fee "if the Passport Agency does

14   not provide the requested expedited processing as defined in § 51.66." 22 C.F.R. § 51.63(c). Thus,

15   to the extent that Plaintiff is seeking more than the return of the expedite fee based on that provision,

16   this Court lacks jurisdiction. [2/] *See, e.g., El Dorado Springs v. United States*, 28 Fed. Cl. 132, 134-

17   36 (1993) (concluding that the court "has jurisdiction only over El Dorado's claim for return of its

18   application fees" and not its claim "for lost profits and other consequential damages resulting from

19

20        [2/] As Defendants demonstrated in their Motion to Dismiss, even if this Court concludes that it

21   has jurisdiction, Plaintiff's claim nevertheless must be dismissed for failure to state a claim. *See*
     Defendants' Motion to Dismiss ("Def. Mot.") at 12. If, as here, the invoked regulation "does not provide

22   the appropriate mechanism for the relief requested," then dismissal for failure to state a claim is
     warranted. *Ancman v. United States*, 77 Fed. Cl. 368, 375 (2007); *see also Fisher v. United States*, 402

23   F.3d 1167, 1175-76 (Fed. Cir. 2005) (noting that "the consequence of a ruling by the court on the merits,
     that plaintiff's case does not fit within the scope of the [money-mandating] source, is simply this:

24   plaintiff loses on the merits for failing to state a claim on which relief can be granted"). "It is not
     sufficient for a statute to be money-mandating; rather, the relief sought . . . must be the same kind of

25   relief or remedy provided by the statute." *Id.* Plaintiff's purported response does not even address, let
     alone refute, Defendants' argument. *See* Pl. Opp. at 8 (contending that "[t]he fact that the return of the

26   refund fee is mandatory under 22 C.F.R. § 51.63(c) shows that the duty itself was intended to be
     enforceable, and [that] Plaintiff is entitled to those damages she can prove flowed from the government's

27   failure to perform its duties as required by the regulation").

     *Chattler v. United States of America,*                                    Case No. 07-4040

28   Defendants' Reply in Support of Motion to Dismiss
                                    3

1   HUD's allegedly unlawful rejection of El Dorado's application" because none of the statutory or

2   regulatory provisions the plaintiff cited "create[d] a substantive right to money damages").

3          Plaintiff urges the Court to reject that analysis based on her misapplication of *United States v.*

4   *White Mountain Apache Tribe*, 537 U.S. 465, 123 S. Ct. 1126, 155 L.Ed 2d 40 (2003).  *See* Pl. Opp.

5   at 8 n.9 (contending that "[r]ather than citing to controlling Supreme Court precedent, Defendants

6   rely in the Motion to Dismiss on cases . . . [such as] *El Dorado Springs* . . . [which] focus[] on

7   whether there is a second waiver of sovereign immunity in any of the source statutes – a requirement

8   rejected by the Supreme Court").  *White Mountain* involved a claim for damages by an Indian tribe

9   that alleged that the United States had breached its fiduciary duty to maintain land held in trust for

10  the tribe.  The tribe contended that jurisdiction under the Tucker Act was conferred by the 1960 Act

11  which provided that the "'former Fort Apache Military Reservation'" would be "'held by the United

12  States in trust for the White Mountain Apache Tribe.'"  *White Mountain Apache*, 537 U.S. at 469,

13  123 S. Ct. at 1130, 155 L.Ed 2d at 47.  The Court of Federal Claims dismissed the action for lack of

14  jurisdiction on grounds that the 1960 Act created "nothing more than a 'bare trust'" and lacked any

15  predicate "for finding a fiduciary obligation enforceable by monetary relief."  *Id.* at 471, 123 S. Ct. at

16  1131, 155 L.Ed 2d at 48.  The Federal Circuit reversed concluding that the 1960 Act "triggered the

17  duty of a common-law trustee to act reasonably to preserve any property . . . an obligation fairly

18  interpreted as supporting a claim for money damages."  *Id.*, 123 S. Ct. at 1131, 155 L.Ed 2d at 48.

19  The Supreme Court held that under the "fair interpretation" rule, "[t]he 1960 Act goes beyond a bare

20  trust and permits a fair inference that the Government is subject to duties as a trustee and liable in

21  damages for breach," and thus did not need to "provide a second waiver of sovereign immunity, nor

22  need [] be construed in the manner appropriate to waivers of sovereign immunity."  *Id.* at 474, 472-

23  73, 123 S. Ct. at 1132-33, 155 L.Ed 2d at 49-50.

24         In reconciling that ruling with *Testan* and *Sheehan*, the *White Mountain Apache* Court

25  explained that those cases, as here, were "without any trust relationship in the mix of relevant fact,

26  but with affirmative reasons to believe that no damages remedy could have been intended, absent a

27  *Chattler v. United States of America,*                                      Case No. 07-4040
    Defendants' Reply in Support of Motion to Dismiss
28                                                        4

1    specific provision." *Id.* at 477-78, 123 S. Ct. at 1135, 155 L.Ed 2d at 52.  Thus, in both *Sheehan* and

2    *Testan*, the Court "required an explicit authorization of a damages remedy because of strong

3    indications that Congress did not intend to mandate money damages." *Id.* at 478, 123 S. Ct. at 1135,

4    155 L.Ed 2d at 53.  "Together they show that a fair inference will require an express provision, when

5    the legal current is otherwise against the existence of a cognizable claim." *Id.*, 123 S. Ct. at 1135,

6    155 L.Ed 2d at 53.

7         So too here, the "legal current" fails to support the existence of a claim for damages based on

8    a regulatory provision requiring payment of an application fee.  *See, e.g., El Dorado Springs*, 28 Fed.

9    Cl. at 134-36.  Courts have divided non-contractual claims under the Tucker Act into two classes:

10   "those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks

11   return of all or part of that sum; and those demands in which money has not been paid but the

12   plaintiff asserts that he is nevertheless entitled to a payment from the treasury." *Eastport Steamship*

13   *Corp. v. United States*, 178 Ct. Cl. 599, 605 (1967), *cited with approval in Testan*, 424 U.S. at 400,

14   96 S. Ct. at 954, 47 L.Ed 2d at 122.  While claims in the first class are within the jurisdiction of

15   district courts under the Tucker Act, jurisdiction over claims in the second class exists only if a

16   federal statute "'can fairly be interpreted as mandating compensation by the Federal Government for

17   the damage sustained.'"  *Id.*  This distinction clearly precludes Plaintiff from bootstrapping a claim

18   for money damages to her claim for a refund under 22 C.F.R. § 51.63.  *See* Pl. Opp. at 8 (contending

19   that the Department's expedite passport processing regulations "are reasonably read as establishing a

20   substantive duty to provide expedited service . . . [a] duty [that] is enforceable by money damages for

21   the losses incurred when the duty is not fulfilled").  To accept such reasoning "would be to

22   undermine the Court's ruling in *Testan* that the Tucker Act provides a remedy only where damages

23   claims against the United States have been authorized explicitly."  *Sheehan*, 456 U.S. at 739-40, 102

24   S. Ct. at 2125, 72 L.Ed 2d at 530; *see also White Mountain Apache*, 537 U.S. at 478, 123 S. Ct. at

25   1135, 155 L.Ed 2d at 53 (recognizing that "a fair inference will require an express provision, when

26   the legal current is otherwise against the existence of a cognizable claim").  Since the Department's

27   *Chattler v. United States of America,*                                    Case No. 07-4040
     Defendants' Reply in Support of Motion to Dismiss
28                                                    5

1    refund regulation only authorizes the return of the expedite fee to an applicant who did not receive

2    expedited service, Plaintiff cannot invoke that provision to sustain this Court's jurisdiction over her

3    claim for consequential and special damages.  Accordingly, this Court should dismiss Plaintiff's

4    claim based on 22 C.F.R. § 51.63 for lack of jurisdiction to the extent she seeks such damages.

5              **B.    Plaintiff Cannot Use Contract Theory to Circumvent the Regulatory Limitation
                  on Recovery for Any Failure by the Department to Provide Expedited Service.**

6

7              Plaintiff alternatively seeks to evade 22 C.F.R. § 51.63's limitation on recovery by claiming

8    the existence of a contract to provide expedited service that the Department allegedly breached.  *See*

9    Pl. Opp. at 13 (contending that "Plaintiff has alleged a contract that is specifically authorized by

10   statute and regulation and that incorporates terms of those regulations[, and i]f the Plaintiff's

11   allegations are proven, . . . the issue of what damages are recoverable is governed by traditional

12   principles of contract law").  For that alleged breach, Plaintiff contends that "all reasonably

13   foreseeable damages are available regardless of whether they were specifically agreed to or were

14   actually foreseen by the breaching party."  Pl. Opp. at 11.  None of the cases on which Plaintiff

15   relies, however, involves, as here, an alleged contract implied from a requirement in a regulatory

16   provision. [3/]  *See, e.g.* Pl. Opp. at 11 (citing cases involving written contracts with the government

17   such as a war risk insurance policy, a construction contract, and a hospital lease).  As Defendants'

18   Motion to Dismiss demonstrated, even if Plaintiff's allegations of a contract were sufficient, [4/] her

19

20        [3/]  Plaintiff's suggestion that this case involves an express contract or in the alternative, an
     implied-in-fact contract, (*see* Pl. Opp. at 10 n.10), is a distinction without a difference for purposes of
21   this Court's analysis.  *See, e.g., Anderson v. United States*, 344 F.3d 1343, 1353 n.3 (Fed. Cir. 2003)
     (noting that general requirements for forming an agreement binding upon the government "apply equally
     to express and implied-in-fact contracts").

22

23        [4/]  Plaintiff erroneously suggests that Defendants "apparently concede" the sufficiency of her
     allegations of a contract.  On the contrary, Defendants dispute that Plaintiff has alleged the necessary
24   elements for an express or implied contract.  *See, e.g.,* Def. Mot. at 15-16 (demonstrating absence of
     meeting of the minds as to Plaintiff's alleged contract).  However, to avoid any suggestion of a factual
25   dispute on that issue, Defendants assumed for purposes of their motion that Plaintiff's allegations were
     sufficient and demonstrated that Plaintiff's contract claims still failed as a matter of law.  *See* Def. Mot.
26   at 15 ("Even assuming Plaintiff's allegations are sufficient to establish a contract offer, [Plaintiff's
     damages claims] clearly are beyond the amount mandated by the Department's regulations when the

27                                                                                    (continued...)
     *Chattler v. United States of America,*                              Case No. 07-4040
28   Defendants' Reply in Support of Motion to Dismiss
                                              6

1    alleged contract with the Department to provide expedited passport processing would be

2    circumscribed by its regulations.  *See* Def. Mot. at 15 (explaining that "those regulations limit the

3    Department's liability under those circumstances to refund of the expedite fee" and "Plaintiff

4    therefore cannot override that limitation by claiming more generous terms under an implied

5    contract"); *see also Schism v. United States*, 972 F. Supp. 1398, 1404 (N.D. Fla. 1997)

6    ("[L]imitations imposed . . . by [] statute override any representations made by the government, since

7    any promises in contradiction of the statute would be beyond the authority of government agents to

8    carry out." ); *see also H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed. Cir. 1984).

9         Plaintiff dismisses such authorities and suggests that here "the promise contained in the

10    government's offer – to process the expedited passport within three days of its arrival at the Agency

11    – is the precise promise authorized in the statute and regulation," and gives rise to a contract that

12    "incorporate[s] regulatory terms and requirements or that overlap with those requirements . . . [that

13    is] enforced and treated like any other contracts in actions for breach." [5]  Pl. Opp. at 13.  Here again,

14    Plaintiff's contention runs afoul of well-established principles in Tucker Act jurisprudence.  "The

15    rule in *Testan* – that jurisdiction under the Tucker Act cannot be premised on the asserted violation

16    of regulations that specifically do not authorize awards of money damages – cannot be avoided

17    simply by characterizing the applicable statute or regulation as creating an implied contract."  *Baker*

18

19

20    [4]  (...continued)
Department fails to provide expedited service for which an applicant paid.").

21    [5]  By implication, Plaintiff presumably now concedes that her claim of a contract based on the
Department's alleged "promise in its forms and on its website that applicants who paid for expedited

22    service and mailing would receive their passports 'within about two weeks,'" (Compl. ¶ 80), fails as a
matter of law since that promise is nowhere authorized in 22 C.F.R. § 51.66, which defines "expedited

23    passport processing" for purposes of 22 C.F.R. § 51.63.  That claim alternatively fails because the
Department's statement of intent to provide passports "within about two weeks" does not constitute a

24    contract offer.  *See Beverage Distribs., Inc. v. Olympia Brewing Co.*, 440 F.2d 21, 29 (9th Cir. 1971)
(noting that "since an offer must be a promise, a mere expression of intention or general willingness to

25    do something on the happening of a particular event or in return for something to be received does not
amount to an offer"); *see also Minehan v. United States*, 75 Fed. Cl. 249, 260 (2007) (noting that "there

26    is no question that a mere expression of intention does not constitute an offer which is sufficient to
create a contractual relationship").

27    *Chattler v. United States of America,*                                              Case No. 07-4040

28    Defendants' Reply in Support of Motion to Dismiss
                                              7

1   *v. United States*, 50 Fed. Cl. 483, 489 (2001); *see also Sheehan*, 456 U.S. at 740, 102 S. Ct. at 2125,

2   72 L.Ed 2d at 530 (observing that "if [the] employment statutes and regulations [in *Testan*] create[d]

3   an implied-in-fact contract, surely the Court would have so noted . . . instead of directing that the

4   complaint be dismissed").  As already discussed, the regulatory provisions that Plaintiff invokes here

5   do not authorize awards of money damages.  Therefore, those same provisions cannot form an

6   implied-in-fact contract whose breach entitles Plaintiff to recover "all reasonably foreseeable

7   damages flowing from the government's breach."  Pl. Opp. at 12.

8       But even if a contract could be implied from the Department's regulations (or guidance on its

9   website), Plaintiff's recovery for the alleged breach nonetheless would be limited to a refund of the

10  $60.00 expedited fee.  *See* Def. Mot. at 15; *see, e.g., Griffin v. United States*, 215 Ct. Cl. 710 (1978).

11  The analysis in *Griffin* makes that plain.  In that case, plaintiff, an officer of the United States Air

12  Force, received an allegedly insufficient award under 10 U.S.C. § 1124, which "extend[ed] to

13  servicemen . . . the eligibility to receive cash awards for valuable suggestions, made to and adopted

14  by their agencies."  *Griffin*, 215 Ct. Cl. at 712.  Plaintiff submitted a suggestion that was adopted and

15  allegedly saved the Air Force $45,000,000.  He subsequently filed an action under the Tucker Act

16  against the government on grounds that in awarding him only $8,905, the Air Force had been

17  arbitrary and capricious and violated its regulations.  The court concluded that "[a]t some point

18  plaintiff acquired a legal entitlement by implied contract" and "what remained for adjudication was

19  quantum."  *Id.* at 715.  However, in remanding the action to the trial division, the *Griffin* court noted

20  that "[t]he statute, 10 U.S.C. § 1124(f), places a $25,000 limit on an incentive award, and plaintiff's

21  further recovery, if any, *would be limited by that ceiling*."  *Id.* at 716 n.1 (emphasis added).

22      Similarly here, Plaintiff's recovery under the alleged contracts would be limited to the refund

23  of the $60.00 expedite fee which is the ceiling imposed by the Department's regulations for its

24  failure to provide expedited service for which an applicant paid.  *See* 22 C.F.R. § 51.63(c) ("The

25  passport expedite fee will be refunded if the Passport Agency does not provide the requested

26  expedited processing as defined in § 51.66.").  Thus, contrary to Plaintiff's suggestion, she is not

27  *Chattler v. United States of America,*                                    Case No. 07-4040
    Defendants' Reply in Support of Motion to Dismiss
28                                          8

1   entitled to collect all reasonably foreseeable damages flowing from the Department's alleged failure

2   to expedite the processing of her passport application. *See* Pl. Opp. at 10-11.  Rather, her recovery

3   under contract theory is bound by the express limitation in 22 C.F.R. § 51.63(c).  Thus, to the extent

4   Plaintiff seeks to recover more than the $60.00 fee she paid, this Court is without jurisdiction over

5   her contract claims. *See Sheehan*, 456 U.S. at 740, 102 S. Ct. at 2125, 72 L.Ed 2d at 530; *Baker*, 50

6   Fed. Cl. at 489. **6/**

7   **II.   PLAINTIFF SHOULD BE REQUIRED TO EXHAUST HER ADMINISTRATIVE**
    **REMEDIES BEFORE RESORT TO COURT.**

8

9           Plaintiff's unsubstantiated claims of the inadequacy of the Department's established refund

    process should not excuse her refusal *to this date* to invoke that process. *See* Pl. Opp. at 19.  As
10

11  Defendants explained in their Motion to Dismiss, the Department's longstanding refund process "has

12  proven to be an efficient method of ensuring that applicants who do not receive expedited processing

    receive a prompt refund of the expedited service fee." **7/** *See* Declaration of Ann Barrett ("Barrett
13

14  Decl.") ¶ 46.  Under that process, applicants who "[p]aid the $60 fee for expedited service and [

15  h]ave reason to believe that they did not receive expedited service" need only "submit a written

16  request with their passport number, if available, name, date and place of birth, and approximate

    date(s) they applied for their passport and received their passport (if applicable)" as well as current
17

18  contact information. **8/**  Barrett Decl. Ex. B.1.  "If the Department determines that the applicant paid

19  for and did not receive expedited service [as defined in its regulations], an order for a refund check

20  of $60 to be issued to the applicant is forwarded to the Department of the Treasury."  Barrett Decl. ¶

21  25; *see also* Def. Mot. at 17-18.  As Defendants demonstrated, judicial economy as well as prudence

22          **6/** Alternatively, these same reasons compel dismissal for failure to state a claim. *See* Def. Mot.
23  at 15-16.

24          **7/** The requirement of a request from the applicant ensures that the Department has current
    contact information for the applicant because contact information for many applicants may have changed
25  since submission of their passport application.  *See* Barrett Decl. ¶ 53 ("many applicants supply
    temporary addresses in their applications for the mailing of their passports, such as the address of a
26  friend or relative they are staying with as part of their travel plans").

27          **8/** The Declaration of Ann Barrett was attached as an exhibit to Defendants' Motion to Dismiss.
    *Chattler v. United States of America,*                                        Case No. 07-4040
28  Defendants' Reply in Support of Motion to Dismiss
                                                9

1   dictate that Plaintiff submit her refund claim to the Department first before maintaining an action in

2   federal court.  Requiring administrative exhaustion here likely would obviate any court action

3   because the only relief to which Plaintiff might be entitled – refund of the expedite fee – is available

4   through the Department's refund process.  This action is nothing but an end-run around that

5   administrative process.  Under well-established principles of prudential exhaustion, such factors

6   dictate that the Court dismiss Plaintiff's refund claim for lack of administrative exhaustion.  *See* Def.

7   Mot. at 16-17; *see also United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983)

8   (noting that such exhaustion is typically required where "(1) agency expertise makes agency

9   consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the

10  requirement would encourage the deliberate bypass of the administrative scheme; and (3)

11  administrative review is likely to allow the agency to correct its own mistakes and to preclude the

12  need for judicial review").  Nothing in Plaintiff's Opposition belies that result.

13      **A.**    **This Court Should Not Excuse Plaintiff's Failure to Present Her Refund Claim to the Department Because She Purports to Bring This Action on Behalf of a**

14               **Class.**

15        Plaintiff contends that because she challenges "the actions of the State Department on behalf

16  of a class, and does not simply request relief from the Court for her individual claims," "the doctrine

17  of administrative exhaustion does not apply."  Pl. Opp. at 16-17.  That contention is based on

18  Plaintiff's selective reading from cases involving judicial waiver of statutory exhaustion

19  requirements.  *See* Pl. Opp. at 16-17 (citing cases).  Such cases hold that judicial waiver of statutory

20  exhaustion is appropriate where the claim is (1) collateral to a substantive claim of entitlement; (2)

21  colorable in its showing that denial of relief will cause irreparable harm; and (3) one whose

22  resolution would not serve the purposes of exhaustion.  *See Johnson v. Shalala*, 2 F.3d 918, 920-22

23  (9th Cir. 1993), *cited in* Pl. Opp. at 17.  Latching onto the first of these elements, Plaintiff contends

24  that her "challenge is collateral to any redress available to any one person, . . . [and a]ccordingly,

25  because Plaintiff is challenging 'procedural irregularities,' the doctrine of administrative exhaustion

26  does not apply."  Pl. Opp. at 17.  Plaintiff's reliance on *Johnson* and similar cases is entirely

27  *Chattler v. United States of America,*                                    Case No. 07-4040

28  Defendants' Reply in Support of Motion to Dismiss
                                    10

1  misplaced.  *See Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990); *see also Marathon Oil*

2  *Co. v. United States*, 807 F.2d 759, 768 (9th Cir. 1986) (distinguishing between "administrative

3  exhaustion requirements that are based on a statutory directive and those that are judicially

4  imposed").

5       Contrary to Plaintiff's attempted recharacterization of this action, her challenge is not

6  "collateral to any redress available to any one person."  Pl. Opp. at 17; *see Johnson*, 2 F.3d at 921

7  ("A plaintiff's claim is collateral if it is not essentially a claim for benefits," for example, where

8  plaintiff seeks to invalidate a rule).  Indeed, Plaintiff's requested relief belies that suggestion.  *See,*

9  *e.g.,* Compl. ¶ 101 (requesting as relief an "[a]ward of compensatory damages, including all

10  consequential and special damages, in amounts to be determined at trial or, where applicable, to the

11  full extent allowed by law").  Thus, her claims are clearly akin to "essentially a claim for benefits"

12  and accordingly appropriate for administrative exhaustion.  *See Johnson*, 2 F.3d at 921.

13       Moreover, here, requiring Plaintiff to exhaust her administrative remedies is not a statutory

14  requirement requiring judicial waiver.  Rather, Defendants urge that result as a prudential matter

15  because such exhaustion likely would obviate the need for any judicial involvement and would

16  preclude Plaintiff from bypassing the administrative process designed to resolve refund claims such

17  as hers.  *See* Def. Mot. at 16-18; *see also California Care*, 709 F.2d at 1248; *Puga v. Chertoff*, 488

18  F.3d 812, 815 (9th Cir. 2007); *Huang v. Ashcroft*, 390 F.3d 1118, 1123 (9th Cir. 2004).  Under these

19  circumstances, dismissal of Plaintiff's refund claim for failure to exhaust administrative remedies is

20  clearly warranted.

21       **B.     Plaintiff's Claims of the Futility of Administrative Exhaustion Are Unfounded.**

22       Plaintiff apparently misapprehends the doctrine of futility in invoking it here as excusing her

23  failure to submit her refund claim to the Department.  *See* Pl. Opp. at 18 (contending that "[i]f the

24  Department is already stating, in bold print, that this Court cannot possibly establish a better refund

25  process than the one that currently exists, then it is patently obvious that the Department is not going

26  to commit to substantial changes in its procedures at the behest of Plaintiff Chattler or any other

27  *Chattler v. United States of America,*                                          Case No. 07-4040

28  Defendants' Reply in Support of Motion to Dismiss
                                                11

1    individual passport applicant who seeks redress on her own, without judicial assistance, through

2    administrative remedies"). Courts generally do not require exhaustion "where resort to the agency

3    would be futile." *Sun v. Ashcroft*, 370 F.3d 932, 943 (9th Cir. 2004) (noting that "where the

4    agency's position on the question at issue appears already set, and it is very likely what the result of

5    recourse to administrative remedies would be, such recourse would be futile and is not required").

6         Here, Plaintiff contends that resort to the Department's refund process is futile because the

7    Department "has expressed no intention to provide refunds to class members who, in past months

8    and years, were not given expedited service in accordance with the law." Pl. Opp. at 18-19.

9    However, where as here, the complained of conduct is "pegged entirely to [those individuals'] failure

10   to [] pursue[] the administrative route," futility is not demonstrated. *Diaz v. United Agricultural*

11   *Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1485 (9th Cir. 1995). Indeed, the Ninth

12   Circuit has rejected Plaintiff's argument as circular. *See id.* (regarding as "circular" plaintiffs'

13   contention that "it would have been 'futile' for them to demand administrative review because both

14   defendants have demonstrated by their continued refusal to pay that they have no intention of doing

15   so" where "defendants' current denial is pegged entirely to [plaintiffs'] failure to have pursued the

16   administrative route"). "[B]are assertions of futility are insufficient to bring a claim within the

17   futility exception, which is designed to avoid the need to pursue an administrative review that is

18   demonstrably doomed to fail." *Id.* Since such assertions are all Plaintiff has advanced here, her

19   failure to exhaust her administrative remedies cannot be excused as futile.

20         **C.     Plaintiff's Claims that the Department's Refund Process Is Inadequate Are
                    Unsubstantiated.**

21

22        This Court should not excuse Plaintiff's failure to exhaust her administrative remedies based

23   on her unsubstantiated claims that the Department's refund process is inadequate. *See* Pl. Opp. at 20

     (erroneously contending that the Department's process "simply is not responsible, adequate, or

24   prudent"). A claim of inadequacy of administrative remedies "in the normal situation, require[s] that

25   [Plaintiff] make some attempt to implement the procedures and find them inadequate." *Carr v.*

26   *Pacific Maritime Ass'n*, 904 F.2d 1313, 1325 (9th Cir. 1990); *see, e.g., Hoeft v. Tucson Unified Sch.*

27   *Chattler v. United States of America,*                                      Case No. 07-4040

     Defendants' Reply in Support of Motion to Dismiss

28                                                    12

1    *Dist.*, 967 F.2d 1298, 1310 (9th Cir. 1992) (concluding that "judicial involvement in [] dispute over

2    Tucson Unified's extended school year program [wa]s unwarranted" and noting that "[h]ad the four

3    named plaintiffs first sought administrative relief and been denied that relief, this case would be

4    before us in an entirely different posture").  Plaintiff here also has not done so and therefore her

5    claim of inadequacy is unfounded.

6         Not even the declarations purportedly submitted in support of her Opposition substantiate

7    that claim.  Instead they contain vague and conclusory references about alleged unspecified contacts

8    with unidentified Department personnel at unspecified times.  *See, e.g.,* Declaration of Regina

9    Robinson ¶ 4 ("I called to ask for a refund and was told I was not entitled to one."); Declaration of

10   Sean Andrade ¶ 3 ("I have sent four letters and have not received any response at all.").  Moreover,

11   none of the declarations discusses or attaches the type of written or electronic refund request as

12   described on the Department's website that is required to initiate the Department's refund process.

13   *See, e.g.,* Andrade Decl. (attaching not one of the four letters he allegedly sent concerning a refund);

14   Declaration of Pamela Humphrey ¶ 6 (attaching email to NPIC, Passport requesting a "Status

15   Inquiry" not a refund of the expedite fee).  As explained on the Department's website, applicants

16   who "[p]aid the $60 fee for expedited service and [ h]ave reason to believe that they did not receive

17   expedited service" need only "submit a written request with their passport number, if available,

18   name, date and place of birth, and approximate date(s) they applied for their passport and received

19   their passport (if applicable)."  Barrett Decl. Ex. B.1; *see also* Def. Mot. at 16-17.  Since Plaintiff

20   still has not submitted such a request, she cannot complain that the process is inadequate.

21        **D.      The Department's Requirement of a Written Request for a Refund Does not
                    Violate 22 C.F.R. § 51.63.**

22        Plaintiff's inadequacy claim is also unfounded to the extent it is based on the Department's

23   requirement of a written request to initiate the refund process.  *See* Pl. Opp. at 20 (complaining that

24   "for years the government has refused to automatically refund expedite fees when the three-day

25   standard is not met").  The requirement of a request to initiate a government refund is pervasive

26   throughout the federal government.  *See, e.g.,* 43 C.F.R. § 1823.12(b) (Department of the Interior)

27   *Chattler v. United States of America,*                                        Case No. 07-4040
     Defendants' Reply in Support of Motion to Dismiss

28                                                        13

1  ("If you believe you are due a refund, you may request it from the BLM office where you previously

2  submitted your payment."); 7 C.F.R. § 91.43(c) (United States Department of Agriculture) ("Any

3  fees paid in excess of the amount due shall be used to offset future billings, unless a request for a

4  refund is made by applicant."); 19 C.F.R. § 24.23(b)(4)(iii)(A) (Bureau of Customs and Border

5  Protection) ("In the case of an overpayment, the carrier or operator may request a refund by writing

6  to Customs and Border Protection . . . ."); 37 C.F.R. § 1.296 (United States Patent and Trademark

7  Office) ("The request to withdraw may also include a request for a refund of any amount paid in

8  excess of the application filing fee . . . ."); 38 C.F.R. § 21.5064(b)(3)(ii) (Department of Veterans

9  Affairs) ("The Department of Veterans Affairs shall make the refund only if the individual requests

10 it."); 43 C.F.R. § 2933.24 (Department of the Interior) ("If we close the fee site for administrative or

11 emergency reasons, we will refund the unused portion of your permit fee upon request."); 10 C.F.R.

12 § 205.283(a) (Department of Energy) ("Any person entitled to a refund pursuant to a final Decision

13 and Order . . . may file an Application for Refund . . . ."); 14 C.F.R. § 389.27(b) (Department of

14 Transportation) ("Any person may file an application for refund of a fee paid since April 28, 1977,

15 on the grounds that such fee exceeded the Board's cost in providing the service.").

16         Moreover, nothing in the Department's regulations prohibits the requirement of a written

17 request before the "passport expedite fee will be refunded."  22 C.F.R. § 51.63(c).  Section 51.63

18 provides only that "[t]he passport expedite fee will be refunded if the Passport Agency does not

19 provide the requested expedited processing as defined in § 51.66."  22 C.F.R. § 51.63(c).  The

20 Department has determined that its process, initiated by a written request from applicants, ensures

21 that individuals who are entitled to a refund receive it in a timely manner.  *See Barrett Decl. ¶ 46*

22 ("Over the years that this procedure has been in place, it has proven to be an efficient method of

23 ensuring that applicants who do not receive expedited processing receive a prompt refund of the

24 expedited service fee.").  Although Plaintiff might prefer an automated system, the existing system

25 clearly is neither inadequate nor violative of the Department's regulations.  Plaintiff's failure to

26

27 *Chattler v. United States of America,*                                    Case No. 07-4040
   Defendants' Reply in Support of Motion to Dismiss
28                                                   14

1   invoke that system is therefore inexcusable, and this Court accordingly should dismiss her refund

2   claim and require that she present it first to the Department.

3                                    **CONCLUSION**

4        Since the record before the Court is more than sufficient to decide the instant motion,

5   Plaintiff's eleventh-hour request to stay the ruling on Defendants' Motion to Dismiss to allow further

6   development of the record should be denied, [9]   Defendants' motion should be granted, and this

7   action should be dismissed in its entirety.

8   Date: December 7, 2007                        Respectfully submitted,

9                                                 JEFFREY S. BUCHOLTZ
                                                  Acting Assistant Attorney General
10                                                Civil Division

11                                                SCOTT N. SCHOOLS
                                                  United States Attorney
12                                                Northern District of California

13                                                VINCENT M. GARVEY
                                                  Deputy Branch Director
14
                                                    /s /Jacqueline Coleman Snead
15
                                                  JACQUELINE COLEMAN SNEAD
16                                                (D.C. Bar No. 459548)
                                                  Trial Attorney
17                                                Federal Programs Branch, Civil Division
                                                  U.S. Department of Justice
18                                                20 Massachusetts Avenue, N.W. Rm. 7214
                                                  Washington, DC 20530
19                                                Tel: (202) 514-3418

20
                                                  **Attorneys for Defendants**
21

22

23

24

25

26        [9]  Defendants intend to file their opposition to Plaintiff's Motion to Stay the Ruling on Motion
     to Dismiss on Friday, December 14, 2007.  However, since none of Defendants' arguments herein turns
27   on disputed facts, further development of the record is completely unnecessary.

     *Chattler v. United States of America,*                                          Case No. 07-4040
28   Defendants' Reply in Support of Motion to Dismiss
                                              15

1

**CERTIFICATE OF SERVICE**

2          This is to certify that a true and correct copy of the foregoing Reply in Support of

3   Defendants' Motion to Dismiss was served electronically on December 7, 2007 through the Northern

4   District of California Electronic Case File System (ECF) and that the document is available for

5   viewing and downloading on that system.

6                                              _/s /Jacqueline Coleman Snead_____
                                                Jacqueline Coleman Snead
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   *Chattler v. United States of America,*                              Case No. 07-4040
     Defendants' Reply in Support of Motion to Dismiss
28