# Exhibit 2

REED R. KATHREIN (139304)
SHANA E. SCARLETT (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com

ROBERT B. CAREY (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
2425 East Camelback Road, Suite 650
Phoenix, AZ  85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob.carey@att.net

STEVE W. BERMAN (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Attorneys for Plaintiff

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIE CHATTLER, On Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA and THE UNITED STATES DEPARTMENT OF STATE, <br><br> Defendants. | No. C 07-04040 SI <br><br> DECLARATION OF SHANA E. SCARLETT IN OPPOSITION TO DEFENDANTS' MOTION FOR DISQUALIFICATION PURSUANT TO 28 U.S.C. § 455 <br><br> DATE:  n/a <br> TIME:  n/a <br> DEPT:  n/a <br><br> ACTION FILED: August 7, 2007 |

I, SHANA E. SCARLETT, declare as follows:

1.    I am an attorney duly licensed to practice before all of the courts of the State of California.  I am associated with the law firm of Hagens Berman Sobol Shapiro LLP, one of the counsel of record for Plaintiff in the above-entitled action.  I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.    Attached are true and correct copies of the following exhibits:

Exhibit A:    The Transcript of Proceedings on December 21, 2007, in the above-captioned litigation;

Exhibit B:    Excerpts from the Guide to Judiciary Policies and Procedures, Volume II, Codes of Conduct for Judges and Judicial Employees, Chapter V, Compendium of Selected Opinions;

Exhibit C:    Judiciary Policies and Procedures: Code of Conduct – Code of Conduct for United States Judges, http://www.uscourts.gov/guide/vol2/ch1.html (last visited January 10, 2008); and

Exhibit D:    Committee on Codes of Conduct, Advisory Opinion No. 69, http://www.uscourts.gov/guide/vol2/69.html (last visited January 10, 2008).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 14th day of January, 2008, at Berkeley, California.


_____
         /s/ Shana E. Scarlett
         SHANA E. SCARLETT

# Exhibit A

PAGES 1 - 27

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON

JULIA CHATTLER, ON BEHALF OF      )
HERSELF AND ALL OTHERS SIMILARLY  )
SITUATED,                         )
                                  )
          PLAINTIFF,              )
                                  )
  VS.                             )  NO. C 07-4040 SI
                                  )
THE UNITED STATES OF AMERICA AND  )
THE UNITED STATES DEPARTMENT OF   )
STATE,                            )
                                  )  SAN FRANCISCO, CALIFORNIA
          DEFENDANTS.             )  FRIDAY
                                  )  DECEMBER 21, 2007
                                  )

COPY

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

**FOR PLAINTIFF**         HAGENS, BERMAN, SOBOL, SHAPIRO, LLP
                          715 HEARST AVENUE, SUITE 202
                          BERKELEY, CALIFORNIA  94710
                     BY:  **SHANA E. SCARLETT, ESQUIRE**

                          HAGENS, BERMAN, SOBOL, SHAPIRO, LLP
                          2425 EAST CAMELBACK ROAD, SUITE 650
                          PHOENIX, ARIZONA  85016
                     BY:  **ROBERT B. CAREY, ESQUIRE**

**FOR DEFENDANTS**        UNITED STATES DEPARTMENT OF JUSTICE
                          20 MASSACHUSETTS AVENUE, N.W.
                          WASHINGTON, D.C.  20530
                     BY:  **JACQUELINE E. COLEMAN SNEAD, ESQUIRE**

REPORTED BY:   JOAN MARIE COLUMBINI, CSR 5435, RPR
               OFFICIAL COURT REPORTER, U.S. DISTRICT COURT

1          **PROCEEDINGS; FRIDAY, DECEMBER 21, 2007**

2

3          **THE CLERK:**  CALLING CIVIL 07-4040, JULIA CHATTLER

4  VERSUS THE UNITED STATES DEPARTMENT OF STATE.  PLEASE STEP

5  FORWARD AND STATE YOUR APPEARANCE.

6          **MS. COLEMAN SNEAD:**  GOOD MORNING, YOUR HONOR.

7  JACQUELINE COLEMAN SNEAD ON BEHALF OF THE UNITED STATES.

8          **THE COURT:**  GOOD MORNING.

9          **MR. CAREY:**  GOOD MORNING, YOUR HONOR.  ROB CAREY AND

10  SHANA SCARLETT FOR THE PUTATIVE CLASS AND JULIA CHATTLER.

11          **THE COURT:**  GOOD MORNING.  GOOD MORNING.  OKAY.

12  THIS IS DEFENDANTS' MOTION TO DISMISS ON A COUPLE OF GROUNDS;

13  ONE FOR LACK OF JURISDICTION CONCERNING THE REQUEST FOR

14  CONSEQUENTIAL AND SPECIAL DAMAGES AND ALSO CONCERNING FAILURE

15  TO EXHAUST AND THE PLAINTIFF'S MOTION TO STAY THE RULING.

16          I'M INCLINED ACTUALLY TO DENY BOTH OF THE

17  DEFENDANTS' MOTIONS, SO THEN THE STAY WOULD BECOME MOOT.  SO

18  THAT'S WHERE I'M STARTING.  I'LL BE HAPPY TO HEAR ANYTHING YOU

19  WANT TO ADD TO YOUR PAPERS.

20          **MS. COLEMAN SNEAD:**  SURE.

21          YOUR HONOR, AT THE BEGINNING OF THIS HERE, THE PARTY

22  STATE WAS DELUGED WITH AN UNPRECEDENTED NUMBER OF PASSPORT

23  APPLICATIONS, AND ALTHOUGH, AS A RESULT OF THE --

24          **THE COURT:**  YOU KNOW, I DON'T MEAN TO INTERRUPT YOU.

25  I FORGOT TO TELL YOU SOMETHING THAT I MEANT TO TELL YOU ALL

1    RIGHT AT THE BEGINNING, WHICH IS THAT I NEEDED TO GET A

2    PASSPORT THIS SUMMER, AND I PAID MY SIXTY DOLLARS, AND I GOT MY

3    PASSPORT, AND I HAVE NO RECOLLECTION WHETHER I GOT IT TIMELY OR

4    UNTIMELY, BUT I GOT IT IN TIME FOR MY TRIP, AND I HAVE NO

5    COMPLAINTS ABOUT IT.

6            I DON'T THINK THAT DISQUALIFIES ME FROM ANYTHING IN

7    THIS CASE, BUT I WANTED YOU ALL TO KNOW THAT.  IF IT TURNED

8    OUT, BASED ON -- IF THE CASE ACTUALLY COMES TO FULL FRUITION

9    AND CLASS MEMBERS ARE GIVEN SOME KIND OF REMEDY AND IT TURNS

10   OUT I WAS ENTITLED TO THE REMEDY, I WOULD WAIVE THE REMEDY, BUT

11   I DON'T THINK -- I DON'T HAVE ANY IDEA WHETHER I WOULD BE OR

12   WOULD NOT BE ENTITLED SHOULD IT EVER GET TO THAT.

13           I GOT IT PROMPTLY IN THE MAIL, SO I'M NOT

14   COMPLAINING, BUT I WANTED YOU TO KNOW THAT.  IF ANYBODY HAS ANY

15   CONCERN ABOUT THAT, I WOULD NOT BE OFFENDED IN THE LEAST IF YOU

16   ASKED ME TO TAKE MYSELF OFF THIS CASE.  BUT I DON'T THINK THAT

17   IT'S NECESSARY, SO I HAVEN'T DONE THAT IN ADVANCE.  THAT'S JUST

18   SO YOU SHOULD KNOW.  NOW, GO AHEAD.

19           **MS. COLEMAN SNEAD:**  SURE.  I APPRECIATE THAT.

20           AT THE BEGINNING OF THIS YEAR THE WESTERN HEMISPHERE

21   TRAVEL INITIATIVE WENT INTO EFFECT, AND, AS A RESULT OF THAT,

22   THE AGENCY WAS DELUGED WITH AN UNPRECEDENTED NUMBER OF PASSPORT

23   APPLICATIONS, AND ALTHOUGH THE AGENCY HAD PREPARED FOR AN

24   INCREASE IN DEMAND, THE ACTUAL DEMAND FAR EXCEEDED THE

25   EXPECTATIONS.

1       AS A RESULT, THE PROCESSING TIMES FOR REGULAR

2   PASSPORT APPLICATIONS INCREASED, AND, IN TURN, A NUMBER OF

3   AMERICANS REQUESTED EXPEDITED PASSPORT PROCESSING, WHICH IS A

4   SERVICE THAT'S BEEN AVAILABLE SINCE 1994.  BY REGULATION,

5   PASSPORT EXPEDITED PROCESSING IS DEFINED AS AT THE TIME THAT

6   THE APPLICATION REACHES THE AGENCY, PROCESSING WILL TAKE PLACE

7   WITHIN THREE BUSINESS DAYS, AND THEN IT WILL BE AVAILABLE TO

8   RETURN TO THE APPLICANT.  THAT REGULATION HAS SINCE BEEN

9   CHANGED.  AT THE TIME MS. CHATTLER APPLIED, IT WAS A THREE-DAY

10  BUSINESS REQUIREMENT.

11          **THE COURT:**  WHAT IS IT NOW?

12          **MS. COLEMAN SNEAD:**  IT IS NOW A PERIOD OF DAYS THAT

13  IS POSTED ON THE WEBSITE, CURRENTLY TEN DAYS, AND THE REASON

14  FOR THE CHANGE IS SO THAT THE AGENCY HAS FLEXIBILITY, YOU KNOW,

15  WHEN THESE UNFORESEEN TYPES OF EVENTS OCCUR SO THAT THEY CAN

16  STILL PROVIDE THE SERVICE AND, AT THE SAME TIME, YOU KNOW,

17  PROVIDE PASSPORTS AS PEOPLE NEED IT.

18          MS. CHATTLER CLAIMS THAT SHE SUBMITTED AN

19  APPLICATION FOR EXPEDITED PASSPORT PROCESSING AND FAILED TO

20  RECEIVE IT.  RATHER THAN INVOKE THE DEPARTMENT'S REFUND

21  PROCESS, SHE'S INSTEAD BROUGHT THIS ACTION UNDER *LITTLE TUCKER*

22  *ACT*.  SHE IS REQUESTING BOTH A REFUND OF HER EXPEDITED FEE, AS

23  WELL AS SPECIAL AND CONSEQUENTIAL DAMAGES.

24          THE UNITED STATES HAS MOVED TO DISMISS ALL OF HER

25  CLAIMS ON TWO SEPARATE GROUNDS.  AS YOUR HONOR POINTED OUT, AND

1  IT'S IMPORTANT TO VIEW THE CLAIM AS TWO DISTINCT CLAIMS, ONE IS

2  A REQUEST FOR A REFUND, WHICH HAS A DIFFERENT LEGAL STANDARD,

3  AND THE OTHER IS HER CLAIM FOR DAMAGES.

4          AS TO HER CLAIMS FOR DAMAGES, UNDER *LITTLE TUCKER*

5  *ACT* AND CASE LAW UNDER THAT STATUTE, SHE NEEDS TO IDENTIFY A

6  REGULATION OR STATUTE THAT PROVIDES FOR THE PARTICULAR DAMAGES

7  THAT SHE'S SEEKING.  THE RULE IN *TESTAN VERSUS UNITED STATES*

8  SAYS THAT WHEN A PLAINTIFF IS SEEKING SOMETHING OTHER THAN

9  MONEY PAID TO THE GOVERNMENT THAT SHE'S CLAIMING HAVE BEEN

10 IMPROPERLY RETAINED, THAT SHE MUST IDENTIFY A STATUTE OR

11 REGULATION THAT EXPLICITLY AUTHORIZES THE DAMAGES THAT SHE'S

12 SEEKING.  PLAINTIFF HERE HAS FAILED TO DO SO.

13          **THE COURT:**  DOESN'T SHE HAVE A CONTRACT?

14          **MS. COLEMAN SNEAD:**  THAT'S HER ALTERNATIVE CLAIM,

15 AND I WOULD BE HAPPY TO STRESS THAT.  AS TO THE STATUTORY

16 CLAIM, SHE'S RELYING ON THE DEPARTMENT'S REGULATION THAT SIMPLY

17 STATES THAT IF THE AGENCY FAILS TO PROVIDE EXPEDITED SERVICE,

18 SHE'S ENTITLED TO HER REFUND OF THE EXPEDITED FEE.  THERE'S NO

19 REFERENCE TO OTHER DAMAGES.

20          A FAIR READING OF THE REGULATION DOESN'T CALL FOR

21 THE PAYMENT OF ANY OTHER DAMAGES WITH THE EXCEPTION OF THE

22 REFUND OF THE EXPEDITED FEE.  SO TO THE EXTENT SHE'S RELYING ON

23 THAT REGULATION, WHICH SHE PURPORTS TO, IT ONLY AUTHORIZES A

24 REFUND OF THE EXPEDITED FEE AND NOT THE DAMAGES.  SO HER

25 CLAIMS, TO THE EXTENT THEY'RE BASED ON THE REGULATION, WOULD

1    FAIL UNDER THE *TUCKER ACT* FOR LACK OF JURISDICTION.

2    IN THE ALTERNATIVE, SHE'S CLAIMING THERE WAS A

3    BREACH OF CONTRACT, AND, AGAIN, HER CONTRACT IS BASED IN PART

4    ON THE REGULATION, WHICH, AS I'VE INDICATED, LIMITS HER REMEDY

5    TO A REFUND FEE.

6    ALTERNATIVELY, SHE'S POINTING TO LANGUAGE ON THE

7    DEPARTMENT'S WEBSITE, AND SHE'S ACTUALLY SELECTIVELY QUOTING

8    FROM IT.  ON THE WEBSITE THERE'S A MATRIX THAT HAS ON ONE SIDE

9    REGULAR PROCESSING AND EXPEDITED PROCESSING, AND THEN INFORMS

10   THE CUSTOMER THE APPROXIMATE TIME IN WHICH YOU CAN EXPECT TO

11   RECEIVE YOUR PASSPORT.

12   SHE'S QUOTED LANGUAGE THAT INDICATED THAT FOR

13   EXPEDITED PASSPORT PROCESSING, YOU CAN EXPECT TO RECEIVE YOUR

14   PASSPORT WITHIN ABOUT TWO TO THREE WEEKS, IS WHAT SHE'S CITING.

15   WHAT SHE NEGLECTED TO CITE IS SINCE FEBRUARY OF THIS YEAR, THAT

16   STATEMENT HAS, IN FACT, BEEN FOOTNOTED, AND AS INDICATED, IN

17   THE EARLIER PART OF THIS YEAR, BECAUSE OF UNUSUAL DEMAND, THAT

18   THAT PROCESS MAY BE LONGER THAN INDICATED.

19   LATER IN THE -- AROUND THE TIME THAT MS. CHATTLER

20   APPLIED, IT INDICATED, ALSO, THAT ALTHOUGH THE CUSTOMER TIMES

21   OF TWO TO THREE WEEKS, IT COULD BE LONGER, PARTICULARLY FOR

22   PEOPLE WHO SUBMIT PASSPORT APPLICATIONS BY MAIL AND FAIL TO

23   INDICATE EXPEDITE ON THE OUTSIDE ENVELOPE.

24   SO SHE'S CLAIMING THAT THIS LANGUAGE ON THE WEBSITE

25   WAS, IN FACT, A CONTRACT OFFER, WHICH SHE ACCEPTED BY PAYING

1   THE FEE.  WE DENY, ARGUE IN OUR MOTION WHETHER OR NOT THAT

2   CONSTITUTES A VALID OFFER OF ACCEPTANCE FOR PURPOSES OF THE

3   MOTION.

4          WE ACCEPTED THAT THOSE ALLEGATIONS WERE SUFFICIENT,

5   SAID EVEN IF IT IS SUFFICIENT, IT FAILS TO STATE A CONTRACT FOR

6   WHICH SHE'S ENTITLED TO GET CONSEQUENTIAL AND SPECIAL DAMAGES.

7   THE REASON, AGAIN, IS THAT ANY CONTRACT SHE CLAIMS WAS FORMED

8   IS CIRCUMSCRIBED BY THE DEPARTMENT'S REGULATION, WHICH, AGAIN,

9   LIMITS HER RECOVERY TO A REFUND OF THE EXPEDITED FEE.

10         AND IN OUR PAPERS WE CITE THE ANALOGOUS CASE,

11  *GRIFFIN VERSUS UNITED STATES*, WHERE A SERVICEMAN SUBMITTED A

12  SUGGESTION TO HIS AGENCY, AND BY STATUTE, IF THE SUGGESTION WAS

13  ADOPTED BY THE AGENCY, HE COULD BE ENTITLED TO A BONUS.  THE

14  STATUTORY CAP ON SUCH BONUSES IS $25,000.  THE PLAINTIFF IN

15  THAT CASE RECEIVED APPROXIMATELY $8,900 FOR HIS SUGGESTION.  HE

16  CLAIMED THAT THAT WAS A VIOLATION OF THE REG AND THAT THE

17  AGENCY HAD ACTED ARBITRARILY AND CAPRICIOUSLY.

18         WHILE THE COURT FOUND THERE WAS A CONTRACT CLAIM

19  BASED ON THE LANGUAGE OF THE STATUTE AND THAT HE WAS ENTITLED

20  TO PURSUE A CONTRACT CLAIM, THAT ANY RECOVERY WOULD BE LIMITED

21  BY THE 25,000 CAP IN THE STATUTE.

22         SIMILARLY, HERE, IF MS. CHATTLER INTENDS TO RELY

23  EITHER ON LANGUAGE IN THE WEBSITE OR ON THE REGULATION, HER

24  RECOVERY IS LIMITED BY WHAT THE REGULATION PROVIDES, WHICH IS

25  THAT SHE'S ONLY ENTITLED TO A REFUND OF HER EXPEDITED FEE IF

1 THE GOVERNMENT FAILS TO PROVIDE THE SERVICE AS SET FORTH IN ITS

2 EXPEDITED REGULATIONS.

3         HERE, THE EXPEDITED SERVICE IS DEFINED IN 22 CFR

4 51.66, AND IF IT TURNS OUT THAT SHE FAILED TO RECEIVE THAT

5 SERVICE, HER ENTITLEMENT AS A MATTER OF LAW IS LIMITED TO A

6 REFUND OF THE FEE.

7         SO, FOR THOSE REASONS, WE'VE ASKED THE COURT TO

8 DISMISS, TO THE EXTENT SHE IS SEEKING MORE THAN HER REFUND, ON

9 GROUNDS OF LACK OF JURISDICTION.  SHE SIMPLY FAILED TO IDENTIFY

10 ANY STATUTE OR REGULATION THAT ENTITLED HER TO THOSE TYPES OF

11 DAMAGES.

12         AND TO THE EXTENT YOUR HONOR IS INCLINED TO ACCEPT

13 HER ALLEGATIONS AS TO A CONTRACT, THOSE AGAIN WOULD BE

14 CIRCUMSCRIBED BY THE REGULATION, WHICH, AS I HAVE SAID, LIMITS

15 THE RECOVERY, AND THE *GRIFFIN* CASE THAT WE'VE CITED IS VERY

16 ANALOGOUS TO THE SITUATION HERE.

17         AND I SHOULD ALSO POINT OUT THAT THE SUPREME COURT

18 IN BOTH *TESTAN VERSUS UNITED STATES* AND IN THE *ARMY AND AIR*

19 *FORCE EXCHANGE SERVICE VERSUS SHEEHAN* CASE HAS INDICATED THAT

20 YOU CAN'T CIRCUMSCRIBE THE REQUIREMENT OF HAVING EXPLICIT

21 AUTHORIZATION FOR DAMAGES BY CLAIMING THAT A REGULATION THAT

22 SIMPLY DOESN'T PROVIDE THOSE DAMAGES, INSTEAD IT FORMS A

23 CONTRACT.  THAT'S WHAT PLAINTIFF HERE HAS ATTEMPTED TO DO, GET

24 AROUND HER SIXTY DOLLAR LIMITATION ON ANY RECOVERY.

25         SO UNLESS YOUR HONOR HAS ADDITIONAL QUESTIONS, I

1  WILL TURN TO THE REFUND CLAIM.

2      **THE COURT:**  OKAY.

3      **MS. COLEMAN SNEAD:**  WE'VE ALSO ASKED THE COURT AS A

4  PRUDENTIAL MATTER TO DISMISS HER CLAIM FOR A REFUND BECAUSE THE

5  DEPARTMENT HAS A PROCESS IN PLACE TO ADDRESS CLAIMS FOR REFUNDS

6  AND THAT PROCESS, LIKE OTHER GOVERNMENT AGENCIES, IS --

7  THROUGHOUT THE FEDERAL GOVERNMENT IS INITIATED BY A REQUEST FOR

8  REFUND BY THE PARTICULAR APPLICANT.  HERE THAT REQUEST SIMPLY

9  HAS TO PROVIDE NAME, DATE OF BIRTH, AND THE APPROXIMATE TIME

10 THAT THE PASSPORT APPLICATION WAS SUBMITTED.

11      AND AT THE TIME IT WAS SUBMITTED ON -- BRIEFING THE

12 PROCESS, FROM THE TIME THAT THE APPLICATION FOR A REFUND TO THE

13 ISSUANCE OF THE CHECKS WAS ROUGHLY SIX WEEKS.  AND MS. CHATTLER

14 TO DATE HAS REFUSED TO INVOKE THAT PROCESS AND ASKS THIS COURT

15 TO DENY OUR MOTION TO DISMISS ON PRUDENTIAL EXHAUSTION GROUNDS

16 BECAUSE THE PROCESS IS, IN HER OPINION, FUTILE AS WELL AS

17 INADEQUATE.

18      ADDRESSING FIRST HER FUTILITY ARGUMENT, ONE OF THE

19 BASES FOR THAT IS, IT APPEARS, THAT SHE'S CLAIMING THAT BECAUSE

20 THE DEPARTMENT WON'T PAY FOR A SPECIAL AND CONSEQUENTIAL

21 DAMAGES, THAT, IN FACT, THE PROCESS IS INADEQUATE.  OUR

22 POSITION IS SHE'S NOT ENTITLED TO THAT AS A MATTER OF LAW.  SO

23 WHETHER OR NOT THE ADMINISTRATIVE PROCESS ALLOWS FOR SUCH, IT

24 IS IRRELEVANT AS FAR AS THAT CLAIM IS CONCERNED BECAUSE SHE'S

25 NOT ENTITLED TO THOSE DAMAGES AS A MATTER OF LAW.  SO THE ISSUE

1   IS REALLY WHETHER OR NOT IT'S FUTILE AS TO HER CLAIM FOR A

2   REFUND.

3           THE DEPARTMENT HAS STATED PUBLICLY, AS WELL AS IN

4   THE PAPERS HERE, THAT IT CONSIDERS REQUESTS FOR REFUND ON A

5   CASE-BY-CASE BASIS, SUGGESTING THAT IT HAS NOT PREJUDGED ANY

6   APPLICANT'S REQUEST FOR A REFUND, AND CERTAINLY HASN'T IN

7   MS. CHATTLER'S CASE.  SHOULD SHE CHOOSE TO AVAIL HERSELF OF THE

8   PROCESS, IT WILL BE CONSIDERED, AS ALL THE OTHER REQUESTS ARE.

9           HER SECOND ARGUMENT IS THAT THE ADMINISTRATIVE

10  PROCESS IS INADEQUATE.  AGAIN, THOSE ARE BASED PURELY ON

11  SPECULATION AND NOT BECAUSE SHE HAS, IN FACT, ATTEMPTED TO

12  INVOKE THAT PROCESS, ALTHOUGH, GIVEN THE OPPORTUNITY TO DISPUTE

13  OUR CLAIM THAT SHE HAS NOT INVOKED THAT PROCESS, SHE SUBMITTED

14  A DECLARATION WHICH MAKES CLEAR THAT SHE'S NOT.

15          SHE'S INDICATED THAT AT THE TIME THAT SHE APPLIED

16  FOR HER APPLICATION, THAT THERE WAS NO INFORMATION ABOUT THE

17  REFUND AVAILABLE TO HER, AND THE COMPLAINT ALLEGATIONS, AS WELL

18  AS HER DECLARATION, INDICATES THAT SHE APPLIED FOR HER

19  APPLICATION AROUND JUNE 11TH OF THIS YEAR AND FILED A COMPLAINT

20  ON OR ABOUT AUGUST 7.  AND HER MOST RECENT PAPER FILED ON THE

21  18TH CLEARLY INDICATES THAT IN JUNE OF THIS YEAR, THE

22  DEPARTMENT ON ITS WEBSITE HAD INFORMATION ABOUT THE REFUND.  SO

23  HER DECLARATION TO THIS COURT IS INCONSISTENT WITH HER OWN

24  ALLEGATIONS REGARDING WHEN INFORMATION WAS AVAILABLE ABOUT HER

25  REFUND.

1        SO AS TO MS. CHATTLER, SHE'S MADE NO ATTEMPT TO

2    AVAIL HERSELF OF THE PROCESS THAT THE DEPARTMENT HAS IN PLACE

3    THAT HAS BEEN WORKING, CONTINUES TO PROCESS REFUNDS, AND SHOULD

4    SHE DO SO, WOULD CERTAINLY PROCESS IT IN A MORE EXPEDIENT

5    FASHION THAN LITIGATING THE CLAIMS WOULD.

6        IN ADDITION, SHE SUBMITTED DECLARATIONS OF TWO OTHER

7    INDIVIDUALS WHO CLAIM TO HAVE REQUESTED REFUNDS, AND, AGAIN,

8    THOSE DECLARATIONS FAIL TO SUBSTANTIATE HER CLAIMS OF

9    INADEQUACY.

10        ONE OF THE DECLARATIONS, ALTHOUGH THE INDIVIDUAL

11    INDICATES THAT SHE SUBMITTED AN E-MAIL REQUEST FOR A REFUND,

12    WHEN YOU LOOK AT THE E-MAIL THAT SHE'S ATTACHED, IT'S VERY

13    CLEAR SHE SUBMITTED A STATUS INQUIRY TO THE NATIONAL PASSPORT

14    INFORMATION CENTER.  AND ON THE DEPARTMENT'S WEBSITE, THE

15    OFFICE THAT RECEIVES THE REFUND REQUEST, THEIR E-MAIL ADDRESS

16    IS NOT THE SAME AS NATIONAL PASSPORT CENTER.  IN FACT, THE

17    E-MAIL THAT THIS DECLARANT SUBMITTED NOWHERE REFERENCES THAT

18    SHE'S SEEKING A REFUND.  SHE SIMPLY IS INQUIRING ABOUT THE

19    STATUS OF HER APPLICATION.

20        ON THE DEPARTMENT'S WEBSITE THE E-MAIL FOR PASSPORT

21    REFUNDS IS REFUNDSATPASSPORTSERVICES@STATE.GOV.  HER E-MAIL WAS

22    ADDRESSED TO NPIC@STATE.GOV, TWO COMPLETELY DIFFERENT OFFICES.

23    SO, AGAIN, THERE'S NO SUBSTANTIATION TO HER CLAIM THAT THE

24    PROCESS IS INADEQUATE.  MS. HUMPHREY, LIKE MS. CHATTLER, HAS

25    NOT INVOKED THE DEPARTMENT'S REFUND PROCESS.

1    THE LAST DECLARANT, MR. ANDRE, INDICATES THAT HE

2   SENT IN FOUR LETTERS.  HE NEGLECTED TO DESCRIBE ANY OF THE

3   CONTENTS OF THE LETTERS, TO WHOM HE SENT IT, WHETHER, IN FACT,

4   HE WAS REQUESTING A REFUND OF THE EXPEDITED FEE OR A DIFFERENT

5   FEE.  BY LAW THE PASSPORT EXECUTION, PROCESSING AND SECURITY

6   FEES ARE NOT REFUNDABLE.

7    SO, AGAIN, ON THE CURRENT RECORD, THIS COURT CAN'T

8   MAKE THE DETERMINATION THAT ANY OF THE PLAINTIFFS OR PURPORTED

9   CLASS MEMBERS HAVE ATTEMPTED TO INVOKE THE PROCESS.  BOTH THE

10  PARTIES HAVE CITED CASES FROM THE NINTH CIRCUIT WHERE THEY

11  REJECTED ADEQUACY CLAIMS WHERE THE PLAINTIFF FAILED TO INVOKE

12  THE PROCESS, MADE ANY ATTEMPT WHATSOEVER.

13    HERE MS. CHATTLER IS CRITICIZING A SYSTEM THAT SHE'S

14  NOT INVOKED, AND WE'VE SUBMITTED A DECLARATION BY DEPUTY

15  ASSISTANT SECRETARY THAT MAKES CLEAR THAT THE PROCESS HAS BEEN

16  WORKING.  THEY HAVE BEEN ISSUING REFUNDS AND CONTINUE TO ISSUE

17  REFUNDS, AND WE WOULD ASK THE COURT TO DISMISS ON PRUDENTIAL

18  GROUNDS HER CLAIM FOR A REFUND SO THAT SHE, TOO, COULD AVAIL

19  HERSELF OF THAT PROCESS AND PERHAPS OBVIATE THE NEED TO

20  LITIGATE HER REFUND CLAIM, BECAUSE SHE -- IF THE DEPARTMENT

21  DETERMINES THAT SHE, IN FACT, PAID FOR THE SERVICE AND FAILED

22  TO RECEIVE THE SERVICE AS DEFINED IN THE REGULATIONS, THEN SHE

23  WOULD BE ISSUED HER REFUND AND THERE WOULD BE NO NEED TO

24  LITIGATE HER CLAIM OR ANY OF THE OTHER CLASS MEMBERS' CLAIMS

25  WHO CHOSE TO AVAIL THEMSELVES OF THE PROCESS.

1        **THE COURT:** OKAY. THANK YOU. MR. SCARLETT.

2        **MR. CAREY:** MR. CAREY.

3        **THE COURT:** MR. CAREY. SORRY.

4        **MR. CAREY:** THANK YOU, YOUR HONOR.

5        ESSENTIALLY, THERE'S TWO POINTS, I THINK. ONE,

6    THEY'VE CONCEDED A NUMBER OF THINGS THAT ARE IMPORTANT HERE.

7    THEY'VE CONCEDED THE CONTRACT ELEMENTS ARE PLED CORRECTLY.

8    THEY'VE CONCEDED, ESSENTIALLY, PLAINTIFF'S ENTIRE SCHEME OF HOW

9    THE LAW WORKS. THEY CONCEDED THAT THE OBLIGATION IS A

10   THREE-DAY OBLIGATION. THEY CONCEDED THEY OWE A REFUND IF IT'S

11   NOT PROCESSED WITHIN THREE DAYS. THEY'VE CONCEDED THAT THEY

12   PAY REFUNDS BUT ONLY UPON A REQUEST.

13       AND SO TO GET FROM WHERE WE ARE TODAY WITH THE

14   COMPLAINT PENDING TO AN ARGUMENT THAT THIS SHOULD BE DISMISSED,

15   THEY DO TWO THINGS. THEY COMPLETELY TRAMPLE PLAINTIFF'S

16   CONTRACT CLAIMS, EITHER WITH SOME CLEVER LAWYERING OR SOME

17   SKEWED INTERPRETATIONS OF THE CASES, THEY COME UP WITH AN

18   ARGUMENT THAT IN A REGULATION THAT SAYS, YOU MUST REFUND THIS

19   IF THE PROCESSING DOESN'T TAKE PLACE IN THREE DAYS, SOMEHOW

20   THAT GUTS A PLAINTIFF'S COMMON LAW CONTRACT RIGHTS OR FEDERAL

21   CONTRACT RIGHTS AND LEAVES THEM WITH THE SOLE REMEDY OF THE

22   SIXTY DOLLARS.

23       I FOUND IT INTERESTING THIS MORNING WHEN I WAS

24   LOOKING AT THEIR REPLY BRIEF, ON PAGE 14 OF IT THEY CITE ALL OF

25   THEIR EXAMPLES OF REFUND OBLIGATIONS IN THE LAW THAT I PRESUME

1  THAT THEY COULD FIND, AND EVERY SINGLE ONE OF THEM SAYS -- IT

2  SHALL BE -- THE REFUND SHALL BE GIVEN IF A REQUEST IS MADE OR A

3  MANDATORY REFUND UPON REQUEST.  THIS IS THEIR RESEARCH, AND

4  THEY'VE POINTED OUT A DOZEN REFUND OBLIGATIONS, EACH OF WHICH

5  REQUIRES A REQUEST.

6          SO, IN OTHER WORDS, THE REFUND OBLIGATION IN THE

7  PASSPORT SITUATION IS THE STRONGEST MANDATED REFUND YOU CAN

8  FIND BECAUSE IT DOESN'T REQUIRE A REQUEST.  IT'S NOT A

9  PERMISSIVE REMEDY; IT HAS TO BE DONE.

10         SO, HOW DO THEY GET FROM --

11         **THE COURT:**  COULD YOU JUST SAY THAT AGAIN?

12         **MR. CAREY:**  THE REFUND IN THE REGULATION AT ISSUE IN

13  THIS CASE IS THE STRONGEST --

14         **THE COURT:**  BECAUSE?

15         **SPEAKER1:**  -- MOST MANDATORY REFUND YOU COULD HAVE

16  OF ALL THE ONES THEY COULD FIND BECAUSE IT SIMPLY SAYS, THE

17  PASSPORT AGENCY, IF THEY DO NOT DO IT WITHIN THREE DAYS, SHALL

18  OR WILL PAY A REFUND, NOT UPON REQUEST, NOT AT THE REQUEST OF

19  THE APPLICANT.  YOU SHALL DO IT, PERIOD.  NONE OF THE OTHER

20  REFUND OBLIGATIONS THEY CITE SAY ANYTHING CLOSE TO THAT.  THEY

21  ALL MAKE IT A PERMISSIVE REMEDY AND UPON APPLICATION.

22         I WOULD NOTE, SINCE I AM GOING TO COME INTO THAT A

23  LITTLE EARLIER WHEN WE TALK ABOUT THE CONTRACT CLAIMS, SHE

24  ESSENTIALLY HAS FOUR, MS. CHATTLER.  SHE HAS THE COVENANT OF

25  GOOD FAITH AND FAIR DEALING CLAIM, WHICH IS IMPLICIT IN EVERY

1    FEDERAL CONTRACT.  SHE HAS THE ARGUMENT THAT IT SHOULD HAVE

2    BEEN DONE DOOR TO DOOR IN 21 DAYS OR LESS.  AND SHE HAS THE

3    THREE-DAY PROCESSING CONTRACT CLAIM.  SO THERE ARE THREE

4    CONTRACT CLAIMS, PLUS THE MONEY MANDATING REGULATION CLAIM.

5           JUST TO BE CLEAR ON THE 21 DAY AND THREE DAYS,

6    BECAUSE THE GOVERNMENT CONFLATES THE TWO AT TIMES FOR THEIR OWN

7    PURPOSES, THE 21-DAY CLAIM IS DOOR TO DOOR.  THE THREE DAY IS

8    THEIR INTERNAL PROCESSING TIME.  SO THE PLAINTIFF OR ANY OTHER

9    APPLICANT WOULD HAVE NO IDEA HOW LONG IT TOOK AND WHETHER THAT

10   OBLIGATION WAS SATISFIED.  THE THREE DAYS OCCURS SOMEWHERE IN

11   BETWEEN WHEN THE PASSPORT IS ENTIRELY WITHIN THE POSSESSION OF

12   THE U.S. GOVERNMENT PASSPORT OFFICE, AND THE PLAINTIFF WOULD

13   HAVE NO IDEA WHETHER THEY DID IT IN THREE DAYS, FOUR DAYS,

14   EIGHT DAYS, UNLESS YOU DID A FOIA AND WROTE THEM AND ASKED THEM

15   AND THEY VOLUNTARILY GAVE IT UP, THEY HAVE NO IDEA.

16           IN THE FEDERAL REGISTER, TALKING ABOUT THE REFUND

17   ISSUES, THEY SAY, FIRST, THAT THE DEPARTMENT HAS DISCRETION

18   WHETHER OR NOT TO ACCEPT THE SIXTY DOLLARS.  IF THEY DON'T

19   THINK THEY CAN DO IT, THEY DON'T HAVE TO TAKE THE FEE,

20   PRESUMPTION BEING YOU WILL BE ABLE TO DO IT.  BUT IT SAYS THIS,

21   IT'S A VERY RARE CIRCUMSTANCE IN WHICH IT WON'T BE MET.

22           WELL, THEIR OWN BARRETT DECLARATION SHOWS THOUSANDS

23   OF PEOPLE DID NOT GET THE PROCESSING THAT THEY WERE ENTITLED

24   TO, THE THREE-DAY PROCESSING, THOUSANDS OF PEOPLE.  THEY DON'T

25   SAY HOW MANY APPLIED FOR REFUNDS, BUT NO ONE KNOWS ABOUT

1    WHETHER OR NOT THEY GOT THE THREE-DAY PROCESSING BECAUSE THE

2    INFORMATION IS ENTIRELY IN THEIR CONTROL, AND THEY'VE NEVER

3    TOLD ANYBODY.

4           BUT I WOULD SAY -- I POINT OUT THAT THE FEDERAL

5    REGISTER SAYS IN SUCH CIRCUMSTANCES, MEANING WHEN THE THREE-DAY

6    PROCESS IS NOT MET, THE APPLICANT WILL BE NOTIFIED AND THE FEE

7    WILL BE REFUNDED.  THAT'S NOT HAPPENING, YOUR HONOR.

8           AND WHAT THEY'RE DOING INSTEAD IS THEY'RE SAYING

9    THAT, WELL, THE CONTRACT CLAIM SPRINGS FROM THE REGULATION,

10   AND, SECONDARILY, YOU CAN'T HAVE A CONTRACT CLAIM BASED ON THE

11   REGULATION, AND BOTH OF THOSE ARE FALSE.

12          FIRST, THEY HAVE IT BACKWARDS.  THE CONTRACT AT

13   ISSUE HERE OCCURRED WHEN THE PERSON FILLED OUT THE APPLICATION

14   WHERE IT SAYS ON THERE, WE WILL PROVIDE THIS TO YOU WITHIN

15   THREE WORK DAYS IF YOU PAY US SIXTY DOLLARS.  IT'S EXPRESS.

16   IT'S IN THERE.  IT'S WRITTEN ON THEIR DOCUMENTS.  ALL OF THE

17   OTHER POLICIES, PROCEDURES, WEBSITE STATEMENTS SAY YOU'LL GET

18   IT WITHIN ABOUT TWO WEEKS, AND THEY USE THAT TERM.

19          THEY USE THE "ABOUT TWO WEEKS" TO DIVINE WHO SHOULD

20   GET A REFUND.  THEY SAY IT IN THEIR BRIEFS.  THEY SAY, WELL,

21   IT'S WORKING GREAT BECAUSE PEOPLE WHO DIDN'T GET THEIR PASSPORT

22   WITHIN 21 DAYS ARE GETTING THEIR REFUNDS IF THEY REQUEST.

23          THEY SAY NOTHING ABOUT THE THREE DAYS.  THEY DON'T

24   MENTION IT ON THE WEBSITE.  THEY DIDN'T MENTION IT IN THE

25   BRIEFS UNTIL WE RAISED IT.

1          SO YOU HAVE A CONTRACT THAT CAME ABOUT FROM THE

2   EXPRESS TRANSACTION OF THE PARTIES, AND THEIR POSITION IS THAT

3   THIS REGULATION THAT SAYS YOU SHALL PAY A REFUND SOMEHOW GUTS

4   THEIR CONTRACT RIGHTS AND MEANS THAT ALL THEY CAN GET, DESPITE

5   AMPLE CASE LAW SAYING THE CONTRACT REMEDIES APPLY, THAT THOSE

6   ARE GUTTED AND YOU ONLY GET THE SIXTY DOLLARS.

7          THE CONTRACT CLAIMS WILL GO FORWARD.  I BELIEVE THE

8   COVENANT OF GOOD FAITH AND FAIR DEALING WOULD GO FORWARD.  THE

9   21-DAY CLAIM WOULD GO FORWARD.  THE THREE-DAY CLAIM WOULD GO

10  FORWARD UNLESS THE COURT DETERMINED THAT THE REGULATION WITH

11  SKIMPY LANGUAGE GUTTED CONTRACT RIGHTS.

12          AND THE MONEY MANDATING REGULATION -- LET ME SAY

13  THIS ABOUT THE TEST.  SHE SAID IT REQUIRES EXPRESS

14  SPECIFICATION OR EXPRESS STATEMENT, OR SOMETHING LIKE THAT.

15  WELL, THE *TESTAN* CASE DOESN'T SAY THAT.  IT SAYS THE OPPOSITE.

16  IT SAYS ONLY WHEN THERE'S A SITUATION IT IS CLEAR YOU DON'T

17  HAVE A RIGHT TO DAMAGE DO YOU NEED SOME HERE LEVEL OF

18  EXPLICITNESS.

19          WELL, HERE THE REGULATION WAS PUT IN PLACE TO GO

20  HAND IN HAND WITH THE CONTRACT THAT THEY KNEW WAS GOING TO BE

21  FORMED.  SO WHY THEY WOULD UNDERSTAND YOU HAVE CONTRACT RIGHTS

22  OUT THERE AND PUT IN PLACE A REGULATION THAT WITH VERY SKIMPY

23  LANGUAGE GUTS IT, MAKES LITTLE SENSE.

24          WHAT MAKES MORE SENSE IS THEY UNDERSTOOD THAT THEY

25  WERE PERMITTING AND FACILITATING THE CONTRACT TO HAVE THE

1  REGULATION BE PART OF THE CONTRACT, WHICH THE *SHEEHAN* CASE THEY

2  RELY SO HEAVILY ON SAYS THE EXACT SAME THINGS, SAYS THERE ARE

3  CONTRACTS OUT THERE WHERE A REGULATION BECOMES INCORPORATED

4  INTO THE CONTRACT, AND THAT'S WHAT'S HAPPENED HERE.  SO SHE'LL

5  ALWAYS HAVE HER CONTRACT RIGHTS.  I DON'T BELIEVE THERE'S ANY

6  MERIT TO THAT.

7          LET ME TURN TO THE PRUDENTIAL EXHAUSTION.  IN THEIR

8  MOTION, THEIR REPLY, AND NOW AT ORAL ARGUMENT, THEY HAVE

9  UNIFORMLY AND CATEGORICALLY IGNORED THE *MONTES* FACTORS.

10 THEY'VE NEVER ADDRESSED THEM, NOT EVEN AT ORAL ARGUMENT, YET

11 THEY CONCEDE THEY ARE THE PREVAILING STANDARD.  IT'S IN THEIR

12 BRIEF.  THEY CONCEDE IT'S THE STANDARD.

13          I HAVEN'T HEARD ONE WORD ON ANY OF THOSE FACTORS,

14 NOT ONE THING ABOUT WHAT EXPERTISE IS NEEDED HERE, NOTHING

15 ABOUT BYPASSING THE AVAILABLE REMEDY, NOTHING ABOUT PRECLUDING

16 JUDICIAL REVIEW, NOTHING ABOUT ANYTHING, AND THAT SHOULD BE

17 VERY TELLING TO THIS COURT.

18          WHAT THEY SAY INSTEAD IS, WELL, SHE COULD GO DO

19 THIS, AND THEN THEY INCORPORATE THE WRITTEN REFUND OBLIGATION,

20 AND THEY SAY IT'S A WRITTEN REFUND OUT OF WHOLE CLOTH,

21 NOTWITHSTANDING EVERYTHING THEY CITE HAS DIFFERENT LANGUAGE IN

22 IT, AND THE BOTTOM LINE IS THEY HAVE STATED THEY'RE NOT

23 CHANGING ANYTHING.  THEY SAID IT'S WORKING VERY WELL.  THEY

24 SAID IT TODAY.  THE BARRETT DECLARATION SAYS IT.

25          IT'S WORKING ONLY VERY WELL IF YOU ARE ONLY PAYING

1  PEOPLE WHO FIGURE THIS OUT.  IT'S NOT WORKING VERY WELL WHEN

2  YOU SAY, I'M IN A PROPRIETARY FUNCTION, I AM GETTING

3  COMPENSATING FINANCIAL BENEFIT FOR THIS SERVICE, I AM THE ONLY

4  ONE WITH KNOWLEDGE OF WHETHER I MET MY OBLIGATION UNDER THE

5  CONTRACT, I HAVE CHOSEN TO INTERPRET IT TO REQUIRE A WRITTEN

6  REFUND TO PAY ANYTHING, AND I'M STILL NOT GOING TO NOTIFY THOSE

7  PEOPLE EVEN THOUGH THAT'S WHAT WE SAID WE'D DO.  IT'S WORKING

8  GREAT IF EVERYBODY WHO CAN'T FIGURE IT OUT DOESN'T GET PAID, IF

9  THAT'S YOUR GOAL.

10        AND IT'S VERY TELLING IN THE BARRETT DECLARATION,

11  SHE SAYS, WE WOULD HAVE TO DIVERT RESOURCES FROM PEOPLE

12  PROCESSING PASSPORTS, PRESUMABLY WHICH INCLUDES SELLING MORE

13  EXPEDITING FEES, TO GO PAY THESE PEOPLE WHO WE TOOK THE

14  EXPEDITING FEES FROM.

15        IT MAKES NO SENSE, YOUR HONOR.  IT MAKES NO SENSE.

16  IT'S NOT A BETTER REMEDY.  IT IS NOT SUPERIOR.

17        IT WOULD MEAN JULIA CHATTLER COULD NOT USE RULE 23,

18  COULD NOT AFFECT SYSTEMIC CHANGES.  AND THE BOTTOM LINE IS THIS

19  CASE WILL GO FORWARD IN SOME PART EVEN IF YOU AGREE WITH THEM

20  ON THE SIXTY DOLLARS.

21        SO, ALL IN ALL, IT'S NOT A SUPERIOR REMEDY.  THE

22  _MONTES_ FACTORS ARE UNTOUCHED AND UNDISPUTED, AND BECAUSE OF

23  THAT, I WOULD SAY THE CLAIM SHOULD GO FORWARD AND THIS COURT

24  SHOULD DENY THEIR MOTION.

25        THANK YOU.

1          **THE COURT:**  THANK YOU.

2          DO YOU WISH TO RESPOND BRIEFLY?

3          **MS. COLEMAN SNEAD:**  SURE.  I JUST WANTED TO ADDRESS

4    SOME OF THE POINTS HE RAISED.

5          AS FAR AS THE PARTICULAR FACTORS, WE DO CITE THE

6    FACTORS.  WE INDICATED THAT THE REASON THE COURT SHOULD DISMISS

7    AS A PRUDENTIAL MATTER IS THAT PLAINTIFF IS ATTEMPTING TO

8    CIRCUMVENT AN ADMINISTRATIVE PROCESS THAT EXISTS, AND THAT BY

9    REQUIRING EXHAUSTION, IT MIGHT OBVIATE THE NEED TO LITIGATE THE

10   REFUND CLAIM, WHICH IS THE ONLY CLAIM OVER WHICH THIS COURT HAS

11   JURISDICTION, FOR THE REASONS THAT WE'VE ALREADY DISCUSSED.

12         AS TO THE VARIOUS CONTRACTS THAT HE CLAIMS TO EXIST,

13   THERE IS WELL-ESTABLISHED RULE OF LAW THAT THE LANGUAGE OF A

14   STATUTE OR REGULATION TRUMPS CONTRACTS.  YOU CAN'T FORM A

15   CONTRACT THAT IS CONTRARY TO A STATUTE OR REGULATION.  HERE THE

16   REGULATION PROVIDES THAT, IN THE EVENT THE DEPARTMENT FAILS TO

17   PROVIDE EXPEDITED SERVICE AS DEFINED IN ITS REGULATION, NOT

18   WITHIN 21 DAYS AS DESCRIBED IN VARIOUS NEWSPAPER ARTICLES THAT

19   PLAINTIFF HAS CITED.  IT'S KEYED TO LANGUAGE IN THE REGULATION,

20   SPECIFICALLY 22 CFR 51.66.  THAT'S WHAT EXPEDITED PROCESSING

21   MEANS.  AND IF THE DEPARTMENT FAILS TO PROVIDE THAT SERVICE,

22   THE REFUND -- THE APPLICANT IS ENTITLED TO A REFUND.

23         MR. CAREY HAS QUESTIONED THE NEED TO SUBMIT A

24   REQUEST FOR A REFUND AS OPPOSED TO HAVING IT AUTOMATICALLY.

25   THE REGULATION NOWHERE IN 51.66 SAYS ANYTHING ABOUT -- OR 51.63

1  SAYS ANYTHING ABOUT THE REFUND BEING AUTOMATIC.

2        AS THE BARRETT DECLARATION INDICATES, IT'S PROVED TO

3  BE EFFICIENT TO RELY ON APPLICANTS TO SUBMIT A REFUND REQUEST

4  SO THAT THE INFORMATION HAS -- WITH REGARD TO CURRENT CONTACT

5  INFORMATION CAN BE SOUGHT IN THE DEPARTMENT'S RECORDS AND A

6  DETERMINING CAN OFFICIALLY BE MADE WHETHER OR NOT THE PERSON IS

7  ENTITLED TO AN APPLICANT -- I'M SORRY -- TO A REFUND.

8        IN CONTRAST, 22 CFR 22.6, WHICH IS ANOTHER PROVISION

9  OF DEPARTMENT REGS REGARDING REFUNDS, AS TO REFUNDS UNDER FIVE

10  DOLLARS EXPLICITLY STATES THAT THERE THE REFUND IS AUTOMATIC.

11  SO IN ONE PLACE THE DEPARTMENT DOES ACKNOWLEDGE THAT CERTAIN

12  REFUNDS ARE AUTOMATIC.  IN THE EXPEDITED REFUND PROVISION,

13  THERE'S NO SUCH LANGUAGE, AND THE DEPARTMENT HAS SET UP A

14  PROCESS THAT WE'VE INDICATED HAS PROVED EFFICIENT FOR RETURNING

15  REFUNDS.

16        **THE COURT:**  DO YOU THINK THERE'S A CANDOR PROBLEM

17  HERE?

18        **MS. COLEMAN SNEAD:**  NO, YOUR HONOR.  THE AGENCY HAS

19  BEEN -- SINCE JUNE HAS MADE EFFORTS TO PUBLICIZE THE REFUND

20  PROCESS AND MAKE IT EASIER, FRANKLY, FOR APPLICANTS SUCH AS

21  MS. CHATTLER TO GET A REFUND.

22        THEY'VE SET UP THEIR WEBSITE SO YOU CAN NOW APPLY

23  DIRECTLY ON THE WEBSITE, AGAIN SUBMITTING BASIC INFORMATION:

24  NAME, DATE OF BIRTH, THE PASSPORT APPLICATION NUMBER IF YOU

25  HAVE IT, SO THAT THE PROCESS RETURNS REFUNDS MUCH MORE

1  EFFICIENTLY THAN IT USED TO.

2          PRIOR TO JUNE REFUND REQUESTS WERE SUBMITTED TO

3  PASSPORT AGENCIES FOR INITIAL PROCESSING AND THEN SENT ON TO

4  WASHINGTON.

5          THE AGENCY, AS A RESULT OF THE PROBLEMS THAT

6  OCCURRED FOLLOWING THE WESTERN HEMISPHERE INITIATIVE WHERE

7  THERE WERE DELAYS AND PEOPLE WERE NOT RECEIVING THE EXPEDITED

8  SERVICE AS SET FORTH IN REGULATIONS SET UP THIS PROCESS TO MAKE

9  IT EASIER FOR INDIVIDUALS LIKE MS. CHATTLER TO GET THE REFUND.

10          THERE HAVE BEEN NUMEROUS PUBLIC STATEMENTS BY AGENCY

11  OFFICIALS REGARDING THE AVAILABILITY OF THE REFUND.  THERE HAVE

12  BEEN NEWSPAPER ARTICLES ABOUT IT.  THERE'S BEEN NO EFFORT ON

13  THE AGENCY'S PART TO HIDE BEHIND THIS.  WE HAVE BEEN ATTEMPTING

14  TO MAKE IT EASIER FOR APPLICANTS TO GET THE REFUND IF THEY ARE

15  ENTITLED TO IT.

16          **THE COURT:**  HOW DO THEY KNOW IF THEY'RE ENTITLED TO

17  IT?

18          **MS. COLEMAN SNEAD:**  AS THE WEBSITE INDICATES, IF

19  INDIVIDUALS BELIEVE THAT THEY FAILED TO RECEIVE EXPEDITED

20  PROCESSING, THEY SUBMIT A REQUEST, AND THE AGENCY MAKES THE

21  DETERMINATION AS TO WHETHER OR NOT THEY RECEIVED THE EXPEDITED

22  PROCESSING AS SET FORTH IN THEIR REGULATION, AND IF IT TURNS

23  OUT THAT THEY DID NOT RECEIVE THAT SERVICE AND PAID THE FEE,

24  THEN A REFUND IS ISSUED TO THE APPLICANT.

25          **THE COURT:**  SO THE WAY THEY KNOW IS THEY ASK AND

1  THEN YOU GUYS TELL THEM?

2          **MS. COLEMAN SNEAD:**  THEY ASK.  THE WEBSITE PROVIDES

3  SOME GUIDANCE SO THAT PEOPLE MIGHT BE ABLE TO GAUGE WHETHER OR

4  NOT THEY RECEIVED EXPEDITED SERVICE.

5          AS MS. CHATTLER INDICATED, THE WEBSITE INDICATES

6  THAT IF YOU SUBMIT AN EXPEDITED PASSPORT APPLICATION, YOU CAN

7  EXPECT TO RECEIVE IT WITHIN ABOUT TWO TO THREE WEEKS.

8          FOR A PERSON LIKE MS. CHATTLER WHO ALLEGES THAT SHE

9  RECEIVED HER PASSPORT AFTER EIGHT WEEKS, THAT PUTS HER ON

10  NOTICE THAT SHE MAY NOT HAVE RECEIVED THE SERVICE THAT SHE PAID

11  FOR.  SHE CAN, AGAIN, SIMPLY GO TO THE WEBSITE, TYPE IN HER

12  INFORMATION, AND IF SHE'S ENTITLED TO A REFUND, THE DEPARTMENT

13  WILL REFUND IT.

14          THERE'S BEEN NO EFFORT BY THE DEPARTMENT TO AVOID

15  ITS OBLIGATION UNDER REGULATION.  INDIVIDUALS WHO HAVE

16  SUBMITTED REFUNDS AND A DETERMINATION HAS BEEN MADE THAT THEY

17  HAVEN'T RECEIVED THE SERVICE HAVE BEEN RECEIVING THEIR REFUND

18  CHECKS.

19          WHEN WE SUBMITTED OUR BRIEFS, THAT PROCESS IS TAKING

20  APPROXIMATELY SIX WEEKS.  THEY'VE ADDED ADDITIONAL PERSONNEL TO

21  RESPOND TO REFUND REQUESTS, SO IT'S TAKING JUST SHY OF TWO TO

22  THREE WEEKS FOR REFUND REQUESTS.

23          AGAIN, PLAINTIFF HAS PROVIDED NO EXPLANATION AS TO

24  WHY TO THIS DATE SHE REFUSES TO AVAIL HERSELF OF THAT PROCESS,

25  SO THAT IF SHE'S ENTITLED TO HER REFUND, SHE WOULD GET IT FAR

1   SOONER THAN SHE WOULD IF WE LITIGATE HER ENTITLEMENT TO IT.

2       **THE COURT:**  MAYBE THE DEPARTMENT SHOULD JUST GO

3   THROUGH, SINCE THE DEPARTMENT IS THE ONLY ONE WHO CAN TELL IF

4   THE THREE-DAY LIMIT WAS MET OR NOT MET -- THE PERSON WHO GOT

5   THE PASSPORT HAS NO WAY.  SO YOU SAY, WELL, IF YOU ASK, THEN

6   WE'LL LOOK AND WE'LL TELL YOU THE ANSWER TO YOUR QUESTION.

7   MAYBE THE DEPARTMENT SHOULD JUST GO THROUGH AND LOOK AT

8   EVERYBODY'S SINCE IT'S THE ONE WHO IS GOING TO BE DOING THIS

9   AND JUST SEND MONEY TO EVERYBODY WHOSE THREE-DAY LIMITS WERE

10  NOT MADE.

11      **MS. COLEMAN SNEAD:**  AS WE EXPLAINED IN THE BARRETT

12  DECLARATIONS, THERE ARE SOME RECORD LIMITATIONS THAT MAKE IT

13  NOT POSSIBLE FOR THE DEPARTMENT TO AUTOMATICALLY DETERMINE

14  WHO'S ENTITLED TO THE EXPEDITED REFUND.

15      THERE ARE PEOPLE WHO MAIL IN REQUESTS FOR EXPEDITED

16  SERVICE, AND THEY FAIL TO IDENTIFY ON THEIR ENVELOPE THAT IT'S

17  AN EXPEDITED SERVICE.  IN THEIR MINDS, THEY MAY BELIEVE THEY'VE

18  SUBMITTED AN EXPEDITED APPLICATION, BUT, IN FACT, THEY HAVE

19  NOT.

20      THERE ARE SOME PEOPLE WHO REQUEST EXPEDITED SERVICE

21  WHO FAIL TO PAY THE FEE.  AND, AGAIN, THE PARTICULAR

22  APPLICATION MAY APPEAR TO BE AN EXPEDITED APPLICATION BUT

23  BECAUSE THEY FAILED TO PAY THE FEE, THEY WOULD NOT BE ENTITLED

24  TO A REFUND.

25      AS THE DEPARTMENT'S RECORDS CURRENTLY EXIST, IT'S

1  JUST NOT POSSIBLE TO MAKE THE REFUND DETERMINATION

2  AUTOMATICALLY.  AND SO, AGAIN, THE DEPARTMENT, LIKE NUMEROUS

3  OTHER AGENCIES, RELIES ON REQUESTS TO INITIATE THE SEARCH TO

4  DETERMINE WHETHER OR NOT AN INDIVIDUAL IS ENTITLED TO A REFUND.

5          **THE COURT:**  IT'S NOT THEY COULDN'T.  YOU ARE JUST

6  SAYING THERE WOULD BE TOO MUCH WORK TO BE DONE, SO YOU WAIT TO

7  SEE WHO IS GOING TO APPLY, AND THEN YOU JUST CHECK THOSE

8  APPLICATIONS?

9          **MS. COLEMAN SNEAD:**  I'M SAYING THE AGENCY'S SYSTEM

10 IS NOT CURRENTLY SET UP TO ISSUE AUTOMATIC REFUNDS.

11          AND, AGAIN, WE WOULD POINT OUT THAT THE REGULATIONS

12 DON'T REQUIRE THAT THE REFUNDS BE AUTOMATIC.  WE ARE NOT

13 DISPUTING THAT IF YOU FAIL TO RECEIVE THE SERVICE, THAT YOU'RE

14 ENTITLED TO THE REFUND.  THERE IS A DISPUTE HERE AS TO HOW THE

15 REFUND SHOULD BE RETURNED.  THE AGENCY HAS A PROCESS THAT

16 RELIES ON REQUESTS FROM APPLICANTS.  PLAINTIFF WOULD PREFER AN

17 AUTOMATIC SYSTEM, BUT, AS WE POINTED OUT, NUMEROUS OTHER

18 GOVERNMENT AGENCIES RELY ON REQUESTS FROM APPLICANTS TO

19 INITIATE A REFUND PROCESS.

20          **THE COURT:**  OKAY.  I UNDERSTAND WHAT BOTH OF YOU

21 HAVE SAID.  I'LL TAKE A LOOK AT THIS AND GET YOU AN ORDER

22 SHORTLY.

23          DO WE HAVE A CASE MANAGEMENT CONFERENCE DATE YET?

24          **MS. COLEMAN SNEAD:**  YES, YOU CURRENTLY SET IT FOR

25 JANUARY 18TH.

1          **THE COURT:**  GOOD.  IN ANY EVENT, I'LL PROBABLY SEE

2   YOU JANUARY 18TH, BUT I'LL TRY TO GET BACK TO YOU WELL BEFORE

3   THEN.

4          **MS. COLEMAN SNEAD:**  THANK YOU, YOUR HONOR.

5          (PROCEEDINGS ADJOURNED.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 07-4040 SI, JULIA CHATTLER V. UNITED STATES, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

---

JOAN MARIE COLUMBINI, CSR 5435, RPR

THURSDAY, JANUARY 3, 2008

# Exhibit B

trans 13   vol II
reiss    6/15/99

# GUIDE TO JUDICIARY POLICIES AND PROCEDURES

## VOLUME II

## CODES OF CONDUCT FOR JUDGES AND JUDICIAL EMPLOYEES

May 1999

### § 3.1-6[1]    Amicus Curiae

(a)  For purposes of recusal decisions on a financial interest, an <u>amicus</u> <u>curiae</u> is not regarded as a party to the litigation.  Recusal is required if the interest of the judge could be substantially affected by the outcome of the proceedings or if the judge's impartiality might otherwise reasonably be questioned.  Advisory Opinion No. 63.

(b)  A judge should recuse from a case when judge's spouse is the executive director of an advocacy organization that has filed an <u>amicus curiae</u> brief before the court, unless the judge can obtain remittal of disqualification.

### § 3.1-6[2]    Fiduciary Capacity

(a)  A judge who owns stock in a bank is disqualified in litigation in which the bank is a party, even though the bank is acting in a fiduciary capacity in that litigation.  Recusal is under Canon 3C(1)(c) and therefore the remittal provisions of Canon 3D are not available.

(b)  Judges are not automatically disqualified when a spouse has a financial interest, in a fiduciary capacity only, in a party to a proceeding before the judge.

### § 3.1-6[3]    Official Capacity Suits

(a)  In some circumstances, an interest or personal relationship which would ordinarily be disqualifying is of no moment when a party is suing or being sued in his or her official capacity only.

(b)  Where a judge's spouse is an associate and a partner in the law firm is sued in an official capacity unrelated to the law firm, recusal is not required.

### § 3.1-6[4]    Class Actions

➤    Advisory Opinion No. 99 (judge's obligation to recuse where one party's attorney is involved in a separate class action in which the judge or a relative is a member of the class).

➤    Advisory Opinion No. 90 (judges' duty to inquire when relatives may be members of class action).

(a)  All members of the class are parties, whether named or unnamed, so long as they have not opted out of the class.

(b)  A judge who is a member of the plaintiff class challenging the applicability of FICA to federal judges need not recuse from other cases to which the United States government or an agency thereof (including the Social Security Administration) is a party.



trans 17  vol II
4/27/01

(c) If a judge or any person within the third degree of relationship remains a member of a class entitled to receive damages as a customer of a public utility, the judge should recuse. However, if the judge and such persons within the third degree of relationship opt out of the class, the judge is not required to recuse merely because of the judge's status as a utility customer, notwithstanding the possible beneficial effect on future utility bills, unless the savings as a customer might reasonably be considered to be substantial. In this case, 60 cents per month as of 1984 plus normal increases is not considered substantial. See Advisory Opinion No. 78.

(d) A judge's inclusion as a class member in a Rule 23(b)(2) class action seeking only injunctive and declaratory relief, in which a substantial segment of the general public are also members, does not require recusal, unless the judge has an interest in the action unique from that of members of the general public included in the class.

(e) A judge who opts out of the class need not recuse from a class action. Nor must the judge recuse where the court is a member of the class but any recovery will go to the general treasury and not the court.

(f) A judge who is a member of a large class action need not recuse when an attorney or law firm representing the class appears before the judge in other matters, where the judge is not a named plaintiff, had no role in selecting attorneys for the class, has no personal contact with attorneys for the class, and has no reasonable expectation of substantial recovery. Judges have no duty to inquire whether attorneys appearing before them represent members of a class in unrelated cases that may include the judge (or relatives).

## § 3.1-6[5]    Bankruptcy Proceedings

➤ Advisory Opinion No. 100 (identifying bankruptcy parties for purposes of recusal).

(a) For purposes of recusal decisions in bankruptcy proceedings, the following are deemed to be parties: the debtor, all members of a creditors committee, and all active participants in the proceeding; but merely being a scheduled creditor, or voting on a reorganization plan, does not suffice to constitute an entity a "party." Bankruptcy judges are expected to keep informed as to their investments in firms which are active participants in the proceeding, but ordinarily need not familiarize themselves with the scheduled creditors.

(a-1) Where the judge's sibling is an officer of a bank that is a member of the creditor's committee or active in the litigation, the judge must recuse under Canon 3C(1)(d)(i) (no remittal), but an officer of a bank advisory board is not an officer of the bank for these purposes. Nor is a member of a bank's community advisory board an officer of the bank.

(a-2) An accounting firm employed by a party is not a party in bankruptcy, and recusal is not required when a judge's third degree relative works for the firm unless the

# Exhibit C

uscourts.gov : Newsroom : Code of Conduct

### Chapter I. Code of Conduct for United States Judges

### CONTENTS

Introduction

Canon 1.    A Judge Should Uphold the Integrity and Independence of the Judiciary
Canon 2.    A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities
Canon 3.    A Judge Should Perform the Duties of the Office Impartially and Diligently
Canon 4.    A Judge May Engage in Extra-Judicial Activities To Improve the Law, the Legal System, and the Administration of Justice
Canon 5.    A Judge Should Regulate Extra-Judicial Activities To Minimize the Risk of Conflict with Judicial Duties
Canon 6.    A Judge Should Regularly File Reports of Compensation Received for Law-Related and Extra-Judicial Activities
Canon 7.    A Judge Should Refrain from Political Activity
Compliance with the Code of Conduct
Applicable Date of Compliance
Checklists for Financial and Other Conflicts of Interest (PDF)

CHAPTER I. CODE OF CONDUCT FOR UNITED STATES JUDGES[1]

### Introduction

This Code applies to United States Circuit Judges, District Judges, Court of International Trade Judges, Court of Federal Claims Judges, Bankruptcy Judges, and Magistrate Judges. Certain provisions of this Code apply to special masters and commissioners as indicated in the "Compliance" section. In addition, the Tax Court, Court of Appeals for Veterans Claims, and Court of Appeals for the Armed Forces have adopted this Code. Persons to whom the Code applies must arrange their affairs as soon as reasonably possible to comply with the Code and should do so in any event within one year of appointment.

The Judicial Conference has authorized its Committee on Codes of Conduct to render advisory opinions concerning the application and interpretation of this Code only when requested by a judge to whom this Code applies. Requests for opinions and other questions[2] concerning this Code and its applicability should be addressed to the Chairman of the Committee on Codes of Conduct as follows:

> Chairman, Committee on Codes of Conduct
> c/o General Counsel
> Administrative Office of the
> United States Courts
> One Columbus Circle, N.E.
> Washington, D.C. 20544
> (202) 502-1100

### CODE OF CONDUCT FOR UNITED STATES JUDGES[3]

### CANON 1

### A JUDGE SHOULD UPHOLD THE INTEGRITY
### AND INDEPENDENCE OF THE JUDICIARY

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

### COMMENTARY

Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they should comply with the law, as well as the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.

The Canons are rules of reason. They should be applied consistent with constitutional requirements, statutes, other court rules and decisional law, and in the context of all relevant circumstances. The Code is to be construed so as not to impinge on the essential independence of judges in making judicial decisions.

The Code is designed to provide guidance to judges and nominees for judicial office. The Code may also provide standards of conduct for application in proceedings under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 (28 U.S.C. §§ 332(d)(1), 372(c)), although it is not intended that disciplinary action would be appropriate for every violation of its provisions. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable application of the text and should depend on such factors as the seriousness of the violation, the intent of the judge, whether there is a pattern of improper activity, and the effect of the improper activity on others or on the judicial system. Many of the proscriptions in the Code are necessarily cast in general terms, and it is not suggested that disciplinary action is appropriate where reasonable judges might be uncertain as to whether or not the conduct is proscribed. Furthermore, the Code is not designed or intended as a basis for civil liability or criminal prosecution. Finally, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding.

## CANON 2

### A JUDGE SHOULD AVOID
### IMPROPRIETY AND THE APPEARANCE
### OF IMPROPRIETY IN ALL ACTIVITIES

A. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not lend the prestige of the judicial office to advance the private interests of others; nor convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.

C. A judge should not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion, or national origin.

### COMMENTARY

**Canon 2A.** Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly. The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge. Because it is not practicable to list all prohibited acts, the proscription is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules or other specific provisions of this Code. The test for appearance of impropriety is whether the conduct would create in reasonable minds, with knowledge of all the relevant circumstances that a reasonable inquiry would disclose, a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired.

**Canon 2B.** The testimony of a judge as a character witness injects the prestige of the judicial office into the proceeding in which the judge testifies and may be misunderstood to be an official testimonial. This Canon, however, does not afford the judge a privilege against testifying in response to an official summons. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.

A judge should avoid lending the prestige of judicial office for the advancement of the private interests of the judge or others. For example, a judge should not use the judge's judicial position to gain advantage in litigation involving a friend or a member of the judge's family. In contracts for publication of a judge's writings, a judge should retain control over the advertising to avoid exploitation of the judge's office.

A judge should be sensitive to possible abuse of the prestige of office. A judge should not initiate the communication of

information to a sentencing judge or a probation or corrections officer but may provide to such persons information in response to a formal request. Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration, and by responding to official inquiries concerning a person being considered for a judgeship.

**Canon 2C.** Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired. Canon 2C refers to the current practices of the organization. Whether an organization practices invidious discrimination is often a complex question to which judges should be sensitive. The answer cannot be determined from a mere examination of an organization's current membership rolls but rather depends on how the organization selects members and other relevant factors, such as that the organization is dedicated to the preservation of religious, ethnic or cultural values of legitimate common interest to its members, or that it is in fact and effect an intimate, purely private organization whose membership limitations could not be constitutionally prohibited. See New York State Club Ass'n. Inc. v. City of New York, 487 U.S. 1, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988); Board of Directors of Rotary International v. Rotary Club of Duarte, 481 U.S. 537, 107 S. Ct. 1940, 95 L. Ed. 2d 474 (1987); Roberts v. United States Jaycees, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). Other relevant factors include the size and nature of the organization and the diversity of persons in the locale who might reasonably be considered potential members. Thus the mere absence of diverse membership does not by itself demonstrate a violation unless reasonable persons with knowledge of all the relevant circumstances would expect that the membership would be diverse in the absence of invidious discrimination. Absent such factors, an organization is generally said to discriminate invidiously if it arbitrarily excludes from membership on the basis of race, religion, sex, or national origin persons who would otherwise be admitted to membership.

Although Canon 2C relates only to membership in organizations that invidiously discriminate on the basis of race, sex, religion or national origin, a judge's membership in an organization that engages in any invidiously discriminatory membership practices prohibited by applicable law violates Canons 2 and 2A and gives the appearance of impropriety. In addition, it would be a violation of Canons 2 and 2A for a judge to arrange a meeting at a club that the judge knows practices invidious discrimination on the basis of race, sex, religion, or national origin in its membership or other policies, or for the judge to use such a club regularly. Moreover, public manifestation by a judge of the judge's knowing approval of invidious discrimination on any basis gives the appearance of impropriety under Canon 2 and diminishes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A.

When a judge determines that an organization to which the judge belongs engages in invidious discrimination that would preclude membership under Canon 2C or under Canons 2 and 2A, the judge is permitted, in lieu of resigning, to make immediate and continuous efforts to have the organization discontinue its invidiously discriminatory practices. If the organization fails to discontinue its invidiously discriminatory practices as promptly as possible (and in all events within two years of the judge's first learning of the practices), the judge should resign immediately from the organization.

## CANON 3

## A JUDGE SHOULD PERFORM THE DUTIES
## OF THE OFFICE IMPARTIALLY AND DILIGENTLY

The judicial duties of a judge take precedence over all other activities. In performing the duties prescribed by law, the judge should adhere to the following standards:

A. Adjudicative Responsibilities.

(1) A judge should be faithful to and maintain professional competence in the law, and should not be swayed by partisan interests, public clamor, or fear of criticism.

(2) A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings.

(3) A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process.

(4) A judge should accord to every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte communications on the merits, or procedures affecting the merits, of a pending or impending proceeding. A judge may, however, obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond. A judge may, with consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

(5) A judge should dispose promptly of the business of the court.

(6) A judge should avoid public comment on the merits of a pending or impending action, requiring similar restraint by court

personnel subject to the judge's direction and control. This proscription does not extend to public statements made in the course of the judge's official duties, to the explanation of court procedures, or to a scholarly presentation made for purposes of legal education.

B. Administrative Responsibilities.

(1) A judge should diligently discharge the judge's administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.

(2) A judge should require court officials, staff, and others subject to the judge's direction and control, to observe the same standards of fidelity and diligence applicable to the judge.

(3) A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer.

(4) A judge should not make unnecessary appointments and should exercise that power only on the basis of merit, avoiding nepotism and favoritism. A judge should not approve compensation of appointees beyond the fair value of services rendered.

(5) A judge with supervisory authority over other judges should take reasonable measures to assure the timely and effective performance of their duties.

C. Disqualification.

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness;

(c) the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding;

(d) the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; or

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

(e) the judge has served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning the proceeding or has expressed an opinion concerning the merits of the particular case in controversy.

(2) A judge should keep informed about the judge's personal and fiduciary financial interests, and make a reasonable effort to keep informed about the personal financial interests of the judge's spouse and minor children residing in the judge's household.

(3) For the purposes of this section:

(a) the degree of relationship is calculated according to the civil law system; the following relatives are within the third degree of relationship: parent, child, grandparent, grandchild, great grandparent, great grandchild, sister, brother, aunt, uncle, niece and nephew; the listed relatives include whole and half blood relatives and most step relatives;

(b) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(c) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party, except that:

(i) ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) an office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) the proprietary interest of a policy holder in a mutual insurance company, or a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(d) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation.

(4) Notwithstanding the preceding provisions of this Canon, if a judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

D. Remittal of Disqualification.

A judge disqualified by the terms of Canon 3C(1), except in the circumstances specifically set out in subsections (a) through (e), may, instead of withdrawing from the proceeding, disclose on the record the basis of disqualification. If the parties and their lawyers after such disclosure and an opportunity to confer outside of the presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

## COMMENTARY

**Canon 3A(3).** The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and businesslike while being patient and deliberate.

The duty under Canon 2 to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary applies to all the judge's activities, including the discharge of the judge's adjudicative and administrative responsibilities. For example, the duty to be respectful of others includes the responsibility to avoid comment or behavior that can reasonably be interpreted as manifesting prejudice or bias towards another on the basis of personal characteristics like race, sex, religion, or national origin.

**Canon 3A(4).** The proscription against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted. It does not preclude a judge from consulting with other judges, or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities. A judge should make reasonable efforts to ensure that this provision is not violated through law clerks or other staff personnel.

An appropriate and often desirable procedure for a court to obtain the advice of a disinterested expert on legal issues is to invite the expert to file a brief amicus curiae.

**Canon 3A(5).** In disposing of matters promptly, efficiently and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays and unnecessary costs. A judge should encourage and seek to facilitate settlement, but parties should not feel coerced into surrendering the right to have their controversy resolved by the courts.

Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to insist that court officials, litigants and their lawyers cooperate with the judge to that end.

**Canon 3A(6).** The admonition against public comment about the merits of a pending or impending action continues until completion of the appellate process. If the public comment involves a case from the judge's own court, particular care should be taken that the comment does not denigrate public confidence in the integrity and impartiality of the judiciary in violation of Canon 2A. This provision does not restrict comments about proceedings in which the judge is a litigant in a personal capacity, but in mandamus proceedings when the judge is a litigant in an official capacity, the judge should not comment beyond the record.

"Court personnel" does not include the lawyers in a proceeding before a judge. The conduct of lawyers is governed by the rules of professional conduct applicable in the various jurisdictions.

**Canon 3B(3).** Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, and reporting the violation to the appropriate authorities.

**Canon 3B(4).** Appointees of the judge include officials such as referees, commissioners, special masters, receivers, guardians, and personnel such as clerks, secretaries, and bailiffs. Consent by the parties to an appointment or an award of compensation does not relieve the judge of the obligation prescribed by this subsection.

**Canon 3C(1)(d)(ii).** The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that "the judge's impartiality might reasonably be questioned" under Canon 3C(1), or that the lawyer-relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii) may require the judge's disqualification.

*NOTE: In September 1985, the Judicial Conference approved a form developed by the Advisory Committee on Codes of Conduct entitled "Notice Concerning Waiver of Judicial Disqualification" and authorized its distribution for consideration and possible adoption by the courts. The form is reprinted below.*

NOTICE CONCERNING WAIVER OF JUDICIAL
DISQUALIFICATION

FROM:        The Clerk                                                 Date_____

TO:            XXXX (Counsel)           XXXX (Counsel)
                       XXXX

RE:            ABC v. DEF, Case No.      _____

Canon 3D of the Code of Conduct provides (with exceptions not pertinent to this case) that when a judge is disqualified in a proceeding because "the judge's impartiality might reasonably be questioned", the judge may participate in the proceeding if all the parties and lawyers, after notice of the basis for the disqualification, agree in writing to waive the disqualification under a procedure independent of the judge's participation.

Unless a waiver is obtained from all parties and all counsel, Judge _____ intends to disqualify in this proceeding because of these circumstances:

If you and your client(s) wish to waive the judge's disqualification, letters to that effect from you and from your client(s) must be sent to me within _____ days of the date of this Notice. The letters should not be sent to the judge and copies should not be sent to other counsel. If all parties and all counsel submit such letters, this Notice and all responses will be made part of the record, as required by Canon 3D, and the judge will continue participation in the proceeding. If a waiver is not received from all parties and all counsel, this Notice and any responses will be kept under seal by the clerk and not shown to the judge, nor will the judge be informed of the identity of any party or lawyer who declined to waive the disqualification. If the disqualification is not waived, the case will be reassigned to another judge.

**CANON 4**

**A JUDGE MAY ENGAGE
IN EXTRA-JUDICIAL ACTIVITIES TO IMPROVE THE LAW,
THE LEGAL SYSTEM, AND THE ADMINISTRATION OF JUSTICE**

A judge, subject to the proper performance of judicial duties, may engage in the following law-related activities, if in doing so the judge does not cast reasonable doubt on the capacity to decide impartially any issue that may come before the judge:

A. A judge may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice.

B. A judge may appear at a public hearing before, or otherwise consult with, an executive or legislative body or official on matters concerning the law, the legal system, and the administration of justice to the extent that it would generally be perceived that a judge's judicial experience provides special expertise in the area. A judge acting pro se may also appear before or consult with such officials or bodies in a matter involving the judge or the judge's interest.

C. A judge may serve as a member, officer, or director of an organization or governmental agency devoted to the improvement of the law, the legal system, or the administration of justice. A judge may assist such an organization in planning fund-raising activities and may participate in the management and investment of funds, but should not personally participate in public fund-raising activities. A judge may make recommendations to public and private fund-granting agencies on projects and programs concerning the law, the legal system, and the administration of justice. A judge may solicit funds from other judges over whom the judge does not exercise supervisory or appellate authority. A judge shall not personally participate in membership solicitation if the solicitation might reasonably be perceived as coercive or is essentially a fund-raising mechanism.

D. A judge should not use to any substantial degree judicial chambers, resources, or staff to engage in activities permitted by this Canon.

## COMMENTARY

**Canon 4.** As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice. To the extent that the judge's time permits, the judge is encouraged to do so, either independently or through a bar association, judicial conference, or other organization dedicated to the improvement of the law. Within the boundaries of applicable law, see, e.g., 18 U.S.C. § 953, a judge may express opposition to the persecution of lawyers and judges anywhere in the world if the judge has ascertained, after reasonable inquiry, that the persecution is occasioned by conflict between the professional responsibilities of the persecuted judge or lawyer and the policies or practices of the relevant government.

**Canon 4C.** Service on the board of a public, as well as private, law school is permissible.

A judge may attend fund-raising activities of a law-related organization although the judge may not be a speaker, guest of honor, or featured on the program of such an event.

## CANON 5

### A JUDGE SHOULD REGULATE
### EXTRA-JUDICIAL ACTIVITIES TO MINIMIZE
### THE RISK OF CONFLICT WITH JUDICIAL DUTIES

A. <u>Avocational Activities</u>. A judge may write, lecture, teach, and speak on non-legal subjects, and engage in the arts, sports, and other social and recreational activities, if such avocational activities do not detract from the dignity of the judge's office or interfere with the performance of the judge's judicial duties.

B. <u>Civic and Charitable Activities</u>. A judge may participate in civic and charitable activities that do not reflect adversely upon the judge's impartiality or interfere with the performance of judicial duties. A judge may serve as an officer, director, trustee, or non-legal advisor of an educational, religious, charitable, fraternal, or civic organization not conducted for the economic or political advantage of its members, subject to the following limitations:

(1) A judge should not serve if it is likely that the organization will be engaged in proceedings that would ordinarily come before the judge or will be regularly engaged in adversary proceedings in any court.

(2) A judge should not solicit funds for any educational, religious, charitable, fraternal, or civic organization, or use or permit the use of the prestige of the judicial office for that purpose, but the judge may be listed as an officer, director, or trustee of such an organization. A judge should not personally participate in membership solicitation if the solicitation might reasonably be perceived as coercive or is essentially a fund-raising mechanism.

(3) A judge should not give investment advice to such an organization, but may serve on its board of directors or trustees even though it has the responsibility for approving investment decisions.

C. <u>Financial Activities</u>.

(1) A judge should refrain from financial and business dealings that tend to reflect adversely on the judge's impartiality, interfere with the proper performance of judicial duties, exploit the judicial position, or involve the judge in frequent transactions with lawyers or other persons likely to come before the court on which the judge serves.

(2) Subject to the requirements of subsection (1), a judge may hold and manage investments, including real estate, and engage in other remunerative activity, but should not serve as an officer, director, active partner, manager, advisor, or employee of any business other than a business closely held and controlled by members of the judge's family. For this purpose, "members of the judge's family" means persons related to the judge or the judge's spouse within the third degree of relationship calculated according to the civil law system, any other relatives with whom the judge or the judge's spouse maintains a close familial relationship, and the spouse of any of the foregoing.

(3) A judge should manage investments and other financial interests to minimize the number of cases in which the judge is disqualified. As soon as the judge can do so without serious financial detriment, the judge should divest himself or herself of investments and other financial interests that might require frequent disqualification.

(4) A judge should not solicit or accept anything of value from anyone seeking official action from or doing business with the court or other entity served by the judge, or from anyone whose interests may be substantially affected by the

performance or nonperformance of official duties; except that a judge may accept a gift as permitted by the Judicial Conference gift regulations. A judge should endeavor to prevent a member of a judge's family residing in the household from soliciting or accepting a gift except to the extent that a judge would be permitted to do so by the Judicial Conference gift regulations.

(5) For the purposes of this section "members of the judge's family residing in the judge's household" means any relative of a judge by blood or marriage, or a person treated by a judge as a member of the judge's family, who resides in the judge's household.

(6) A judge should report the value of any gift, bequest, favor, or loan as required by statute or by the Judicial Conference of the United States.

(7) A judge is not required by this Code to disclose his or her income, debts, or investments, except as provided in this Canon and Canons 3 and 6.

(8) Information acquired by a judge in the judge's judicial capacity should not be used or disclosed by the judge in financial dealings or for any other purpose not related to the judge's judicial duties.

D. Fiduciary Activities. A judge should not serve as the executor, administrator, trustee, guardian, or other fiduciary, except for the estate, trust, or person of a member of the judge's family, and then only if such service will not interfere with the proper performance of judicial duties. "Member of the judge's family" means any relative of a judge by blood, adoption, or marriage or any other person treated by a judge as a member of the judge's family.

As a family fiduciary a judge is subjected to the following restrictions:

(1) The judge should not serve if it is likely that as a fiduciary the judge will be engaged in proceedings that would ordinarily come before the judge or if the estate, trust or ward becomes involved in adversary proceedings in the court on which the judge serves or one under its appellate jurisdiction.

(2) While acting as a fiduciary a judge is subject to the same restrictions on financial activities that apply to the judge in his or her personal capacity.

E. Arbitration. A judge should not act as an arbitrator or mediator or otherwise perform judicial functions in a private capacity unless expressly authorized by law.

F. Practice of Law. A judge should not practice law. Notwithstanding this prohibition, a judge may act pro se and may, without compensation, give legal advice to and draft or review documents for a member of the judge's family.

G. Extra-judicial Appointments. A judge should not accept appointment to a governmental committee, commission, or other position that is concerned with issues of fact or policy on matters other than the improvement of the law, the legal system, or the administration of justice, unless appointment of a judge is required by Act of Congress. A judge should not, in any event, accept such an appointment if the judge's governmental duties would interfere with the performance of judicial duties or tend to undermine the public confidence in the integrity, impartiality, or independence of the judiciary. A judge may represent the judge's country, state, or locality on ceremonial occasions or in connection with historical, educational, and cultural activities.

H. Chambers, Resources, and Staff. A judge should not use judicial chambers, resources, or staff to engage in activities permitted by this Canon, except for uses that are de minimis.

## COMMENTARY

Canon 5A. Complete separation of a judge from extra-judicial activities is neither possible nor wise; a judge should not become isolated from the society in which the judge lives.

Canon 5B(1). The changing nature of some organizations and of their relationship to the law makes it necessary for a judge regularly to reexamine the activities of each organization with which the judge is affiliated to determine if it is proper for the judge to continue the judge's relationship with it. For example, in many jurisdictions charitable hospitals are now more frequently in court than in the past. Similarly, the boards of some legal aid organizations now make policy decisions that may have political significance or imply commitment to causes that may come before the courts for adjudication.

Canon 5B(2) and (3). A judge may attend fund-raising activities of the organization although the judge may not be a speaker, a guest of honor, or featured on the program of such an event. Use of an organization's letterhead for fund-raising or membership solicitation does not violate Canons 5B(2) and (3) provided the letterhead lists only the judge's name and position in the organization, and, if comparable designations are listed for other persons, the judge's judicial designation.

Canon 5C. Canon 3 requires a judge to disqualify in any proceeding in which the judge has a financial interest, however small; Canon 5 requires a judge to refrain from engaging in business and from financial activities that might interfere with the impartial

performance of the judge's judicial duties; Canon 6 requires a judge to report all compensation received for activities outside the judicial office. A judge has the rights of an ordinary citizen with respect to financial affairs, except for limitations required to safeguard the proper performance of the judge's duties. A judge's participation in a closely held family business, while generally permissible, may be prohibited if it takes too much time or involves misuse of judicial prestige or if the business is likely to come before the judge's court. Owning and receiving income from investments do not as such affect the performance of a judge's duties.

**Canon 5C(4).** Reimbursement or direct payment of travel expenses may be a gift and, if so, its acceptance is governed by Canons 5C(4) and (5). A judge or employee may receive as a gift travel expense reimbursement including the cost of transportation, lodging, and meals, for the judge and a relative incident to the judge's attendance at a bar-related function or at an activity devoted to the improvement of the law, the legal system, or the administration of justice.

**Canon 5D.** Mere residence in the household of a judge is insufficient for a person to be considered a member of the judge's family for purposes of this Canon. The person must be treated by the judge as a member of the judge's family.

**Canon 5D(1).** The Applicable Date of Compliance provision of this Code qualifies this subsection with regard to a judge who is an executor, administrator, trustee, or other fiduciary at the time this Code becomes effective.

**Canon 5D(2).** A judge's obligation under this Code and the judge's obligation as a fiduciary may come into conflict. For example, a judge should resign as trustee if it would result in detriment to the trust to divest it of holdings whose retention would place the judge in violation of Canon 5C(3).

**Canon 5F.** This prohibition refers to the practice of law in a representative capacity and not in a pro se capacity. A judge may act for himself or herself in all legal matters, including matters involving litigation and matters involving appearances before or other dealings with legislative and other governmental bodies. However, in so doing, a judge must not abuse the prestige of office to advance the interests of the judge or the judge's family.

**Canon 5G.** Valuable services have been rendered in the past to the states and the nation by judges appointed by the executive to undertake important extra-judicial assignments. The appropriateness of conferring these assignments on judges must be reassessed, however, in light of the demands on judicial resources created by today's crowded dockets and the need to protect the courts from involvement in extra-judicial matters that may prove to be controversial. Judges should not be expected or permitted to accept governmental appointments that could interfere with the effectiveness and independence of the judiciary.

The dangers attendant upon acceptance of extra-judicial governmental assignments are ordinarily less serious where the appointment of a judge is required by legislation. Such assignments ordinarily do not involve excessive commitments of time, and they typically do not pose a serious threat to the independence of the judiciary.

A code of conduct ought not compel judges to refuse, without regard to the circumstances, tasks Congress has seen fit to authorize as appropriate in the public interest. Although legislatively prescribed extra-judicial assignments should be discouraged, where Congress requires the appointment of a judge to perform extra-judicial duties, the judge may accept the appointment provided that the judge's services would not interfere with the performance of the judge's judicial responsibilities or tend to undermine public confidence in the judiciary.

## CANON 6

### A JUDGE SHOULD REGULARLY FILE
### REPORTS OF COMPENSATION RECEIVED
### FOR LAW-RELATED AND EXTRA-JUDICIAL ACTIVITIES

A judge may receive compensation and reimbursement of expenses for the law-related and extra-judicial activities permitted by this Code, if the source of such payments does not give the appearance of influencing the judge in the judge's judicial duties or otherwise give the appearance of impropriety, subject to the following restrictions:

A. Compensation. Compensation should not exceed a reasonable amount nor should it exceed what a person who is not a judge would receive for the same activity.

B. Expense Reimbursement. Expense reimbursement should be limited to the actual costs of travel, food, and lodging reasonably incurred by the judge and, where appropriate to the occasion, by the judge's spouse or relative. Any payment in excess of such an amount is compensation.

C. Public Reports. A judge should make required financial disclosures in compliance with applicable statutes and Judicial Conference regulations and directives.

### COMMENTARY

Additional restrictions on the receipt of compensation by judges are imposed by the Ethics Reform Act of 1989 and regulations promulgated by the Judicial Conference thereunder. That Act and those regulations should be consulted before a judge enters into any

arrangement involving the receipt of compensation. The restrictions so imposed include, but are not limited to: (1) a prohibition against receiving "honoraria" (defined as anything of value received for a speech, appearance, or article), (2) a prohibition against receiving compensation for service as a director, trustee, or officer of a profit or nonprofit organization, (3) a requirement that compensated teaching activities receive prior approval, and (4) a 15% limitation on the receipt of "outside earned income."

## CANON 7

### A JUDGE SHOULD REFRAIN FROM POLITICAL ACTIVITY

A. A judge should not:

(1) act as a leader or hold any office in a political organization;

(2) make speeches for a political organization or candidate or publicly endorse or oppose a candidate for public office;

(3) solicit funds for or pay an assessment or make a contribution to a political organization or candidate, attend political gatherings, or purchase tickets for political party dinners, or other functions.

B. A judge should resign the judicial office when the judge becomes a candidate either in a primary or in a general election for any office.

C. A judge should not engage in any other political activity; provided, however, this should not prevent a judge from engaging in the activities described in Canon 4.

### COMPLIANCE WITH THE CODE OF CONDUCT

Anyone who is an officer of the federal judicial system authorized to perform judicial functions is a judge for the purpose of this Code. All judges should comply with this Code except as provided below.

A. Part-time Judge. A part-time judge is a judge who serves on a continuing or periodic basis, but is permitted by law to devote time to some other profession or occupation and whose compensation for that reason is less than that of a full-time judge. A part-time judge:

(1) is not required to comply with Canons 5C(2), D, E, F, and G, and Canon 6C;

(2) except as provided in the Conflict-of-Interest Rules for Part-time Magistrate Judges, should not practice law in the court on which the judge serves or in any court subject to the appellate jurisdiction of the court on which the judge serves, or act as a lawyer in a proceeding in which the judge has served as a judge or in any other proceeding related thereto.

B. Judge Pro Tempore. A judge pro tempore A judge pro tempore is a person who is appointed to act temporarily as a judge or as a special master.

(1) While acting as such, a judge pro tempore is not required to comply with Canons 5C(2), (3), D, E, F, and G, and Canon 6C; further, one who acts solely as a special master is not required to comply with Canons 4C, 5B (except the first sentence thereof), 5C(4), and 7.

(2) A person who has been a judge pro tempore should not act as a lawyer in a proceeding in which the judge has served as a judge or in any other proceeding related thereto.

C. Retired Judge. A retired judge who is retired under 28 U.S.C. §§ 371(b) or 372(a), or who is recalled to judicial service, should comply with all the provisions of this Code except Canon 5G, but the judge should refrain from judicial service during the period of an extra-judicial appointment not sanctioned by Canon 5G. All other retired judges who are eligible for recall to judicial service (except those in Territories and Possessions) should comply with the provisions of this Code governing part-time judges. A senior judge in the Territories and Possessions must comply with this Code as prescribed by 28 U.S.C. § 373(c)(5) and (d).

### APPLICABLE DATE OF COMPLIANCE

Persons to whom this Code becomes applicable should arrange their affairs as soon as reasonably possible to comply with it and should do so in any event within the period of one year following appointment. If, however, the demands on the person's time and the possibility of conflicts of interest are not substantial, such a person may continue to act, without compensation, as an executor, administrator, trustee, or other fiduciary for the estate or person of one who is not a member of the person's family, if terminating such relationship would unnecessarily jeopardize any substantial interest of the estate or person and the judicial council of the circuit approves.

---

1. The Code of Conduct for United States Judges was initially adopted by the Judicial Conference on April 5, 1973, and was known as the "Code of

Judicial Conduct for United States Judges." At its March 1987 session, the Judicial Conference deleted the word "Judicial" from the name of the Code. Substantial revisions to the Code were adopted by the Judicial Conference at its September 1992 session. Section C. of the Compliance section, following the code, was revised at the March 1996 Judicial Conference. Canons 3C(3)(a) and 5C(4) were revised at the September 1996 Judicial Conference. Canon 3C(1)(c) was revised at the September 1999 Judicial Conference. The Compliance Section was clarified at the September 2000 Judicial Conference.

2. Procedural questions may be addressed to: Office of the General Counsel, Administrative Office of the United States Courts, Thurgood Marshall Federal Judiciary Building, Washington, D.C., 20544, (202-502-1100).

3. This Code governs the conduct of United States Circuit Judges, District Judges, Court of International Trade Judges, Court of Federal Claims Judges, Bankruptcy Judges, and Magistrate Judges. In addition, certain provisions of this Code apply to special masters and commissioners as indicated in the "Compliance" section.

# Exhibit D

COMMITTEE ON CODES OF CONDUCT
ADVISORY OPINION NO. 69

Removal of Disqualification by Disposal of Interest.

Judges have inquired whether disposing of a disqualifying interest would remove the disqualification and permit them to continue to sit in the case. Though the ideal envisages resolution of disqualification questions before a judge participates at all in a case, the present question arises when a disqualifying interest surfaces after the judge has participated for some time in the case, i.e., the judge or spouse owns stock in a corporation that intervenes as a party, that is found to be a corporate parent of a party, etc. The existence of a disqualifying interest has been learned directly by the judge in some instances and has come to light in counsel's motion for recusal in others. The question has arisen after the judge has taken minimal action, after years of discovery orders, and after trial but before decision. The question has arisen in single and multi-judge districts and in appellate courts.

Canon 3C(1) provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. . . ." Canon 3C(1) continues by providing a non-exhaustive list of circumstances requiring disqualification. Canon 3C(4), however, recognizes that in some instances, such as those listed above, the disqualification may not exist or be known until after the judge has participated in the case, and this canon addresses the propriety of the judge continuing to sit on such a case:

Notwithstanding the preceding provisions of this Canon, if a judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

Canon 3C(4). See also 28 U.S.C. § 455.

Although Canon 3C(4) refers to situations in which a judge has already expended a substantial amount of time on a matter, the Committee is of the opinion that this provision applies as well to cases in which a judge has expended no judicial time. Accordingly, if a judge learns of a disqualifying financial interest in a party before expending judicial time on the case, the judge may avoid disqualification by divesting himself or herself of the interest. Since in this situation, a judge could in any event recuse, divest and then have the matter reassigned to the judge, the Committee has concluded that Canon 3C(4) should be applied in this circumstance since any other interpretation would require the judge to do a futile act.

While disposing of a disqualifying interest may allow a judge to continue to sit on a case, Canon 3C(4) limits this option to the disposal of financial interests that will not be substantially affected by the outcome of the litigation. If the financial interest could be substantially affected by the outcome, even if he divests a judge cannot continue to sit on the case under Canon 3C(4). In determining whether a financial interest could be substantially affected, the Committee looks to the application of Canon 3C(1)(c), which provides for disqualification if the judge holds any other "interest that could be affected substantially by the outcome of the litigation." The natural reading of the language in both Canon 3C(1)(c) and 3C(4) is that it is the interest itself that must be substantially affected. Ultimately, a judge must decide the potential effect on the interest.

The possibility that the judge may appear as seeking to participate in a case by disposing of a disqualifying interest may under some circumstances be one of impropriety. Though that possibility should be considered, the Committee considers the likelihood of such appearance remote. In the case in which a great deal of time and effort had been invested by the judge, by counsel, and by the litigants, when the existence of the disqualifying interest came to light, the public interest in the efficient administration of justice would appear to outweigh concern for an appearance that the judge is seeking to continue participation in a particular case.

The Committee further advises that the manner in which the fact of a disqualifying interest is learned, and the nature of the interest, are viewed as unimportant. Though disposal of the interest removes any question of the propriety of the judge's continued participation, the stage in the litigation at which existence of the interest is learned and the availability of another judge may influence the judge's decision to continue participation.

Should the judge decide to continue to participate in the matter following disposal of the disqualifying interest, the facts giving rise to the disqualification, the judge's disposal of the disqualifying interest, and the public interest in continued participation of the judge, should be made known to the parties and of record in the case.

October 15, 1981
Revised January 16, 1998