1  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
2  Civil Division

3  JOSEPH P. RUSSONIELLO
   United States Attorney
   Northern District of California

4  VINCENT M. GARVEY
   Deputy Branch Director

5  JACQUELINE COLEMAN SNEAD
   Trial Attorney
6  Federal Programs Branch, Civil Division
   U.S. Department of Justice
7  20 Massachusetts Avenue, N.W. Rm 7214
   Washington, DC 20530
   Tel: (202) 514-3418

8                    Attorneys for the Defendants.

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13

14

15  **JULIA CHATTLER,**                    Case No. 07-4040MMC

16       **PLAINTIFF**                     Notice of Motion to Dismiss and
                                           Memorandum of Law in Support of
                                           Defendants' Motion to Dismiss
17       **v.**

18  **UNITED STATES OF AMERICA,**          Hon. Maxine M. Chesney
    **DEPARTMENT OF STATE,**               Date: Friday March 14, 2008, 9:00am
19

20       **DEFENDANTS.**

21

22

23

24

25

26

27  *Chattler v. United States of America,*                    Case No. 07-4040MMC
    Defendants' Motion to Dismiss
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES. ................................................................... -iii-

NOTICE TO PARTIES. ........................................................................... 1

INTRODUCTION.................................................................................... 1

REGULATORY BACKGROUND FOR PASSPORT APPLICATIONS...................................... 3

    Overview of Passport Application Process.......................................... 3

    Passport Processing Fees and Refunds. ............................................ 5

STATEMENT OF FACTS. ...................................................................... 6

ARGUMENT. ........................................................................................ 6

I.      THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR
         CONSEQUENTIAL AND SPECIAL DAMAGES FOR LACK
         OF JURISDICTION OR ALTERNATIVELY FOR FAILURE TO
         STATE A CLAIM. ...................................................................... 7

      A.    Plaintiff Cannot Recover Special and Consequential
             Damages Under the Regulations Governing
             Expedited Passport Processing. .................................................. 8

      B.    Plaintiff Cannot Recover Damages Under an Implied Contract Theory... 11

          1.    This Action Lacks the Predicate Contract for This Court's
                 Jurisdiction Under the Tucker Act Over Contract Claims. ........... 12

               a.    Plaintiff's allegations are insufficient to establish
                     a contract based on the selectively quoted language
                     from the Department's forms and website ...................... 13

               b.    Plaintiff's allegations are insufficient to establish
                     a contract based on instructions on the passport
                     application ...................................................... 16

          2.    Any Alleged Contract to Provide Expedited Service
                 Is Necessarily Circumscribed by the Department's
                 Regulations Governing That Service. ........................................ 17

II.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR
         RETURN OF THE EXPEDITE FEE BECAUSE PLAINTIFF
         FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES..................... 19

      A.    Requiring Plaintiff to Present Her Claim to the Department
             Likely Will Obviate the Need for Judicial Involvement. ......................... 20

      B.    The Department's Existing Refund Process Is Preferable
             to Any Alternative System This Court Might Establish . ......................... 21

1

III.    PLAINTIFF HAS FAILED TO STATE A CLAIM OF A
       VIOLATION OF THE DEPARTMENT'S EXPEDITED

2      PROCESSING REGULATION............................................................................ 22

3    CONCLUSION. ................................................................................................................... 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES** PAGE(s)

*ASCO-Falcon Shipping Co. v. United States,*
    32 Fed. Cl. 595 (1994). ................................................................ 13

*Alcaraz v. Block,*
    746 F.2d 593 (9th Cir. 1984). ........................................................ 24

*Alliance of Descendants of Texas Land Grants  v. United States,*
    37 F.3d 1478 (Fed. Cir. 1994)........................................................ 12

*Ancman v. United States,*
    77 Fed. Cl. 368 (2007). ...................................................... 8, 10, 11

*Andreiu v. Ashcroft,*
    253 F.3d 477 (9th Cir. 2001). ........................................................ 24

*Army & Air Force Exch. Serv. v. Sheehan,*
    456 U.S. 728, 102 S. Ct. 2118, 72 L.Ed.2d 520 (1982)........................ 9, 17, 19

*Baker v. United States,*
    50 Fed. Cl. 483 (2001). .......................................................... 17, 19

*Barnett v. United States,*
    397 F. Supp. 631 (D.S.C. 1975)...................................................... 12

*Beverage Distribs., Inc. v. Olympia Brewing Co.,*
    440 F.2d 21 (9th Cir. 1971). ........................................................ 14

*Continental Collection & Disposal, Inc. v. United States,*
    29 Fed. Cl. 644 (1993). ............................................................... 13

*Cutler-Hammer, Inc. v. United States,*
    441 F.2d 1179 (Ct. Cl. 1971). ................................................... 14, 17

*El Dorado Springs v. United States,*
    28 Fed. Cl. 132 (1993). ....................................................... 9, 10, 17

*FDIC v. Meyer,*
    510 U.S. 471, 114 S. Ct. 996, 127 L.Ed.2d 308 (1994)...................................  8

*Federal Crop Ins. Corp. v. Merrill,*
    332 U.S. 380, 68 S. Ct. 1, 92 L.Ed. 10 (1947)................................... 16

*Fisher v. United States,*
    402 F.3d 1167 (Fed. Cir. 2005)....................................................... 11

*Fleming v. United States,*
    413 F. Supp. 2d 503 (E.D. Pa. 2005). ............................................. 12

*Gardiner Mfg. Co. v. United States,*
    479 F.2d 39 (9th Cir. 1973). ......................................................... 12

-iii-

*Girling Health Sys., Inc. v. United States,*
    22 Cl. Ct. 66 (1990). ................................................................ 13, 14, 15, 16

*Griffin v. United States,*
    215 Ct. Cl. 710 (1978). ................................................................ 18

*Gustafson v. Alloyd Co.,*
    513 U.S. 561, 115 S. Ct. 1061, 131 L.Ed.2d 1 (1995). ...................... 24

*H.F. Allen Orchards v. United States,*
    749 F.2d 1571 (Fed. Cir. 1984). ...................................................... 16

*Helash v. Ballard,*
    638 F.2d 74 (9th Cir. 1980). .......................................................... 13

*Hercules, Inc. v. United States,*
    516 U.S. 417, 116 S. Ct. 981, 134 L.Ed.2d 47 (1996). ................... 8, 12

*Hillside Community Hosp. of Ukiah v. Mathews,*
    423 F. Supp. 1168 (C.D. Cal. 1976). ............................................. 23

*Huang v. Ashcroft,*
    390 F.3d 1118 (9th Cir. 2005). ...................................................... 19

*Keene Corp. v. United States,*
    508 U.S. 200, 113 S. Ct. 2035, 124 L.Ed.2d 118 (1993). ................ 23

*Lavin v. Marsh,*
    644 F.2d 1378 (9th Cir. 1981). ...................................................... 16

*Last Chance Mining Co. v. United States,*
    12 Cl. Ct. 551 (1987). .................................................................. 17

*Legacy Emanuel Hosp. & Health Ctr. v. Shalala,*
    97 F.3d 1261 (9th Cir. 1996). .................................................. 23, 24

*Marathon Oil Co. v. United States,*
    807 F.2d 759 (9th Cir. 1986). ....................................................... 19

*Merritt v. United States,*
    267 U.S. 338, 45 S. Ct. 278, 69 L.Ed. 643 (1925). .......................... 12

*Montes v. Thornburgh,*
    919 F.2d 531 (9th Cir. 1990). ....................................................... 19

*Moose v. United Sates,*
    674 F.2d 1277 (9th Cir. 1982). ....................................................... 8

*Nutt v. United States,*
    12 Cl. Ct. 345 (1987). .................................................................. 13

*Pan Am. Co. v. Sycuan Band of Mission Indians,*
    884 F.2d 416 (9th Cir. 1989). ......................................................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Paul Revere Ins. Group v. United States,*
    500 F.3d 957 (9th Cir. 2007). ...................................................................... 24

*Puga v. Chertoff,*
    488 F.3d 812 (9th Cir. 2007). ...................................................................... 19

*Schism v. United States,*
    316 F.3d 1259 (Fed. Cir. 2002)................................................................ 16, 18

*Schism v. United States,*
    972 F. Supp. 1398 (N.D. Fla. 1997)......................................................... 16, 18

*Shafmaster Fishing Co. v. United States,*
    28 Fed. Cl. 699 (1993). ................................................................................. 9

*Solano Garbage Co. v. Cheney,*
    779 F. Supp. 477 (E.D. Cal. 1991)............................................................... 23

*Spezzaferro v. Federal Aviation Admin.,*
    807 F.2d 169 (Fed. Cir. 1986). .................................................................... 13

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998). ................................. 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    127 S. Ct. 2499, 168 L.Ed.2d 179 (2007). .................................................. 15

*Travelers Indem. Co. v. United States,*
    16 Cl. Ct. 142 (1988). ................................................................................ 13

*Tree Farm Dev. Corp. v. United States,*
    585 F.2d 493 (Ct. Cl. 1978). ....................................................................... 16

*Union of Needletrades, Indus. & Textile Employers v. Immigration & Naturalization Serv.,*
    202 F. Supp. 2d 265 (S.D.N.Y. 2002)........................................................... 23

*United States v. California Care Corp.,*
    709 F.2d 1241 (9th Cir. 1983). .................................................................... 19

*United States v. Lex,*
    300 F. Supp. 2d 951 (E.D. Cal. 2003)........................................................... 23

*United States v. Menasche,*
    348 U.S. 528, 75 S. Ct. 513, 99 L.Ed. 615 (1955). ........................................ 24

*United States v. Mitchell,*
    463 U.S. 206, 103 S. Ct. 2961, 77 L.Ed.2d 580 (1983). ................................... 8

*United States v. Testan,*
    424 U.S. 392, 96 S. Ct. 948, 47 L.Ed.2d 114 (1976). ............................ 8, 9, 17

*Zucker v. United States,*
    758 F.2d 637 (Fed. Cir. 1985)..................................................................... 18

1

**STATUTES**

2  7 C.F.R. § 91.43(c)........................................................................................... 23

3  10 C.F.R. § 205.283(a)..................................................................................... 23

4  14 C.F.R. § 389.27(b). ..................................................................................... 23

5  19 C.F.R. § 24.23(b)(4)(iii)(A). ...................................................................... 23

6  22 C.F.R. § 22.1. ........................................................................................ 5, 15

7  22 C.F.R. § 22.6(b). ......................................................................................... 24

8  22 C.F.R. § 51.63(a).................................................................................. passim

9  22 C.F.R. § 51.66. ..................................................................................... passim

10  43 C.F.R. § 1823.12(b). ................................................................................... 23

11  37 C.F.R. § 1.296. ............................................................................................ 23

12  38 C.F.R. § 21.5064(b)(4)(ii). ......................................................................... 23

13  43 C.F.R. § 2933.24........................................................................................... 23

14  72 Fed. Reg. 45,888. .......................................................................................... 7

15  72 Fed. Reg. 64,930. .......................................................................................... 4

16  10 U.S.C. § 1074(b). ....................................................................................... 19

17  10 U.S.C. § 1124.............................................................................................. 18

18  22 U.S.C. § 214.................................................................................................. 5

19

20

21

22

23

24

25

26

27

28

1   PLEASE TAKE NOTICE that on Friday March 14, 2008, before the Honorable Maxine M. Chesney,

2   Defendants, the United States of America and the United States Department of States, will move this

3   Court for an order dismissing this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil

4   Procedure or alternatively pursuant to Rule 12(b)(6). [1/]

5          As explained in the accompanying Memorandum of Law in Support of Defendants' Motion

6   to Dismiss, dismissal is warranted here because (1) the United States has not waived sovereign

7   immunity as to Plaintiff's contract claims or regulatory claim for consequential and special damages;

8   (2) Plaintiff has not exhausted her administrative remedies as to her claim for a refund of the

9   additional fee paid for expedited processing of her passport application; and (3) Plaintiff has not

10  stated a claim of a violation of 22 C.F.R. § 51.63.  Defendants' motion is supported by this Notice,

11  the accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss and

12  Declaration of Ann Barrett, and the record in this case.

13                                              **INTRODUCTION**

14         Last January, the Department of State implemented the first of several significant changes in

15  the nation's approach to border security following the terrorist attacks of September 11, 2001.

16  Specifically, all U.S. citizens departing from or entering the United States from within the Western

17  Hemisphere are now required to present a valid passport at air ports-of-entry.  Anticipating that this

18  requirement would cause increased demand for passports, the Department of State ("the

19  Department") hired additional personnel and increased the size and hours of its passport processing

20  facilities.  In just the first month following the new passport requirement's implementation, the

21  volume of passport applications doubled over the previous month, to almost two million

22  applications.  This unprecedented demand for passports far exceeded the Department's estimates and

23  caused an enormous strain on the agency's resources.  In the months that followed, the average

24

25

26         [1/] In compliance with the Reassignment Order of January 15, 2008, Defendants are re-noticing
    pursuant to Local Civil Rule 7-2 their Motion to Dismiss.

27  *Chattler v. United States of America,*                                    Case No. 07-4040MMC

28  Defendants' Motion to Dismiss

period between submission of an application and receipt of the passport increased to up to twelve weeks for routine passport applications.

Many more Americans began requesting expedited processing of their applications, a service that historically has reduced that period to two or three weeks.  By regulation, expedited processing requires that the period commencing when the passport application reaches the passport agency and ending when the passport is mailed to the applicant not exceed a specified amount of time – until last August, three business days.  If the Department fails to provide that service, the applicant is entitled to a refund of the additional fee paid for such service.  Last year, the number of expedited applications reached an historic high of over 5.5 million, almost double the total such applications in Fiscal Year 2006.  In most instances, the Department processed expedited applications in significantly less time than routine applications but not always within three business days.

In the wake of these events, Plaintiff Julia Chattler complains that the Department did not process her expedited passport application within three days.  Plaintiff filed on behalf of herself and a purported class of similarly situated individuals this action against the United States and the Department of State ("Defendants") under the Little Tucker Act alleging that the Department's failure to process her application within that time frame violated the agency's passport regulations and breached an implied contract.  For that alleged violation and breach, Plaintiff seeks not only a refund of the expedite fee but special and consequential damages.  Defendants, however, have not waived sovereign immunity as to her contract claims or regulatory claim for such damages.  This Court accordingly lacks jurisdiction over those claims and they should be dismissed.

However, because by regulation, a passport applicant may be entitled to a refund of the expedite fee, that regulation gives rise to this Court's jurisdiction under the Little Tucker Act only as to Plaintiff's regulatory claim for a refund.  Nevertheless that claim also should be dismissed.  This action is nothing but an end-run around the Department's established procedure for refunding expedite fees, and therefore the doctrine of prudential exhaustion compels dismissal to require Plaintiff to present that claim first to the agency.  The Department's refund process entails nothing

*Chattler v. United States of America,*                                    Case No. 07-4040MMC
Defendants' Motion to Dismiss

2

1   more than that Plaintiff submit a request to the Department containing basic information such as

2   present contact information, passport number, and approximate dates she submitted her application.

3   Refunds are generally issued within six weeks of an applicant's submission of a legitimate refund

4   request – far more quickly than litigating a claim for a refund.  Indeed, requiring that Plaintiff

5   exhaust her administrative remedies may well obviate the need for this action.  Plaintiff alternatively

6   has failed to state a claim of a regulatory violation because the Department has complied with its

7   applicable regulations by issuing refunds upon request to applicants so entitled.  Accordingly, the

8   Court should grant Defendants' motion and dismiss this action in its entirety.

9                **REGULATORY BACKGROUND FOR PASSPORT APPLICATIONS**

10   **Overview of Passport Application Process:**

11         The Department of State maintains fourteen regional passport agencies and three passport

12   processing centers that are responsible for processing passport applications and issuing passports.

13   *See* Declaration of Ann Barrett ("Barrett Decl.") ¶ 6, attached hereto.  Approximately 60-65% of

14   passport applications are submitted to one of approximately 9000 authorized passport application

15   acceptance facilities located throughout the United States.  Barrett Decl. ¶ 7.  The remainder are

16   either mail-in renewals or in-person submissions to a passport agency.  Personnel at such facilities

17   mark the applications for the appropriate passport agency and then route them to a facility known as

18   a lockbox.  Barrett Decl. ¶ 7.  The lockbox provides a "secure, centralized system" for sorting and

19   further routing of passport applications.  Barrett Decl. ¶ 8.  At that location, the "passport

20   applications are routed to the appropriate passport agencies, while the associated fees are forwarded

21   to the Department of the Treasury."  Barrett Decl. ¶ 8.  Once the appropriate passport agency

22   receives the application, the information and supporting documentation provided are reviewed.

23   Barrett Decl. ¶ 9.  On average, applicants receive their passports approximately six to eight weeks

24   after submitting their completed applications.  Barrett Decl. ¶ 11.

25         Since 1994, the Department has offered applicants that require their passports in a shorter

26   time frame the opportunity to pay an additional fee ("the expedite fee") for expedited processing of

27   *Chattler v. United States of America,*                                    Case No. 07-4040MMC
    Defendants' Motion to Dismiss
28                                                    3

their applications.  Barrett Decl. ¶ 13.  Department regulations define "[e]xpedited passport

processing."  *See* 22 C.F.R. § 51.66 (Apr. 1, 2005). [2/]    Historically, that phrase has meant

"completing processing within 3-business days commencing when the application reaches a Passport

Agency or, if the application is already with a Passport Agency, commencing when the request for

expedited processing is approved." [3/]  22 C.F.R. § 51.66(b) (Apr. 1, 2005).  Because the processing

time at a passport agency may not be transparent to the applicant, the Department's website informs

applicants of the approximate period within which they should expect their passports.  In June 2007,

that period for expedited passport applications that were mailed or submitted to passport acceptance

facilities was "within about" "2-3 weeks."  Barrett Decl. Ex. C.  The Department cautioned on its

website, however, that "[c]urrently, Expedite Service takes 2-3 weeks to receive your passport from

the date you applied.  It may take longer for customers who apply for a renewal by mail without

'Expedite' marked on the mailing envelope."  Barrett Decl. Ex. C.  Applicants were further advised

that "[i]f you haven't received your passport and **are traveling within the next 7 days**, please call or

email the National Passport Information Center."  Barrett Decl. Ex. C.

　　　　The expedite process can be invoked through a passport acceptance facility, by mail, or at a

passport agency.  *See* Barrett Decl. ¶ 13.  If an applicant requests expedited service by mail or at a

passport acceptance facility, the word "EXPEDITE" must be clearly written on the exterior of the

application envelope to ensure proper routing.  *See* Barrett Decl. ¶ 17.  Expedited applications, which

have accounted for roughly a quarter of all passports issued each year, receive priority over routine

applications at the sorting facilities.  Barrett Decl. ¶¶ 6, 13.  The failure of the applicant or the

personnel at the acceptance facilities to identify the application "as one requiring expedited

processing may result in delays."  Barrett Decl. ¶ 17.

---

[2/]    As of the date of this filing, the section numbers for the regulations governing expedited passport processing have changed.  *See* 72 Fed. Reg.64,930-39 (Nov. 19, 2007).  All of the provisions cited herein correspond to the regulations in effect with Plaintiff applied for her passport.

[3/]    In August 2007, the Department changed its regulations to adopt a more flexible definition of "expedited passport processing."  Barrett Decl. ¶ 42.

1    Individuals also may submit expedited applications in person at a passport agency. Barrett

2    Decl. ¶ 18. Agencies accept in-person applications by appointment only. Barrett Decl. ¶ 18. All in-

3    person applications, approximately 10-15% of the total applications annually processed, are expedite

4    requests. *See* Barrett Decl. ¶ 18.

5    An additional number of applicants request an upgrade to expedited service after submitting

6    an application for regular processing. *See* Barrett Decl. ¶ 19.

7    **Passport Processing Fees and Refunds:**

8    The Department is authorized by statute to charge applicants fees to process passport

9    applications. *See* 22 U.S.C. § 214. The schedule of applicable fees is set forth in 22 C.F.R. § 22.1.

10    With few exceptions, none of the fees is refundable. By regulation, however, the Department will

11    refund certain "erroneously collected" fees and the "passport expedite fee . . . if the Passport Agency

12    does not provide the requested expedited processing as defined in § 51.66." 22 C.F.R. § 51.63(a),

13    (b).

14    The Department's longstanding practice for refunding expedite fees relies on an applicant's

15    request for a refund "as a means of triggering an inquiry into the processing history of a given

16    individual application." Barrett Decl. ¶ 48. There is currently "no automated mechanism for

17    identifying everyone who did not receive three-day processing, verifying that each person who

18    requested expedited processing paid the fee, and generating a refund." Barrett Decl. ¶ 52. The

19    Department examines every refund request on a case-by-case basis and manually calculates the days

20    of processing at the passport agency. *See* Barrett Decl. ¶ 26. While applicants may not know how

21    long their applications remained at the agency, applicants can request a refund and thereby initiate

22    that inquiry merely by submitting a request containing their passport number, if available, name, date

23    and place of birth, approximate date(s) they applied for their passport and received their passport,

24    and current contact information. *See* Barrett Decl. ¶ 25 & Ex. B.1. If, after examining its records,

25    the Department "determines that the applicant paid for and did not receive expedited service, an

26

27    *Chattler v. United States of America,*                          Case No. 07-4040MMC
      Defendants' Motion to Dismiss

28                                                    5

1    order for a refund check of $60 to be issued to the applicant is forwarded to the Department of the

2    Treasury."  Barrett Decl. ¶ 27.

3         In the years since this process has been in place, "it has proven to be an efficient method of

4    ensuring that applicants who do not receive expedited processing receive a prompt refund of the

5    expedited service fee."  Barrett Decl. ¶ 48.  Today, applicants entitled to such refunds on average

6    receive them within six weeks of submitting their request.  *See* Barrett Decl. ¶ 45.  The Department,

7    however, continues to improve the efficiency of the process.  *See* Barrett Decl. ¶¶ 43-44.  For

8    example, in June 2007, the Department announced that individuals now could submit refund

9    requests electronically through a link on the Department's website.  *See* Barrett Decl. ¶ 44.

10        The Department does not – nor has it ever – reimbursed applicants for missed travel.  *See*

11   Barrett Decl. ¶ 22.  On its website, the Department informs applicants that it "cannot refund passport

12   application and execution fees or compensate applicants for missed travel."  Barrett Decl. Ex. B.1.

13                          **STATEMENT OF FACTS** [4/]

14        Plaintiff Julia Chattler applied for a passport on June 11, 2007.  *See* Class Action Complaint

15   for Breach of Contract, Regulatory Violation, and Breach of the Implied Covenant of Good Faith and

16   Fair Dealing ("Compl.") ¶ 26.  In addition to processing, execution, and security fees, Plaintiff paid

17   $60 for expedited processing of her passport application.  Compl. ¶ 27.

18        Seven weeks after submitting her application, Plaintiff re-applied for her passport in person

19   at the San Francisco passport agency.  Compl. ¶ 28.  Although she received her passport faster than

20   she otherwise would have and in time for her scheduled travel on August 3, 2007, Plaintiff contends

21   that she "did not receive the benefit of her payment for expedited service."  Compl. ¶¶ 28 & 29.

22        Rather than apply to the Department of State for a refund of her expedite fee, Plaintiff filed

23   this action seeking a refund as well as special and consequential damages.  *See* Barrett Decl. ¶ 46.

24   ─────────────────

25        [4/]    The Statement of Facts is based on the allegations in the Complaint and the attached
     Declaration of Ann Barrett, which this Court properly may consider in ruling on a motion to dismiss for
26   lack of jurisdiction.  *See Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 420 n.2 (9th
     Cir. 1989) ("Materials outside the pleadings which relate to jurisdiction can be considered on a motion
27   to dismiss for lack of jurisdiction.").

     *Chattler v. United States of America,*                                    Case No. 07-4040MMC
28   Defendants' Motion to Dismiss
                                              6

1                                              **ARGUMENT**

2           Notwithstanding the clear regulatory language governing expedited passport processing,

3    Plaintiff contends that she is entitled to more than a refund of the $60.00 expedite fee if the

4    Department failed to provide that service.  The regulations in effect when Plaintiff submitted her

5    passport application belie that contention.  *See* 22 C.F.R. §§ 51.63, 51.66.  Section 51.63 provides

6    that the "passport expedite fee will be refunded if the Passport Agency does not provide the

7    requested expedited processing as defined in § 51.66."  22 C.F.R. § 51.63(c).  At the time Plaintiff

8    submitted her application, Section 51.66 in turn provided that

9            Expedited passport processing shall mean completing processing within 3- business days
             commencing when the application reaches a Passport Agency or, if the application is
10           already with a Passport Agency, commencing when the request for expedited processing is
             approved. The processing will be considered completed when the passport is ready to be
11           picked up by the applicant or is mailed to the applicant.

12   22 C.F.R. § 51.66(b). [5/]  Together these provisions establish both what constitutes expedited

13   processing and what recovery is available if the Department fails to provide that service.  Plaintiff

14   attempts to circumvent both these limitations by seeking to redefine what constitutes expedited

15   processing and expand the available recovery to include special, compensatory, and consequential

16   damages.  Although she packages her claims as breaches of alleged contracts and an alleged

17   regulatory violation, those claims should be analyzed as, on the one hand, a claim for a refund of the

18   expedite fee, and on the other hand, claims for damages over and above that amount. This Court

19   lacks jurisdiction over the latter claims.  Although the Court could exercise jurisdiction over

20   Plaintiff's claim for a refund under 22 C.F.R. § 51.63, that claim nonetheless should be dismissed for

21   lack of prudential exhaustion or alternatively failure to state a claim.  Thus, this entire action should

22   be dismissed.

23

24           [5/]   In August 2007, the Department changed the regulation defining expedited passport
     processing.  *See* 72 Fed. Reg. 45,888 (Aug. 16, 2007).  The new rule "change[d] the definition of
25   'expedited passport processing' from the 3-business day period to a number of business days as may be
     published from time to time on the Department's Web site, http://www.travel.state.gov."  *Id.* at 45,888.
26   That change was intended "to ensure that the Department c[ould] continue to offer this service consistent
     with its regulations, despite increases in demand for it."  *Id.*
27   *Chattler v. United States of America,*                                    Case No. 07-4040MMC
     Defendants' Motion to Dismiss
28                                                    7

1  **I.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR CONSEQUENTIAL AND SPECIAL DAMAGES FOR LACK OF JURISDICTION OR ALTERNATIVELY**
2  **FOR FAILURE TO STATE A CLAIM.**

3      Defendants have not waived sovereign immunity as to Plaintiff's claims for consequential

4  and special damages. *See, e.g.,* Compl. ¶ 67 (alleging losses including "overnight shipping costs,

5  and other costs incurred due to the delay"); Compl. ¶ 69 (requesting "full damages, including all

6  consequential and special damages"). As a sovereign, the United States "'is immune from suit save

7  as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's

8  jurisdiction to entertain the suit.'" *Hercules, Inc. v. United States*, 516 U.S. 417, 422, 116 S. Ct.

9  981, 985, 134 L.Ed.2d 47, 56 (1996). Absent a valid and applicable waiver of sovereign immunity, a

10 district court lacks subject-matter jurisdiction over a claim against the United States. *See FDIC v.*

11 *Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L.Ed.2d 308 (1994) ("[s]overeign immunity is

12 jurisdictional in nature"); *United States v. Mitchell*, 463 U.S. 206, 212, 103 S. Ct. 2961, 2965, 77

13 L.Ed.2d 580, 588 (1983) ("the United States may not be sued without its consent and [] the existence

14 of consent is a prerequisite for jurisdiction").

15      Although the Little Tucker Act confers upon district courts jurisdiction over certain claims

16 "not exceeding $10,000 in amount, founded either upon . . . any regulation of an executive

17 department, or upon any . . . implied contract with the United States," that Act "does not create any

18 substantive right enforceable against the United States for money damages." 28 U.S.C. § 1346(a)(2);

19 *United States v. Testan*, 424 U.S. 392, 398, 96 S. Ct. 948, 953, 47 L.Ed.2d 114, 121 (1976); *see also*

20 *Moose v. United Sates*, 674 F.2d 1277, 1280 (9th Cir. 1982) (noting that the Tucker Act "is 'only a

21 jurisdictional statute; it does not create any substantive right enforceable against the United States for

22 money damages'"). Thus, the Act, "standing alone, does not permit this [C]ourt's exercise of

23 jurisdiction." *Ancman v. United States*, 77 Fed. Cl. 368, 374 (2007). Instead, a plaintiff must rely on

24 some other federal law or contract "to create the substantive right – the asserted entitlement to

25 money damages." *Moose*, 674 F.2d at 1280. Plaintiff here has not done so.

26

27 *Chattler v. United States of America,*                                          Case No. 07-4040MMC
   Defendants' Motion to Dismiss
28                                          8

**A.      Plaintiff Cannot Recover Special and Consequential Damages Under the Regulations Governing Expedited Passport Processing.**

Plaintiff erroneously invokes the Department's regulations governing expedited passport processing as authorizing her claim for special and consequential damages. *See* Compl. ¶ 78 ("seek[ing] to recover [] full damages for the Department's regulatory violations in amounts to be proven at trial, but not to exceed $10,000 for any individual"); *see also* 22 C.F.R. § 51.66; 22 C.F.R. § 51.63. Not just any invocation of a statutory or regulatory provision suffices to establish jurisdiction under the Tucker Act. *See Testan*, 424 U.S. at 400, 96 S. Ct. at 954, 47 L.Ed.2d at 122 (rejecting argument that the Tucker Act "waives sovereign immunity with respect to any claim invoking a constitutional provision or a federal statute or regulation, and makes available any and all generally accepted and important forms of redress, including money damages"). The "basis of the federal claim whether it be the Constitution, a statute, or a regulation does not create a cause of action for money damages unless . . . *that basis in itself* . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 401-02, 96 S. Ct. at 955, 47 L.Ed.2d at 123 (emphasis added; internal quotations omitted); *see also Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 739, 102 S. Ct. 2118, 2125, 72 L.Ed.2d 520, 529 (1982) ("As *Testan* makes clear, jurisdiction . . . cannot be premised on the asserted violations of regulations that do not specifically authorize awards of money damages."). If, as here, nothing in the language of the statute or regulation invoked mandates the particular recovery sought, the claim should be dismissed for lack of jurisdiction. *See, e.g., Shafmaster Fishing Co. v. United States*, 28 Fed. Cl. 699, 700 (1993) (dismissing for lack of jurisdiction claim for damages resulting from the government's untimely reimbursements because statute only authorized monetary compensation for damaged commercial fishing gear not "redress if the Secretary fails to meet the sixty day initial determination requirement of 22 U.S.C. § 1980(d)(1)"); *El Dorado Springs v. United States*, 28 Fed. Cl. 132, 135-36 (1993) (dismissing for lack of jurisdiction claim "for lost profits and other consequential damages resulting from HUD's allegedly unlawful rejection of El Dorado's application" because none of the statutory or regulatory provisions the plaintiff cited "create[d] a substantive right to money damages").

*Chattler v. United States of America,*                                          Case No. 07-4040MMC
Defendants' Motion to Dismiss

1   The Department's expedited passport processing regulations clearly do not mandate

2   compensation for special and consequential damages.  *See* 22 C.F.R. § 51.63; 22 C.F.R. § 51.66.  At

3   the time Plaintiff allegedly submitted her passport application, those regulations defined "expedited

4   passport processing" as "completing processing within 3- business days commencing when the

5   application reaches a Passport Agency or, if the application is already with a Passport Agency,

6   commencing when the request for expedited processing is approved." [6/]  22 C.F.R. § 51.66(b) (Apr.

7   1, 2005).  If the Department fails to provide "expedited processing" as so defined, the additional fee

8   for that service "will be refunded."  22 C.F.R. § 51.63(c).  Nothing in that language or elsewhere in

9   the expedited processing regulations can be construed as requiring compensation beyond that refund

10  if the service is not provided.  In the absence of such language, the regulation Plaintiff invokes is an

11  insufficient basis under the Tucker Act for this Court's jurisdiction over her claim for special and

12  consequential damages.  Accordingly, her claim for such damages based on the alleged regulatory

13  violation should be dismissed.  *See, e.g., El Dorado Springs*, 28 Fed. Cl. at 134-36 (finding no

14  waiver of sovereign immunity for damages claim in HUD regulations that "require the applicant to

15  submit an application fee").

16  This Court alternatively should dismiss Plaintiff's claim for failure to state a claim under

17  Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court of Federal Claims has suggested

18  that whenever a plaintiff asserts jurisdiction based on a money-mandating statute or regulation –

19  whether or not it authorizes the particular recovery sought – that "ends the [C]ourt's jurisdictional

20  inquiry" and the Court should proceed to the merits of the claim.  *Ancman*, 77 Fed. Cl. at 374; *see*

21

22          [6/]  The regulation does not impose any requirement on the time before the application reaches the passport agency or the time after the agency mails the issued passport.  *See* 22 C.F.R. § 51.66(b); *see also* Barrett Decl. ¶ 16 (explaining that the "required 3-day processing does not include the time it takes

23  for an application to arrive at the passport agency or the time it takes for the issued passport to reach the applicant").  Thus, "an applicant who received three-day processing may receive the passport two or

24  three weeks after the application was submitted."  Barrett Decl. ¶ 16; *see also* Barrett Decl. ¶ 20 ("Normally, an applicant who receives the three-day expedited service will receive the passport in

25  approximately two to three weeks.  This period takes into account the time needed for the application to go from the acceptance facility or through the mail to the lockbox; for the application and payment

26  to be sorted at the lockbox; for the application to be *processed* at the agency or center (where the three days are counted); and to mail the passport to the applicant." (emphasis added)).

27  *Chattler v. United States of America,*                                      Case No. 07-4040MMC

28  Defendants' Motion to Dismiss
                                          10

1    *also Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) ("If the court's conclusion is that

2    the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall

3    declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal

4    course."). That approach is not unlike a practice "denominated . . . assuming jurisdiction for the

5    purpose of deciding the merits" which the Supreme Court flatly rejected in *Steel Co. v. Citizens for a

6    Better Environment*, 523 U.S. 83, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998), as "beyond the bounds

7    of authorized judicial action." *Id.* at 94, 118 S. Ct. at 1012, 140 L.Ed.2d at 227; *see also id.* at 101-

8    02, 118 S. Ct. at 1016, 140 L.Ed.2d at 231-32 (noting that "[f]or a court to pronounce upon the

9    meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by

10   very definition for a court to act ultra vires"). Nevertheless, if this Court were to follow that

11   approach, dismissal for failure to state a claim would be warranted because the regulation invoked

12   here "does not provide the appropriate mechanism for the relief requested." *Ancman*, 77 Fed. Cl. at

13   375; *see also Fisher*, 402 F.3d at 1175-76 (noting that "the consequence of a ruling by the court on

14   the merits, that plaintiff's case does not fit within the scope of the [money-mandating] source, is

15   simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted").

16   "It is not sufficient for a statute to be money-mandating; rather, the relief sought . . . must be the

17   same kind of relief or remedy provided by the statute." *Id.*

18       As already discussed, Plaintiff's claim for consequential and special damages is well outside

19   the scope of the compensation authorized by the Department's regulations governing expedited

20   passport processing. *See* 22 C.F.R. § 51.63(c) (providing only that "[t]he passport expedite fee will

21   be refunded if the Passport Agency does not provide the requested expedited processing as defined in

22   §51.66"). Thus, this Court alternatively should dismiss that claim for failure to state a claim upon

23   which relief can be granted.

24

25

26

27   *Chattler v. United States of America,*                                    Case No. 07-4040MMC
     Defendants' Motion to Dismiss
28                                                       11

1

**B.      Plaintiff Cannot Recover Damages Under an Implied Contract Theory.**

2        Plaintiff's claim for damages under an implied contract theory fares no better.  *See, e.g.,*

3  Compl. ¶ 66 (alleging that "[t]he Department of State breached its contracts with plaintiffs when it

4  failed to provide its processing service within the promised and required amount of time"); Compl. ¶

5  84 (alleging that "[t]he Department of State breached its contracts with plaintiffs when it failed to

6  return their passports within twenty one days"); Compl. ¶ 97 (alleging that "the Department has

7  breached the covenant of good faith and fair dealing implied in the contract for expedited service by

8  depriving plaintiffs of the value of their contracts in order to further its own self-interest").  If, as

9  here, the predicate contract is absent, the Court lacks jurisdiction under the Tucker Act over the

10  alleged contract claims.  *See Merritt v. United States*, 267 U.S. 338, 340-41, 45 S. Ct. 278, 279, 69

11  L.Ed. 643, 644 (1925); *Gardiner Mfg. Co. v. United States*, 479 F.2d 39, 40 (9th Cir. 1973); *see also*

12  *Fleming v. United States*, 413 F. Supp. 2d 503, 506 (E.D. Pa. 2005) ("In order for the Court to have

13  jurisdiction over a contract claim against the United States under the Tucker Act, the plaintiff must

14  show an express contract or a contract implied-in-fact."); *Barnett v. United States*, 397 F. Supp. 631,

15  639 (D.S.C. 1975) ("In the absence of a contract with the United States, the court is without

16  jurisdiction to hear plaintiff's complaint.").

17

**1.      This Action Lacks the Predicate Contract for This Court's Jurisdiction
          Under the Tucker Act Over Contract Claims.**

18

19        According to Plaintiff, two separate implied-in-fact contracts "to provide expedited service

20  within a set amount of time in exchange for a fee" were formed and allegedly breached.  *See* Compl.

21  ¶¶ 62-69, 79-87.  A contract implied in fact "is founded upon a meeting of minds, which, although

22  not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the

23  light of the surrounding circumstances, their tacit understanding."  *Hercules*, 516 U.S. at 424, 116 S.

24  Ct. at 986, 134 L.Ed.2d at 56 (internal quotations omitted).  Each material term or contractual

25  obligation, as well as the contract as a whole, is subject to these requirements.  *See id.* at 423, 116 S.

26  Ct. at 985, 134 L.Ed.2d at 56; *see also Alliance of Descendants of Texas Land Grants v. United*

27  *States*, 37 F.3d 1478, 1483 (Fed. Cir. 1994) ("An implied-in-fact contract with the Government

*Chattler v. United States of America,*                                    Case No. 07-4040MMC

28  Defendants' Motion to Dismiss

12

1   requires: (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and

2   acceptance."); *Helash v. Ballard*, 638 F.2d 74, 75 (9th Cir. 1980).  "This formidable standard serves

3   to protect the fisc from all suits under contract claims except where the evidence guarantees with

4   some certainty that the Government has agreed to waive its sovereign immunity.  It also assures a

5   necessary measure of flexibility to the Government in its daily operations so that it need not answer

6   in damages for each false step or innocent legal error in administering the myriad of programs and

7   functions that occupy its efforts."  *Nutt v. United States*, 12 Cl. Ct. 345, 351 (1987) (citation

8   omitted).  Plaintiff's alleged contracts fail to meet that standard. [7/]

9                **a.    Plaintiff's allegations are insufficient to establish a contract based
                        on the selectively quoted language from the Department's forms
10                       and website.**

11          Plaintiff misapprehends the Department's website estimates on the expected wait for

12   passports as a contract offer that she allegedly accepted.  *See* Compl. ¶¶ 80-81 (alleging that "[t]he

13   Department of State's promise in its forms and on its website that applicants who paid for expedited

14   service and mailing would receive their passports 'within about two weeks' constituted a valid offer

15   by the Department to provide expedited service within a set amount of time in exchange for a fee"

16   and that "Plaintiffs accepted that offer and provided consideration by their payment of the additional

17   fee").  Such predictions do not manifest the requisite intent to be contractually bound.  *See Girling*

18   *Health Sys., Inc. v. United States*, 22 Cl. Ct. 66 (1990).  "In general, the obligation of the

19

20   _____

         [7/]  Plaintiff further alleges that implicit in both "contracts" is "[a] covenant of good faith and fair
21   dealing" that the Department allegedly breached "by depriving plaintiffs of the value of their contracts
     in order to further its own self-interest."  Compl. ¶ 97.  That claim too necessarily fails if, as here, the
     underlying contract is not established.  *See Travelers Indem. Co. v. United States*, 16 Cl. Ct. 142, 149
22   (1988) (explaining that the covenant is an obligation "that is implicitly contained *within an existing*
     contract" (emphasis added)).  Alternatively, Plaintiff's alleged breach of the covenant of good faith and
23   fair dealing fails for failure to state a claim.  It is "well-settled that government officials are presumed
     to act conscientiously and in good faith in the discharge of their duties."  *ASCO-Falcon Shipping Co.*
24   *v. United States*, 32 Fed. Cl. 595, 604 (1994); *see also Spezzaferro v. Federal Aviation Admin.*, 807 F.2d
     169, 173 (Fed. Cir. 1986).  Thus, to state a claim of a violation of that obligation, Plaintiff "must allege
25   facts which if proved would constitute malice or an intent to injure."  *ASCO-Falcon*, 32 Fed. Cl. at 604;
     *Continental Collection & Disposal, Inc. v. United States*, 29 Fed. Cl. 644, 652 (1993).  She clearly has
26   not done so.  *See* Compl. ¶ 97 (alleging that "the Department has breached the covenant of good faith
     and fair dealing implied in the contract for expedited service "by depriving plaintiffs of the value of their
27   contracts in order to further its own self-interest").

     *Chattler v. United States of America,*                                        Case No. 07-4040MMC
28   Defendants' Motion to Dismiss
                                                    13

1    Government, if it is to be liable, must be stated in the form of an undertaking, not as a mere

2    prediction or statement of opinion or intention." *Cutler-Hammer, Inc. v. United States*, 441 F.2d

3    1179, 1182 (Ct. Cl. 1971); *see also Beverage Distribs., Inc. v. Olympia Brewing Co.*, 440 F.2d 21,

4    29 (9th Cir. 1971) (noting that "since an offer must be a promise, a mere expression of intention or

5    general willingness to do something on the happening of a particular event or in return for something

6    to be received does not amount to an offer").  Applying that principle, the *Girling* court easily

7    rejected the type of claim Plaintiff here makes.

8        In that case, the plaintiff claimed that the statement in instructions to IRS Form 2553 "You

9    should generally receive determination on your election within 60 days after you have filed Form

10   2553" "created a contract wherein the IRS promised to notify plaintiff of its acceptance or

11   nonacceptance of the election within 60 days." *Girling*, 22 Cl. Ct. at 68.  Relying solely on "Form

12   2553 and the instructions pertaining thereto," the court concluded that "it is clear that the statement

13   upon which plaintiff relies is not a definite promise, and th[at], as a matter of law, there is no mutual

14   assent." *Id.* at 70.  In reaching that conclusion, the court noted defendant's argument that the

15   inclusion of "generally" in the instructions "render[ed] the phrase too nonspecific to be the basis for

16   mutual assent or a meeting of the minds." *Id.* at 69.  That conclusion was further "buttressed by the

17   caveat in the instructions in Form 2553: 'If you are not notified of acceptance or non-acceptance of

18   your election within 3 months . . . you should take follow-up action by corresponding with the

19   service center where the election was filed.'" *Id.*  Based on such factors, the Court held "there is no

20   possible basis upon which plaintiff might prevail." *Id.* at 70.

21       Similarly, here, the language Plaintiff selectively quotes from the Department's website on

22   processing times for passport applications clearly did not manifest an offer to contract.  At the time

23   that Plaintiff allegedly applied for her passport, that website informed applicants that if they applied

24   by mail or through a passport acceptance facility and selected expedited service plus overnight

25

26

27   *Chattler v. United States of America,*                          Case No. 07-4040MMC
     Defendants' Motion to Dismiss
28                                              14

1  delivery, "You will receive your passport *within* about" "2-3 Weeks***." Barrett Decl. Ex. C. [8/]

2  The corresponding footnote, however, cautioned

> ***Expedite Service: Currently, Expedite Service takes 2-3 weeks to receive your
> passport from the date you applied. It may take longer for customers who apply for a
> renewal by mail without 'Expedite' marked on the mailing envelope. If you haven't
> received your passport and **are traveling within the next 7 days**, please call or email
> the National Passport Information Center.

6  Barrett Decl. Ex. C. As in *Girling*, that caveat renders the statement upon which Plaintiff relies "not

7  a definite promise." The Department expressly warns applicants that under some circumstances, the

8  period between "[s]ending your application and [r]eturning your passport to you" "may take longer"

9  than "2-3 weeks" without any indication as to how much longer. In addition, applicants "traveling

10  within the next 7 days" are advised to contact the National Passport Information Center thereby

11  suggesting that follow-up by the applicant may be necessary. *Compare id. with Girling*, 22 Cl. Ct. at

12  70 (concluding that "there [wa]s no promise to respond within 60 days" where plaintiff was

13  "expressly notified that it must take 'follow-up action' if there is no response within three months").

14  The most compelling evidence, however, that the Department did not intend to contract to provide

15  Plaintiff her application "within about two weeks" in exchange for her payment of $60.00 is the

16  Department's Schedule of Fees for Consular Services. *See* 22 C.F.R. § 22.1 (explaining that fee for

17  "Expedited service: *Three-day processing* and/or in-person service at a U.S. Passport Agency (not

18  applicable abroad) [Expedited Service]" is "60" (emphasis added)). That Schedule makes clear that

19  the $60.00 expedite fee is for "Expedited Service" as defined in 22 C.F.R. § 51.66. The regulatory

20  definition of "expedited service" says nothing whatsoever about returning passports "within about

21  two weeks." *See* 22 C.F.R. § 51.66(b) (Sept. 26, 2005) ("Expedited passport processing shall mean

22  completing processing within 3- business days commencing when the application reaches a Passport

23  Agency or, if the application is already with a Passport Agency, commencing when the request for

24  _____

25  [8/] This Court properly may consider the website instructions on processing times in their entirety.
*See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2059, 168 L.Ed.2d 179, 193 (2007)

26  (noting that, in ruling on a motion to dismiss, courts should consider "the complaint in its entirety, as
well as other sources . . . in particular, documents incorporated into the complaint by reference, and

27  matters of which a court may take judicial notice").
*Chattler v. United States of America,*                                                   Case No. 07-4040MMC

28  Defendants' Motion to Dismiss
                                              15

1    expedited processing is approved.  The processing will be considered completed when the passport is

2    ready to be picked up by the applicants or is mailed to the applicants.").  Thus, the claim that the

3    Department contracted to provide Plaintiff a different service for her $60.00 fee is unfounded. [9/]

4    　　　　　　　　**b.　　Plaintiff's allegations are insufficient to establish a contract based
    　　　　　　　　on instructions on the passport application.**

5

6    　　　　Plaintiff's contract claim based on the passport application's description of expedited service

     is similarly unfounded.  *See* Compl. ¶¶ 63-64 (alleging a contract was formed when she accepted the
7
     Department's alleged "promise in the passport application . . . to provide expedited service within a
8
     set amount of time in exchange for a fee," and Plaintiff purportedly "provided consideration by []
9
     payment of the additional fee").  In the instructions for passport applications, the Department
10
     informs applicants that "For faster processing, you may request expedited service.  Expedited
11
     requests will be processed in three workdays from receipt at a passport agency.  The additional fee
12
     for expedited service is $60."  Barrett Decl. Ex. A.  Plaintiff urges this Court to construe a contract
13
     from her payment of that additional fee.  "[M]ere solicitations, invitations or instructions from the
14
     Government," however, "are not offers to contract that bind the Government upon plaintiff's
15
     completion of a form, even when the solicitations, invitations or instructions are embodied in a
16
     statute or regulation.  The proposition is even stronger here since mere instructions accompanying a
17
     *form* are involved, rather than instructions in a regulation or statute."  *Girling*, 22 Cl. Ct. at 72; *see*
18
     *also Tree Farm Dev. Corp. v. United States*, 585 F.2d 493, 500 (Ct. Cl. 1978) (noting that
19
     "invitations by the Government to file applications do not necessarily equal an operative offer, the
20
     acceptance of which will result in a binding contract").
21

22    　　　　　[9/]　　An implied-in-fact contract is not formed where it is purportedly based on government
     promises contrary to a governing statute or regulation.  *See Schism v. United States*, 316 F.3d 1259,
23    1273-74 (Fed. Cir. 2002); *Schism v. United States*, 972 F. Supp. 1398, 1403 (N.D. Fla. 1997).  "Persons
     dealing with the government are charged with knowing government statutes and regulations, and they
24    assume the risk that government agents may exceed their authority and provide misinformation."  *Lavin
     v. Marsh*, 644 F.2d 1378, 1383 (9th Cir. 1981); *see also Federal Crop Ins. Corp. v. Merrill*, 332 U.S.
25    380, 384-85, 68 S. Ct. 1, 3-4, 92 L.Ed. 10, 15-16 (1947).  Therefore, "the limitations imposed . . . by []
     statute override any representations made by the government, since any promises in contradiction of the
26    statute would be beyond the authority of government agents to carry out."  *Schism*, 972 F. Supp. at 1404;
     *cf. H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed. Cir. 1984).
27    *Chattler v. United States of America,*                                              Case No. 07-4040MMC
     Defendants' Motion to Dismiss
28    　　　　　　　　　　　　　　　　　　　　　　　16

1    But even if the Court were to look to the regulation underlying the instructions in the passport

2  application, (*see* 22 C.F.R. § 51.63), Plaintiff still has not alleged facts upon which a contract can be

3  predicated. [10/]  A regulatory provision allowing expedited passport applications "is certainly not an

4  offer to *contract*."  *See Last Chance Mining Co. v. United States*, 12 Cl. Ct. 551, 556 (1987); *see*

5  *also Cutler-Hammer*, 441 F.2d at 1183 (concluding that "[i]t requires a distortion of plain English to

6  infer that making an application in conformity with the terms of [ a r]egulation would constitute an

7  acceptance of an offer whereby the United States intended to bind itself").  "It would do violence to

8  traditional contract theory, not to mention the operation of government, to hold that any statute [or

9  regulation] requiring some action by a citizen to obtain a benefit or protect a right constituted an

10 open offer to contract."  *Last Chance*, 12 Cl. Ct. at 556; *see also El Dorado Springs*, 28 Fed. Cl. at

11 137 (refusing to base jurisdiction under the Tucker Act over a contract claim based on plaintiff's

12 payment of an application fee because "[t]o do otherwise is to risk finding a waiver of sovereign

13 immunity where none was intended").  Applying such principles here, this Court should reject

14 Plaintiff's claim of a contract based on her compliance with instructions on her passport application.

15 Since the predicate contract for this Court's jurisdiction under the Tucker Act accordingly does not

16 exist, Plaintiff's contract claims should be dismissed for lack of jurisdiction.

17

18

19

20

21

22

23   [10/]  "The rule in *Testan* – that jurisdiction under the Tucker Act cannot be premised on the
asserted violation of regulations that specifically do not authorize awards of money damages – cannot
24 be avoided simply by characterizing the applicable statute or regulation as creating an implied contract."
*Baker v. United States*, 50 Fed. Cl. 483, 489 (2001); *see also Sheehan*, 456 U.S. at 740, 102 S. Ct. at
25 2125, 72 L.Ed 2d at 530 (observing that "if [the] employment statutes and regulations [in *Testan*]
create[d] an implied-in-fact contract, surely the Court would have so noted . . . instead of directing that
26 the complaint be dismissed").  As already discussed, the regulatory provisions that Plaintiff invokes here
do not authorize awards of money damages. *See* Pt. I.A, *supra*.  Therefore, those same provisions cannot
27 form an implied-in-fact contract whose breach entitles Plaintiff to recover such damages.

*Chattler v. United States of America,*                                          Case No. 07-4040MMC
28 Defendants' Motion to Dismiss
                                           17

1

**2.      Any Alleged Contract to Provide Expedited Service Is Necessarily
Circumscribed by the Department's Regulations Governing That Service.**

Even if Plaintiff's contract allegations were sufficient, her recovery for any alleged contract

breach would be limited to a refund of the $60.00 expedited fee, and such a claim properly should be

analyzed by reference to 22 C.F.R. § 51.63, not contract principles.  *Cf. Zucker v. United States*, 758

F.2d 637, 640 (Fed. Cir. 1985) ("entitlement to retirement benefits must be determined by reference

to the statute and regulations governing these benefits, rather than to ordinary contract principles");

*Schism*, 316 F.3d at 1278 (noting that "[i]t is well settled that the existence of an express contract

precludes the existence of an implied-in-fact contract dealing with the same subject matter").

Nevertheless, if the Court were to analyze Plaintiff's contract claim as such, she still could not evade

the express limitation in 22 C.F.R. § 51.63.  *See Griffin v. United States*, 215 Ct. Cl. 710 (1978).

The analysis in *Griffin* makes that plain.  In that case, plaintiff, an officer of the United States Air

Force, received an allegedly insufficient award under 10 U.S.C. § 1124, which "extend[ed] to

servicemen . . . the eligibility to receive cash awards for valuable suggestions, made to and adopted

by their agencies."  *Griffin*, 215 Ct. Cl. at 712.  Plaintiff submitted a suggestion that was adopted and

allegedly saved the Air Force $45,000,000.  He subsequently filed an action under the Tucker Act

against the government on grounds that in awarding him only $8,905, the Air Force had been

arbitrary and capricious and violated its regulations.  The court concluded that "[a]t some point

plaintiff acquired a legal entitlement by implied contract" and "what remained for adjudication was

quantum."  *Id.* at 715.  However, in remanding the action to the trial division, the *Griffin* court noted

that "[t]he statute, 10 U.S.C. § 1124(f), places a $25,000 limit on an incentive award, and plaintiff's

further recovery, if any, *would be limited by that ceiling*."  *Id.* at 716 n.1 (emphasis added).

Similarly here, Plaintiff's recovery under the alleged contracts would be limited to a refund

of the $60.00 expedite fee which is the ceiling imposed by the Department's regulations for its

failure to provide expedited service for which an applicant paid.  *See* 22 C.F.R. § 51.63(c).  Plaintiff

cannot evade that limitation and recover special and consequential damages through artful pleading

of a contract claim.  *See, e.g., Schism*, 972 F. Supp. at 1404 (dismissing implied-in-fact contract

*Chattler v. United States of America,*                                                    Case No. 07-4040MMC
Defendants' Motion to Dismiss
18

1   claim for military benefits of retirees who began service after enactment of 10 U.S.C. § 1074(b)

2   because "the limitations imposed on [such] benefits by the statute override any representations made

3   by the government"). Thus, to the extent Plaintiff seeks to recover more than the $60.00 fee she paid

4   for the alleged contract breaches, this Court lacks jurisdiction. *See Sheehan*, 456 U.S. at 740, 102 S.

5   Ct. at 2125, 72 L.Ed 2d at 530; *Baker*, 50 Fed. Cl. at 489.

6   **II.   THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR RETURN OF THE
         EXPEDITE FEE BECAUSE PLAINTIFF FAILED TO EXHAUST HER
7         ADMINISTRATIVE REMEDIES.**

8           Plaintiff's invocation of this Court's jurisdiction over her claim for a refund of the expedite

9   fee circumvents the Department's established process for refunding expedite fees. This Court should

10  not sanction such conduct and instead should dismiss that claim for failure to exhaust administrative

11  remedies. The exhaustion requirement "can spring from an Act of Congress that designates an

12  exclusive administrative avenue of appeal. When that is the case the administrative proceedings are .

13  . . a precondition to federal court jurisdiction[, and t]he court[] lack[s] power to undertake judicial

14  review until the proceedings have been completed." *United States v. California Care Corp.*, 709

15  F.2d 1241, 1248 (9th Cir. 1983). However, even where such exhaustion is not statutorily mandated,

16  courts may require it as a prudential matter. *See Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir.

17  1990); *see also Marathon Oil Co. v. United States*, 807 F.2d 759, 768 (9th Cir. 1986) (distinguishing

18  between "administrative exhaustion requirements that are based on a statutory directive and those

19  that are judicially imposed"). Prudential exhaustion "is not a jurisdictional prerequisite but instead is

20  within the discretion of the district court." *Montes*, 919 F.2d at 537. Such exhaustion is typically

21  required where "(1) agency expertise makes agency consideration necessary to generate a proper

22  record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate

23  bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to

24  correct its own mistakes and to preclude the need for judicial review." *California Care*, 709 F.2d at

25  1248; *see also Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Huang v. Ashcroft*, 390 F.3d

26

27  *Chattler v. United States of America,*                                    Case No. 07-4040MMC
    Defendants' Motion to Dismiss
28                                              19

1    1118, 1123 (9th Cir. 2005).  Consideration of these factors here compels dismissal of the sole claim

2    over which this Court may exercise jurisdiction, Plaintiff's claim for a refund of the expedite fee.

3    **A.    Requiring Plaintiff to Present Her Claim to the Department Likely Will Obviate the Need for Judicial Involvement.**

4    The Department has an efficient and established process for refunding the expedite fee to

5    applicants who failed to receive the required service.  *See* Barrett Decl. ¶¶ 22-27 (explaining the

6    Department's refund process).  "Fees for expedited processing are returned to customers who request

7    a refund, who have paid the expedited processing fee, and whose applications were not processed in

8    the specified time period for expedited processing."  Barrett Decl. ¶ 23.  The Department's

9    longstanding practice for refunding expedite fees has "relie[d]" on an applicant's request "as a means

10   of triggering an inquiry into the processing history of a given individual application."  Barrett Decl. ¶

11   48.  Over the years that this practice has existed, "it has proven to be an efficient method of ensuring

12   that applicants who do not receive expedited processing receive a prompt refund of the expedited

13   service fee."  Barrett Decl. ¶ 48.

14   The Department's website explains how an applicant can request a refund of the expedite fee.

15   *See* Barrett Decl. ¶ 24; *see also* Barrett Decl. Ex. B.1.  Applicants who "[p]aid the $60 fee for

16   expedited service and [ h]ave reason to believe that they did not receive expedited service" need only

17   "submit a written request with their passport number, if available, name, date and place of birth, and

18   approximate date(s) they applied for their passport and received their passport (if applicable)."

19   Barrett Decl. Ex. B.1.  The submission also should include the applicant's mailing address and phone

20   number.  *See* Barrett Decl. Ex. B.1.  These same instructions are provided to applicants who call the

21   National Passport Information Center to inquire about expedite fees they have paid.  *See* Barrett

22   Decl. ¶ 24.

23   Contrary to Plaintiff's suggestion, (Compl. ¶ 45), the "requester does not bear the burden of

24   showing the number of days that the passport application was at the passport agency."  Barrett Decl.

25   ¶ 27.  However, "[e]very expedited fee refund request is examined on a case-by-case basis."  Barrett

26   Decl. ¶ 26.  There is currently "no automated mechanism for identifying everyone who did not

27   *Chattler v. United States of America,*                                    Case No. 07-4040MMC
28   Defendants' Motion to Dismiss
                                        20

1    receive three-day processing, verifying that each person who requested expedited processing paid the

2    fee, and generating a refund." Barrett Decl. ¶52. "If the Department determines that the applicant

3    paid for and did not receive expedited service, an order for a refund check of $60 to be issued to the

4    applicant is forwarded to the Department of the Treasury." Barrett Decl. ¶ 27. At present, this

5    process "takes approximately six weeks from the time a request is received at the Service Refund

6    Center until a refund is issued by the Department of the Treasury to the qualifying applicant."

7    [11/] Barrett Decl. ¶ 45.

8         Despite the ease of the Department's existing process, Plaintiff has not availed herself of that

9    process and instead invokes the limited resources of this Court to resolve a claim that the

10   Department clearly ought to decide in the first instance. *See* Barrett Decl. ¶ 47 ("Julia Chattler has

11   not requested a refund of the expedited service fee through the Department's refund process."). If

12   Plaintiff is entitled to a refund, the administrative process outlined above is designed to provide that

13   recovery with far less effort than litigating that claim would require. *See* Barrett Decl. ¶ 48. Thus,

14   dismissal of Plaintiff's refund claim for failure to exhaust her administrative remedies likely would

15   obviate the need for any judicial involvement and permit the Department to refund her expedite fee if

16   Plaintiff is so entitled.

17        **B.    The Department's Existing Refund Process Is Preferable to Any Alternative System This Court Might Establish.**

18        The Department's existing system for processing refunds has a demonstrated history of

19   ensuring that individuals who are entitled to a refund receive it in a timely manner. *See* Barrett Decl.

20   ¶ 48 ("Over the years that this procedure has been in place, it has proven to be an efficient method of

21   ensuring that applicants who do not receive expedited processing receive a prompt refund of the

22

23

24   [11/] Since June 2007, the Department has implemented several measures to facilitate this process. *See* Barrett Decl. ¶ 43. The Department "has assigned three full-time Department employees to assist

25   in handling the [refund] requests." Barrett Decl. ¶ 45. The Department now processes all expedited fee refund requests directly through Washington, D.C., rather than through the passport agencies;

26   "[p]reviously, agencies processed the requests and then forwarded them to Washington for completion." Barrett Decl. ¶ 43. As of last summer, the Department now accepts electronic requests for refunds from

27   a link directly on its website. *See* Barrett Decl. ¶ 44.

*Chattler v. United States of America,*                                    Case No. 07-4040MMC

28   Defendants' Motion to Dismiss
                                         21

expedited service fee."). Indeed, in as few as six weeks, that system issues refunds to applicants entitled to a refund. *See* Barrett Decl. ¶ 45. Yet, Plaintiff, who has not even applied for a refund, urges the Court to require the Department to suspend "its current refund operations in favor of a new system that would have to be devised from the ground up." Barrett Decl. ¶ 50. Apart from the reasons already discussed, this Court clearly should reject that invitation because of the problems attendant with such a significant administrative change.

The public is well aware of the existing system through the Department's website and public statements of agency officials. *See* Barrett Decl. ¶ 24. As a result, public confusion likely would result if the Department were forced to suspend its current operations in favor of a new system. *See* Barrett Decl. ¶ 49 (noting that because of the public's familiarity with the current system, individuals "may apply for a refund in the future without realizing that a separate court-ordered process may have been established"). Any new system, moreover, would have to take into account the Department's limitations that preclude it from automatically issuing refunds when the agency fails to provide expedited service. *See* Barrett Decl. ¶¶ 50-53. The Department has no automated system for identifying everyone who did not receive three-day processing, verifying that each person who requested expedited processing paid the fee, confirming that the address provided on the passport application is still current, and then generating a refund. Barrett Decl. ¶¶ 52, 54. Thus, even assuming this Court appropriately accounted for these limitations in any judicially devised refund system  – let alone, one superior to the existing one – the time and resources required to implement that system necessarily would delay the issuance of refunds. *See* Barrett Decl. ¶ 55. Such additional considerations compel judicial restraint here and dictate dismissal of Plaintiff's refund claim.

**III.     PLAINTIFF HAS FAILED TO STATE A CLAIM OF A VIOLATION OF THE DEPARTMENT'S EXPEDITED PROCESSING REGULATION.**

To the extent that Plaintiff's regulatory violation claim is not jurisdictionally deficient, (*see* Part I.A, *supra*), that claim should be dismissed for failure to state a claim. The alleged regulatory claim is predicated on Plaintiff's erroneous belief that the Department's regulations require automatic refunds of the expedite fee when the Department fails to provide that service. *See* Compl.

*Chattler v. United States of America,*                                    Case No. 07-4040MMC
Defendants' Motion to Dismiss
                                            22

1  ¶ 18 ("This lawsuit seeks to recover the fee for expedited service for all individuals whose passports

2  were not processed within three business days or received by the applicant within about fourteen

3  days without any further delay or obstruction.").  Nothing in 22 C.F.R. § 51.63 requires the

4  Department to issue automatic refunds nor prohibits it from requiring a written request before the

5  "passport expedite fee will be refunded." [12/]  *See* 22 C.F.R. § 51.63(c) ("The passport expedite fee

6  will be refunded if the Passport Agency does not provide the requested expedited processing as

7  defined in § 51.66.").  Well-established rules of statutory and regulatory construction make that

8  plain. [13/]  One such rule posits that "every choice of words is purposeful, manifesting [the] intent to

9  convey particular meaning."  *Union of Needletrades, Indus. & Textile Employers v. Immigration &*

10  *Naturalization Serv.*, 202 F. Supp. 2d 265, 271 (S.D.N.Y. 2002) (citing *Legacy Emanuel Hosp. &*

11  *Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996)).  Thus, where Congress or an agency

12  "includes particular language in one section of a statute [or regulation] but omits it in another, it is

13  generally presumed that [the government] acts intentionally and purposely in the disparate inclusion

14  or exclusion."  *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040, 124 L.Ed.2d

15

16      [12/]   The requirement of a request to initiate a government refund is pervasive throughout the

17  federal government.  *See, e.g.,* 43 C.F.R. § 1823.12(b) (Department of the Interior) ("If you believe you
are due a refund, you may request it from the BLM office where you previously submitted your

18  payment."); 7 C.F.R. § 91.43(c) (United States Department of Agriculture) ("Any fees paid in excess
of the amount due shall be used to offset future billings, unless a request for a refund is made by

19  applicant."); 19 C.F.R. § 24.23(b)(4)(iii)(A) (Bureau of Customs and Border Protection) ("In the case
of an overpayment, the carrier or operator may request a refund by writing to Customs and Border

20  Protection . . . ."); 37 C.F.R. § 1.296 (United States Patent and Trademark Office) ("The request to
withdraw may also include a request for a refund of any amount paid in excess of the application filing

21  fee . . . ."); 38 C.F.R. § 21.5064(b)(4)(ii) (Department of Veterans Affairs) ("The Department of
Veterans Affairs shall make the refund only if the individual requests it."); 43 C.F.R. § 2933.24

22  (Department of the Interior) ("If we close the fee site for administrative or emergency reasons, we will
refund the unused portion of your permit fee upon request."); 10 C.F.R. § 205.283(a) (Department of

23  Energy) ("Any person entitled to a refund pursuant to a final Decision and Order . . . may file an
Application for Refund . . . ."); 14 C.F.R. § 389.27(b) (Department of Transportation) ("Any person may

24  file an application for refund of a fee paid since April 28, 1977, on the grounds that such fee exceeded
the Board's cost in providing the service.").

25      [13/]   The same rules of construction apply to administrative regulations as apply to statutes.  *See*

26  *United States v. Lex*, 300 F. Supp. 2d 951, 959 (E.D. Cal. 2003); *Solano Garbage Co. v. Cheney*, 779
F. Supp. 477, 487 (E.D. Cal. 1991); *Hillside Community Hosp. of Ukiah v. Mathews*, 423 F. Supp. 1168,

27  1175 (C.D. Cal. 1976).

*Chattler v. United States of America,*                                           Case No. 07-4040MMC

28  Defendants' Motion to Dismiss

23

1  118, 128 (1993); *Andreiu v. Ashcroft*, 253 F.3d 477, 480 (9th Cir. 2001) (same); *see also Legacy*

2  *Emanuel Hospital*, 97 F.3d at 1265 ("the use of different language by Congress creates a

3  presumption that it intended the terms to have different meanings"); *Paul Revere Ins. Group v.*

4  *United States*, 500 F.3d 957, 962 (9th Cir. 2007). Courts accordingly are obliged to give effect to

5  every word in a statute or regulation and avoid interpretations that render some words altogether

6  redundant. *See United States v. Menasche*, 348 U.S. 528, 538-39, 75 S. Ct. 513, 519-20, 99 L.Ed.

7  615, 623-24 (1955); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574, 115 S. Ct. 1061, 1069, 131 L.Ed.2d

8  1, 15 (1995).

9          Here, that principle requires the Court to interpret the exclusion of the term "automatic" in

10  the regulatory provision governing refunds of the expedite fee as significant. *Compare* 22 C.F.R. §

11  51.63(c) ("The passport expedite fee will be refunded if the Passport Agency does not provide the

12  requested expedited processing as defined in § 51.66.") *with* 22 C.F.R. § 22.6(b) ("An *automatic*

13  refund on overpayments due to misinformation or mistakes on the part of the Department of State

14  will be made." (emphasis added)). As the regulatory language indicates, the Department intended

15  refunds on overpayments due to agency misinformation or mistake to be "automatic." That same

16  intent is not expressed in the provision governing refunds of the expedite fee. Instead, the

17  Department has determined that its longstanding practice, initiated by a written request from

18  applicants, ensures that individuals who are entitled to a refund receive it in a timely manner.

19  [14]/ Plaintiff concedes that the expedite fee "will be refunded" – as required by regulation – upon

20  request. *See* Compl. ¶ 14 ("rather than processing the refunds due and owing to citizens based upon

21  the time incurred in processing or delivering the passport, as reflected in the Department of State's

22  own records of the date the application was received and the date of readiness or mailing, and using

23  the identity and current address of the applicants, the Department of State is instead requiring every

24

25          [14]/    In an Administrative Procedure Act challenge to an agency's interpretation of its own
26  regulations, an agency's interpretation is entitled to deference. *Alcaraz v. Block*, 746 F.2d 593, 606 (9th Cir. 1984). "Properly accorded, such deference entails affirmance of *any interpretation* 'within the range of reasonable meanings the words permit.'" *Id.* (emphasis added).

27  *Chattler v. United States of America,*                                                    Case No. 07-4040MMC
28  Defendants' Motion to Dismiss
                                              24

1   individual to mail in a written application for the refund."). Although Plaintiff might prefer an

2   automated refund system, her concession dispels the existence of a violation of 22 C.F.R. § 51.63.

3   This Court accordingly should dismiss Plaintiff's claim of a regulatory violation for failure to state a

4   claim.

### CONCLUSION

6       For the foregoing reasons, Defendants respectfully request that the Court grant this motion

7   and dismiss this action in its entirety.

8   Date: February 1, 2008                    Respectfully submitted,

10                                            JEFFREY S. BUCHOLTZ
                                             Acting Assistant Attorney General
11                                           Civil Division

12                                           JOSEPH P. RUSSONIELLO
                                             United States Attorney
13                                           Northern District of California

15                                           VINCENT M. GARVEY
                                             Deputy Branch Director

17                                              /s /Jacqueline Coleman Snead
                                             JACQUELINE COLEMAN SNEAD
18                                           (D.C. Bar No. 459548)
                                             Trial Attorney
19                                           Federal Programs Branch, Civil Division
                                             U.S. Department of Justice
20                                           20 Massachusetts Avenue, N.W. Rm. 7214
                                             Washington, DC 20530
21                                           Tel: (202) 514-3418

22                                           **Attorneys for Defendants**

27  *Chattler v. United States of America,*                      Case No. 07-4040MMC
    Defendants' Motion to Dismiss
28                                              25

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**JULIA CHATTLER,**

    **PLAINTIFF**

    **V.**

**UNITED STATES OF AMERICA,**
**DEPARTMENT OF STATE,**

    **DEFENDANTS.**

**Case No. 07-4040-MMC**

**Proposed Order**

    Upon consideration of Defendants' Motion to Dismiss [and the opposition thereto], it is hereby

    ORDERED that Defendants' Motion to Dismiss is GRANTED, and this action is hereby dismissed.

    SO ORDERED.

Dated: _____     _____
                                       UNITED STATES DISTRICT
                                       COURT JUDGE

*Chattler v. United States of America,*                    Case No. 07-4040MMC
Defendants' Motion to Dismiss

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing Defendants' Motion to Dismiss was served electronically on February 1, 2008 through the Northern District of California Electronic Case File System (ECF) and that the document is available for viewing and downloading on that system.

/s /Jacqueline Coleman Snead
Jacqueline Coleman Snead

*Chattler v. United States of America,*                                    Case No. 07-4040MMC
Defendants' Motion to Dismiss