REED R. KATHREIN (139304)
SHANA E. SCARLETT (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
shanas@hbsslaw.com

ROBERT B. CAREY (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
2425 East Camelback Road, Suite 650
Phoenix, AZ  85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob.carey@att.net

STEVE W. BERMAN (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Attorneys for Plaintiff

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIE CHATTLER, On Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA and THE UNITED STATES DEPARTMENT OF STATE, <br><br> Defendants. | No. C 07-04040 MMC <br><br> PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS <br><br> DATE:   March 14, 2008 <br> TIME:    9:00 a.m. <br> DEPT:   Courtroom 7, 19th Floor <br><br> ACTION FILED: August 7, 2007 |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

SUMMARY OF FACTUAL ALLEGATIONS AND REGULATORY BACKGROUND ................ 1

ARGUMENT ............................................................................................................................ 4

I.    PLAINTIFF'S FULL COMPENSATORY DAMAGES, INCLUDING SPECIAL
      AND CONSEQUENTIAL DAMAGES, ARE AVAILABLE ............................................ 4

      A.    Plaintiff Is Entitled to All Damages She Can Prove Under the Applicable
            Money-Mandating Regulations .......................................................................... 5

      B.    The Full Range of Contract Damages Are Available Against the Government
            for Breach of Contract ....................................................................................... 8

            1.    The Complaint Alleges Facts Sufficient to Establish the Formation
                  and Breach of a Contract with the Government ....................................... 9

                  a.    Plaintiff Has Properly Invoked the Court's Jurisdiction by
                        Pleading All Elements of a Contract and Breach by the
                        Government ................................................................................... 9

                  b.    Plaintiff's Allegations Establish an Express, or Alternatively
                        an Implied-in-Fact, Contract with the Government for
                        Expedited Processing .................................................................... 11

                        (1)    The Passport Application is a Binding Offer to Process
                               Expedited Applications in Three Working Days from
                               Receipt at a Passport Agency Which Could Be
                               Accepted by Payment of the Additional Fee ..................... 12

                        (2)    The Statements on the Department's Website
                               Established a Binding Contractual Obligation to
                               Return Passports to Applicants Paying for Expedited
                               Service in Twenty-One Days ............................................. 14

            2.    The Plaintiff is Entitled to All Damages She Can Prove That Were
                  Reasonably Foreseeable and That Flowed from the Government's
                  Breach of Its Obligations ....................................................................... 16

II.   THE PRUDENTIAL EXHAUSTION DOCTRINE DOES NOT REQUIRE
      DISMISSAL OF PLAINTIFF'S CLAIMS ...................................................................... 18

      A.    A Balancing of Factors Does Not Support Applying the Prudential
            Exhaustion Doctrine ......................................................................................... 18

            1.    Agency Expertise Is Not Necessary to Resolve Legal Issues or
                  Generate a Proper Record for Subsequent Judicial Review ..................... 19

            2.    Permitting the Case to Proceed in this Court Will Not Encourage
                  Deliberate Bypass of Administrative Procedures ..................................... 20

3.    Administrative Exhaustion is Unlikely to Cause the Department to Correct Its Own Mistakes or Preclude the Need for Subsequent Judicial Review ............................................................. 21

B.    This Court Should Not Require Administrative Exhaustion Because The Existing Administrative Remedy Is Inadequate ......................................... 22

III.    PLAINTIFF ADEQUATELY STATES A CLAIM FOR DAMAGES UNDER A MONEY-MANDATING REGULATION.......................................................... 23

CONCLUSION .................................................................................................... 25

1

# TABLE OF AUTHORITIES

2

## CASES

3

*AT&T Commc'ns. of the Southwest, Inc. v. City of Austin,*
    975 F. Supp. 928 (W.D.Tex. 1997) ...............................................................23

4

*Aleknagik Natives Ltd. v. United States,*
    648 F.2d 446 (9th Cir. 1980) .......................................................................21

5

6

*Alltel Information Services, Inc. v. Federal Deposit Insurance Corp.,*
    194 F.3d 1036 (9th Cir. 1999) .....................................................................18

7

*Am-Pro Protective Agency, Inc. v. United States,*
    281 F.3d 1234 (Fed. Cir. 2002) ..................................................................16

8

9

*Army & Air Force Exch. Services v. Sheehan,*
    456 U.S. 728 (1982) ...............................................................................7, 14

10

*Baker v. United States,*
    50 Fed. Cl. 483 (Cl. Ct. 2001) ...................................................................14

11

12

*Bell Atlantic Corp. v. Twombly,* _
    U.S. __, 127 S. Ct. 1955 (2007) ............................................................8, 11

13

*Bowen v. City of New York,*
    476 U.S. 467 (1986) .............................................................................19, 20

14

15

*Bowen v. Massachusetts,*
    487 U.S. 879 .................................................................................................23

16

*Bowen v. Michigan Academy of Family Physicians,*
    476 U.S. 667 (1986) ....................................................................................23

17

18

*Centex Corp. v. United States,*
    395 F.3d 1283 (Fed. Cir. 2005) ..................................................................16

19

20

*Chevron U.S.A., Inc. v. United States,*
    71 Fed. Cl. 236 (Ct. Cl. 2006) ...................................................................14

21

*Cutler-Hammer, Inc. v. United States,*
    441 F.2d 1179 (Ct. Cl. 1971) .....................................................................13

22

23

*El Dorado Springs v. United States,*
    28 Fed. Cl. 132 (1993) ..................................................................................8

24

25

*El Rescate Legal Services, Inc. v. Executive Office of Immigration Review,*
    959 F.2d 742 (9th Cir. 1992) ................................................................20, 21

26

27

*Federal Crop Insurance Corp. v. Merrill,*
    332 U.S. 380 (1947) ....................................................................................15

28

*First Nationwide Bank v. United States,*
    431 F.3d 1342 (Fed. Cir. 2005) ................................................................. 16

*Fisher v. United States,*
    402 F.3d 1167 (Fed. Cir. 2005) ............................................................ 4, 5, 6

*Forest Guardians v. Babbitt,*
    164 F.3d 1261 (10th Cir. 1998) ................................................................ 24

*Franconia Associates v. United States,*
    536 U.S. 129 (2002) ................................................................... 11, 16, 17

*Gardiner Manufacturing Co. v. United States,*
    479 F.2d 39 (9th Cir. 1973) ...................................................................... 10

*Girling Health System, Inc. v. United States,*
    949 F.2d 1145 (Fed. Cir. 1991) .......................................................... 12, 15

*Gompper v. VISX, Inc.,*
    298 F.3d 893 (9th Cir. 2002) ...................................................................... 8

*Griffin v. United States,*
    215 Ct. Cl. 710 (1978) ........................................................................ 17, 18

*Hansen Bancorp, Inc. v. United States,*
    367 F.2d 1297 (Fed. Cir. 2004) .......................................................... 16, 17

*Hercules, Inc. v. United States,*
    516 U.S. 417 (1996) ................................................................................... 9

*Hills Material Co. v. Rice,*
    982 F.2d 514 (Fed. Cir. 1993) ............................................................ 12, 13

*Hughes Commc'ns. Galaxy, Inc. v. United States,*
    998 F.2d 953 (Fed. Cir. 1993) ............................................................ 12, 13

*Indiana Michigan Power Co. v. United States,*
    422 F.3d 1369 (Fed. Cir. 2005) ...................................................... 4, 16, 17

*Johnson v. Shalala,*
    2 F.3d 918 (9th Cir. 1993) .................................................................. 19, 20

*Kelly v. City & County of San Francisco,*
    Number C 05-1287 SI, 2005 U.S. Dist. LEXIS 31110 (N.D. Cal. Nov. 21, 2005) .......... 22

*La Van v. United States,*
    382 F.3d 1340 (Fed. Cir. 2004) ................................................................ 11

*Laing v. Ashcroft,*
    370 F.3d 994 (9th Cir. 2004) ................................................................ 4, 22

*Last Chance Mining Co. v. United States*,
    12 Cl. Ct. 551, 555 (1987) ........................................................................... 13

*Lavin v. Marsh*,
    644 F.2d 1378 (9th Cir. 1981) ................................................................... 15

*McCarthy v. Madigan*,
    503 U.S. 140 (1992) ............................................................... 18, 19, 21, 22

*McGee v. United States*,
    402 U.S. 479 (1971) ............................................................................ 18, 20

*McNary v. Haitian Refugee Ctr., Inc.*,
    498 U.S. 479 (1991) ..................................................................................... 23

*Merritt v. United States*,
    267 U.S. 338 (1925) ..................................................................................... 10

*Montes v. Thornburgh*,
    919 F.2d 531 (9th Cir. 1990) ............................................. 4, 18, 19, 22

*Montgomery v. Rumsfeld*,
    572 F.2d 250 (9th Cir. 1978) ................................................................ 18, 20

*Morris v. Commodity Futures Trading Commission*,
    980 F.2d 1289 (9th Cir. 1992) ...................................................................... 19

*Nat'l Rural Utils. Coop. Fin. Corp. v. United States*,
    14 Cl. Ct. 130, 137 (1988) ........................................................................... 12

*Nehmer v. United States Veterans Admin.*,
    118 F.R.D. 113 (N.D. Cal. 1987) ......................................................... 20, 21

*Nutt v. United States*,
    12 Cl. Ct. 345, 351 (1987) ........................................................................... 13

*Precision Pine & Timber, Inc. v. United States*,
    72 Fed. Cl. 460 (2006) ................................................................................. 17

*Ralston Steel Corp. v. United States*,
    340 F.2d 663 (Ct. Cl. 1965) ......................................................................... 10

*Rivera Agredano v. United States*,
    70 Fed. Cl. 564 (Ct. Cl. 2006) ..................................................................... 16

*Rodriguez v. United States*,
    69 Fed. Cl. 487 (Ct. Cl. 2006) ..................................................................... 16

*Schism v. United States*,
    316 F.3d 1259 (Fed. Cir. 2002) ............................................................. 15, 17

*Shafmaster Fishing Co. v. United States,*
  28 Fed. Cl. 699 (1993)...........................................................................8

*Steel Co. v. Citizens for a Better Environment,*
  523 U.S. 83 (1998) .............................................................................6, 9

*Sunswick Corp. v. United States,*
  75 F. Supp. 221 (Ct. Cl. 1948) ..........................................................16

*Tecom, Inc. v. United States,*
  66 Fed. Cl. 736 (Ct. Cl. 2005) ...........................................................16

*Trauma Serv. Group v. United States,*
  104 F.3d 1321 (Fed. Cir. 1997) .........................................................10

*Tree Farm Development Corp. v. United States,*
  585 F.2d 493 (Cl. Ct. 1978)................................................................13

*United States ex rel. Lujan v. Hughes Aircraft Co.,*
  243 F.3d 1181 (9th Cir. 2001) .....................................................24, 25

*United States v. Bostwick,*
  94 U.S. 53 (1876) ...............................................................................17

*United States v. Mitchell,*
  463 U.S. 206 (1983) ...........................................................................16

*United States v. Navajo Nation,*
  537 U.S. 488 (2003) .............................................................6, 7, 8, 24

*United States v. Romm,*
  455 F.3d 990 (9th Cir. 2006) ...............................................................9

*United States v. Testan,*
  424 U.S. 392 (1976) .......................................................................7, 24

*United States v. Westerbrand-Garcia,*
  35 F.3d 418 (9th Cir. 1994) .........................................................11, 13

*United States v. White Mountain Apache,*
  537 U.S. 465 (2003) .....................................................................*passim*

*United States v. Winstar Corp.,*
  581 U.S. 839 (1996) .....................................................................11, 13

*Weinberger v. Salfi,*
  422 U.S. 749 (1975) ...........................................................................19

*Wells Fargo Bank, N.A. v. United States,*
  88 F.3d 1012 (Fed. Cir. 1996) .................................................11, 12, 14

*Winstar Corp. v. United States*,
    64 F.3d 1531 (Fed. Cir. 1995), *aff'd*, 518 U.S. 839 (1996) ...............................................11

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) ...............................................................................................9

*Zucker v. United States*,
    758 F.2d 637 (Fed. Cir. 1985) ...........................................................................................17

**STATUTES**

10 U.S.C. 1124(f) ........................................................................................................................17

71 F.R. 68412 ...............................................................................................................................2

22 C.F.R. § 22.1...................................................................................................................1, 15

22 C.F.R. § 22.6(b) ....................................................................................................................25

22 C.F.R. § 51.63...............................................................................................................*passim*

22 C.F.R. §§ 51.66, 22.1......................................................................................................1, 6, 10

12 U.S.C. § 1821(e) ....................................................................................................................18

28 U.S.C. 1346(a)(2) ................................................................................................................4, 5

59 F.R. 48998-01..............................................................................................................2, 13, 25

**INTRODUCTION**

This is a simple case.  Plaintiff Chattler and the class paid for the expedited processing of their passport applications, and did not receive the three-day processing for which they paid. Defendants breached their express and implied contracts with Plaintiff and the class and breached their regulatory duties to provide the service requested and paid for.  ¶¶ 2-6.[1]  In spite of the obvious breaches of its obligations, Defendant United States Department of State ("Department") has failed to refund expedited processing fees as required by regulation and refused to pay damages Plaintiff and other class members incurred as a result of Defendants' breach of their contractual and regulatory obligations.

The governing facts and law are clear and, to a large extent, are not contested between the parties.  Defendants do not dispute that they have not provided thousands of applicants with expedited processing, despite the collection of the sixty dollar fee.  Rather, Defendants argue that this Court must eliminate particular remedies for lack of jurisdiction or failure to state a claim, that the government did not intend to contract, and that this Court should not exercise its jurisdiction without requiring the Plaintiff to seek an alleged administrative remedy which is not mandated by statute or regulation, has never been adequately advertised or explained, does not clearly incorporate the correct terms of the government's obligation, and does not provide a full remedy. On these facts, this Court should exercise its jurisdiction over Plaintiff's claims for full compensatory damages.

**SUMMARY OF FACTUAL ALLEGATIONS AND REGULATORY BACKGROUND**

Pursuant to regulation, the Department is permitted to offer expedited service for the processing of passport applications.  ¶ 2; 22 C.F.R. §§ 51.66, 22.1.  At times relevant to this lawsuit, expedited service was defined as three business days, "commencing when the application reaches a Passport Agency, or . . . when the request for expediting processing is approved."  ¶ 3; 22 C.F.R. § 51.66.  Department publications also stated that applicants would receive their passports

---

[1]    All "¶ ___" references are to the Class Action Complaint for Breach of Contract, Regulatory Violation, and Breach of the Implied Covenant of Good Faith and Fair Dealing ("Complaint"), filed on August 7, 2007.

1   within about two weeks when they paid for expedited service and overnight mail.  ¶ 5.  Department

2   regulations require that "[t]he expedite fee *will be refunded* if the Passport Agency does not

3   provide the requested expedited processing as defined in § 51.66."  ¶ 6; 22 C.F.R. § 51.63.[2]

4            Although Plaintiff Chattler paid the fee to have her passport application expedited, she did

5   not receive her passport for over seven weeks.  ¶¶ 26-28.  In order to finally secure her passport,

6   she had to take a full day off of work to go in person to reapply, losing a full day of pay.  Chattler

7   Decl., ¶ 3. [3]  In all of her searching of the Department's website and contact with agency

8   employees concerning her passport status, she never found anything that indicated she could obtain

9   a refund.  Chattler Decl. ¶ 4.  Plaintiff brings this action against the United States of America and

10  the Department as a class action on behalf of herself and all others similarly situated, who paid an

11  extra fee to secure expedited processing of their passports and whose passports were not processed

12  within the required three-day period or were not delivered within the promised time.  ¶ 1.  Plaintiff

13  seeks her full damages stemming from the government's breach of its obligations.

14           While the problem of passport delays has existed for years, it came to the forefront in 2007

15  due to the Department's failure to take sufficient measures to process the increase in passport

16  applications in response to the Western Hemisphere Travel Initiative.  ¶¶ 8, 10; 71 F.R. 68412.  As

17  a result, mass delays in passport processing plagued travelers, with applicants sometimes waiting a

18  month or more, despite paying for three-day processing.  ¶ 10.  In spite of their inability to provide

19  expedited processing, Defendants continued to collect expedited processing fees.  ¶¶ 9-11.  The

20  government, however, has not refunded improperly collected expedited processing fees to citizens

21  who did not receive the service they paid for.  ¶ 10.  Moreover, Defendants refuse to honor their

22  commitment to notify those entitled to a refund. *See* 59 F.R. 48998-01.

23           In June 2007, largely as a result of political pressure and public criticism of Senator Charles

24  Schumer and others, the Department wrote certain members of Congress informing them that it

25  would refund fees for expedited services for those individuals who did not receive their passports

---

26  [2]        All internal quotations and citations omitted, and all emphasis added, unless otherwise indicated.

27

28  [3]        "Chattler Decl." refers to the Declaration of Julia Chattler in Support of Plaintiff's Opposition to Defendants'
    Motion to Dismiss, filed November 30, 2007.

1    within 14 days.  ¶¶ 12, 13.  The Department did not otherwise publicize this action, nor did it notify

2    applicants due a refund of their rights, even though only it knew for sure if the passport application

3    was processed within three days.

4          Defendants' approach to refunds suffers from numerous deficiencies.  The scheme was only

5    announced in June 2007, and even then, without any effort to inform the public at large.  ¶¶ 12-13.

6    The Department does not notify individuals who experienced delays prior to that time, or who

7    looked for information on refunds prior to that time, of the process or the availability of a refund –

8    instead, it "relies on applicants" to contact them.  Barrett Decl. ¶ 48.[4]  The Department has no

9    intention of altering that practice and informing individuals who did not receive refunds that they

10   are available.  Barrett Decl. ¶¶ 49-51.  Individuals who specifically contacted the Department

11   asking for refunds have been told they could not get them.  Humphrey Decl., ¶ 5; Robinson Decl.

12   ¶ 4.[5]  Due to these flaws and misrepresentations, hundreds of thousands of citizens who are owed

13   the money on undisputed facts have not and will not receive monies owed to them under the

14   Department's program.  ¶ 15.

15         In addition, the Department has not agreed to refund fees for expedited processing for those

16   passports taking longer than three days to process.  ¶ 12.  Responses to inquiries about the

17   availability of refunds inform applicants that they are entitled only when the passports took longer

18   than three weeks, a time frame wholly unrelated to their refund obligation.  Humphrey Decl. ¶ 6.

19   The Department has also refused to pay any damages stemming from its breaches beyond the

20   refund of the expedite fee.

21         In this lawsuit, Plaintiff seeks damages for herself and class members.  She brings claims

22   for relief for breach of contract, damages under the money-mandating regulations of 22 C.F.R.

23   §§ 51.63, 51.66 and breach of the implied covenant of good faith and fair dealing.  ¶¶ 62-98.

24

25

26   [4]     "Barret Decl." refers to the Declaration of Ann Barrett in Support of Defendants' Motion to Dismiss, filed
     February 1, 2008.

27   [5]     "Humphrey Decl." refers to the Declaration of Pamela Humphrey in Support of Plaintiff's Opposition to
     Defendants' Motion to Dismiss, filed November 30, 2007.  "Robinson Decl." refers to the Declaration of Regina
28   Robinson in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, filed November 30, 2007.

1

**ARGUMENT**

2

Plaintiff Chattler has properly invoked the jurisdiction of this Court under 28 U.S.C.

3

1346(a)(2) and has stated claims for relief for breach of contract and under a money-mandating

4

regulation for all her compensatory damages, including special and consequential damages.  The

5

Plaintiff's claims fall squarely within the Tucker Act's grant of jurisdiction and waiver of

6

sovereign immunity.  *See United States v. White Mountain Apache*, 537 U.S. 465, 472 (2003);

7

*Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).  Plaintiff is entitled to all damages

8

that she can prove flow from the breach of the government's obligations.  *See Indiana Michigan*

9

*Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005).

10

The prudential exhaustion doctrine likewise does not require dismissal.  The issues

11

presented do not require agency expertise, this suit is not likely to encourage the deliberate bypass

12

of administrative procedures, and it is clear that the Department has no intention of changing its

13

process to address its flaws or providing appropriate remedies to individuals who sustained

14

damages.  *See Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990).  Because the

15

Department's refund scheme is inadequate and does not address the claims of Plaintiff and the

16

class, this Court should not require administrative exhaustion.  *See Laing v. Ashcroft*, 370 F.3d 994,

17

1000 (9th Cir. 2004).

18

Finally, Defendants' argument that the Plaintiff failed to state a claim because the pertinent

19

regulations do not require automatic refunds is incorrect.  Plaintiff adequately stated a claim for

20

relief under a money-mandating regulation.  In addition, the regulation's mandatory language

21

requires an automatic refund.

22

**I.    PLAINTIFF'S FULL COMPENSATORY DAMAGES, INCLUDING SPECIAL AND**
**CONSEQUENTIAL DAMAGES, ARE AVAILABLE**

23

24

Defendants wrongly suggest that the government has not waived its sovereign immunity as

25

to "Plaintiffs' claims for consequential and special damages."  *See* Defs.' Mem. at 8.[6]  Plaintiff has

26

not pled a separate claim or claims for special and consequential damages; Plaintiff has alleged

27

28

---

[6]    "Defs.' Mem." or "Second Motion to Dismiss" refer to the Defendants' Notice of Motion to Dismiss and Memorandum of Law in Support of Defendants' Motion to Dismiss, filed February 1, 2008.

1   facts establishing cognizable claims for breach of contract; breach of the implied covenant of good

2   faith and fair dealing; and damages under a money-mandating statute or regulation. The Tucker

3   Act establishes jurisdiction and waives the government's sovereign immunity for those claims. 28

4   U.S.C. § 1346(a)(2); *White Mountain Apache*, 537 U.S. at 472; *Fisher*, 402 F.3d at 1172. There is

5   no requirement that the government waive sovereign immunity for particular types of damages on

6   such claims; Plaintiff is entitled to prove what damages flow from the government's breach of its

7   regulatory and contractual duties.

8   **A.      Plaintiff Is Entitled to All Damages She Can Prove Under the Applicable Money-
            Mandating Regulations**

9
10          Defendant's argument that the court lacks jurisdiction to award special or consequential

11  damages under the pertinent regulations, or that Plaintiff has failed to state a claim for such

12  damages, is incorrect. Plaintiff has properly established the jurisdiction of the Court and stated a

13  valid claim for damages under applicable money-mandating regulations, and she is entitled to all

14  damages resulting from the government's breach of its obligations.

15          The question on Defendants' Second Motion to Dismiss is only whether Plaintiff has

16  adequately invoked the Court's jurisdiction and stated a claim by relying on a regulation that is

17  money-mandating. *Fisher*, 402 F.3d at 1173. The Little Tucker Act confers jurisdiction upon this

18  Court for claims brought against the United States founded upon a statute or regulation and waives

19  the government's sovereign immunity for those actions. 28 U.S.C. § 1346(a)(2); *Fisher*, 402 F.3d

20  at 1172. A plaintiff bringing a Tucker Act claim must identify a separate statute or regulation that

21  provides a substantive right to such damages. *White Mountain Apache*, 537 U.S. at 472. However,

22  because "the Tucker Act supplies a waiver of immunity . . . the separate statutes and regulations

23  need not provide a second waiver of sovereign immunity, nor need they be construed in the manner

24  appropriate to waivers of sovereign immunity." *Id*.

25          As Defendants concede, for a claim based on a money-mandating statute or regulation, "the

26  determination that the source is money-mandating shall be determinative both as to the question of

27  the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a

28

1    money-mandating source on which to base his cause of action."[7] *Fisher*, 402 F.3d at 1173.  A

2    regulation or statute is money mandating when it is "reasonably amenable to the reading that it

3    mandates a right of recovery in damages."  *White Mountain Apache*, 537 U.S. at 473.  The analysis

4    must "train on specific rights-creating or duty-imposing statutory or regulatory prescriptions."

5    *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003).  The question is whether the regulations

6    can be fairly interpreted as imposing a substantive obligation enforceable by damages.  *White*

7    *Mountain Apache*, 537 U.S. at 474.

8         In this case, the regulations are fairly read as establishing a substantive duty to provide

9    expedited service which is enforceable by money damages.  *See id.* at 474.  The provisions of 22

10   C.F.R. §§ 51.63 and 51.66 required that the government complete processing of expedited

11   applications within three business days of receipt at a passport agency or refund the fee.  The

12   regulation further provided that the agency may decline to accept a request if "it is apparent at the

13   time it is made that the request cannot be granted."  22 C.F.R. § 51.66(d).  Taken together, these

14   provisions are reasonably read as establishing a substantive duty to provide expedited service or to

15   alert individuals when the service cannot be performed, and this duty is enforceable by money

16   damages for the losses incurred when the duty is not fulfilled.

17        Defendants do not dispute that 22 C.F.R. § 51.63 is a money-mandating regulation for the

18   purposes of the Little Tucker Act, which therefore properly invokes the Court's jurisdiction and

19   states a valid claim for relief.  Defendants instead contend the Court should dismiss claims for

20   damages beyond a refund because the regulation does not mandate those particular damages.

21   Defs.' Mem. at 9.  This is incorrect.

22

23   _____

24   [7]      Defendants' argument that this is akin to the procedure disapproved of in *Steel Co. v. Citizens for a Better
     Env't.*, 523 U.S. 83 (1998), is incorrect.  The Court in *Steel Co.* addressed the opposite question: whether a plaintiff's

25   ultimate failure to state a valid cause of action could undermine the subject matter jurisdiction of the court.  *Steel Co.*,
     523 U.S. at 89-90.  The Court noted that it would be folly to address the merits of a case first to determine whether

26   jurisdiction existed.  *Id.* at 94.  Here, to the contrary, the Plaintiff's reliance on a statute she contends to be money
     mandating invokes the Court's jurisdiction and states a cause of action; the merits question is whether Plaintiff is in

27   fact entitled to damages under the regulations she invokes.  *See id.* at 89 (the district court has jurisdiction if the
     plaintiff's claim is such that she will recover if the laws are given one construction and be defeated if the laws are

28   given another construction).

The Supreme Court in *White Mountain Apache* rejected the argument the government

makes here that the remedy the plaintiff seeks must be explicitly authorized by the statute:

> To the extent that the Government would demand an explicit
> provision for money damages to support every claim that might be
> brought under the Tucker Act, it would substitute a plain and explicit
> statement standard for the less demanding requirement of fair
> inference that the law was meant to provide a damage remedy for
> breach of a duty.

*White Mountain Apache*, 537 U.S. at 477.  *See also Navajo Nation*, 537 U.S. at 506 (the applicable

statutes "need not, however, expressly provide for money damages; the availability of such

damages may be inferred").

In so holding, the Supreme Court considered and limited its earlier holdings in *United

States v. Testan*, 424 U.S. 392 (1976), and *Army & Air Force Exch. Servs. v. Sheehan*, 456 U.S.

728 (1982), noting that in both of those cases the Court had "affirmative reasons to believe that no

damages remedy could have been intended, absent a specific provision."  *White Mountain Apache*,

537 U.S. at 477-78.  The Court noted that a specific authorization was necessary in *Sheehan*

"because of a statute that generally granted employees the damages remedy petitioner sought, but

expressly denied that cause of action" to the plaintiff.  *Id*. at 478.  Similarly, in *Testan*, the Court

found that there was a "long-standing presumption" against the plaintiff's arguments.  *Id*.  Because

the statute invoked did not clearly abrogate the established rule, the Court in *Testan* found it did not

mandate damages.  *Testan*, 424 U.S. at 402.

Considering these holdings, the Court in *White Mountain Apache* held that "in both

*Sheehan* and *Testan* we required an explicit authorization of a damages remedy because of strong

indications that Congress did not intend to mandate money damages."  *White Mountain Apache*,

537 U.S. at 478.  An express provision is required only in such a situation, when "the legal current

is otherwise against the existence" of a claim.  *Id*.  It is not required in other circumstances.  For

example, in *White Mountain Apache*, the Court found that a statute declaring that land would be

held in trust for the tribe was a money-mandating statute – even though it lacked any specific

provision for damages – because it created a fiduciary duty on the part of the United States.  *Id*. at

474.  According to the Court, "[g]iven this duty on the part of the trustee . . . it naturally follows

1    that the Government should be liable in damages for breach of its fiduciary duties." *Id*. at 475-76.

2    The Court also refused to rule out specific types or measures of damages in making the

3    determination that the statute was money mandating, but rather remanded for a determination of

4    what damages could be proved. *Id*. at 476 n.4, 478-79.

5         Here, the regulations established a duty enforceable by damages. Defendants have failed to

6    show any evidence of any longstanding presumptions or established rules that would deny Plaintiff

7    damages for government's breach of its obligations.[8]  Indeed, the fact that the return of the refund

8    fee is mandatory under 22 C.F.R. § 51.63(c) is evidence that the duty itself was intended to be

9    enforceable, and it "naturally follows" that the government should be liable for its breach. The

10   Plaintiff is entitled to those damages she can prove flowed from the government's failure to

11   perform its duties as required by the regulation. *See White Mountain Apache*, 537 U.S. at 474.

**B.    The Full Range of Contract Damages Are Available Against the Government for Breach of Contract**

14        Defendants next wrongly argue that the Court lacks jurisdiction over Plaintiff's breach of

      contract claims because no contract was formed, and that any damages under a contract would be

      limited to a refund. Plaintiff has properly invoked the jurisdiction of this Court under the Little

      Tucker Act, has alleged facts sufficient to state a claim for breach of contract, and is entitled to all

      reasonably foreseeable damages that she can prove.

19        A well pleaded complaint must only contain sufficient factual allegations to state a claim

      for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955,

      1974 (2007). On a motion to dismiss, the reviewing court accepts the allegations of the complaint

      as true and construes them in the light most favorable to the plaintiff. *Gompper v. VISX, Inc.*,

---

[8]    The cases on which Defendants rely in their Second Motion to Dismiss have no bearing on the legal duties at issue in this case. Here, Defendants rely on cases from the Court of Federal Claims that were decided ten years prior to *White Mountain Apache* and *Navajo Nation* (*See* Second Motion to Dismiss at 10, relying on *El Dorado Springs v. United States*, 28 Fed. Cl. 132 (1993), and *Shafmaster Fishing Co. v. United States*, 28 Fed. Cl. 699 (1993)); one of which does not even address the issues at hand but focuses on whether there is a second waiver of sovereign immunity in any of the source statutes – another requirement already rejected by the Supreme Court. *See El Dorado Springs*, 28 Fed. Cl. at 135-36; *White Mountain Apache*, 537 U.S. at 472. Neither case sheds any light on whether the regulations at issue here can be fairly interpreted as mandating damages, nor can they demonstrate any legal current with regard to the availability of damages for breach of the obligation to provide expedited passport processing.

298 F.3d 893, 895 (9th Cir. 2002).  A dismissal under Rule 12(b)(6) is proper "only where there is

no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

theory."  *Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007).

> **1.    The Complaint Alleges Facts Sufficient to Establish the Formation and Breach of a Contract with the Government**

Defendants' argument that Plaintiff has failed to establish a contract, and that therefore this

Court lacks jurisdiction over the Plaintiff's claims for breach of contract, is not properly before the

Court because Defendants failed to raise the argument in their original motion to dismiss, filed on

October 9, 2007.  *See* Plaintiff's Motion to Strike Defendants' Second Motion to Dismiss, filed

contemporaneously with this Opposition ("Mot. To Strike").  Defendants attempted to raise the

argument only in a footnote in their Reply.  Reply Memorandum of Law in Support of Defendants'

Motion to Dismiss at 6 n.4.  It is well established, however, that an argument cannot be raised for

the first time in a reply brief.  *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006).

Defendants' footnote was insufficient to preserve their argument and it cannot be raised at this

time.

Defendants' argument also improperly merges two inquiries: whether the Plaintiff has

established jurisdiction and whether the Plaintiff has adequately stated a claim for relief.

Defendants argue that Plaintiff's allegations do not form a contract, and therefore jurisdiction is

lacking.  However, the Supreme Court has rejected this type of reasoning, noting that it is "firmly

established in our cases that the absence of a valid (as opposed to arguable) cause of action does

not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to

adjudicate the case."  *Steel Co.*, 523 U.S. at 89.

> **a.    Plaintiff Has Properly Invoked the Court's Jurisdiction by Pleading All Elements of a Contract and Breach by the Government**

Plaintiff properly invoked the jurisdiction of this Court by alleging the formation and

breach of a contract with the government.  Jurisdiction under the Tucker Act extends to contracts

that are express or implied-in-fact.  *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996).  The

requirements for an express and an implied-in-fact contract with the government are identical: the

1   complainant must allege mutual intent to contract, including an offer, an acceptance, and

2   consideration; and must also show that the agent making the contract had actual authority to do so.

3   *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).  To establish

4   jurisdiction, Plaintiff need only properly allege facts showing the elements of formation and breach

5   of a contract.  *Id.*; *Ralston Steel Corp. v. United States*, 340 F.2d 663, 668 (Ct. Cl. 1965).

6         Here, Plaintiff has alleged facts showing an express offer and acceptance.  The Complaint

7   alleges that the Passport Application contains an explicit offer to provide expedited processing in

8   exchange for additional fee, and that the Department, through its website, promised that passports

9   receiving expedited processing would be returned within two to three weeks.  ¶¶ 63, 80.  Plaintiff

10  alleged that she accepted the government's offer and provided the necessary consideration by

11  payment of the additional fee.  ¶¶ 27, 64, 81.  Furthermore, Plaintiff has shown that the Department

12  had actual authority to make such an offer under the pertinent regulations.  *See* 22 C.F.R. § 51.66.

13  Plaintiff also alleged that the government did not fulfill its duty to process her passport within the

14  promised amount of time.  ¶¶ 29, 66.  These allegations, if true, are sufficient to show both the

15  formation and breach of a contract for expedited processing of her passport application, and

16  establish jurisdiction under the Tucker Act.  *Trauma Service Group*, 104 F.3d at 1325.

17        The cases on which Defendants rely in an attempt to avoid jurisdiction on this ground, in

18  contrast, involve complaints where the plaintiff did not allege the existence of a contract, and

19  therefore failed to invoke the court's jurisdiction.  *See Merritt v. United States*, 267 U.S. 338, 340-

20  41 (1925); *Gardiner Mfg. Co. v. United States*, 479 F.2d 39, 40 (9th Cir. 1973).  They do not stand

21  for the proposition that every complaint must successfully show a contract on the merits to

22  establish jurisdiction.  Here, because Plaintiff has properly alleged all elements of a contract, the

23  Court has jurisdiction under the Tucker Act to hear the claims.  *Trauma Service Group*, 104 F.3d at

24  1325.

25

26

27

28

1
2

      **b.**     **Plaintiff's Allegations Establish an Express, or Alternatively an Implied-in-Fact, Contract with the Government for Expedited Processing**

3

      Plaintiff also stated facts sufficient to establish a claim for breach of contract that is

4

plausible on its face.  *See Twombly*, 127 S. Ct. at 1974.  Defendants challenge the sufficiency of

5

only one aspect of the Plaintiff's claim, arguing that the offers on which Plaintiff relies are

6

insufficiently firm to establish the government's intent to contract.  Defendants are incorrect.

7

      It is well established that "[w]hen the United States enters into contract relations, its rights

8

and duties therein are governed generally by the law applicable to contracts between private

9

individuals." *Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002).  Like private parties,

10

the government may enter into a contract by making promissory words which induce action by a

11

private party in reliance on the government's promise.  *Wells Fargo Bank, N.A. v. United States*,

12

88 F.3d 1012, 1018 (Fed. Cir. 1996).  That the government's promise is contingent upon

13

performance of other conditions by the private party does not make its promise any less binding.

14

*Id.* at 1019.  A contract with the government may arise out of multiple documents containing

15

promises where there is a clear indication of the intent to contract.  *La Van v. United States*,

16

382 F.3d 1340, 1346 (Fed. Cir. 2004); *see also Winstar Corp. v. United States*, 64 F.3d 1531, 1540-

17

44 (Fed. Cir. 1995), *aff'd*, 518 U.S. 839 (1996).  In determining the existence of a contractual

18

obligation, the courts look to the realities of the transaction to determine the principal purpose of

19

the parties.  *United States v. Winstar*, 518 U.S. 839, 863-64 (1996) (finding that "the realities of the

20

transaction favored reading those documents as contractual commitments, not mere statements of

21

policy").

22

      These traditional rules of contract formation and interpretation apply even where there is an

23

overlying regulatory framework.  *See*, *e.g.*, *United States v. Winstar Corp.*, 581 U.S. 839, 862-866

24

(1996) (discussing ability to incorporate particular regulatory terms into contract); *Wells Fargo*

25

*Bank, N.A.*, 88 F.3d at 1014-19 (describing the formation of a contract under the purview of the

26

Rural Development Act of 1972); *United States v. Westerbrand-Garcia*, 35 F.3d 418,  420-21 (9th

27

Cir. 1994) ("The fact that the parties do not bargain for the terms of the agreement, but must take

28

1    the terms as set forth in [the statute] does not mean that the agreement is not a contract."); *Hughes*

2    *Commc'ns. Galaxy, Inc. v. United States*, 998 F.2d 953, 957-59 (Fed. Cir. 1993); *Hills Material*

3    *Co. v. Rice*, 982 F.2d 514 (Fed. Cir. 1993).

4                    **(1)    The Passport Application is a Binding Offer to Process**
                              **Expedited Applications in Three Working Days from Receipt at**
5                             **a Passport Agency Which Could Be Accepted by Payment of the**
                              **Additional Fee**
6

7           Here, Plaintiff has shown that the government made two express promises or offers forming

8    the contract at issue here.  First, in the Passport Application, the Department stated, "**For faster**

9    **processing**, you may request expedited service.  Expedited requests will be processed in three

10   workdays from receipt at a passport agency.  The additional fee for expedited service is $60."

11   Complaint, Ex. A (emphasis in original).  This is an unambiguous statement that for an additional

12   fee, the applicant's passport will be processed in three workdays from receipt at a passport agency.

13   The promissory words are not qualified in any way and invite the applicant to accept by payment

14   of the fee.  Such an explicit offer is sufficient to form a binding contract upon acceptance.  *See*

15   *Wells Fargo Bank, N.A.*, 88 F.3d at 1019; *Nat'l Rural Utils. Coop. Fin. Corp. v. United States*, 14

16   Cl. Ct. 130, 137 (1988).

17          Defendants' suggestion that this is a "mere solicitation" from the government is incorrect.

18   The application plainly states that expedited requests "will be" processed in three days.  These are

19   unqualified words in the form of a promise or undertaking.  Defendants' citation to *Girling Health*

20   *Sys., Inc. v. United States*, 949 F.2d 1145 (Fed. Cir. 1991) is inapposite.  There, the instruction

21   form on which the plaintiff relied stated, "[y]ou *should generally* receive determination on your

22   election within 60 days," which the court found to be insufficient to manifest intent to be bound.

23   *Id.* at 1146-47.  In contrast, the Passport Application promised that the expedited applications "will

24   be" processed in three days.  This language is not merely predictive, it is definite and promissory.

25   In addition, the form in *Girling* contained a blanket caveat which stated:  "If you are not notified of

26   acceptance or non-acceptance of your election within 3 months of date of filing . . . you should take

27   follow-up action," which the court found to clearly indicate there was no binding promise to act in

28   sixty days.  *Id.* at 1047.  The application at issue in this case has no such qualifying language,

1  caveats or instructions.  There is only the straightforward promise that when the additional fee is

2  paid, the application "will be processed in three workdays."

3      Similarly, *Tree Farm Dev. Corp. v. United States*, 585 F.2d 493, 496-97, 500-01 (Cl. Ct.

4  1978), involved a multi-stage loan application process which was conditioned on multiple

5  subjective factors, some of which the plaintiff failed to satisfy.  There are no similar facts here.

6  The application includes no qualifying language and places no additional conditions or

7  requirements to act upon the applicant.  To the contrary, the government placed the onus on ***itself***

8  to take follow-up action if the time frame was not met.  *See* 59 F.R. 48998-01.  The application was

9  a "manifestation of willingness to enter into a bargain, so made as to justify another person in

10  understanding that his assent to that bargain is invited and will conclude it."  *Tree Farm Dev.*

11  *Corp.*, 585 F.2d at 500.

12      Nor does the fact that the promise originates in a regulation preclude a contract.  The cases

13  upon which Defendants rely find that the regulations at issue in those cases were too indefinite to

14  be offers in and of themselves, but they do not stand for the broad proposition that a regulatory

15  provision can never become embodied in or give rise to a contract.  *See Cutler-Hammer, Inc. v.*

16  *United States*, 441 F.2d 1179 (Ct. Cl. 1971) (a regulation establishing an application process for the

17  purchase of silver which did not establish the price or define the terms of the bargain was not an

18  offer to contract); *Last Chance Mining Co. v. United States*, 12 Cl. Ct. 551, 555 (1987) (allegations

19  that an implied contract arose out of a "plethora of rules, regulations and statutes involving federal

20  mining law," and that plaintiff's acceptance flowed from its entry, discovery and location of claims

21  were insufficiently firm).  Contracts are routinely found in regulated contexts, and may specifically

22  incorporate regulatory terms, promise particular regulatory treatment, or arise from the regulations

23  themselves.  *See, e.g.*, *Winstar Corp.*, 581 U.S. at 862-866; *Westerbrand-Garcia*, 35 F.3d at 420-

24  21; *Hughes Commc'ns. Galaxy, Inc.*, 998 F.2d at 957-59; *Hills Material Co.*, 982 F.2d 514; *Nutt v.*

25  *United States*, 12 Cl. Ct. 345, 351 (1987).

26      In this case, there was an express and unambiguous offer made in the Passport Application

27  which invited applicants to accept through the payment of an additional sixty dollars.  This

28

1    language constituted a valid and binding contractual offer to process expedited application in three

2    workdays from receipt at a Passport Agency.[9]

              **(2)**       **The Statements on the Department's Website Established a**
3                                     **Binding Contractual Obligation to Return Passports to**
4                                     **Applicants Paying for Expedited Service in Twenty-One Days**

5           The statements made on the Department's website similarly constitute a binding promise to

6    return passports to applicants paying for expedited service within about two weeks.  The

7    Department does not dispute that the language on its website stated that if an applicant paid for

8    expedited processing the passport would arrive within about two weeks, but argues that additional

9    language undermines that promise.  However, the language quoted by the government again

10    confirms that "Currently, Expedite Service takes 2-3 weeks to receive your passport from the date

11    you applied." Defs.' Mem. at 15.  This language is clear and unequivocal, indicating that the

12    Department will return the passports within twenty-one days from the day the applicant applies.

13    This is a valid and binding offer that could be accepted through payment of the fee.

14           None of the additional language that Defendants purport was on the website alters the

15    binding nature of the promise.  The statement that it may take longer if customers do not mark the

16    envelopes "Expedite" does not affect the promise that a properly submitted application for which

17    the expedite fee is paid will be returned within twenty-one days.  *See Wells Fargo Bank, N.A.*,

18    88 F.3d at 1019.  Similarly, the statement that applicants traveling within seven days should contact

19    the Department is irrelevant.  That statement is directed at those who had already applied and paid

20    for expedited processing but not gotten their passport.  It does not qualify the promise to return

21    _____

22       [9]    Defendants' argument in footnote 10 of their Second Motion to Dismiss that the rule of *Testan* prevents the
Plaintiff from recovering in contract damages not specifically authorized by statute is meritless.  The test for a money-
23    mandating regulation is separate and distinct from the court's jurisdiction over contract claims.  *See Chevron U.S.A.,
Inc. v. United States*, 71 Fed. Cl. 236, 259-60 (Ct. Cl. 2006) (rejecting the government's attempt to "impose the money
24    mandating inquiry relevant to claims asserted pursuant to … regulations onto claims based on common law contract,"
and finding that "as a matter of law, [plaintiff] is not required to identify a specific money-mandating provision in the
25    Equity Process Agreement, because inherent in every breach of contract is a right to money damages.").  The cases
Defendants cite stand for the unremarkable proposition that an allegation of a contract does not entitle a plaintiff to
26    damages for violation of a regulation, *if* there is no offer sufficient to form a contract.  *Sheehan*, 456 U.S. at 740-41 &
n.11; *Baker v. United States*, 50 Fed. Cl. 483, 489-90 (Cl. Ct. 2001).  Both cases note that where the regulation is
27    actually an offer, a contract may be formed. *Sheehan*, 456 U.S. at 740-41 & n.11; *Baker v. United States*, 50 Fed. Cl.
483, 489-90 (Cl. Ct. 2001).  Neither case suggests that where there is a contract, it is subject to a limitation on damages
28    pursuant to the money-mandating regulation case law.

1    passports within twenty-one days or inform applicants that they may not actually receive their

2    passports within that time if they pay for expedited processing.  At most, it informs applicants who

3    applied for a passport less than two or three weeks prior to their departure date that they may not

4    get their passports in time and should contact the agency.

5         Once again, the Defendants' reliance on *Girling* is misplaced.  The  statements on the

6    website are not qualified predictions, like the "should generally" language in *Girling*.   They are

7    clear, promissory statements that the passports will be returned within a certain amount of time,

8    which only makes sense given that the sole point of the contract relates to time.  The website does

9    not have any blanket caveat that follow-up action would be required by all applicants, as in *Girling*,

10   but only informs applicants that if they did not allow enough time for expedited processing they

11   need to take alternate steps.  Nor does the Schedule of Fees contained in 22 C.F.R. § 22.1 have any

12   bearing on the validity of the offer made on the Department's website.  The promise to return

13   passports within twenty-one days does not conflict with any regulation, but rather, as the

14   Defendants have repeatedly indicated, accounts for the time spent in transit and in the lockbox

15   facilities in addition to the actual processing time.[10]  Barrett Decl. ¶ 16, Ex. B.2

16        The Department made a clear and binding offer to return passports to applicants paying for

17   expedited service within twenty-one days.  Such promissory words by the government were

18   sufficient to establish a binding contractual obligation when class members accepted the offer and

19   provided consideration through payment of the additional fee. Therefore, Plaintiff adequately

20   stated a claim for an express, or in the alternative an implied-in-fact, contract for expedited service

21

22   _____

23   [10]     Defendants' statement, in footnote 9, that a contract cannot be implied in fact where it is contrary to a
     regulation has no application here.  The cases Defendants cite deal with situations where the promise of the contract

24   was directly contrary to a governing statute.  *See Schism v. United States*, 316 F.3d 1259, 1262, 1272-73 (Fed. Cir.
     2002) (military recruiters could not make promises that the government would provide free medical benefits for life to

25   the plaintiffs and their dependents, because it was contrary to statute); *Lavin v. Marsh*, 644 F.2d 1378, 1382-84 (9th
     Cir. 1981) (principle of equitable estoppel could not create a contract for military pay that was directly contrary to

26   governing statute); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947) (no contract by estoppel for
     insurance that exceeded that authorized by statute).  Here, the three-day promise in the application is directly

27   authorized by the governing regulation, and the twenty-one day promise is, by Defendants' own arguments, not
     inconsistent or contrary to that regulation, but rather accurately accounts for the time spent in transit and at lockboxes.

28

PL.'S OPP'N TO DEFS.'
MOT. TO DISMISS – NO. C 07-04040 MMC          - 15 -
001980-11  224991 V3

with the government requiring processing within three working days from its arrival at a Passport

Agency and return of the passport within twenty-one days of the application.[11]

### 2. The Plaintiff is Entitled to All Damages She Can Prove That Were Reasonably Foreseeable and That Flowed from the Government's Breach of Its Obligations

Defendants attempt to avoid the result of their contracts by arguing that the damages

recoverable for breach of contract are "necessarily circumscribed" by the regulations governing

expedited passport processing. This argument is devoid of merit. As the Supreme Court has stated

in reference to Tucker Act claims, "government liability in contract is viewed as perhaps the widest

and most unequivocal waiver of federal immunity from suit." *Mitchell*, 463 U.S. at 215.

Moreover, "[o]nce the United States waives its immunity and does business with its citizens, it

does so much as a party never cloaked with immunity," and is governed by the same rules of

contract law governing private parties. *Franconia Assoc.*, 536 U.S. at 141. This is true with regard

to damages, as the federal court have long recognized. *See*, *e.g.*, *Indiana Michigan Power Co.*,

422 F.3d 1369; *Hansen Bancorp Inc. v. United States*, 367 F.3d 1297 (Fed. Cir. 2004); *Sunswick*

---

[11]    Defendants' suggestion in footnote 7 of their Second Motion to Dismiss that Plaintiff has failed to state a claim for relief for breach of the implied covenant of good faith is incorrect. The covenant of good faith and fair dealing is implicit in every contract, including those made with the government. *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). "In order to show a breach of the covenant of good faith and fair dealing, the plaintiff need not provide evidence to show that the government acted in bad faith" or with malice. *Rivera Agredano v. United States*, 70 Fed. Cl. 564, 574 n.8 (Cl. Ct. 2006). A claim for breach of the implied covenant of good faith and fair dealing alleges that the government acted so as to deprive the contracting party of the fruits of the contract. *Centex*, 395 F.3d at 1304. It is distinct from the claim that the government breached a contract by acting in bad faith, which requires a showing of malice. *Rivera Agredano*, 70 Fed. Cl. at 574 n.8. The allegation that the government acted to deny a contracting party its rights or benefits under the contract is a sufficient injury to establish a claim for breach of the implied covenant of good faith and fair dealing. *Centex*, 395 F.3d at 1304-05; *First Nationwide Bank v. United States*, 431 F.3d 1342, 1450 (Fed. Cir. 2005); *Rodriguez v. United States*, 69 Fed. Cl. 487, 498-99 (Ct. Cl. 2006); *Rivera Agredano*, 70 Fed. Cl. at 574. Plaintiff's allegations that the government accepted expedite fees even when it knew it could not perform the service and failed to provide refunds when it knew it had not provided the service it promised to provide, and therefore deprived Plaintiff and class members of the benefit of the bargain to further its own self interest is sufficient to allege a breach of the implied covenant. ¶¶ 91-97.

Moreover, the presumption of good faith was held by the Federal Circuit to apply when "it arises in the context of quasi-criminal wrongdoing by government officials acting the course of their public duties." *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002). In that circumstance, "clear and convincing proof" is required to rebut the presumption. *Id.* Where there is no allegation of fraud or quasi-criminal wrongdoing, but merely a breach of implied contractual duties, clear and convincing evidence is not needed. *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 769 (Ct. Cl. 2005).

1    *Corp. v. United States*, 75 F. Supp. 221 (Ct. Cl. 1948); *United States v. Bostwick*, 94 U.S. 53, 68-69

2    (1876).

3         As with an action against a private party, "[t]he remedy for breach of contract is damages

4    sufficient to place the injured party in as good a position as it would have been had the breaching

5    party fully performed." *Indiana Michigan Power Co.*, 422 F.3d at 1373; *see also Hansen Bancorp,*

6    *Inc. v. United States*, 367 F.2d 1297, 1308 (Fed. Cir. 2004). For a breach of contract by the

7    government, all reasonably foreseeable damages are available *regardless of whether they were*

8    *specifically agreed to or were actually foreseen by the breaching party*. *Precision Pine & Timber,*

9    *Inc. v. United States*, 72 Fed. Cl. 460, 476 (2006).

10         Defendants' argument that, in spite of the wealth of federal law applying contract law to

11    contract claims, this case must be "analyzed by reference to 22 C.F.R. § 51.63, not contract

12    principles" is incorrect. Defendants cite to cases addressing the claims of federal employees and

13    military personnel, which find that because those individuals serve by appointment, their claims are

14    governed by their legal status and not by contract. *See Zucker v. United States*, 758 F.2d 637, 640

15    (Fed. Cir. 1985); *Schism*, 316 F.3d at 1404-05. These cases do not hold that every time a

16    regulation exists, contract analysis does not apply, and such a broad proposition would effectively

17    gut the long-recognized principle that when the government enters into contracts, it is generally

18    subject to traditional contract rules. *See Franconia Assoc.*, 536 U.S. at 141.

19         Nor does the holding in *Griffin v. United States*, 215 Ct. Cl. 710 (1978), mandate a different

20    conclusion. The statute at issue in that case establishes a maximum award, reading, "The total

21    amount of the award, or awards . . . *may not exceed* $25,000, regardless of the number of persons

22    who may be entitled to share therein." 10 U.S.C. 1124(f). Because the contract arose directly out

23    of the statute and the implementing regulations, this express limitation was a limit on the

24    government's liability. There is no such limitation here. The refund regulation has no language

25    expressly limiting the government's liability, stating only that the fee will be refunded. It does not

26    say, as the government would have it, that in the event the government fails to provide expedited

27    service, its liability will not exceed sixty dollars, and this court cannot read such language into the

28    regulation of its own accord. As the statute at issue in *Griffin* makes clear, the government knows

1    how to limit is liability when it so desires, and it did not do so here.  *See also Alltel Info. Servs.,*

2    *Inc. v. Fed. Deposit Ins. Corp.*, 194 F.3d 1036 (9th Cir. 1999) (discussing and enforcing the

3    express limitations on damages contained in 12 U.S.C. § 1821(e)).

4        Under the principles of contract law, Plaintiff is entitled to all damages that she can prove

5    were reasonably foreseeable and flowed from Defendants' breach of their contract in this case.

6    ## II.    THE PRUDENTIAL EXHAUSTION DOCTRINE DOES NOT REQUIRE
         DISMISSAL OF PLAINTIFF'S CLAIMS

7

8    ### A.    A Balancing of Factors Does Not Support Applying the Prudential Exhaustion
         Doctrine

9        Where there is no statute requiring exhaustion, as in this case, "sound judicial discretion

10   governs" the application of such a requirement.  *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).

11   Courts should not lightly divest themselves of jurisdiction, however, as "federal courts are vested

12   with a virtually unflagging obligation to exercise the jurisdiction given them."  *Id.*  Federal courts

13   have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which

14   is not given."  *Id.*

15       The mainstay of the judicially-developed doctrine of "prudential exhaustion" is a case-by-

16   case "balancing analysis which considers both the interests of the agency . . . and the interests of

17   private parties in finding adequate redress for their grievances."  *Montgomery v. Rumsfeld*,

18   572 F.2d 250, 253 (9th Cir. 1978).  *See also McGee v. United States*, 402 U.S. 479, 485 (1971)

19   (instructing courts to engage in a "discrete analysis . . . to see whether there is a governmental

20   interest compelling enough to justify the forfeiting of judicial review").  Courts "may" require

21   exhaustion under the prudential exhaustion doctrine if:

22       (1) agency expertise makes agency consideration necessary to generate a proper
23       record and reach a proper decision; (2) relaxation of the requirement would
         encourage the deliberate bypass of the administrative scheme; and (3) administrative
24       review is likely to allow the agency to correct its own mistakes and to preclude the
         need for judicial review.

25   *Montes,* 919 F.2d at 537.  Defendants acknowledge these factors, (Defs.' Mem. at 16) but fail to

26   actually discuss their application to this case. Defs.' Mem. at 16-21.  In fact, consideration of those

27

28

1    factors does not support, much less "compel," this Court's exercise of its discretion to decline

2    jurisdiction under the prudential exhaustion doctrine. [12]

         **1.    Agency Expertise Is Not Necessary to Resolve Legal Issues or Generate a**
3            **Proper Record for Subsequent Judicial Review**

4            Because this Court is being asked to determine legal issues only, no agency expertise is

5    necessary here. *Montes*, 919 F.2d at 537.  Courts apply this factor to ensure that agencies, not

6    Courts, maintain primary responsibility for administering programs, particularly where the

7    agency's "special expertise" is relevant. *See McCarthy*, 503 U.S. at 144.

8            This case involves legal matters, such as (a) whether the government breached its contracts

9    or regulatory duties for expedited processing; and (b) if so, what damages (including refunds) are

10   to be awarded for such breaches, which are ideally suited to resolution by this Court. *See, e.g.,*

11   *Montes*, 919 F.2d at 537 (legal issues not within the particular expertise of the Attorney General);

12   *Morris v. Commodity Futures Trading Comm'n*, 980 F.2d 1289, 1293 (9th Cir. 1992) (deference to

13   agency expertise not warranted where courts have special competence, such as in the common

14   law).  They are not complex or technical issues requiring the development of a factual record for

15   judicial review. *Cf. McCarthy*, 503 U.S. at 145; *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

16           Moreover, where an agency "applies a systemwide policy that is inconsistent in critically

17   important ways with established regulations, nothing is gained from permitting the compilation of a

18   detailed factual record, or from agency expertise." *Johnson v. Shalala*, 2 F.3d 918, 922 (9th Cir.

19   1993).  Here, the complaint is alleging, among other things, that the Department's systemwide

20   policies and practices are, and have been in the past, inconsistent with its own regulations. *See,*

21   *e.g.,* ¶¶ 71-76. This question does not depend on the particular facts of any one case, so there is no

22   benefit from "permitting the compilation of a detailed factual record." *See Bowen v. City of New*

23   *York*, 476 U.S. 467, 485 (1986).  Requiring administrative exhaustion of remedies here would

24   bring no special expertise into this dispute, nor would it facilitate this Court's subsequent

25   consideration of the claims.  This factor does not support requiring administrative exhaustion here.

26   _____

27   [12]    Since the Complaint asserts four claims for relief, all of which seek damages that include (among other things)
     the refund of the expedited processing fee, Plaintiff assumes that Defendants are contending that this Court should
28   decline jurisdiction over any and all claims to the extent that such claims are seeking a refund.

1

2     **2.     Permitting the Case to Proceed in this Court Will Not Encourage Deliberate Bypass of Administrative Procedures**

3          Courts are also instructed to consider whether hearing the plaintiff's case will encourage

4     future litigants to bypass the agency's own procedures.  *See Montgomery*, 572 F.2d at 253.  The

5     Supreme Court has warned that the fear of "frequent and deliberate flouting" should not be

6     overblown, "since in the normal case a registrant would be 'foolhardy' indeed to withhold a valid

7     claim from administrative scrutiny."  *McGee*, 402 U.S. at 485.

8          Because Plaintiff Chattler has challenged the actions of the Department on behalf of a class,

9     and does not simply request relief from the Court for her individual claims, this factor carries little

10    weight.  *See El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742,

11    747 (9th Cir. 1992) (where plaintiff alleged that an agency "pattern and practice" violated the rights

12    of a "class of applicants," "relaxing the exhaustion requirement would not significantly encourage

13    bypassing the administrative process"); *see also Bowen*, 476 U.S. at 473-74, 477, 484 (declining to

14    require administrative exhaustion where plaintiffs alleged that an adopted policy was unlawful and

15    was never published in the federal register); *Johnson*, 2 F.3d at 920-22 (declining to require

16    administrative exhaustion where plaintiff's challenge to the policy rose and fell on its own,

17    "separate from the merits of [the plaintiff's] claim for benefits"); *Nehmer v. United States Veterans

18    Admin.*, 118 F.R.D. 113, 124 (N.D. Cal. 1987) (no exhaustion required where a "challenge to the

19    agency action is collateral to, or independent of, the individual class member's" claims).

20         Here, Plaintiff challenges a systemic policy – Defendants' collection of fees for the

21    expediting of passport applications, failure to process passports within required time periods,

22    failure to apply the appropriate refund standard, and failure to refund money.  ¶¶ 1-18.  This

23    challenge is collateral to any redress available to any one person, including Plaintiff Chattler.

24    Accordingly, because Plaintiff is challenging "procedural irregularities," the doctrine of

25    administrative exhaustion does not apply.

26         Moreover, there is obviously very little risk that this case will cause numerous other

27    individuals to file their own lawsuits and bypass administrative channels.  Indeed, as Defendants

28    acknowledged in the Joint Case Management Statement, at Section X, filed on November 28, 2007,

1  there are no other known lawsuits filed on this issue, despite the fact that this case was announced

2  in the Andrews Class Action Reporter.  *See* Carey Decl., Ex. A.[13]  Furthermore, if successful, this

3  class action will obviate the need for separate judicial or administrative actions to resolve

4  individual claims of class members.

> **3.    Administrative Exhaustion is Unlikely to Cause the Department to Correct Its
> Own Mistakes or Preclude the Need for Subsequent Judicial Review**

6      The exhaustion doctrine also allows agencies the opportunity to correct their own mistakes

7  before being called into court.  *See McCarthy*, 503 U.S. at 145.  Where resort to the agency would

8  likely be futile, however, it is not in the interests of efficiency to require exhaustion.  *Nehmer*,

9  F.R.D. at 122.  Futility exists where the agency's "established position [would] render

10  administrative review meaningless."  *Aleknagik Natives Ltd. v. United States*, 648 F.2d 446, 500

11  (9th Cir. 1980).  Even if the agency had the authority to change the challenged procedures,

12  "exhaustion is not necessary when it is unrealistic to expect that the agency would consider

13  substantial changes in the current administrative procedures at the behest of a single applicant."  *El*

14  *Rescate*, 959 F.2d at 747.

15      Here, it is "unrealistic to expect that the agency would consider substantial changes in the

16  current administrative procedures at the behest of a single applicant."  *Id.*   Indeed, Defendants'

17  motion states unequivocally that "The Department's Existing Refund Process Is Preferable to Any

18  Alternative System This Court Might Establish**.**"  Defs.' Mem. at 21.  The Declaration of Ann

19  Barrett is clear that the Department has no intention of changing its system.  *See, e.g.,* Barrett

20  Decl., ¶¶ 48-55.  Because the Department has declared that this Court cannot establish a better

21  refund process than the one that currently exists, it is obvious that the Department will not

22  substantially change in its procedures at the behest of Plaintiff Chattler or any other individual

23  applicant.

24      Even if the Department were to correct its procedures from this point forward, that would

25  not preclude the need for judicial review, as it would not provide refunds to class members who, in

---

[13]      "Carey Decl." refers to the Declaration of Robert B. Carey in Support of Opposition to Motion to Dismiss and Plaintiff's Motion to Stay Ruling on Motion to Dismiss, filed November 30, 2007.

1   past months and years, were not given expedited service in accordance with the law and were not

2   thereafter given refunds.  The Department has not expressed any intent to provide notice of the

3   availability of refunds to those individuals.  Moreover, the Department has been clear in its

4   position that, apart from a refund of the expedited processing fee, no applicant will receive

5   compensation for any damages, such as costs incurred for express mail charges.  *See* Defs.' Mem.

6   at 8-19.

7          The Department is asking this Court to decline jurisdiction in order to delay and ultimately

8   avoid remedial action, not to effectuate it.  There is no agency expertise needed to resolve the

9   issues presented, no legitimate concern that this suit will encourage the deliberate bypass of

10  administrative procedures, and – most importantly – no likelihood that the Department will, on its

11  own, correct its own procedures or provide appropriate remedies to those class members whose

12  contractual and regulatory rights have been violated.  There is no good reason for this Court to

13  decline jurisdiction.

14  **B.  This Court Should Not Require Administrative Exhaustion Because The Existing
        Administrative Remedy Is Inadequate**

15         In addition to the factors outlined in *Montes*, 919 F.2d at 537, courts have routinely rejected

16  administrative remedies that are inadequate or not efficacious.  *See Laing*, 370 F.3d at 1000.  *See*

17  *also Kelly v. City & County of San Francisco*, No. C 05-1287 SI, 2005 U.S. Dist. Lexis 31110

18  (N.D. Cal. Nov. 21, 2005) (finding that where there was no adequate administrative remedy, the

19  requirement to exhaust administrative remedies did not apply).  An administrative remedy "may be

20  inadequate because of some doubt as to whether the agency was empowered to grant effective

21  relief."  *See McCarthy*, 503 U.S. at 147.  This includes where the "challenge is to the adequacy of

22  the agency procedure itself, such that the question of the adequacy of the administrative remedy . . .

23  is for all practical purposes identical with the merits of the plaintiff's lawsuit."  *Id.*   Here, that

24  question is a legal question far more suited to resolution by a federal court than by the agency,

25  which has no expertise in the area and no desire to change it.  Beyond that, access to the district

26  court would provide greater redress and broader opportunity to develop the claims of this suit.  The

27  Supreme Court has repeatedly upheld an aggrieved party's prompt access to the district court in

28

1    such circumstances.  *See, e.g., Bowen v. Massachusetts*, 487 U.S. 879, 904; *McNary v. Haitian*

2    *Refugee Ctr., Inc.*, 498 U.S. 479, 496-97 (1991); *Bowen v. Michigan Acad. of Family Physicians*,

3    476 U.S. 667, 670 (1986).

4              Plaintiff has alleged that for years the government has refused to automatically refund

5    expedite fees when the three-day standard is not met (a fact bolstered by the government's website,

6    which implies that only those whose passport took three or more *weeks* are entitled to a refund) and

7    that it fails to notify applicants it concedes are owed refunds of the right to a refund.  Given these

8    allegations, the government finds its remedy "preferable" because it ignores the rights of the

9    hundreds of thousands it agrees are owed refunds to have the action resolved expeditiously and

10   efficiently.  An analysis of adequacy must consider such interests.  *AT&T Commc'ns. of the*

11   *Southwest, Inc. v. City of Austin*, 975 F. Supp. 928 (W.D.Tex. 1997).  In particular, the

12   government's proposed remedy is that citizens of the United States entitled to their money back

13   will not get it unless they ascertain that the processing was insufficient – which requires knowledge

14   outside of their control and wholly within the government's – and then assume the burden of

15   providing the government with information unrelated to the refund obligation.  A class action

16   lawsuit, on the other hand, would easily assess who is entitled to a refund as a matter of law and

17   promptly refund to all who did not get the service they paid for.  The government's remedy is

18   really no remedy for virtually every citizen who is concededly owed a refund – it is a transparent

19   attempt to avoid paying monies concededly not earned by ignoring the obligation.

20   **III.    PLAINTIFF ADEQUATELY STATES A CLAIM FOR DAMAGES UNDER A
             MONEY-MANDATING REGULATION**

21

22            Defendants' final suggestion that the regulation at issue does not require "automatic"

23   refunds, and therefore Plaintiff's regulatory claim fails, is incorrect.  As with its arguments

24   concerning the formation of the contract, the government raises this issue for the first time in its

25   Second Motion to Dismiss, and it is therefore not properly before the court.  *See* Mot. to Strike.

26   The argument is also incorrect, attempting to add yet another improper requirement onto the

27   money-mandating analysis.

28

1    A claim for damages under a money-mandating regulation requires only that there be an

2    applicable statute or regulation that is fairly interpreted as mandating damages. *White Mountain*

3    *Apache*, 537 U.S. at 472.  The question is whether the statute or regulation establishes rights or

4    duties on the part of the government, the breach of which entitles the plaintiff to damages. *Navajo*

5    *Nation*, 537 U.S. at 506; *White Mountain Apache*, 537 U.S. at 474.  Just as there is no requirement

6    that the statute or regulation have an express provision for damages, there is not any requirement

7    that there be an express provision for ***automatic*** payment of damages.  The question is simply

8    whether the regulation is fairly read as imposing a substantive obligation enforceable by damages;

9    if it is, a plaintiff is entitled to bring suit to collect them. *See id.*  This is particularly true where

10   there is no statutory duty to exhaust any administrative remedies; in such a situation, the plaintiff

11   has a right under the Tucker Act to sue in damages.  Therefore, Defendants' argument that the

12   regulation does not require an automatic payment of refunds is irrelevant to whether Plaintiff has

13   stated a claim under the Tucker Act.

14   The government's reading of the regulation is incorrect.  The language of the regulation

15   plainly states:  "The passport expedite fee will be refunded if the Passport Agency does not provide

16   the requested expedited processing."  22 C.F.R. § 51.63(c).  In construing regulations and statutes,

17   the courts look first the plain language. *United States ex rel. Lujan v. Hughes Aircraft Co.*,

18   243 F.3d 1181, 1187 (9th Cir. 2001).  In this case, the regulation uses the mandatory phrase "will

19   be," thus establishing an affirmative duty on the part of the government to refund the fee when it

20   has not provided the service as promised. *Cf.*, *e.g.*, *Forest Guardians v. Babbitt*, 164 F.3d 1261,

21   1268-69 (10th Cir. 1998) (noting that directive words like "shall" are mandatory, citing cases).

22   The government seeks to escape this conclusion on the grounds that the regulation does not have

23   the word "automatic" in it.  Defs.' Mem. at 23.  However, the government's argument is belied by

24   its own citation to multiple regulations that expressly state that a refund will be provided only when

25   requested by the individual.  Defs.' Mem. at 23 n.12.  Following the Defendants' own reasoning,

26   the exclusion of words such as "upon request" from 22 C.F.R. § 51.63(c) is significant and

27   demonstrates that the mandatory phrase "will be" requires the government to provide the refund of

28   its own accord without placing a burden on the individual to apply.

1    The government's reliance on a selective quotation from 22 C.F.R. § 22.6(b) is misguided.

2    That section, in its entirety, states:  "Refunds of $5.00 or less *will not be paid to the remitter unless*

3    *a claim is specifically filed* at the time of payment for the excess amount. An automatic refund on

4    overpayments due to misinformation or mistakes on the part of the Department of State will be

5    made."  22 C.F.R. § 22.6(b).  Given that 22 C.F.R. § 22.6(b) uses the word "automatic" only to

6    distinguish one type of refund from another which must be requested, it cannot be read to mean

7    that the omission of the word "automatic" from 22 C.F.R. § 51.63(c) is in any way significant.  At

8    most, the regulation's silence could be read as creating an ambiguity in the language, in which case

9    the court should look to the legislative history.  *United States ex rel. Lujan*, 243 F.3d at 1187.

10   Here, the legislative history is plain.  In publishing the interim final rule establishing the pertinent

11   regulations, the Department of State wrote, "There will be situations in which expedited passport

12   processing cannot be completed within three days. . . . .  In such circumstances, *the applicant will*

13   *be notified* and the fee will be refunded."  59 F.R. 48998-01.

14   The language of the regulation and its history show that the Department intended the onus

15   to be on the government to inform individuals of the failure to provide the required service and

16   refund the fee.  It would be illogical to construe the statement that "the applicant will be notified"

17   as "upon request" rather than automatic, as an applicant could not reasonably be expected to ask to

18   be notified of information which will usually be in the exclusive possession of the Department.  If

19   notification is required, then so must be the refund.  The two phrases together cannot be taken to

20   mean the Department must automatically notify applicants that the service was not provided and

21   they are entitled to a refund, but not actually provide the refund.  Such an interpretation would be

22   absurd and would undermine the mandatory language of the regulation.

### CONCLUSION

23

24   For all the reasons stated above, Plaintiff respectfully requests that Defendants' motion to

25   dismiss be denied in its entirety.

26   DATED:  February 22, 2008                     HAGENS BERMAN SOBOL SHAPIRO LLP

27

28                                                              /s/ Robert B. Carey
                                                              ROBERT B. CAREY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAGENS BERMAN SOBOL SHAPIRO LLP
2425 East Camelback Road, Suite 650
Phoenix, AZ  85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob.carey@att.net

Reed R. Kathrein (139304)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
shanas@hbsslaw.com

Steve Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Megan E. Waples (*Pro Hac Vice*)
THE CAREY LAW FIRM
2301 East Pikes Peak Avenue
Colorado Springs, CO  80909
Telephone:  (719) 635-0377
Facsimile:  (719) 635-2920
mwaples@careylaw.com

Attorneys for Plaintiff

I, Shana E. Scarlett, am the ECF User whose ID and password are being used to file this Plaintiff's Opposition to Defendants' Motion to Dismiss.  In compliance with General Order 45, X.B., I hereby attest that Robert B. Carey has concurred in this filing.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

 I hereby certify that on February 22, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

         /s/ Robert B. Carey
         ROBERT B. CAREY

# Mailing Information for a Case 3:07-cv-04040-MMC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Steve W. Berman**
  steve@hbsslaw.com,robert@hbsslaw.com,heatherw@hbsslaw.com,carrie@hbsslaw.com

- **Robert B. Carey**
  rob.carey@att.net

- **Jacqueline E. Coleman Snead**
  Jacqueline.Snead@usdoj.gov

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Shana E. Scarlett**
  shanas@hbsslaw.com

- **Megan Waples**
  mwaples@careylaw.com,agostnell@careylaw.com

## Manual Notice List

The following is the list of attorneys who are **not**
on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`