REED R. KATHREIN (139304)
SHANA E. SCARLETT (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
shanas@hbsslaw.com

ROBERT B. CAREY (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
2425 East Camelback Road, Suite 650
Phoenix, AZ 85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob.carey@att.net

STEVE W. BERMAN (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Attorneys for Plaintiff

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIE CHATTLER, On Behalf of Herself and All Others Similarly Situated, | No. 07-cv-04040 MMC |
| Plaintiff, | JOINT CASE MANAGEMENT STATEMENT |
| v. | DATE: April 11, 2008 |
| THE UNITED STATES OF AMERICA and THE UNITED STATES DEPARTMENT OF STATE, | TIME: 10:30 a.m. DEPT: Courtroom 7, 19th Floor |
| Defendants. | ACTION FILED: August 7, 2007 |

The parties to the above-entitled action jointly submit this Joint Case Management Statement.  The parties, through counsel, have met and conferred on the matters contained herein.

## I.    JURISDICTION AND SERVICE

**Plaintiff's Position:**

This case is located in the proper venue and this Court has subject matter jurisdiction under 28 U.S.C. § 1346(a)(2).  Defendants have not objected to venue.  The Class Action Complaint for Breach of Contract, Regulatory Violation, and Breach of the Implied Covenant of Good Faith and Fair Dealing ("Complaint") names the United States of America and the United States Department of State as Defendants.  The Complaint does not contain any Doe defendant allegations.  Plaintiff alleges causes of action for breach of contract, regulatory violations and breach of the implied covenant of good faith and fair dealing, and seeks all damages permitted by law, including compensatory, consequential and special damages.

**Defendants' Position:**

This Court does not have subject-matter jurisdiction over either (1) Plaintiff's contract claims or (2) her claim based on a regulatory violation to the extent Plaintiff seeks more than $60.00 because the United States has not waived its sovereign immunity as to those claims.  Although this Court has subject-matter jurisdiction over Plaintiff's claim for a refund of the $60.00 fee she allegedly paid for expedited processing of her passport application pursuant to the Little Tucker Act and 22 C.F.R. § 51.63, that claim should be dismissed for failure to state a claim of a regulatory violation under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In addition, that claim, alternatively and independently, should be dismissed as a prudential matter under the Doctrine of Prudential Exhaustion because Plaintiff has not exhausted her administrative remedies by first submitting her claim for a refund to the Department of State.

## II.    FACTS

**Plaintiff's Position**:

Plaintiff Chattler brings this action against the United States of America and the United States Department of State ("Department") as a class action on behalf of herself and all others similarly situated, who paid an extra fee to secure expedited processing of their passports and

1   whose passport were not processed within the required three-day period or were not delivered

2   within the promised time.  ¶ 1.[1]  Plaintiff brings claims for relief of breach of contract, damages

3   under the money-mandating scheme of 22 C.F.R. §§ 51.66, 51.63 and breach of the implied

4   covenant of good faith and fair dealing.  ¶¶ 62-98.

5       Pursuant to regulation, the Department of State is permitted to offer expedited service for

6   the processing of passport applications.  ¶ 2; 22 C.F.R. §§ 51.66, 22.1.  Expedited service means

7   three business days, "commencing when the application reaches a Passport Agency, or . . . when

8   the request for expediting processing is approved."  ¶ 3; 22 C.F.R. § 51.66.  Department of State

9   publications inform applicants that they will receive their passports within about two weeks when

10  they pay for expedited service and overnight mail.  ¶ 5.  Department of State regulations require

11  that "[t]he expedite fee will be refunded if the Passport Agency does not provide the requested

12  expedited processing as defined in § 51.66."  ¶ 6; 22 C.F.R. § 51.63.

13      In January 2007, the Western Hemisphere Travel Initiative mandated that all citizens of the

14  United States, Canada, Mexico, Bermuda or the Caribbean present a valid passport when entering

15  the United States by air.  ¶ 8.  Despite three years between the passing of the bill and its

16  implementation, and commentators' concerns that the Department of State would not "be able to

17  issue several million new passports in the timeframe required and without significant delay," the

18  Department of State failed to take sufficient measures to process the increase in passport

19  applications.  ¶ 10; 71 F.R. 68412.  As a result, mass delays in passport processing plagued

20  travelers, delayed travel, and eventually resulted in the temporary suspension of the passport

21  requirements for international travelers.  ¶ 10.  The government, however, has not refunded the

22  improperly collected expedited processing fee to the thousands of citizens who did not receive their

23  passports within the promised timeframe, as required by regulation.  ¶ 10.

24      In June 2007, the Department of State announced that it would refund the fees for expedited

25  services for individuals who paid for expedited service but did not receive it.  ¶ 39.  The meager

---

[1]    All "¶__" references are to the Class Action Complaint for Breach of Contract, Regulatory
Violation, and Breach of the Implied Covenant of Good Faith and Fair Dealing, filed August 7,
2007, unless otherwise indicated.

refund procedures in place do not properly address Plaintiff or class members' claims for relief. Prior to June 2007, many applicants who paid for expedited service but did not receive it were informed by the National Passport Information Center that they were not entitled to a refund.  ¶ 38. Moreover, the Department of State has not agreed to refund fees for expedited processing for those passports taking longer than three days to process, as the regulation dictates, but only to those applicants who paid for expedited processing, did not receive their passports within 14 days (start to finish time, not processing time), and who request a refund in writing.  ¶ 12.

In addition, rather than returning the expedited fees, as mandated by the regulation, the Department of State requires each individual to mail in a written application for the refund.  ¶ 14. In assessing requests for refunds, the Defendants relies on the applicants to request a refund and requires applicants to submit a written request with their name, date and place of birth, the date on which they applied for and received their passports, their contact information, and their passport number.  This improperly places the burden on the applicant to request and provide information – all of which is unrelated to the refund obligation – despite a regulatory mandate otherwise, and despite all relevant information already being in the Defendants' possession, including the critical fact of the time the Defendants themselves took to process a passport application.

### **Defendants' Position**:

As part of a congressional mandate to strengthen border security, the Department of Homeland Security and Department of State implemented in January 2007, phase one of the Western Hemisphere Travel Initiative ("WHTI").  *See* Declaration of Ann Barrett ("Barrett Decl.") ¶ 26, attached to Defendants' Motion to Dismiss (filed Oct. 9, 2007); *see also* 71 Fed. Reg. 68412, 68412 (Nov. 24, 2006).  As of January 2007, "all United States citizens and nonimmigrant aliens from Canada, Bermuda, and Mexico departing from or entering the United States from within the Western Hemisphere at air ports-of-entry . . . [are] required to present a valid passport." 71 Fed. Reg. 68412.   In Fiscal Years 2005 and 2006, in anticipation of increased demand for passports following implementation of that requirement, the Department began expanding its passport operations.  Specifically, the Department hired additional personnel, increased the size and hours of operation of several passport centers, added two new passport processing facilities, and expanded

1    its lockbox service by adding a second lockbox site and operating both sites twenty-four hours a

2    day, seven days a week.  Barrett Decl. ¶¶ 27-30.

3         The actual demand for passports following implementation of the WHTI far exceeded the

4    Department's predictions.  *See* Barrett Decl. ¶ 31.  In the first three months of 2007, the

5    Department received approximately 5.5 million passport applications, slightly over 45% of the

6    *total passports* issued in Fiscal Year 2006.  Barrett Decl. ¶¶ 6 & 31.  That exponential increase in

7    applications "placed an enormous strain on the passport processing system."  Barrett Decl. ¶ 31.

8    Initially, significant delays occurred at the lockbox facilities – *before the application reached the*

9    *passport agency* – where lockbox operators forward applications to the appropriate passport

10   agencies; those delays "in turn, led to additional, cumulative delays at each of the next steps in the

11   process of passport adjudication, processing, and production."  Barrett Decl. ¶ 32.  The average

12   time from an applicant's submission of a passport application to receipt of the issued passport

13   increased from six to eight weeks "to up to twelve weeks."  Barrett Decl. ¶ 33.

14        As a result, the demand increased for expedited processing – a service historically reserved

15   only for travelers with demonstrated urgent departure plans.  The total such applications between

16   Fiscal Year 2006 and Fiscal Year 2007 jumped from 2,964,895 to 5,543,166.  *See* Barrett Decl. ¶

17   33.  The Department processed expedited applications on a faster timetable than regular passport

18   applications.  At each stage in the process, expedited applications "were moved toward the head of

19   the line, in front of the regular applications" and then further "prioritized according to when the

20   applicant stated that he or she needed to travel."  Barrett Decl. ¶ 39.  In most instances, applicants

21   who requested expedited service after January 2007 "received their passports significantly faster

22   than the twelve weeks it took to process routine applications at the height of the surge."  Barrett

23   Decl. ¶ 39.  In July 2007, the Department decided to change its regulations to adopt a more flexible

24   definition of "expedited passport processing."  Barrett Decl. ¶ 41.  The regulations now require that

25   expedited applications be "process[ed] within a number of business days periodically published on

26   the Department's website."  Barrett Decl. ¶ 14.

27        The Department acted quickly to implement additional measures in an "effort[] to return to

28   normal processing times," including "expand[ing] the hours of operations at all 15 passport

agencies and the three passport centers," "institut[ing] mandatory overtime at all passport agencies in order to provide maximum staffing at all times," and "hir[ing] additional personnel." Barrett Decl. ¶¶ 34-36. In early September 2007, the Department announced that it had restored passport service to the standard six to eight weeks for routine passport applications and no more than three weeks for expedited service. *See* Barrett Decl. ¶ 11.

By regulation, applicants who paid for but did not receive expedited service as defined in 22 C.F.R. § 51.66 during the demand surge following implementation of the new passport requirements are entitled to a refund of the expedite fee. The Department's longstanding practice for refunding expedite fees has been to issue refunds upon request to individuals who did not receive expedited processing as defined in 22 C.F.R § 51.66 (effective Feb. 1, 2008, renumbered 22 C.F.R. § 51.56). The Department relies on the request "as a means of triggering an inquiry into the processing history of a given individual application." Barrett Decl. ¶ 46. There is currently "no automated mechanism for identifying everyone who did not receive three-day processing, verifying that each person who requested expedited processing paid the fee, and generating a refund." Barrett Decl. ¶50. The refund process is published on the Department's website. *See* Barrett Decl. ¶ 22; *see also* Barrett Decl. Ex. A.1. An applicant may submit a request for a refund by mail or directly from that website. The request need only include the applicant's passport number, date and place of birth, current mailing address and telephone number, and the approximate date the passport application was submitted. "If the Department determines that the applicant paid for and did not receive expedited service, an order for a refund check of $60 to be issued to the applicant is forwarded to the Department of the Treasury." Barrett Decl. ¶ 25. At present, this process "takes approximately six weeks from the time a request is received at the Service Refund Center until a refund is issued by the Department of Treasury to the qualifying applicant." Barrett Decl. ¶ 43. Plaintiff has not availed herself of this process. Instead she filed the instant action.

### III.     LEGAL ISSUES

**Plaintiff's Position**:

Plaintiff respectfully suggests that legal issues include, but are not limited to:

1.    Whether a class of individuals who paid the extra $60 fee for expedited service and for whom either (a) the passport was not mailed out or available for pick-up within three business days of the applicant's request for expedited service; or (b) the passport was not received by the applicant within twenty-one days of the request for expedited service, should be certified and whether Plaintiff adequately represents that class;

2.    Whether individuals who paid for expedited service but did not receive three-day processing of their passports as required by regulation are entitled to damages including a refund under the governing money-mandating regulations;

3.    Whether the Department of State's failure to complete processing of applications within three business days for individuals paying for expedited service constitutes a breach of the express or implied contract;

4.    Whether the Department of State's failure to return the passports to individuals paying for expedited service in less than twenty-one days constitutes a breach of the promise to return them within about two weeks;

5.    Whether the Department of State's proposed refund program and its failure to automatically process refunds based on its own records to those individuals whose passports were not processed within three business days or returned within twenty-one days constitutes a breach of the contract or is inconsistent with its regulatory obligations.

Plaintiff's class definition and statement of legal issues are based on her initial case investigation and are subject to modification based on such evidence and discovery as is produced in this case.

**Defendants' Position:**

The following threshold legal issues are dispositive of this action and require its dismissal for lack of jurisdiction and failure to state a claim or alternatively failure to exhaust administrative remedies:

1.  Whether this Court must dismiss Plaintiff's contract claims for lack of subject-matter jurisdiction when the predicate contract for this Court's jurisdiction under the Little Tucker Act does not exist?

2.  Whether this Court must dismiss for lack of subject-matter jurisdiction Plaintiff's claim of a regulatory violation to the extent she seeks special and consequential damages when Defendants have not waived sovereign immunity as to that claim?

3.  Whether this Court must dismiss for lack of subject-matter jurisdiction or failure to state a claim Plaintiff's contract claims to the extent she seeks special and consequential damages where agency regulations cover the subject-matter of the alleged contracts and limit Plaintiff's recovery in the event the Department of State fails to provide expedited passport processing to a refund of the expedite fee paid?

4.  Whether this Court must dismiss Plaintiff's regulatory claim for failure to state a claim of a regulatory violation because the Department complies with 22 C.F.R. § 51.63 (effective Feb. 1, 2008, renumbered 22 C.F.R. § 51.53) by issuing refunds upon request to individuals who paid for but did not receive expedited passport processing as defined in 22 C.F.R. § 51.66 (effective Feb. 1, 2008, renumbered 22 C.F.R. § 51.56)?

5.  Whether this Court as a prudential matter should dismiss this action and require Plaintiff first to present her claim for a refund of the expedite fee to the Department of State because it has a long-standing, established, and efficient administrative process for refunding that fee upon request to individuals who did not receive expedited passport processing as defined in 22 C.F.R. § 51.66 (effective Feb. 1, 2008, renumbered 22 C.F.R. § 51.56)?

Whether this action properly may be maintained as a class action is an additional legal issue raised herein that this Court need not reach to dismiss this action in its entirety.

The legal issues identified by Defendants are based on their present information. Defendants reserve the right to raise additional legal issues as appropriate.

## IV.    MOTIONS

**Plaintiff's Position:**

On October 9, 2007, Defendants filed a Motion to Dismiss.  Plaintiff filed her opposition to the Motion to Dismiss on November 30, 2007.  Defendants filed their reply on December 7, 2007. The motion was heard by Judge Illston on December 21, 2007 at 9:00 a.m.

1   At the beginning of the hearing on December 21, 2007, Judge Illston disclosed that she had

2   applied for a passport on an expedited basis and might possibly be a member of the class. Prior to

3   Judge Illston issuing a ruling on the pending motion to dismiss, on December 26, 2007, Defendants

4   filed a notice of intent to move for disqualification of Judge Illston. On January 9, 2008,

5   Defendants filed Defendants' Motion for Disqualification Pursuant to 28 U.S.C. § 455.

6   On January 14, 2008, Judge Illston issued a Recusal Order, removing herself from the case.

7   The Executive Committee of this district reassigned this case to this Court on January 15, 2008.

8   On January 14, 2008, Plaintiff requested leave to file a motion for reconsideration of Judge

9   Illston's recusal order. On January 30, 2008, this Court referred the request to Judge Illston. On

10  February 1, 2008, Judge Illston denied the request.

11  No order on Defendants' original motion to dismiss has yet been entered in this case.

12  On February 1, 2008, Defendants filed a new motion to dismiss, raising new facts and legal

13  arguments. Plaintiff moved to strike this improper motion on February 22, 2008. On April 1,

14  2008, the Court granted Plaintiff's motion to strike, and ordered that by April 14, 2008, the

15  Defendants should either re-notice for hearing their initial motion to dismiss, or file an answer and,

16  if appropriate, file a motion for judgment on the pleadings on that date or a later date.

17  On February 20, 2008, the Court allowed Plaintiff to proceed with discovery relating to the

18  prudential exhaustion doctrine. In the event Defendants re-notice that motion for hearing, Plaintiff

19  intends to request leave to submit a supplemental brief addressing new facts disclosed in

20  Defendants' responses, which were provided well after the briefing on that motion closed.

21  **Defendant's Position:**

22  On October 9, 2007, Defendants moved to dismiss this action in its entirety. While that

23  motion was pending, the Honorable Susan Illston recused herself following the filing of

24  Defendants' Motion for Disqualification Pursuant to 28 U.S.C. § 455. On February 1, 2008,

25  following reassignment of this action to this Court, Defendants re-noticed and filed a motion to

26  dismiss this action in its entirety in compliance with the Reassignment Order of January 15, 2008,

27  which vacated all then-pending matters in this action. Plaintiff moved to strike that filing as in

28  violation of Rule 12(g) of the Federal Rules of Civil Procedure. By Order of April 1, 2008, the

1   Court granted Plaintiff's Motion to Strike and directed Defendants no later than April 14, 2008

2   either to renotice the October 9, 2007 Motion to Dismiss for "hearing on a Friday not less than two

3   weeks therefrom" or to file an answer and, if appropriate, file on that date or a date thereafter a

4   motion for judgment on the pleadings.

5          If any of Plaintiff's claims withstand Defendants' pending Motion to Dismiss or any other

6   dispositive motion filed by Defendants, Plaintiff has indicated that she intends to file a motion for

7   class certification and a motion for summary judgment.  In the event that any part of this action

8   withstands dismissal, Defendants anticipate opposing class certification and also moving for

9   summary judgment.

10

11                    **V.          AMENDMENT OF PLEADINGS**

12          **Plaintiff's Position:**

13          This action was filed on August 7, 2007.  On October 9, 2007, and again on February 1,

14   2008, Defendants moved to dismiss this action in its entirety in lieu of answering the Complaint.

15   On April 1, 2008, the Court granted Plaintiff's motion to strike, and ordered that by April 14, 2008,

16   the Defendants should either re-notice for hearing their initial motion to dismiss, or file an answer

17   and, if appropriate, file a motion for judgment on the pleadings on that date or a later date.

18          If the Defendants' re-notice their motion to dismiss and it is granted in whole or in part,

19   Plaintiff may be permitted to file an amended complaint.

20          **Defendants' Position:**

21          In light of the nature of the legal deficiencies with Plaintiff's claims (*see* Section III, *supra*),

22   any amendment of the Complaint would be futile.

23                    **VI.          EVIDENCE PRESERVATION**

24          **Plaintiff's Position:**

25          Plaintiff Chattler has been instructed to maintain all documents, currently in her possession,

26   that are relevant to this litigation.

27          **Defendants' Position:**

28

1    The Department of State timely instructed all relevant personnel to maintain all documents
2    currently in their possession or subsequently created that are relevant to Plaintiff's claims in this
3    action.

## VII.    DISCLOSURES

5    Both parties made their initial disclosures on November 30, 2007, in accordance with
6    Federal Rule of Civil Procedure 26(a)(1).

## VIII.    DISCOVERY PLAN

8    **Plaintiff's Position:**

9    On January 30, 2008, Plaintiff served discovery, including special interrogatories, requests
10   for production of documents and a deposition notice regarding Defendants' evidence preservation
11   measures.  On February 4, 2008, Defendants moved for a protective order and to stay discovery
12   pending resolution of Defendant's motion(s) to dismiss.  On February 20, 2008 the Court issued an
13   order granting in part and denying in part Defendants' motion to stay discovery and allowed
14   Plaintiff to seek discovery pertinent to exhaustion of administrative remedies.  Thirty days after the
15   Court's order, on March 21, 2008, the Defendants partially responded to Plaintiff's discovery.
16   Plaintiff does not believe that Defendants have adequately responded to Plaintiff's requests.
17   Plaintiff identified specific concerns with the Defendants responses, including their refusal to
18   respond to certain requests related to the adequacy of their refund process and the incompleteness
19   of the responses they did provide, in a letter on April 2, 2008.  Plaintiff has proposed a date and
20   time to meet and confer regarding Defendants' responses and will possibly file a motion to compel
21   further responses with the Court.

22   On February 21, 2008, Defendants served Plaintiff with interrogatories and requests for
23   production of documents relevant to administrative exhaustion.  Plaintiff responded on March 31,
24   2008.

25   In addition, Plaintiff's position is that the parties should not be limited to the number of
26   depositions specified in Federal Rule of Civil Procedure 30(a)(2)(A).  Plaintiff requests that the
27   Court extend the limit to 25 fact witnesses and 5 Rule 30(b)(6) depositions.

28   **Defendants' Position:**

1    In response to discovery Plaintiff served while Defendants' Motion to Dismiss was

2  pending, Defendants moved for a protective order and stay of discovery pursuant to Rule 26(c) of

3  the Federal Rules of Civil Procedure.  By Order of February 20, 2008, the Court stayed all

4  discovery in the action except discovery pertinent to exhaustion of administrative remedies.

5  Pursuant to that Order, Defendants served on February 25, 2008 interrogatories seeking a

6  description of all facts and identification of all documents related to Plaintiff's claim that the

7  Department's administrative process for refunding the expedite fee is unduly burdensome,

8  inadequate, or futile and seeking a description of all facts and identification of all documents

9  related to any effort by Plaintiff to request a refund of the expedite fee she allegedly paid.

10  Defendants also served on Plaintiff a single document request for all documents identified or

11  related to her interrogatory responses.  On April 1, 2008, Defendants received from Plaintiff five

12  documents and two paragraphs paraphrasing her Complaint allegations purportedly in response to

13  Defendants' discovery requests.  Defense counsel intends to discuss the adequacy and apparent

14  incompleteness of Plaintiff's discovery responses during a meet and confer the parties have agreed

15  to schedule for that purpose at a future date.  Defendants identified their specific concerns with

16  those responses in a letter faxed to Plaintiff's counsel on April 4, 2008.

17    In compliance with the Court's Order of February 20, 2008, Defendants served responses to

18  Plaintiff's discovery requests pertinent to the issue of administrative exhaustion on March 21,

19  2008.  Consistent with their discovery obligations, Defendants intend to supplement that response

20  with additional responsive information found since that production.

21    Defendants believe that any further discussion of discovery issues prior to this Court's

22  resolution of whether this action should be dismissed for lack of jurisdiction or failure to state a

23  claim is premature as such resolution may obviate the need for any discovery in this action or

24  alternatively, substantially limit the scope of permissible discovery.

25    **IX.    CLASS ACTION - L.R. 16-9(B) REQUIREMENTS**

26    **Plaintiff's Position:**

27    1.    Plaintiff brings this action as a class action under Rules 23(a), 23(b)(2) and (b)(3) of

28  the Federal Rules of Civil Procedure for relief from breach of contract, damages under the money-

1    mandating scheme of 22 C.F.R. §§ 51.66 and 51.63 and breach of the implied covenant of good

2    faith and fair dealing.

3        2.    The class consists of:  individuals who paid the extra $60 fee for expedited service

4    and for whom either (a) the passport was not mailed out or available for pick-up within three

5    business days of the applicant's request for expedited service; or (b) the passport was not received

6    by the applicant within twenty-one days of the request for expedited service, should be certified

7    and whether Plaintiff adequately represents that class.

8        3.    Defendants' actions have harmed and continue to harm the interests of the vast

9    majority of thousands of citizens throughout the United States.  The members of the class are so

10   numerous that joinder of all members is impracticable.  Defendants' relationships with the

11   members of the class have been substantially uniform.  Questions of law and fact will

12   predominately be common to the class.  Plaintiff has no conflicts of interest with other members of

13   the class and has retained counsel competent and experienced in complex class action litigation.

14   Plaintiff and her counsel will fairly and adequately represent the interests of the class.  This action

15   is superior to any other method for the fair and efficient adjudication of this legal dispute, as

16   joinder of all members of the class is not only impracticable, but impossible.  The damages

17   suffered by certain members of the class are small in relation to the expense and burden of

18   individual litigation and therefore it is highly impractical for such class members to attempt redress

19   individually.  In addition, the Defendants' purported administrative "remedy" is wholly inadequate

20   and is designed to allow the Defendant to avoid fulfilling its obligation to refund the expedite fees

21   to the vast majority of those entitled to a refund.  Because the Defendants have consistently refused

22   to fulfill their contractual and regulatory obligations to provide a refund, have created a process

23   which is obscure and burdensome to class members, and have actively informed the public that

24   they are not entitled to their full damages, a class action is not only superior but necessary to ensure

25   that all class members receive the damages to which they are entitled by law.  There will be no

26   extraordinary difficulty in the management of this class action.  Common questions of law and fact

27   exist with respect to all class members and predominate over any questions solely affecting

28   individual members.

4.      Given the number of outstanding motions and Defendants' production of only limited discovery responses and documents, Plaintiffs are unable to propose a schedule at this time.

**Defendants' Position:**

Defendants oppose certification of the proposed class in this action.  The defined class is overbroad and may include individuals who are not entitled to a refund of the expedite fee under Department regulations.  Each class member's entitlement to a refund, moreover, will turn on the particular facts of that individual's application.  Thus, under Rule 23 of the Federal Rules of Civil Procedure, this action, at a minimum, is not appropriate for class treatment because "questions affecting only individual members" predominate over fact questions common to the class.

In addition, a class action is an inferior vehicle for resolving putative class members' refund claims because the Department already has an existing and efficient process for adjudicating such claims.  *See* Defendants' Position in Section XX, *infra*.  The establishment of a new and alternative court process for that same purpose not only would require the expenditure of substantial time and resources by this Court, would impose undue burden on the Department's existing process and the resources devoted it, but likely would result in public confusion, double refunds, and delayed recovery.

If and when Plaintiff moves for class certification, Defendants may identify additional grounds for denying such certification.

## X.      RELATED CASES

**Plaintiff's Position:**

There are no related cases or formal administrative proceedings of which Plaintiff is aware. Defendant's purported refund process is not a formal administrative proceeding, is not required by statute or regulation, and is inconsistent with governing regulations in critically important ways.

**Defendants' Position:**

Defendants are not aware of any other related pending court litigation.  However, the Department has processed and continues to process administratively refund requests from individuals who have reason to believe they did not receive expedited processing of their passport applications.

JOINT CASE MANAGEMENT STATEMENT – NO. 07-cv-04040 MMC        - 13 -

## XI.    RELIEF

**Plaintiff's Position:**

Plaintiff seeks compensatory damages, including all direct (*e.g.*, expenses relating to covering by procuring the passport), consequential and special damages, pre-judgment interest, reasonable attorneys' fees, expert witness fees and other costs, and any other further relief as the Court deems just and proper.

Plaintiff's calculation of damages is in part dependent on information to be obtained from discovery during the course of this action.  Therefore, Plaintiff has not yet computed damages claimed in this action.

**Defendants' Position:**

Any recovery by Plaintiff is expressly limited by 22 C.F.R. § 51.63 (effective Feb. 1, 2008, renumbered 22 C.F.R. § 51.53), which only provides for a refund of the expedite fee paid if the Department of State fails to provide expedited processing as defined in 22 C.F.R. § 51.66 (effective Feb. 1, 2008, renumbered 22 C.F.R. § 51.56).  Plaintiff should be required to seek that recovery through the Department's established refund process.

## XII.    SETTLEMENT AND ADR

On March 30, 2008, the parties filed a Notice of Need for ADR Phone Conference.  That conference is scheduled to occur on April 10, 2008 at 10:30 a.m.

## XIII.    MAGISTRATE JUDGE

The parties are not willing to submit this matter to a magistrate judge for all purposes.

## XIV.    OTHER REFERENCES

The parties do not believe at this time that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV.    NARROWING OF ISSUES

The parties are not presently in a position to address whether:  (a) it is feasible or desirable to bifurcate issues for trial; or (b) it is possible to reduce the length of the trial by stipulation, use of summaries or other expedited means of presenting issues.  The parties will agree, however, to meet

1  and confer on narrowing the contested issues in this case if the Court denies Defendants'

2  dispositive motion, and it is ultimately determined that a trial is necessary.

## XVI.  EXPEDITED SCHEDULE

4        The parties do not believe this is the type of case that can be handled on an expedited basis

5  with streamlined procedures.

## XVII.  SCHEDULING

7  **<u>Plaintiff's Position</u>:**

8        Given the number of outstanding motions and Defendants' production of only limited

9  discovery responses and documents, Plaintiffs are unable to propose a schedule at this time.

10  **<u>Defendants' Position</u>:**

11        Until the Court decides the threshold legal issues Defendants identified in Section III,

12  *supra*, it would be premature for Defendants to propose a schedule for this case.

## XVIII. TRIAL

14  **<u>Plaintiff's Position</u>:**

15        Plaintiff anticipates that the trial of this action will take 30 court days.

16  **<u>Defendants' Position</u>:**

17        Defendants anticipate that this Court's resolution of their pending Motion to Dismiss or any

18  other dispositive motion Defendants file will obviate any need for trial.  Until the Court rules on

19  such motions, it would be premature to estimate the length of any trial.

## XIX.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

21        Other than the named parties, there is no other interest to report at this time.

## XX.  SUCH OTHER MATTERS AS MAY FACILITATE THE JUST, SPEEDY AND INEXPENSIVE DISPOSITION OF THIS MATTER.

24  **<u>Plaintiff's Position</u>:**

25        As argued in Plaintiff's opposition to Defendants' Motion to Dismiss, the Defendants'

26  current refund scheme is inadequate to address Plaintiff and the class members' claims.

27  Defendants' refund scheme does not adequately address all of the damages suffered by Plaintiff

28  and class members, including compensatory, consequential and special damages.  ¶ 101.

1    Defendants' refund scheme does not adequately address the time period of Plaintiff and class

2    members' claims.  Whereas the Defendants' refund scheme has only been in place since June 2007,

3    Plaintiff seeks relief for a class dating back six years from the filing of the Complaint.  ¶ 49.

4           Even as it relates to the refund of the expedited processing fee, however, Defendants'

5    refund scheme is adequate.  Defendants have only agreed to refund the expedited processing fees to

6    those applicants who did not receive their "expedited" passports within 14 days, and not those

7    applicants whose passports took longer than three days to process.  ¶ 12.  Defendants' refund

8    scheme also places the burden on the applicant to seek a refund, despite all the relevant information

9    regarding the applicant's entitlement to a refund being within the Defendants' possession.  ¶¶ 16-

10   17.

11          Defendants' failure to provide refunds violates the relevant regulation, which mandates that

12   the expedited processing fee "***will be refunded*** if the Passport Agency does not provide the

13   requested expedited processing" (22 C.F.R. § 51.63 (emphasis added)), and is contrary to

14   Defendants' statements in the Federal Register at the time this regulation was proposed, where they

15   stated that: "[t]here will be situations in which expedited passport processing cannot be completed

16   within three days. . . . In such circumstances, ***the applicant will be notified and the fee will be***

17   ***refunded***."  Fee for Expedited Passport Processing, 59 Fed. Reg. 48998 (Sept. 26, 1994) (emphasis

18   added).  Because the Defendants' refund scheme is wholly inadequate, this Court should not

19   require exhaustion of administrative remedies given the existing administrative process.

20          **Defendants' Position**:

21          The Department of State has a long-standing, established process for refunding the expedite

22   fee upon request to individuals who paid for expedited processing of their passport applications but

23   did not receive the service defined in 22 C.F.R. § 51.66 (effective Feb. 1, 2008, renumbered 22

24   C.F.R. § 51.56).  Since June 2007, the Department has improved that process to make it easier and

25   more efficient.  That process requires that an individual submit to the agency a written or electronic

26   request containing basic information such as present contact information, passport number, and

27   approximate date the passport application was submitted.  Using the information furnished in the

28   request, the Department can initiate a search of its records to determine whether the individual is

1   entitled to a refund.  If the Department determines that the applicant did not receive expedited

2   processing as set forth in its regulations, the Department will refund the $60 expedite fee.  The

3   Department does not have an automated process for identifying individuals entitled to a refund and

4   issuing refund checks to those individuals.

5         The existing process has issued and continues to issue refunds in accordance with 22 C.F.R.

6   § 51.63 (effective Feb. 1, 2008, renumbered 22 C.F.R. § 51.53).  Thus, the existing administrative

7   process is far more efficient and far less expensive than litigating Plaintiff's entitlement to a refund

8   of the $60.00 expedite fee.  Plaintiff therefore should be required to submit her claim for a refund

9   to the agency first before filing any legal action in court.

10  DATED:  April 4, 2008                          HAGENS BERMAN SOBOL SHAPIRO LLP

11

12                                          _____/s/ Shana E. Scarlett_____
                                                SHANA E. SCARLETT
13
                                            Reed R. Kathrein (139304)
14                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                            715 Hearst Avenue, Suite 202
15                                          Berkeley, CA  94710
                                            Telephone: (510) 725-3000
16                                          Facsimile: (510) 725-3001

17                                          Robert B. Carey (*Pro Hac Vice*)
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
18                                          2425 East Camelback Road, Suite 650
                                            Phoenix, AZ  85016
19                                          Telephone: (602) 840-5900
                                            Facsimile: (602) 840-3012
20
                                            Steve Berman (*Pro Hac Vice*)
21                                          HAGENS BERMAN SOBOL SHAPIRO LLP
                                            1301 Fifth Avenue, Suite 2900
22                                          Seattle, WA  98101
                                            Telephone: (206) 623-7292
23                                          Facsimile: (206) 623-0594

24                                          Megan E. Waples (*Pro Hac Vice*)
                                            THE CAREY LAW FIRM
25                                          2301 East Pikes Peak Avenue
                                            Colorado Springs, CO  80909
26                                          Telephone: (719) 635-0377
                                            Facsimile: (719) 635-2920
27
                                            Attorneys for Plaintiff
28

DATED:  April 4, 2008

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
Civil Division

JOSEPH P. RUSSONIELLO
United States Attorney
Northern District of California

VINCENT M.GARVEY
Deputy Branch Director
Federal Programs Branch


_____/s/ Jacqueline Coleman Snead_____
JACQUELINE COLEMAN SNEAD
(D.C. Bar No. 459548)
Trial Attorney
Federal Programs Branch, Civil Division
U.S. Department of Justice
20 Massachusetts Avenue, N.W. Rm. 7214
Washington, DC 20530
Tel: (202) 514-3418

Attorneys for Defendants


    I, Shana E. Scarlett, am the ECF User whose ID and password are being used to file this JOINT CASE MANAGEMENT STATEMENT.  In compliance with General Order 45, X.B., I hereby attest that Jacqueline Coleman Snead has concurred in this filing.

**CERTIFICATE OF SERVICE**

  I hereby certify that on April 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.


               /s/ Shana E. Scarlett
              SHANA E. SCARLETT

# Mailing Information for a Case 3:07-cv-04040-MMC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Steve W. Berman**
  steve@hbsslaw.com,robert@hbsslaw.com,heatherw@hbsslaw.com,carrie@hbsslaw.com

- **Robert B. Carey**
  rob.carey@att.net

- **Jacqueline E. Coleman Snead**
  Jacqueline.Snead@usdoj.gov

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Shana E. Scarlett**
  shanas@hbsslaw.com

- **Megan Waples**
  mwaples@careylaw.com,agostnell@careylaw.com

## Manual Notice List

The following is the list of attorneys who are **not**
on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`