JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
Civil Division

JOSEPH P. RUSSONIELLO
United States Attorney
Northern District of California

VINCENT M. GARVEY
Deputy Branch Director

JACQUELINE COLEMAN SNEAD
Trial Attorney
Federal Programs Branch, Civil Division
U.S. Department of Justice
20 Massachusetts Avenue, N.W. Rm 7214
Washington, DC 20530
Tel: (202) 514-3418

Attorneys for the Defendants.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JULIA CHATTLER,**<br><br>    **PLAINTIFF**<br><br>    **v.**<br><br>**UNITED STATES OF AMERICA, DEPARTMENT OF STATE,**<br><br>    **DEFENDANTS.** | Case No. 07-4040-MMC<br><br>Notice of Motion for Judgment on the Pleadings and Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings<br><br>Hon. Maxine M. Chesney<br>Date: Friday May 23, 2008, 9:00am |

*Chattler v. United States of America,*                                  Case No. 07-4040-MMC
Defendants' Motion for Judgment on the Pleadings

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION.................................................................................................. 1

REGULATORY BACKGROUND FOR EXPEDITED PASSPORT APPLICATIONS............... 3

    Overview of Expedited Passport Processing. ..................................................... 3

    Passport Processing Fees and Refunds. ........................................................... 4

STATEMENT OF FACTS. ....................................................................................... 6

ARGUMENT. ........................................................................................................ 6

I.     THIS COURT LACKS JURISDICTION UNDER THE
       TUCKER ACT OVER THIS ACTION EXCEPT TO THE
       EXTENT PLAINTIFF SEEKS A REFUND OF THE
       EXPEDITE FEE SHE ALLEGEDLY PAID. ................................................. 8

       A.    Plaintiff Cannot Recover Special and Consequential
             Damages Under the Regulations Governing Expedited
             Passport Processing........................................................................ 8

       B.    This Court Lacks Jurisdiction Over Plaintiff's Contract
             Claims. .......................................................................................... 11

            1.    This Action Lacks the Necessary Predicate Contract
                   for This Court's Jurisdiction Under the Tucker Act. ............... 12

                 a.    Plaintiff's allegations are insufficient to
                       establish a contract based on the selectively
                       quoted language from the Department's forms
                       and website.................................................... 13

                 b.    Plaintiff's allegations are insufficient to establish
                       a contract based on instructions in the passport
                       application.................................................... 16

            2.    Any Alleged Contract to Provide Expedited Service
                   Is Necessarily Circumscribed by the Department's
                     Regulations Governing That Service. ....................................... 17

II.    PLAINTIFF HAS FAILED TO STATE A CLAIM OF A
       VIOLATION OF THE DEPARTMENT'S EXPEDITED
       PROCESSING REGULATIONS. ................................................................. 19

III.   THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM
       FOR RETURN OF THE EXPEDITE FEE BECAUSE
       PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE
       REMEDIES........................................................................................... 22

A.    Requiring Plaintiff to Present Her Claim to the Department
      Likely Will Obviate the Need for Judicial Involvement. .................................... 23

B.    The Department's Existing Refund Process Is Preferable to
      Any Alternative System This Court Might Establish. ......................................... 24

CONCLUSION. .................................................................................................................... 25

1

# TABLE OF AUTHORITIES

2

**CASES**                                                            **PAGE(S)**

3

*ASCO-Falcon Shipping Co. v. United States*, 32 Fed. Cl. 595 (1994). ...................................... 13

4

*Alcaraz v. Block*, 746 F.2d 593 (9th Cir. 1984). ......................................................... 22

5

*Alliance of Descendants of Texas Land Grants v. United States*,
    37 F.3d 1478 (Fed. Cir. 1994).............................................................. 12

6

7

*Ancman v. United States*, 77 Fed. Cl. 368 (2007). ............................................. 8, 10, 11

8

*Anderson v. Gus Mayer Boston Store of Delaware*,
    924 F. Supp. 763 (E.D. Tex. 1996)....................................................... 21

9

*Andreiu v. Ashcroft*, 253 F.3d 477 (9th Cir. 2001). ......................................... 20

10

*Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728,
    102 S. Ct. 2118, 72 L. Ed. 2d 520 (1982). ......................................... 9, 17, 19

11

12

*Baker v. United States*, 50 Fed. Cl. 483 (2001). ......................................... 17, 19

13

*Barnett v. United States*, 397 F. Supp. 631 (D.S.C. 1975). ......................................... 12

14

*Beverage Distribs., Inc. v. Olympia Brewing Co.*,
    440 F.2d 21 (9th Cir. 1971). ........................................................... 13

15

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*,
    __ F. Supp. 2d __, 2008 WL 697065 (N.D. Cal., Mar. 13, 2008). ................................. 14

16

17

*Continental Collection & Disposal, Inc. v. United States*,
    29 Fed. Cl. 644 (1993). ................................................................ 13

18

*Cutler-Hammer, Inc. v. United States,* 441 F.2d 1179 (Ct. Cl. 1971). ................................. 13, 17

19

*El Dorado Springs v. United States,* 28 Fed. Cl. 132 (1993).......................................... 9, 10, 17

20

*FDIC v. Meyer,* 510 U.S. 471, 114 S. Ct. 996,
    127 L. Ed. 2d 308 (1994). .............................................................. 8

21

22

*Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S. Ct. 1,
    92 L. Ed. 10 (1947). ................................................................... 16

23

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005). ......................................... 10, 11

24

*Fleming v. United States,* 413 F. Supp. 2d 503 (E.D. Pa. 2005)........................................ 12

25

*Gardiner Mfg. Co. v. United States*, 479 F.2d 39 (9th Cir. 1973). ................................... 12

26

*Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66 (1990). ............................. 13, 14, 15, 16

27

*Griffin v. United States*, 215 Ct. Cl. 710 (1978). .................................................. 18

28

*Chattler v. United States of America,*                Case No. 07-4040-MMC
Defendants' Motion for Judgment on the Pleadings

1

*Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S. Ct. 1061,
    131 L. Ed. 2d 1 (1995). ............................................................. 20

2

3

*H.F. Allen Orchards v. United States,* 749 F.2d 1571 (Fed. Cir. 1984). .................................... 16

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542
    (9th Cir. 1989). ................................................................................. 7

4

5

*Helash v. Ballard,* 638 F.2d 74 (9th Cir. 1980). ...................................................... 12

6

*Hercules, Inc. v. United States*, 516 U.S. 417, 116 S. Ct. 981,
    134 L. Ed. 2d 47 (1996). .................................................................. 8, 12

7

8

*Hillside Community Hosp. of Ukiah v. Mathews,* 423 F. Supp. 1168
    (C.D. Cal. 1976). ...................................................................... 20

9

*Huang v. Ashcroft,* 390 F.3d 1118 (9th Cir. 2005). ........................................ 23

10

*Keene Corp. v. United States,* 508 U.S. 200, 113 S. Ct. 2035,
    124 L. Ed. 2d 118 (1993). ................................................................ 20

11

12

*Last Chance Mining Co. v. United States,* 12 Cl. Ct. 551 (1987)................................ 17

*Lavin v. Marsh,* 644 F.2d 1378 (9th Cir. 1981). ............................................ 16

13

*Legacy Emanuel Hosp. & Health Ctr. v. Shalala,* 97 F.3d 1261
    (9th Cir. 1996). ...................................................................... 20

14

15

*Marathon Oil Co. v. United States,* 807 F.2d 759 (9th Cir. 1986). ........................ 22

16

*Merritt v. United States,* 267 U.S. 338, 45 S. Ct. 278,
    69 L. Ed. 643 (1925). ...................................................................... 12

17

18

*Montes v. Thornburgh,* 919 F.2d 531 (9th Cir. 1990)................................... 22, 23

*Moose v. United Sates,* 674 F.2d 1277 (9th Cir. 1982)................................... 8

19

*Nutt v. United States*, 12 Cl. Ct. 345, 351 (1987). ...................................... 13

20

*Paul Revere Ins. Group v. United States,* 500 F.3d 957
    (9th Cir. 2007)................................................................................ 20

21

22

*Puga v. Chertoff,* 488 F.3d 812 (9th Cir. 2007). ...................................... 23

23

*Scharringhausen v. United States*, __ F. Supp. 2d __,
    2008 WL 686691 (S.D. Cal., Mar. 13, 2008). ...................................... 7

24

25

*Schism v. United States,* 316 F.3d 1259 (Fed. Cir. 2002). ...................... 16, 18

26

*Schism v. United States,* 972 F. Supp. 1398 (N.D. Fla. 1997). .................. 16, 18

27

*Shafmaster Fishing Co. v. United States*, 28 Fed. Cl. 699 (1993). ................ 9

28

*Solano Garbage Co. v. Cheney,* 779 F. Supp. 477 (E.D. Cal. 1991). .......... 20

*Chattler v. United States of America,*                    Case No. 07-4040-MMC
Defendants' Motion for Judgment on the Pleadings

*Spezzaferro v. Federal Aviation Admin.*, 807 F.2d 169
    (Fed. Cir. 1986). ............................................................................ 13

*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83,
    118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). ...................................... 10, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499,
    168 L. Ed. 2d 179 (2007). ............................................................... 14

*Travelers Indem. Co. v. United States*, 16 Cl. Ct. 142 (1988). .................. 13

*Tree Farm Dev. Corp. v. United States*, 585 F.2d 493 (Ct. Cl. 1978). ...... 16

*Udall v. Tallman,* 380 U.S. 1, 85 S. Ct. 792, 13 L. Ed. 2d 616 (1965). ...... 21

*Union of Needletrades, Indus. & Textile Employers v. Immigration &*
    *Naturalization Serv.*, 202 F. Supp. 2d 265 (S.D.N.Y. 2002). .............. 20

*United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983). ............ 22, 23

*United States v. Lex*, 300 F. Supp. 2d 951 (E.D. Cal. 2003). ..................... 20

*United States v. Menasche*, 348 U.S. 528, 75 S. Ct. 513,
    99 L. Ed. 615 (1955). ...................................................................... 20

*United States v. Mitchell*, 463 U.S. 206, 103 S. Ct. 2961,
    77 L. Ed. 2d 580 (1983). ................................................................. 8

*United States v. Testan*, 424 U.S. 392, 96 S. Ct. 948,
    47 L. Ed. 2d 114 (1976). ............................................................. 8, 9, 17

*Zucker v. United States*, 758 F.2d 637 (Fed. Cir. 1985). ....................... 17

**STATUTES**

10 U.S.C. § 1074(b). ............................................................................. 18

10 U.S.C. § 1124. ................................................................................. 18

22 U.S.C. § 214. ................................................................................... 4

22 U.S.C. § 1980(d)(1). ......................................................................... 9

28 U.S.C. § 1346(a)(2). .......................................................................... 8

**RULES AND REGULATIONS**

7 C.F.R. § 91.43(c). .............................................................................. 19

10 C.F.R. § 205.283(a). ......................................................................... 19

14 C.F.R. § 389.27(b). ........................................................................... 19

1   19 C.F.R. § 24.23(b)(4)(iii)(A). ................................................................................. 19

2   22 C.F.R. § 51.66(b). ................................................................................................ 10

3   22 C.F.R. § 22.1. ................................................................................................. 4, 15

4   22 C.F.R. § 22.6(b). .................................................................................................. 20

5   22 C.F.R. § 51.63. .............................................................................................. *passim*

6   22 C.F.R. § 51.66. .............................................................................................. *passim*

7   37 C.F.R. § 1.296. ..................................................................................................... 19

8   38 C.F.R. § 21.5064(b)(4)(ii). .................................................................................. 19

9   43 C.F.R. § 1823.12(b). ............................................................................................ 19

10  43 C.F.R. § 2933.24. ................................................................................................. 19

11  72 Fed. Reg. 45,888 (Aug. 16, 2007). ................................................................... 4, 7

12  72 Fed. Reg. 64,930-39 (Nov. 19, 2007). ................................................................. 3

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(c)   .................................................................................................................. 7

Rule 12(b)(6)   ..................................................................................................... 7, 10

**MISCELLANEOUS**

Hearing Before the International Operations Subcomm. of the Senate Foreign Relations Comm.,
*The Passport Backlog and the State Department's Response to the*
    *Western Hemisphere Travel Initiative* (June 19, 2007). ................................... 25

1  PLEASE TAKE NOTICE that on Friday May 23, 2008, before the Honorable Maxine M. Chesney,

2  Defendants, the United States of America and the United States Department of State, will move this

3  Court for an order dismissing this action pursuant to Rule 12(b)(c) of the Federal Rules of Civil

4  Procedure.

5       As explained in the accompanying Memorandum of Law in Support of Defendants' Motion

6  for Judgment on the Pleadings, dismissal is warranted here because (1) the Court lacks jurisdiction

7  under the Tucker Act over Plaintiff's contract claims because the predicate contract does not exist;

8  (2) the Court lacks jurisdiction over Plaintiff's regulatory claim for consequential and special

9  damages because the United States has not waived sovereign immunity and consented to suit for

10 such damages; (3) Plaintiff's regulatory claim should be dismissed because she has not stated a claim

11 of a regulatory violation of 22 C.F.R. § 51.63; and (4) Plaintiff has not exhausted her administrative

12 remedies as to her claim for a refund of the additional fee paid for expedited processing of her

13 passport application.  Defendants' motion is supported by this Notice, the accompanying

14 Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings and the

15 documents incorporated by reference in the Pleadings.

16                              **INTRODUCTION**

17      Last January, the Department of State implemented the first of several significant changes in

18 the nation's approach to border security following the terrorist attacks of September 11, 2001.

19 Specifically, U.S. citizens departing from or entering the United States from within the Western

20 Hemisphere are now required to present a valid passport at air ports-of-entry.  Anticipating that this

21 requirement would cause increased demand for passports, the Department of State ("the

22 Department") hired additional personnel and increased the size and hours of its passport processing

23 facilities.  In just the first month following the new passport requirement's implementation, the

24 volume of passport applications doubled over the previous month, to almost two million

25 applications.  This unprecedented demand for passports far exceeded the Department's estimates and

26 caused an enormous strain on the agency's resources.  In the months that followed, the average

27 *Chattler v. United States of America,*                           Case No. 07-4040-MMC
   Defendants' Motion for Judgment on the Pleadings
28

1    period between submission of an application and receipt of the passport increased to up to twelve

2    weeks for routine passport applications.

3        Many more Americans began requesting expedited processing of their applications, a service

4    that historically has reduced that period to two or three weeks.  By regulation, expedited processing

5    means that the period commencing when the expedited passport application reaches the passport

6    agency and ending when the passport is mailed to the applicant not exceed a specified amount of

7    time – until last August, three business days.  If the Department fails to provide that service, the

8    regulation provides for a refund of the additional fee paid for such service.  Last year, the number of

9    expedited applications reached an historic high of over 5.5 million, almost double the total such

10   applications in Fiscal Year 2006.  In most instances, the Department processed expedited

11   applications in significantly less time than routine applications but not always within three business

12   days.

13       In the wake of these events, Plaintiff Julia Chattler complains that the Department did not

14   process her expedited passport application within three days.  Plaintiff filed on behalf of herself and

15   a purported class of similarly situated individuals this action against the United States and the

16   Department of State ("Defendants") under the Little Tucker Act alleging that the Department's

17   failure to process her application within that time frame violated the agency's passport regulations

18   and breached an implied contract.  For that alleged violation and breach, Plaintiff seeks not only a

19   refund of the expedite fee but special and consequential damages.  Defendants, however, have not

20   waived sovereign immunity as to her contract claims or regulatory claim for such damages.  This

21   Court accordingly lacks jurisdiction over those claims and they should be dismissed.

22       However, because by regulation, a passport applicant may be entitled to a refund of the

23   expedite fee, that regulation gives rise to this Court's jurisdiction under the Little Tucker Act only as

24   to Plaintiff's regulatory claim for a refund.  Nevertheless that claim also should be dismissed.

25   Plaintiff's claim is predicated on an erroneous interpretation of the Department's regulation

26   governing refunds of the expedite fee, 22 C.F.R. § 51.63 (effective Feb. 1, 2008, renumbered 22

27   *Chattler v. United States of America,*                              Case No. 07-4040-MMC
     Defendants' Motion for Judgment on the Pleadings
28                                              2

1    C.F.R. § 51.53).  That regulation does not require automatic refunds as both the regulatory language

2    and the Department's then-contemporaneous written instructions for implementing that provision

3    demonstrate.  Consistent with its regulatory obligation, the Department will refund the expedite fee

4    upon request – as Plaintiff concedes – to individuals who paid the expedite fee but did not receive

5    the service defined in 22 C.F.R. § 51.66 (effective Feb. 1, 2008, renumbered 22 C.F.R. § 51.56).

6    Thus, Plaintiff has failed to state a regulatory claim under the Tucker Act and that claim, to the

7    extent it is not jurisdictionally deficient, should be dismissed for failure to state a claim.

8         Alternatively and independently, the doctrine of prudential exhaustion compels dismissal to

9    require Plaintiff to present that claim first to the agency.  This action is nothing but an end-run

10   around the Department's established procedure for refunding expedite fees.  The Department's

11   refund process entails nothing more than that Plaintiff submit a request to the Department containing

12   basic information such as present contact information, passport number, and approximate dates she

13   submitted her application.  Refunds are generally issued within six weeks of an applicant's

14   submission of a legitimate refund request – far more quickly than litigating a claim for a refund.

15   Indeed, requiring that Plaintiff exhaust her administrative remedies may well obviate the need for

16   this action.  Accordingly, the Court should grant Defendants' motion and enter judgment in their

17   favor.

18        **REGULATORY BACKGROUND FOR EXPEDITED PASSPORT APPLICATIONS**

19   **Overview of Expedited Passport Processing:**

20        Since 1994, the Department has offered applicants who require their passports in a short time

21   frame the opportunity to pay an additional fee ("the expedite fee") for expedited processing of their

22   applications.  Defendants' Answer ("Ans.") ¶ 14.  Department regulations define "[e]xpedited

23   passport processing."  *See* 22 C.F.R. § 51.66 (Apr. 1, 2005). [1]  Historically, that phrase has meant

24   "completing processing within 3-business days commencing when the application reaches a Passport

25

26   [1]   Effective February 1, 2008, the section numbers for the regulations governing expedited
     passport processing have changed.  *See* 72 Fed. Reg. 64,930-39 (Nov. 19, 2007).  All of the provisions
27   cited herein correspond to the regulations in effect when Plaintiff applied for her passport.
     *Chattler v. United States of America,*                                    Case No. 07-4040-MMC
28   Defendants' Motion for Judgment on the Pleadings
                                          3

1    Agency or, if the application is already with a Passport Agency, commencing when the request for

2    expedited processing is approved." [2/] 22 C.F.R. § 51.66(b) (Apr. 1, 2005). Because the processing

3    time at a passport agency may not be transparent to the applicant, the Department's website informs

4    applicants of the approximate period within which they should expect their passports. *See* Ans. ¶¶ 5,

5    16. In June 2007, that period for expedited passport applications that were mailed or submitted to

6    passport acceptance facilities was "within about" "2-3 weeks." *See* Class Action Complaint for

7    Breach of Contract, Regulatory Violation, and Breach of the Implied Covenant of Good Faith and

8    Fair Dealing ("Compl.") ¶ 5; *see also* Declaration of Marguerite Walter ("Decl.") Ex. B. [3/] The

9    Department cautioned on its website, however, that "[c]urrently, Expedite Service takes 2-3 weeks to

10   receive your passport from the date you applied. It may take longer for customers who apply for a

11   renewal by mail without 'Expedite' marked on the mailing envelope." Decl. Ex. B. Applicants were

12   further advised that "[i]f you haven't received your passport and **are traveling within the next 7**

13   **days**, please call or email the National Passport Information Center." Decl. Ex. B.

14         The expedite process can be invoked through a passport acceptance facility, by mail, or at a

15   passport agency. Individuals also may request an upgrade to expedited service after submitting an

16   application for regular processing.

17   **Passport Processing Fees and Refunds:**

18         The Department is authorized by statute to charge applicants fees to process passport

19   applications. *See* 22 U.S.C. § 214. The schedule of applicable fees is set forth in 22 C.F.R. § 22.1.

20   With few exceptions, none of the fees is refundable. By regulation, however, the Department will

21   refund certain "erroneously collected" fees and the "passport expedite fee . . . if the Passport Agency

22   does not provide the requested expedited processing as defined in § 51.66." 22 C.F.R. § 51.63(a),

23   (b).

24

25       [2/] In August 2007, the Department changed its regulations to adopt a more flexible definition of "expedited passport processing." *See* 72 Fed. Reg. 45,888 (Aug. 16, 2007).

26       [3/] The Declaration of Marguerite Walter attaches true and correct copies of documents

27   referenced in the Complaint, specifically Exs. A – C, and in the Answer, specifically Exs. D – E.
     *Chattler v. United States of America,*                         Case No. 07-4040-MMC

28   Defendants' Motion for Judgment on the Pleadings
                                     4

1          The Department's policy since expedited passport processing was first established in 1994

2    has been to initiate refunds of the expedite fee upon request.  Ans. ¶ 14.  Instructions the Department

3    issued to All Passport Services Staff Members on the effective date of the regulation, provided in

4    relevant part that

5             If the [expedite fee] EF has been collected and we are unable to process a passport
         within the required three day period FOR ANY REASON, a refund should be issued.

6             If the applicant believes a refund is due, a letter should be written stating the
         particulars or, if the applicant is in the agency, the form at Attachment E may be used.

7    Decl. Ex. D & Ans. ¶ 14.  On November 22, 1996, the Department reissued the Passport Services

8    Instruction maintaining the Department's policy of customer requests initiating refunds of the

9    expedite fee but eliminating the requirement of written requests.  *See* Ans. ¶ 14 & Decl. Ex. E.

10   Passport agencies thereafter accepted refund requests by phone, in person at the agency or center, in

11   writing, or by inquiry through the Department's call center.  Ans. ¶14.  In June 2007, however, the

12   Department reinstated the policy of requiring a written request.  *See* Ans. ¶ 14 & Decl. Ex. C; *see*

13   *also* Compl. ¶ 14.

14         The refund request triggers the Department's inquiry into "whether the applicant received the

15   service defined in 22 C.F.R. § 51.66."  Ans. ¶ 16.  There is currently no automated mechanism for

16   identifying everyone who did not receive three-day processing, verifying that each person who

17   requested expedited processing paid the fee, and generating a refund.  Ans. ¶ 17.  The Department

18   examines every refund request on a case-by-case basis and manually calculates the days of

19   processing at the passport agency.  *See* Decl. Ex. C & Ans. ¶ 17.  While applicants may not know

20   how long their applications remained at the agency, applicants can request a refund and thereby

21   initiate that inquiry merely by submitting a request containing their passport number, if available,

22   name, date and place of birth, approximate date(s) they applied for their passport and received their

23   passport, and current contact information.  *See* Ans. ¶ 16 & Decl. Ex. C.  If, after examining its

24   records, the Department determines that the applicant paid for and did not receive expedited service,

25   an order for a refund check of $60 to be issued to the applicant is forwarded to the Department of the

26   Treasury.  Ans. ¶ 16.

27   *Chattler v. United States of America,*                        Case No. 07-4040-MMC

28   Defendants' Motion for Judgment on the Pleadings

1    In the years since this process has been in place, it has "proven to be an efficient method of

2    ensuring that applicants who did not receive expedited passport processing receive a prompt refund

3    of the expedite fee." Ans. ¶ 58. Today, applicants entitled to such refunds on average receive them

4    within six weeks of submitting their request. *See* Ans. ¶ 58. The Department, however, continues to

5    improve the efficiency of the process. For example, in June 2007, the Department announced that

6    individuals now could submit refund requests electronically through a link on the Department's

7    website. *See* Ans. ¶ 45.

8    The Department does not – nor has it ever – reimbursed applicants for missed travel. On its

9    website, the Department informs applicants that it "cannot refund passport application and execution

10   fees or compensate applicants for missed travel." Decl. Ex. C.

11                                **STATEMENT OF FACTS**

12   Plaintiff Julia Chattler allegedly applied for a passport on June 11, 2007. *See* Compl. ¶ 26.

13   In addition to processing, execution, and security fees, Plaintiff paid $60 for expedited processing of

14   her passport application. Compl. ¶ 27.

15   Allegedly seven weeks after submitting her application, Plaintiff re-applied for her passport

16   in person at the San Francisco passport agency. Compl. ¶ 28. Although she received her passport

17   faster than she otherwise would have and in time for her scheduled travel on August 3, 2007,

18   Plaintiff contends that she "did not receive the benefit of her payment for expedited service."

19   Compl. ¶¶ 28 & 29.

20   Rather than apply to the Department for a refund of her expedite fee, Plaintiff filed this action

21   seeking a refund as well as special and consequential damages.

22                                **ARGUMENT**

23   Notwithstanding the clear regulatory language governing expedited passport processing,

24   Plaintiff contends that she is entitled to more than a refund of the $60.00 expedite fee if the

25   Department failed to provide that service. The regulations in effect when Plaintiff submitted her

26   passport application belie that contention. *See* 22 C.F.R. §§ 51.63, 51.66. Section 51.63 provides

27   *Chattler v. United States of America,*                          Case No. 07-4040-MMC
28   Defendants' Motion for Judgment on the Pleadings
                                            6

1  that the "passport expedite fee will be refunded if the Passport Agency does not provide the

2  requested expedited processing as defined in § 51.66." 22 C.F.R. § 51.63(c).  At the time Plaintiff

3  submitted her application, Section 51.66 in turn provided that

> Expedited passport processing shall mean completing processing within 3- business days
> commencing when the application reaches a Passport Agency or, if the application is already
> with a Passport Agency, commencing when the request for expedited processing is approved.
> The processing will be considered completed when the passport is ready to be picked up by
> the applicant or is mailed to the applicant.

7  22 C.F.R. § 51.66(b). [4/]  Together these provisions establish both what constitutes expedited

8  processing and what recovery is available if the Department fails to provide that service.  Plaintiff

9  attempts to circumvent both these limitations by seeking to redefine that service and expand the

10  available recovery to include special, compensatory, and consequential damages.  Although she

11  packages her claims as breaches of alleged contracts and an alleged regulatory violation, those claims

12  should be analyzed as, on the one hand, a claim for a refund of the expedite fee, and on the other

13  hand, claims for damages over and above that amount. This Court lacks jurisdiction over the latter

14  claims.  Although the Court could exercise jurisdiction over Plaintiff's claim for a refund under 22

15  C.F.R. § 51.63, that claim nonetheless should be dismissed for failure to state a claim or alternatively

16  lack of prudential exhaustion. [5/]  Thus, this entire action should be dismissed.

---

[4/]  In August 2007, the Department changed the regulation defining expedited passport
processing.  *See* 72 Fed. Reg. 45,888 (Aug. 16, 2007).  The new rule "change[d] the definition of
'expedited passport processing' from the 3-business day period to a number of business days as may be
published from time to time on the Department's Web site, http://www.travel.state.gov." *Id.* at 45,888.
That change was intended "to ensure that the Department c[ould] continue to offer this service consistent
with its regulations, despite increases in demand for it." *Id.*

[5/]  Because Defendants have answered the Complaint, their motion is properly considered a Rule
12(c) motion for judgment on the pleadings.  Such a motion "attacks the legal sufficiency of the claims
alleged in the complaint."  *Scharringhausen v. United States*, __ F. Supp. 2d __, 2008 WL 686691, at
*2 (S.D. Cal., Mar. 13, 2008).  "Judgment on the pleadings is proper when the moving party clearly
establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it
is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d
1542, 1550 (9th Cir. 1989).  The standard for granting such a motion "is identical to that of a Rule
12(b)(6) motion for failure to state a claim." *Scharringhausen*, 2008 WL 686691, at *2.

*Chattler v. United States of America,*                                    Case No. 07-4040-MMC
Defendants' Motion for Judgment on the Pleadings
7

1
2

I.   **THIS COURT LACKS JURISDICTION UNDER THE TUCKER ACT OVER THIS ACTION EXCEPT TO THE EXTENT PLAINTIFF SEEKS A REFUND OF THE EXPEDITE FEE SHE ALLEGEDLY PAID.**

3   As a sovereign, the United States "'is immune from suit save as it consents to be sued . . . and

4   the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"

5   *Hercules, Inc. v. United States*, 516 U.S. 417, 422, 116 S. Ct. 981, 985, 134 L. Ed. 2d 47, 56 (1996).

6   Absent a valid and applicable waiver of sovereign immunity, a district court lacks subject-matter

7   jurisdiction over a claim against the United States. *See FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.

8   Ct. 996, 1000, 127 L. Ed. 2d 308 (1994) ("[s]overeign immunity is jurisdictional in nature"); *United*

9   *States v. Mitchell*, 463 U.S. 206, 212, 103 S. Ct. 2961, 2965, 77 L. Ed. 2d 580, 588 (1983) ("the

10   United States may not be sued without its consent and [] the existence of consent is a prerequisite for

11   jurisdiction").

12   Although the Little Tucker Act confers upon district courts jurisdiction over certain claims

13   "not exceeding $10,000 in amount, founded either upon . . . any regulation of an executive

14   department, or upon any . . . implied contract with the United States," that Act "does not create any

15   substantive right enforceable against the United States for money damages." 28 U.S.C. § 1346(a)(2);

16   *United States v. Testan*, 424 U.S. 392, 398, 96 S. Ct. 948, 953, 47 L. Ed. 2d 114, 121 (1976); *see*

17   *also Moose v. United Sates*, 674 F.2d 1277, 1280 (9th Cir. 1982) (noting that the Tucker Act "is

18   'only a jurisdictional statute; it does not create any substantive right enforceable against the United

19   States for money damages'"). Thus, the Act, "standing alone, does not permit this [C]ourt's exercise

20   of jurisdiction." *Ancman v. United States*, 77 Fed. Cl. 368, 374 (2007). Instead, a plaintiff must rely

21   on some other federal law or contract "to create the substantive right – the asserted entitlement to

22   money damages." *Moose*, 674 F.2d at 1280. Plaintiff here has not done so.

23   A.   **Plaintiff Cannot Recover Special and Consequential Damages Under the Regulations Governing Expedited Passport Processing.**

24
25   Plaintiff erroneously invokes the Department's regulations governing expedited passport

processing as authorizing her claim for special and consequential damages. *See* Compl. ¶ 78

26
27   ("seek[ing] to recover [] full damages for the Department's regulatory violations in amounts to be

*Chattler v. United States of America,*                                    Case No. 07-4040-MMC
Defendants' Motion for Judgment on the Pleadings
28                                              8

proven at trial, but not to exceed $10,000 for any individual"); *see also* 22 C.F.R. § 51.66; 22 C.F.R. § 51.63. Not just any invocation of a statutory or regulatory provision suffices to establish jurisdiction under the Tucker Act. *See Testan*, 424 U.S. at 400, 96 S. Ct. at 954, 47 L. Ed. 2d at 122 (rejecting argument that the Tucker Act "waives sovereign immunity with respect to any claim invoking a constitutional provision or a federal statute or regulation, and makes available any and all generally accepted and important forms of redress, including money damages"). The "basis of the federal claim whether it be the Constitution, a statute, or a regulation does not create a cause of action for money damages unless . . . *that basis in itself* . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 401-02, 96 S. Ct. at 955, 47 L. Ed. 2d at 123 (emphasis added; internal quotations omitted); *see also Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 739, 102 S. Ct. 2118, 2125, 72 L. Ed. 2d 520, 529 (1982) ("As *Testan* makes clear, jurisdiction . . . cannot be premised on the asserted violations of regulations that do not specifically authorize awards of money damages."). If, as here, nothing in the language of the statute or regulation invoked mandates the particular recovery sought, the claim should be dismissed for lack of jurisdiction. *See, e.g., Shafmaster Fishing Co. v. United States*, 28 Fed. Cl. 699, 700 (1993) (dismissing for lack of jurisdiction claim for damages resulting from the government's untimely reimbursements because statute only authorized monetary compensation for damaged commercial fishing gear not "redress if the Secretary fails to meet the sixty day initial determination requirement of 22 U.S.C. § 1980(d)(1)"); *El Dorado Springs v. United States*, 28 Fed. Cl. 132, 135-36 (1993) (dismissing for lack of jurisdiction claim "for lost profits and other consequential damages resulting from HUD's allegedly unlawful rejection of El Dorado's application" because none of the statutory or regulatory provisions the plaintiff cited "create[d] a substantive right to money damages").

The Department's expedited passport processing regulations clearly do not mandate compensation for special and consequential damages. *See* 22 C.F.R. § 51.63; 22 C.F.R. § 51.66. At the time Plaintiff allegedly submitted her passport application, those regulations defined "expedited

1   passport processing" as "completing processing within 3- business days commencing when the

2   application reaches a Passport Agency or, if the application is already with a Passport Agency,

3   commencing when the request for expedited processing is approved." [6/] 22 C.F.R. § 51.66(b) (Apr.

4   1, 2005). If the Department fails to provide "expedited processing" as so defined, the additional fee

5   for that service "will be refunded." 22 C.F.R. § 51.63(c). Nothing in that language or elsewhere in

6   the expedited processing regulations can be construed as requiring compensation beyond that refund

7   if the service is not provided. In the absence of such language, the regulation Plaintiff invokes is an

8   insufficient basis under the Tucker Act for this Court's jurisdiction over her claim for special and

9   consequential damages. Accordingly, her claim for such damages based on the alleged regulatory

10  violation should be dismissed. *See, e.g., El Dorado Springs*, 28 Fed. Cl. at 134-36 (finding no

11  waiver of sovereign immunity for damages claim in HUD regulations that "require the applicant to

12  submit an application fee").

13          This Court alternatively should dismiss Plaintiff's claim for failure to state a claim under

14  Rule 12(b)(6) of the Federal Rules of Civil Procedure. While the Court of Federal Claims has

15  suggested that whenever a plaintiff asserts jurisdiction based on a money-mandating statute or

16  regulation – whether or not it authorizes the particular recovery sought – that "ends the [C]ourt's

17  jurisdictional inquiry" and the Court should proceed to the merits of the claim, *Ancman*, 77 Fed. Cl.

18  at 374; *see also Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005), that approach is not

19  unlike a practice "denominated . . . assuming jurisdiction for the purpose of deciding the merits"

20  which the Supreme Court flatly rejected in *Steel Co. v. Citizens for a Better Environment*, 523 U.S.

21  83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998), as "beyond the bounds of authorized judicial action."

22  *Id.* at 94, 118 S. Ct. at 1012, 140 L. Ed. 2d at 227; *see also id.* at 101-02, 118 S. Ct. at 1016, 140 L.

23

24          [6/] The regulation does not impose any requirement on the time before the application reaches
    the passport agency or the time after the agency mails the issued passport. *See* 22 C.F.R. § 51.66(b).
25  Thus, an applicant who received three-day processing might not receive her passport until two or three
    weeks after the application was submitted. *See* Ans. ¶ 5 (explaining that the Department's website
26  provides customers with estimated time frames within which to expect to receive a passport after
    submitting an application for regular or expedited processing).

27  *Chattler v. United States of America,*                                          Case No. 07-4040-MMC
    Defendants' Motion for Judgment on the Pleadings
28                                                      10

1   Ed. 2d at 231-32 (noting that "[f]or a court to pronounce upon the meaning or the constitutionality of

2   a state or federal law when it has no jurisdiction to do so is, by very definition for a court to act ultra

3   vires").  Nevertheless, if this Court were to follow that approach, dismissal for failure to state a claim

4   would be warranted because the regulation invoked here "does not provide the appropriate

5   mechanism for the relief requested."  *Ancman*, 77 Fed. Cl. at 375; *see also Fisher*, 402 F.3d at 1175-

6   76 (noting that "the consequence of a ruling by the court on the merits, that plaintiff's case does not

7   fit within the scope of the [money-mandating] source, is simply this: plaintiff loses on the merits for

8   failing to state a claim on which relief can be granted").  "It is not sufficient for a statute to be

9   money-mandating; rather, the relief sought . . . must be the same kind of relief or remedy provided

10  by the statute."  *Id.*

11       As already discussed, Plaintiff's regulatory claim for consequential and special damages is well

12  outside the scope of the compensation authorized by the Department's regulations governing

13  expedited passport processing.  *See* 22 C.F.R. § 51.63(c) (providing only that "[t]he passport

14  expedite fee will be refunded if the Passport Agency does not provide the requested expedited

15  processing as defined in §51.66").  Thus, this Court alternatively should dismiss that claim to the

16  extent Plaintiff seeks more than a refund of the expedite fee for failure to state a claim upon which

17  relief can be granted.

18       **B.     This Court Lacks Jurisdiction Over Plaintiff's Contract Claims.**

19       Plaintiff's claim for damages under an implied contract theory fares no better.  *See, e.g.,* Compl.

20  ¶ 66 (alleging that "[t]he Department of State breached its contracts with plaintiffs when it failed to

21  provide its processing service within the promised and required amount of time"); Compl. ¶ 84

22  (alleging that "[t]he Department of State breached its contracts with plaintiffs when it failed to return

23  their passports within twenty one days"); Compl. ¶ 97 (alleging that "the Department has breached

24  the covenant of good faith and fair dealing implied in the contract for expedited service by depriving

25  plaintiffs of the value of their contracts in order to further its own self-interest").  If, as here, the

26  predicate contract is absent, the Court lacks jurisdiction under the Tucker Act over the alleged

27  *Chattler v. United States of America,*                                    Case No. 07-4040-MMC
     Defendants' Motion for Judgment on the Pleadings
28                                                        11

1    contract claims.  *See Merritt v. United States*, 267 U.S. 338, 340-41, 45 S. Ct. 278, 279, 69 L. Ed.

2    643, 644 (1925); *Gardiner Mfg. Co. v. United States*, 479 F.2d 39, 40 (9th Cir. 1973); *see also*

3    *Fleming v. United States*, 413 F. Supp. 503, 506 (E.D. Pa. 2005) ("In order for the Court to have

4    jurisdiction over a contract claim against the United States under the Tucker Act, the plaintiff must

5    show an express contract or a contract implied-in-fact."); *Barnett v. United States*, 397 F. Supp. 631,

6    639 (D.S.C. 1975) ("In the absence of a contract with the United States, the court is without

7    jurisdiction to hear plaintiff's complaint.").

8    **1.    This Action Lacks the Necessary Predicate Contract for This Court's Jurisdiction Under the Tucker Act.**

9

10    According to Plaintiff, two separate implied-in-fact contracts "to provide expedited service

11    within a set amount of time in exchange for a fee" were formed and allegedly breached.  *See* Compl.

12    ¶¶ 62-69, 79-87.  A contract implied in fact "is founded upon a meeting of minds, which, although

13    not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the

14    light of the surrounding circumstances, their tacit understanding."  *Hercules*, 516 U.S. at 424, 116 S.

15    Ct. at 986, 134 L. Ed. 2d at 56 (internal quotations omitted).  Each material term or contractual

16    obligation, as well as the contract as a whole, is subject to these requirements.  *See id.* at 423, 116 S.

17    Ct. at 985, 134 L. Ed. 2d at 56; *see also Alliance of Descendants of Texas Land Grants v. United

18    States*, 37 F.3d 1478, 1483 (Fed. Cir. 1994) ("An implied-in-fact contract with the Government

19    requires: (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and

20    acceptance."); *Helash v. Ballard*, 638 F.2d 74, 75 (9th Cir. 1980).  "This formidable standard serves

21    to protect the fisc from all suits under contract claims except where the evidence guarantees with

22    some certainty that the Government has agreed to waive its sovereign immunity.  It also assures a

23    necessary measure of flexibility to the Government in its daily operations so that it need not answer

24    in damages for each false step or innocent legal error in administering the myriad of programs and

25

26

27    *Chattler v. United States of America,*                                          Case No. 07-4040-MMC
      Defendants' Motion for Judgment on the Pleadings
28                                                          12

1    functions that occupy its efforts." *Nutt v. United States*, 12 Cl. Ct. 345, 351 (1987) (citation

2    omitted). Plaintiff's alleged contracts fail to meet that standard. [7/]

3                    **a.    Plaintiff's allegations are insufficient to establish a contract based**
                            **on the selectively quoted language from the Department's forms**
4                            **and website.**

5            Plaintiff misapprehends the Department's website estimates on the expected wait for

6    passports as a contract offer that she allegedly accepted. *See* Compl. ¶¶ 80-81 (alleging that "[t]he

7    Department of State's promise in its forms and on its website that applicants who paid for expedited

8    service and mailing would receive their passports 'within about two weeks' constituted a valid offer

9    by the Department to provide expedited service within a set amount of time in exchange for a fee"

10   and that "Plaintiffs accepted that offer and provided consideration by their payment of the additional

11   fee"). Such predictions do not manifest the requisite intent to be contractually bound. *See Girling*

12   *Health Sys., Inc. v. United States*, 22 Cl. Ct. 66 (1990). "In general, the obligation of the

13   Government, if it is to be liable, must be stated in the form of an undertaking, not as a mere

14   prediction or statement of opinion or intention." *Cutler-Hammer, Inc. v. United States*, 441 F.2d

15   1179, 1182 (Ct. Cl. 1971); *see also Beverage Distribs., Inc. v. Olympia Brewing Co.*, 440 F.2d 21,

16   29 (9th Cir. 1971) (noting that "since an offer must be a promise, a mere expression of intention or

17   general willingness to do something on the happening of a particular event or in return for something

18

19   _____

20       [7/]   Plaintiff further alleges that implicit in both "contracts" is "[a] covenant of good faith and fair
         dealing" that the Department allegedly breached "by depriving plaintiffs of the value of their contracts
21       in order to further its own self-interest." Compl. ¶ 97. That claim too necessarily fails if, as here, the
         underlying contract is not established. *See Travelers Indem. Co. v. United States*, 16 Cl. Ct. 142, 149
22       (1988) (explaining that the covenant is an obligation "that is implicitly contained *within* an *existing*
         contract" (emphasis added)). Alternatively, Plaintiff's alleged breach of the covenant of good faith and
23       fair dealing fails for failure to state a claim. It is "well-settled that government officials are presumed
         to act conscientiously and in good faith in the discharge of their duties." *ASCO-Falcon Shipping Co.*
24       *v. United States*, 32 Fed. Cl. 595, 604 (1994); *see also Spezzaferro v. Federal Aviation Admin.*, 807 F.2d
         169, 173 (Fed. Cir. 1986). Thus, to state a claim of a violation of that obligation, Plaintiff "must allege
25       facts which if proved would constitute malice or an intent to injure." *ASCO-Falcon*, 32 Fed. Cl. at 604;
         *Continental Collection & Disposal, Inc. v. United States*, 29 Fed. Cl. 644, 652 (1993). She clearly has
26       not done so. *See* Compl. ¶ 97 (alleging that "the Department has breached the covenant of good faith
         and fair dealing implied in the contract for expedited service "by depriving plaintiffs of the value of their
27       contracts in order to further its own self-interest").
         *Chattler v. United States of America,*                                    Case No. 07-4040-MMC
28       Defendants' Motion for Judgment on the Pleadings
                                                     13

1    to be received does not amount to an offer").  Applying that principle, the *Girling* court easily

2    rejected the type of claim Plaintiff here makes.

3         In that case, the plaintiff claimed that the statement in instructions to IRS Form 2553 "You

4    should generally receive determination on your election within 60 days after you have filed Form

5    2553" "created a contract wherein the IRS promised to notify plaintiff of its acceptance or

6    nonacceptance of the election within 60 days."  *Girling*, 22 Cl. Ct. at 68.  Relying solely on "Form

7    2553 and the instructions pertaining thereto," the court concluded that "it is clear that the statement

8    upon which plaintiff relies is not a definite promise, and th[at], as a matter of law, there is no mutual

9    assent."  *Id.* at 70.  In reaching that conclusion, the court noted defendant's argument that the

10   inclusion of "generally" in the instructions "render[ed] the phrase too nonspecific to be the basis for

11   mutual assent or a meeting of the minds."  *Id.* at 69.  That conclusion was further "buttressed by the

12   caveat in the instructions in Form 2553: 'If you are not notified of acceptance or non-acceptance of

13   your election within 3 months . . . you should take follow-up action by corresponding with the

14   service center where the election was filed.'"  *Id.*  Based on such factors, the Court held "there is no

15   possible basis upon which plaintiff might prevail."  *Id.* at 70.

16        Similarly, here, the language Plaintiff selectively quotes from the Department's website on

17   processing times for passport applications clearly did not manifest an offer to contract.  At the time

18   that Plaintiff allegedly applied for her passport, that website informed applicants that if they applied

19   by mail or through a passport acceptance facility and selected expedited service plus overnight

20   delivery, "You will receive your passport *within* about" "2-3 Weeks***."  Decl. Ex. B. [8/]  Like the

21

22       [8/] This Court properly may consider the website instructions on processing times in their entirety.
     *See Californians for Disability Rights, Inc. v. California Dep't of Transp.*, __ F. Supp. 2d __, 2008 WL
23   697065, at *2 (N.D. Cal., Mar. 13, 2008).  "In determining whether judgment on the pleadings should
     be entered, a district court may consider the allegations made in the complaint and the answer, materials
24   attached to the complaint . . . and any other materials that are (1) specifically referred to [] in the
     complaint, (2) central to the plaintiff's claim, and (3) of uncontested authenticity."  *Id.*; *see also Tellabs,*
25   *Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179, 193 (2007) (noting that,
     in ruling on a motion to dismiss, courts should consider "the complaint in its entirety, as well as other
26   sources . . . in particular, documents incorporated into the complaint by reference, and matters of which
                                                                                              (continued...)
27   *Chattler v. United States of America,*                                    Case No. 07-4040-MMC
     Defendants' Motion for Judgment on the Pleadings
28                                                    14

term "generally" in *Girling*, "about" renders that statement too non-specific to constitute a contract

offer. The footnote corresponding to that statement, moreover, cautioned

> ***Expedite Service: Currently, Expedite Service takes 2-3 weeks to receive your passport from the date you applied. It may take longer for customers who apply for a renewal by mail without 'Expedite' marked on the mailing envelope. If you haven't received your passport and **are traveling within the next 7 days**, please call or email the <u>National Passport Information Center</u>.

Decl. Ex. B. As in *Girling*, that caveat renders the statement upon which Plaintiff relies "not a

definite promise." The Department expressly warns applicants that under some circumstances, the

period between "[s]ending your application and [r]eturning your passport to you" "may take longer"

than "2-3 weeks" without any indication as to how much longer. In addition, applicants "traveling

within the next 7 days" are advised to contact the National Passport Information Center thereby

suggesting that follow-up by the applicant may be necessary. *Compare id. with Girling*, 22 Cl. Ct. at

70 (concluding that "there [wa]s no promise to respond within 60 days" where plaintiff was

"expressly notified that it must take 'follow-up action' if there is no response within three months").

The most compelling evidence, however, that the Department did not intend to contract to provide

Plaintiff her passport "within about two weeks" in exchange for her payment of $60.00 is the

Department's Schedule of Fees for Consular Services. *See* 22 C.F.R. § 22.1 (explaining that fee for

"Expedited service: *Three-day processing* and/or in-person service at a U.S. Passport Agency (not

applicable abroad) [Expedited Service]" is "60" (emphasis added)). That Schedule makes clear that

the $60.00 expedite fee is for "Expedited Service" as defined in 22 C.F.R. § 51.66. The regulatory

definition of "expedited service" says nothing whatsoever about returning passports "within about

two weeks." *See* 22 C.F.R. § 51.66(b) (Sept. 26, 2005) ("Expedited passport processing shall mean

completing processing within 3- business days commencing when the application reaches a Passport

Agency or, if the application is already with a Passport Agency, commencing when the request for

expedited processing is approved. The processing will be considered completed when the passport is

---

[8]/ (...continued)
a court may take judicial notice").

*Chattler v. United States of America,*                                        Case No. 07-4040-MMC
Defendants' Motion for Judgment on the Pleadings
15

1    ready to be picked up by the applicants or is mailed to the applicants."). Thus, the claim that the

2    Department contracted to provide Plaintiff a different service for her $60.00 fee is unfounded. [9/]

            **b.    Plaintiff's allegations are insufficient to establish a contract based
                    on instructions in the passport application.**

4    Plaintiff's contract claim based on the passport application's description of expedited service

5    is similarly unfounded. *See* Compl. ¶¶ 63-64 (alleging a contract was formed when she accepted the

6    Department's alleged "promise in the passport application . . . to provide expedited service within a

7    set amount of time in exchange for a fee," and Plaintiff purportedly "provided consideration by []

8    payment of the additional fee"). In the instructions for passport applications, the Department

9    informs applicants that "For faster processing, you may request expedited service. <u>Expedited</u>

10   <u>requests will be processed in three workdays from receipt at a passport agency</u>. The additional fee

11   for expedited service is $60." Decl. Ex. A. Plaintiff urges this Court to construe a contract from her

12   payment of that additional fee. "[M]ere solicitations, invitations or instructions from the

13   Government," however, "are not offers to contract that bind the Government upon plaintiff's

14   completion of a form, even when the solicitations, invitations or instructions are embodied in a

15   statute or regulation. The proposition is even stronger here since mere instructions accompanying a

16   *form* are involved, rather than instructions in a regulation or statute." *Girling*, 22 Cl. Ct. at 72; *see*

17   *also Tree Farm Dev. Corp. v. United States*, 585 F.2d 493, 500 (Ct. Cl. 1978) (noting that

18   "invitations by the Government to file applications do not necessarily equal an operative offer, the

19   acceptance of which will result in a binding contract").

20

21

22       [9/]   An implied-in-fact contract is not formed where it is purportedly based on government
23   promises contrary to a governing statute or regulation. *See Schism v. United States*, 316 F.3d 1259,
     1273-74 (Fed. Cir. 2002); *Schism v. United States*, 972 F. Supp. 1398, 1403 (N.D. Fla. 1997). "Persons
24   dealing with the government are charged with knowing government statutes and regulations, and they
     assume the risk that government agents may exceed their authority and provide misinformation." *Lavin*
25   *v. Marsh*, 644 F.2d 1378, 1383 (9th Cir. 1981); *see also Federal Crop Ins. Corp. v. Merrill*, 332 U.S.
     380, 384-85, 68 S. Ct. 1, 3-4, 92 L. Ed. 10, 15-16 (1947). Therefore, "the limitations imposed . . . by
26   [] statute override any representations made by the government, since any promises in contradiction of
     the statute would be beyond the authority of government agents to carry out." *Schism*, 972 F. Supp. at
27   1404; *cf. H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed. Cir. 1984).
     *Chattler v. United States of America,*                                          Case No. 07-4040-MMC
28   Defendants' Motion for Judgment on the Pleadings
                                                    16

1    But even if the Court were to look to the regulation underlying the instructions in the passport

2    application, (*see* 22 C.F.R. § 51.63), Plaintiff still has not alleged facts upon which a contract can be

3    predicated. [10/]  A regulatory provision allowing expedited passport applications "is certainly not an

4    offer to *contract*."  *See Last Chance Mining Co. v. United States*, 12 Cl. Ct. 551, 556 (1987); *see*

5    *also Cutler-Hammer*, 441 F.2d at 1183 (concluding that "[i]t requires a distortion of plain English to

6    infer that making an application in conformity with the terms of [ a r]egulation would constitute an

7    acceptance of an offer whereby the United States intended to bind itself").  "It would do violence to

8    traditional contract theory, not to mention the operation of government, to hold that any statute [or

9    regulation] requiring some action by a citizen to obtain a benefit or protect a right constituted an

10   open offer to contract."  *Last Chance*, 12 Cl. Ct. at 556; *see also El Dorado Springs*, 28 Fed. Cl. at

11   137 (refusing to base jurisdiction under the Tucker Act over a contract claim based on plaintiff's

12   payment of an application fee because "[t]o do otherwise is to risk finding a waiver of sovereign

13   immunity where none was intended").  Applying such principles here, this Court should reject

14   Plaintiff's claim of a contract based on her compliance with instructions on her passport application.

15   Since the predicate contract for this Court's jurisdiction under the Tucker Act accordingly does not

16   exist, Plaintiff's contract claims should be dismissed for lack of jurisdiction.

17           **2.      Any Alleged Contract to Provide Expedited Service Is Necessarily
                       Circumscribed by the Department's Regulations Governing That Service.**

18
19    Even if Plaintiff's contract allegations were sufficient, her recovery for any alleged contract

20   breach would be limited to a refund of the $60.00 expedited fee, and such a claim properly should be

     analyzed by reference to 22 C.F.R. § 51.63, not contract principles.  *Cf. Zucker v. United States*, 758

21

22

23           [10/]  "The rule in *Testan* – that jurisdiction under the Tucker Act cannot be premised on the
     asserted violation of regulations that specifically do not authorize awards of money damages – cannot
24   be avoided simply by characterizing the applicable statute or regulation as creating an implied contract."
     *Baker v. United States*, 50 Fed. Cl. 483, 489 (2001); *see also Sheehan*, 456 U.S. at 740, 102 S. Ct. at
25   2125, 72 L. Ed. 2d at 530 (observing that "if [the] employment statutes and regulations [in *Testan*]
     create[d] an implied-in-fact contract, surely the Court would have so noted . . . instead of directing that
26   the complaint be dismissed").  As already discussed, the regulatory provisions that Plaintiff invokes here
     do not authorize awards of money damages.  *See* Pt. I.A, *supra*.  Therefore, those same provisions cannot
27   form an implied-in-fact contract whose breach entitles Plaintiff to recover such damages.

F.2d 637, 640 (Fed. Cir. 1985) ("entitlement to retirement benefits must be determined by reference to the statute and regulations governing these benefits, rather than to ordinary contract principles"); *Schism*, 316 F.3d at 1278 (noting that "[i]t is well settled that the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter"). Nevertheless, if the Court were to analyze Plaintiff's contract claim as such, she still could not evade the express limitation in 22 C.F.R. § 51.63. *See Griffin v. United States*, 215 Ct. Cl. 710 (1978). The analysis in *Griffin* makes that plain. In that case, plaintiff, an officer of the United States Air Force, received an allegedly insufficient award under 10 U.S.C. § 1124, which "extend[ed] to servicemen . . . the eligibility to receive cash awards for valuable suggestions, made to and adopted by their agencies." *Griffin*, 215 Ct. Cl. at 712. Plaintiff submitted a suggestion that was adopted and allegedly saved the Air Force $45,000,000. He subsequently filed an action under the Tucker Act against the government on grounds that in awarding him only $8,905, the Air Force had been arbitrary and capricious and violated its regulations. The court concluded that "[a]t some point plaintiff acquired a legal entitlement by implied contract" and "what remained for adjudication was quantum." *Id.* at 715. However, in remanding the action to the trial division, the *Griffin* court noted that "[t]he statute, 10 U.S.C. § 1124(f), places a $25,000 limit on an incentive award, and plaintiff's further recovery, if any, *would be limited by that ceiling*." *Id.* at 716 n.1 (emphasis added).

Similarly here, Plaintiff's recovery under the alleged contracts would be limited to a refund of the $60.00 expedite fee which is the ceiling imposed by the Department's regulations for its failure to provide expedited service for which an applicant paid. *See* 22 C.F.R. § 51.63(c). Plaintiff cannot evade that limitation and recover special and consequential damages through artful pleading of a contract claim. *See, e.g., Schism*, 972 F. Supp. at 1404 (dismissing implied-in-fact contract claim for military benefits of retirees who began service after enactment of 10 U.S.C. § 1074(b) because "the limitations imposed on [such] benefits by the statute override any representations made by the government"). Thus, to the extent Plaintiff seeks to recover more than the $60.00 fee she paid

1   for the alleged contract breaches, this Court lacks jurisdiction. *See Sheehan*, 456 U.S. at 740, 102 S.

2   Ct. at 2125, 72 L. Ed. 2d at 530; *Baker*, 50 Fed. Cl. at 489.

3   **II.    PLAINTIFF HAS FAILED TO STATE A CLAIM OF A VIOLATION OF THE
           DEPARTMENT'S EXPEDITED PROCESSING REGULATIONS.**

4            To the extent that Plaintiff's regulatory violation claim is not jurisdictionally deficient, (*see*

5   Part I.A, *supra*), that claim should be dismissed for failure to state a claim.  The alleged regulatory

6   claim is predicated on Plaintiff's erroneous belief that the Department's regulations require

7   automatic refunds of the expedite fee when the Department fails to provide that service.  *See* Compl.

8   ¶ 18 ("This lawsuit seeks to recover the fee for expedited service for all individuals whose passports

9   were not processed within three business days or received by the applicant within about fourteen

10  days without any further delay or obstruction.").  Nothing in 22 C.F.R. § 51.63 requires the

11  Department to issue automatic refunds nor prohibits it from requiring a written request before the

12  "passport expedite fee will be refunded." [11/]  *See* 22 C.F.R. § 51.63(c) ("The passport expedite fee

13  will be refunded if the Passport Agency does not provide the requested expedited processing as

14  defined in § 51.66.").  Well-established rules of statutory and regulatory construction make that

15

16

17

18

19  ————————————
    [11/]    The requirement of a request to initiate a government refund is pervasive throughout the
    federal government. *See, e.g.,* 43 C.F.R. § 1823.12(b) (Department of the Interior) ("If you believe you
20  are due a refund, you may request it from the BLM office where you previously submitted your
    payment."); 7 C.F.R. § 91.43(c) (United States Department of Agriculture) ("Any fees paid in excess
21  of the amount due shall be used to offset future billings, unless a request for a refund is made by
    applicant."); 19 C.F.R. § 24.23(b)(4)(iii)(A) (Bureau of Customs and Border Protection) ("In the case
22  of an overpayment, the carrier or operator may request a refund by writing to Customs and Border
    Protection . . . ."); 37 C.F.R. § 1.296 (United States Patent and Trademark Office) ("The request to
23  withdraw may also include a request for a refund of any amount paid in excess of the application filing
    fee . . . ."); 38 C.F.R. § 21.5064(b)(4)(ii) (Department of Veterans Affairs) ("The Department of
24  Veterans Affairs shall make the refund only if the individual requests it."); 43 C.F.R. § 2933.24
    (Department of the Interior) ("If we close the fee site for administrative or emergency reasons, we will
25  refund the unused portion of your permit fee upon request."); 10 C.F.R. § 205.283(a) (Department of
    Energy) ("Any person entitled to a refund pursuant to a final Decision and Order . . . may file an
26  Application for Refund . . . ."); 14 C.F.R. § 389.27(b) (Department of Transportation) ("Any person may
    file an application for refund of a fee paid since April 28, 1977, on the grounds that such fee exceeded
27  the Board's cost in providing the service.").

*Chattler v. United States of America,*                                              Case No. 07-4040-MMC
28  Defendants' Motion for Judgment on the Pleadings

1   plain. [12/] One such rule posits that "every choice of words is purposeful, manifesting [the] intent to

2   convey particular meaning."  *Union of Needletrades, Indus. & Textile Employers v. Immigration &*

3   *Naturalization Serv.*, 202 F. Supp. 2d 265, 271 (S.D.N.Y. 2002) (citing *Legacy Emanuel Hosp. &*

4   *Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996)).  Thus, where Congress or an agency

5   "includes particular language in one section of a statute [or regulation] but omits it in another, it is

6   generally presumed that [the government] acts intentionally and purposely in the disparate inclusion

7   or exclusion."  *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040, 124 L. Ed.

8   2d 118, 128 (1993); *Andreiu v. Ashcroft*, 253 F.3d 477, 480 (9th Cir. 2001) (same); *see also Legacy*

9   *Emanuel Hospital*, 97 F.3d at 1265 ("the use of different language by Congress creates a

10  presumption that it intended the terms to have different meanings"); *Paul Revere Ins. Group v.*

11  *United States*, 500 F.3d 957, 962 (9th Cir. 2007).  Courts accordingly are obliged to give effect to

12  every word in a statute or regulation and avoid interpretations that render some words altogether

13  redundant.  *See United States v. Menasche*, 348 U.S. 528, 538-39, 75 S. Ct. 513, 519-20, 99 L. Ed.

14  615, 623-24 (1955); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574, 115 S. Ct. 1061, 1069, 131 L. Ed.

15  2d 1, 15 (1995).

16          Here, that principle requires the Court to interpret the exclusion of the term "automatic" in

17  the regulatory provision governing refunds of the expedite fee as significant.  *Compare* 22 C.F.R. §

18  51.63(c) ("The passport expedite fee will be refunded if the Passport Agency does not provide the

19  requested expedited processing as defined in § 51.66.") *with* 22 C.F.R. § 22.6(b) ("An *automatic*

20  refund on overpayments due to misinformation or mistakes on the part of the Department of State

21  will be made." (emphasis added)).  As the regulatory language indicates, the Department intended

22  refunds on overpayments due to agency misinformation or mistake to be "automatic."  That same

23  intent is not expressed in the provision governing refunds of the expedite fee.

24

25          [12/]  The same rules of construction apply to administrative regulations as apply to statutes.  *See*
26  *United States v. Lex*, 300 F. Supp. 2d 951, 959 (E.D. Cal. 2003); *Solano Garbage Co. v. Cheney*, 779
    F. Supp. 477, 487 (E.D. Cal. 1991); *Hillside Community Hosp. of Ukiah v. Mathews*, 423 F. Supp. 1168,
27  1175 (C.D. Cal. 1976).

    *Chattler v. United States of America,*                                        Case No. 07-4040-MMC
28  Defendants' Motion for Judgment on the Pleadings
                                                    20

1    Rather, from its inception in 1994, the Department's policy has been to initiate refunds upon

2    request.  *See* Ans. ¶ 14.  On the effective date of the regulation, the Department issued to All

3    Passport Services Staff Members instructions implementing the regulation that provided in relevant

4    part that

5        If the [expedite fee] EF has been collected and we are unable to process a passport
         within the required three day period FOR ANY REASON, a refund should be issued.

6        If the applicant believes a refund is due, a letter should be written stating the
         particulars or, if the applicant is in the agency, the form at Attachment E may be used.

7    Ans. ¶ 14; *see also* Decl. Ex. D (Memorandum to All Passport Services Staff Members from Deputy

8    Assistant Secretary for Passport Services re Passport Expedite Fee ("Passport Services Instruction

9    2075") § 9 (Oct. 1, 1994)). [13/]  As an interpretation of its own regulations, Passport Services

10   Instruction 2075 should be given the "highest[] standard of deference." *Anderson v. Gus Mayer*

11   *Boston Store of Delaware*, 924 F. Supp. 763, 772 (E.D. Tex. 1996); *see also Udall v. Tallman*, 380

12   U.S. 1, 16, 85 S. Ct. 792, 801, 13 L. Ed. 2d 616, 625 (1965) ("When the construction of an

13   administrative regulation rather than a statue is in issue, deference is even more clearly in order.").

14   Indeed, "when an agency pronounces what its own regulations mean, the pronouncement is

15   understood to be prima facie correct." *Anderson*, 924 F. Supp. at 772 (noting that under those

16   circumstances, "[w]hat court would presume to tell an agency that when it promulgated regulation X

17   it did not really *mean* to do so?").

18       Here, the Department has determined that its longstanding refund policy, initiated by a

19   written request from applicants, ensures that individuals who are entitled to a refund of the expedite

20   fee receive it in a timely manner. [14/]  Plaintiff concedes that the expedite fee "will be refunded" – as

21

22       [13/]    On November 22, 1996, the Department reissued the Passport Services Instruction
         maintaining the Department's policy of customer requests initiating refunds of the expedite fee but

23   eliminating the requirement of written requests. *See* Ans. ¶ 14; *see also* Decl. Ex. E.  Passport agencies
     thereafter accepted refund requests by phone, in person at the agency or center, in writing, or by inquiry

24   through the Department's call center. *See* Ans. ¶ 14.  In June 2007, the Department reinstated the policy
     of requiring a written request. *See* http://travel.state.gov/passport/get/fees/fees_3259.html; *see also* Ans.

25   ¶ 14.

26       [14/]    In an Administrative Procedure Act challenge to an agency's interpretation of its own
                                                                                        (continued...)

27   *Chattler v. United States of America,*                              Case No. 07-4040-MMC
     Defendants' Motion for Judgment on the Pleadings

28                                              21

required by regulation – upon request. *See* Compl. ¶ 14 ("rather than processing the refunds due and

owing to citizens based upon the time incurred in processing or delivering the passport, as reflected

in the Department of State's own records of the date the application was received and the date of

readiness or mailing, and using the identity and current address of the applicants, the Department of

State is instead requiring every individual to mail in a written application for the refund."). Although

Plaintiff might prefer an automated refund system, her concession dispels the existence of a violation

of 22 C.F.R. § 51.63. This Court accordingly should dismiss Plaintiff's claim of a regulatory

violation for failure to state a claim.

## III.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR RETURN OF THE EXPEDITE FEE BECAUSE PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.

Alternatively and independently, the Court should dismiss Plaintiff's refund claim for failure

to exhaust administrative remedies. Plaintiff's invocation of this Court's jurisdiction over her claim

for a refund of the expedite fee circumvents the Department's established process for refunding

expedite fees. This Court should not sanction such conduct and instead should dismiss that claim for

failure to exhaust administrative remedies. The exhaustion requirement "can spring from an Act of

Congress that designates an exclusive administrative avenue of appeal. When that is the case the

administrative proceedings are . . . a precondition to federal court jurisdiction[, and t]he court[]

lack[s] power to undertake judicial review until the proceedings have been completed." *United

States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). However, even where such

exhaustion is not statutorily mandated, courts may require it as a prudential matter. *See Montes v.

Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990); *see also Marathon Oil Co. v. United States*, 807

F.2d 759, 768 (9th Cir. 1986) (distinguishing between "administrative exhaustion requirements that

are based on a statutory directive and those that are judicially is

---

**14/**  (...continued)

regulations, an agency's interpretation is entitled to deference. *Alcaraz v. Block*, 746 F.2d 593, 606 (9th Cir. 1984). "Properly accorded, such deference entails affirmance of *any interpretation* 'within the range of reasonable meanings the words permit.'" *Id.* (emphasis added).

1   not a jurisdictional prerequisite but instead is within the discretion of the district court." *Montes*, 919

2   F.2d at 537.  Such exhaustion is typically required where "(1) agency expertise makes agency

3   consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the

4   requirement would encourage the deliberate bypass of the administrative scheme; and (3)

5   administrative review is likely to allow the agency to correct its own mistakes and to preclude the

6   need for judicial review." *California Care*, 709 F.2d at 1248; *see also Puga v. Chertoff*, 488 F.3d

7   812, 815 (9th Cir. 2007); *Huang v. Ashcroft*, 390 F.3d 1118, 1123 (9th Cir. 2005).  Consideration of

8   these factors here compels dismissal of the sole claim over which this Court may exercise

9   jurisdiction, Plaintiff's claim for a refund of the expedite fee.

10  **A.  Requiring Plaintiff to Present Her Claim to the Department Likely Will Obviate the Need for Judicial Involvement.**

11  The Department has an efficient and established process for refunding the expedite fee to

12  applicants who failed to receive the required service.  *See* Ans. ¶ 58.  The Department's longstanding

13  practice for refunding expedite fees has required a request as a means of triggering an inquiry into

14  the processing history of a given individual application.  *See* Ans. ¶ 17.  Over the years that this

15  practice has existed, "it has proven to be an efficient method of ensuring that applicants who did not

16  receive expedited passport processing receive a prompt refund of the expedite fee."  Ans. ¶ 58.

17  The Department's website explains how an applicant can request a refund of the expedite fee.

18  *See* Ans. ¶ 39; *see also* Decl. Ex. C.  Applicants who "[p]aid the $60 fee for expedited service and [

19  h]ave reason to believe that they did not receive expedited service" need only "submit a written

20  request with their passport number, if available, name, date and place of birth, and approximate

21  date(s) they applied for their passport and received their passport (if applicable)."  Decl. Ex. C.  The

22  submission also should include the applicant's mailing address and phone number.  Decl. Ex. C.

23  These same instructions are provided to applicants who call the National Passport Information

24  Center to inquire about expedite fees they have paid.

25

26

27  *Chattler v. United States of America,*                                    Case No. 07-4040-MMC
    Defendants' Motion for Judgment on the Pleadings
28                                                          23

1    Contrary to Plaintiff's suggestion, (Compl. ¶ 45), the requester does not bear the burden of

2    showing the number of days that the passport application was at the passport agency.  *See* Ans. ¶ 16.

3    However, "[e]very expedited fee refund request is examined on a case-by-case basis."  Decl. Ex. C.

4    There is currently no automated mechanism for identifying everyone who did not receive three-day

5    processing, verifying that each person who requested expedited processing paid the fee, and

6    generating a refund.  Ans. ¶ 17.  If the Department determines that the applicant paid for and did not

7    receive expedited service, an order for a refund check of $60 to be issued to the applicant is

8    forwarded to the Department of the Treasury.  *See* Ans. ¶ 16.  At present, this process takes

9    approximately six weeks from the time a request is received at the Service Refund Center until a

10   refund is issued by the Department of the Treasury to the qualifying applicant.  Ans. ¶ 58.

11   Despite the ease of the Department's existing process, Plaintiff has not availed herself of that

12   process and instead invokes the limited resources of this Court to resolve a claim that the

13   Department clearly ought to decide in the first instance.  If Plaintiff is entitled to a refund, the

14   administrative process outlined above is designed to provide that recovery with far less effort than

15   litigating that claim would require.  *See* Ans. ¶ 58.  Thus, dismissal of Plaintiff's refund claim for

16   failure to exhaust her administrative remedies likely would obviate the need for any judicial

17   involvement and permit the Department to refund her expedite fee if Plaintiff is so entitled.

18   **B.    The Department's Existing Refund Process Is Preferable to Any Alternative System This Court Might Establish.**

19   The Department's existing system for processing refunds has a demonstrated history of

20   ensuring that individuals who are entitled to a refund receive it in a timely manner.  *See* Ans. ¶ 58.

21   Indeed, in as few as six weeks, that system issues refunds to applicants entitled to a refund.  *See* Ans.

22   ¶ 58.  Yet, Plaintiff, who has not even applied for a refund, urges the Court to require the Department

23   to suspend its current refund operations in favor of a new system that would have to be devised from

24   the ground up.  Apart from the reasons already discussed, this Court clearly should reject that

25   invitation because of the problems attendant with such a significant administrative change.

26

27   *Chattler v. United States of America,*                    Case No. 07-4040-MMC
     Defendants' Motion for Judgment on the Pleadings
28                                    24

1    The public is well aware of the existing system through the Department's website and public

2    statements of agency officials.  *See* Ans. ¶ 39; *see also* Hearing Before the International Operations

3    Subcomm. of the Senate Foreign Relations Comm., *The Passport Backlog and the State*

4    *Department's Response to the Western Hemisphere Travel Initiative*, 9, 28 (June 19, 2007)

5    (Testimony of Asst. Secy. Maura Harty).  As a result, public confusion likely would result if the

6    Department were forced to suspend its current operations in favor of a new system.  Any new

7    system, moreover, would have to take into account the Department's limitations that preclude it from

8    automatically issuing refunds when the agency fails to provide expedited service.  *See* Ans. ¶17.  The

9    Department has no automated system for identifying everyone who did not receive three-day

10   processing, verifying that each person who requested expedited processing paid the fee, confirming

11   that the address provided on the passport application is still current, and then generating a refund.

12   *See* Ans. ¶17.  Thus, even assuming this Court appropriately accounted for these limitations in any

13   judicially devised refund system  – let alone, one superior to the existing one – the time and

14   resources required to implement that system necessarily would delay the issuance of refunds.  Then

15   to avail themselves of that system, individuals would have to submit at a minimum the same basic

16   information required in a refund request to demonstrate their membership in the proposed class.

17   Class members thus gain nothing through this litigation that is not already available – and with far

18   less delay and effort on their part – through the Department's refund process.  Such additional

19   considerations compel judicial restraint here and dictate dismissal of Plaintiff's refund claim.

**CONCLUSION**

20

21   For the foregoing reasons, Defendants respectfully request that the Court grant this motion.

22

23

24

25

26

27   *Chattler v. United States of America,*                              Case No. 07-4040-MMC
     Defendants' Motion for Judgment on the Pleadings
28                                                           25

Date: April 14, 2008                          Respectfully submitted,


JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
Civil Division


JOSEPH P. RUSSONIELLO
United States Attorney
Northern District of California


VINCENT M. GARVEY
Deputy Branch Director


    /s /Jacqueline Coleman Snead
JACQUELINE COLEMAN SNEAD
(D.C. Bar No. 459548)
Trial Attorney
Federal Programs Branch, Civil Division
U.S. Department of Justice
20 Massachusetts Avenue, N.W. Rm. 7214
Washington, DC 20530
Tel: (202) 514-3418


**Attorneys for Defendants**

1

2

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

3

4

5

6

7

8

9

10

11

12

13

14

15

**JULIA CHATTLER,**

    **PLAINTIFF**

    **V.**

**UNITED STATES OF AMERICA,
DEPARTMENT OF STATE,**

    **DEFENDANTS.**

**Case No. 07-4040-MMC**

**Proposed Order**

16

17

18

19

20

21

22

23

24

25

26

27

28

    Upon consideration of Defendants' Motion for Judgment on the Pleadings [and the opposition thereto], it is hereby

    ORDERED that Defendants' Motion for Judgment on the Pleadings is GRANTED. Judgment is entered in favor of Defendants, and this action is hereby dismissed with prejudice.

    SO ORDERED.

Dated: _____

_____
UNITED STATES DISTRICT
COURT JUDGE

*Chattler v. United States of America,*
Defendants' Motion for Judgment on the Pleadings

Case No. 07-4040-MMC

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing Defendants' Motion for Judgment on the Pleadings was served electronically on April 14, 2008 through the Northern District of California Electronic Case File System (ECF) and that the document is available for viewing and downloading on that system.


                   /s /Jacqueline Coleman Snead
                   Jacqueline Coleman Snead

*Chattler v. United States of America,*                                        Case No. 07-4040-MMC
Defendants' Motion for Judgment on the Pleadings