REED R. KATHREIN (139304)
SHANA E. SCARLETT (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
shanas@hbsslaw.com

ROBERT B. CAREY (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
2425 East Camelback Road, Suite 650
Phoenix, AZ  85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob.carey@att.net

STEVE W. BERMAN (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Attorneys for Plaintiff

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIE CHATTLER, On Behalf of Herself and All Others Similarly Situated,<br><br>                                          Plaintiff,<br><br>          v.<br><br>THE UNITED STATES OF AMERICA and THE UNITED STATES DEPARTMENT OF STATE,<br><br>                                          Defendants. | No. 07-cv-04040 MMC<br><br>OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>DATE:   May 23, 2008<br>TIME:     9:00 a.m.<br>DEPT:    Courtroom 7, 19th Floor<br><br>ACTION FILED: August 7, 2007 |

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

I.  PLAINTIFF'S FULL COMPENSATORY DAMAGES, INCLUDING SPECIAL
    AND CONSEQUENTIAL DAMAGES, ARE AVAILABLE .......................................... 2

    A.  Plaintiff Is Entitled to All Damages She Can Prove Under the Applicable
        Money-Mandating Regulations ........................................................................... 3

    B.  The Full Range of Contract Damages Are Available Against the Government
        for Breach of Contract ......................................................................................... 6

        1.  The Complaint Alleges Facts Sufficient to Establish the Formation and
            Breach of a Contract with the Government ................................................. 6

            a.  Plaintiff Has Properly Invoked the Court's Jurisdiction by
                Pleading All Elements of a Contract and Breach by the
                Government ..................................................................................... 6

            b.  Plaintiff's Allegations Establish an Express, or Alternatively an
                Implied-in-Fact, Contract with the Government for Expedited
                Processing ....................................................................................... 7

                (1)  The Passport Application is a Binding Offer to Process
                     Expedited Applications in Three Working Days .................. 8

                (2)  The Statements on the Department's Website
                     Established a Binding Contractual Obligation ................... 10

        2.  Plaintiff Is Entitled to All Damages She Can Prove That Were
            Reasonably Foreseeable and That Flowed from the Government's
            Breach of Its Obligations ........................................................................ 12

II.  PLAINTIFF ADEQUATELY STATES A CLAIM FOR DAMAGES UNDER A
     MONEY-MANDATING REGULATION .................................................................. 14

III.  THE PRUDENTIAL EXHAUSTION DOCTRINE DOES NOT REQUIRE
      DISMISSAL OF PLAINTIFF'S CLAIMS ................................................................ 16

    A.  A Balancing of Factors Does Not Support Applying the Prudential Exhaustion
        Doctrine ............................................................................................................ 16

        1.  Agency Expertise Is Not Necessary to Resolve Legal Issues or
            Generate a Proper Record for Subsequent Judicial Review ........................ 17

        2.  Permitting the Case to Proceed in this Court Will Not Encourage
            Deliberate Bypass of Administrative Procedures ....................................... 17

        3.  Administrative Exhaustion is Unlikely to Cause the Department to
            Correct Its Own Mistakes or Preclude the Need for Subsequent
            Judicial Review ...................................................................................... 18

1

B.    This Court Should Not Require Administrative Exhaustion Because the
Department's Policy is Inconsistent with Established Regulations ............................ 19

2

C.    This Court Should Not Require Administrative Exhaustion Because The
Existing Administrative Remedy Is Inadequate .......................................... 24

3

CONCLUSION ........................................................................................ 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*ASCO-Falcon II Shipping Co. v. Unites States*
    32 Fed. Cl. 595 (1994).................................................................................12

*Aleknagik Natives Ltd. v. Andrus*
    648 F.2d 496 (9th Cir. 1980) ...................................................................18

*Alltel Information Services, Inc. v. Federal  Deposit Insurance Corp.*
    194 F.3d 1036 (9th Cir. 1999) .................................................................14

*Am-Pro Protective Agency, Inc. v. United States*
    281 F.3d 1234 (Fed. Cir. 2002) ...............................................................12

*Army & Air Force Exch. Services v. Sheehan*
    456 U.S. 728 (1982) ...........................................................................4, 10

*Baker v. United States*
    50 Fed. Cl. 483 (Cl. Ct. 2001) .................................................................10

*Bowen v. Massachusetts*
    487 U.S. 879 (1998) .................................................................................24

*Bowen v. Michigan Academy of Family Physicians*
    476 U.S. 667 (1986) .................................................................................24

*Bowen v. New York*
    476 U.S. 476 (1986) .....................................................................18, 20, 24

*Bryant v. Sacramento County Jail*
    No. CIV S-06-0688 GEB EFB P, 2008 U.S. Dist. Lexis 10273 (E.D. Cal. Feb. 12,
    2008)..........................................................................................................20

*Centex Corp. v. United States*
    395 F.3d 1283 (Fed. Cir. 2005) ...............................................................12

*Chevron U.S.A., Inc. v. United States*
    71 Fed. Cl. 236 (Ct. Cl. 2006) .................................................................10

*Continental Collection & Disposal, Inc. v. United States*
    29 Fed. Cl. 644 (1993)..............................................................................12

*Crocker v. U.S.*
    37 Fed. Cl. 191 (Fed. Cl. 1997).................................................................3

*Cutler-Hammer, Inc. v. United States*
    441 F.2d 1179 (Ct. Cl. 1971).....................................................................9

*Department of Health & Human Serv. v. Chater*
    163 F.3d 1129 (9th  Cir. 1998) .................................................................14

*El Dorado Springs v. United States*
    28 Fed. Cl. 132 (1993)...............................................................................5

*El Rescate Legal Services, Inc. v. Executive Office of Immigration Review*
959 F.2d 742 (9th Cir. 1992) ......................................................................................... 18, 19

*Federal Crop Insurance Corp. v. Merrill*
332 U.S. 380 (1947) ............................................................................................................. 11

*First Nationwide Bank v. United States*
431 F.3d 1342 (Fed. Cir. 2005) .......................................................................................... 12

*Fisher v. United States*
402 F.3d 1167 (Fed. Cir. 2005) ........................................................................................ 1, 3

*Forest Guardians v. Babbitt*
164 F.3d 1261 (10th Cir. 1998) ......................................................................................... 15

*Franconia Associates v. United States*
536 U.S. 129 (2002) ............................................................................................... 7, 12, 13

*Gardiner Manufacturing Co. v. United States*
479 F.2d 39 (9th Cir. 1973) ................................................................................................. 7

*Girling Health System, Inc. v. United States*
949 F.2d 1145 (Fed. Cir. 1991) ................................................................................. 8, 9, 11

*Griffin v. United States*
215 Ct. Cl. 710 (1978) ........................................................................................................ 13

*Hal Roach Studios, Inc. v. Richard Feiner & Co, Inc.*
896 F.2d 1542 (9th Cir. 1990) ........................................................................................ 2, 19

*Hansen Bancorp Inc. v. United States*
367 F.3d 1297 (Fed. Cir. 2004) .......................................................................................... 13

*Hercules, Inc. v. United States*
516 U.S. 417 (1996) .............................................................................................................. 6

*Hills Material Co. v. Rice*
982 F.2d 514 (Fed. Cir. 1992) ............................................................................................ 10

*Hines v. Nuckle*
No. CIV S-03-2385 GEB EFB P, 2008 U.S. Dist. Lexis 17457 (E.D. Cal. Mar. 6,
2008) .................................................................................................................................... 20

*Hughes Commc'ns. Galaxy, Inc. v. United States*
998 F.2d 953 (Fed. Cir. 1993) ............................................................................................ 10

*Indiana Michigan Power Co. v. United States*
422 F.3d 1369 (Fed. Cir. 2005) ....................................................................................... 1, 13

*Johnson v. Shalala*
2 F.3d 918 (9th Cir. 1993) ....................................................................................... 18, 20, 24

*Jones v. Bock*
549 U.S. 199 (2007) ............................................................................................................ 20

*Kelly v. City & County of San Francisco*
   No. C 05-1287 SI, 2005 U.S. Dist. Lexis 31110 (N.D. Cal. Nov. 19, 2005) .......................24

*La Van v. United States*
   382 F.3d 1340 (Fed. Cir. 2004) ...................................................................................................8

*Laing v. Ashcroft*
   370 F.3d 994 (9th Cir. 2004) ..............................................................................................2, 24

*Last Chance Mining Co. v. United States*
   12 Cl. Ct. 551, 555 (1987) ...........................................................................................................9

*Lavin v. Marsh*
   644 F.2d 1378 (9th Cir. 1981) ..................................................................................................11

*McCarthy v. Madigan*
   503 U.S. 140 (1992) ...........................................................................................16, 17, 18, 24

*McCoog v. Hegstrom*
   690 F.2d 1280 (9th Cir. 1982) ..................................................................................................14

*McGee v. United States*
   402 U.S. 479 (1971) ...........................................................................................................16, 17

*McNary v. Haitian Refugee Ctr., Inc.*
   498 U.S. 479 (1991) ....................................................................................................................24

*Merritt v. United States*
   267 U.S. 338 (1925) ......................................................................................................................7

*Montes v. Thornburgh*
   919 F.2d 531 (9th Cir. 1990) ...............................................................................................2, 16

*Montgomery v. Rumsfeld*
   572 F.2d 250 (9th Cir. 1978) ...........................................................................................16, 17

*Morris v. Commodity Futures Trading Commission*
   980 F.2d 1289 (9th Cir. 1992) ..................................................................................................17

*Nat'l Rural Utils. Coop. Fin. Corp. v. United States*
   14 Cl. Ct. 130, 137 (1988) ...........................................................................................................8

*Nehmer v. United States Veterans Admin.*
   118 F.R.D. 113 (N.D. Cal. 1987) ..............................................................................................18

*Nutt v. United States*
   12 Cl. Ct. 345, 351 (1987) .........................................................................................................10

*Precision Pine & Timber, Inc. v. United States*
   72 Fed. Cl. 460 (2006) ...............................................................................................................13

*Ralston Steel Corp. v. United States*
   340 F.2d 663 (Ct. Cl. 1965) .........................................................................................................6

*Rivera Agredano v. United States*
    70 Fed. Cl. 564 (Cl. Ct. 2006) ...................................................................................... 12

*Rodriguez v. United States*
    69 Fed. Cl. 487 (Ct. Cl. 2006) ...................................................................................... 12

*Schism v. United States*
    316 F.3d 1259 (Fed. Cir. 2002) .............................................................................. 11, 13

*Shafmaster Fishing Co. v. United States*
    28 Fed. Cl. 699 (1993) ..................................................................................................... 5

*Spezzaferro v. Federal Aviation Admin.*
    807 F.2d 169 (Fed. Cir. 1986) ..................................................................................... 12

*Steel Co. v. Citizens for a Better Environment*
    523 U.S. 83 (1998) ....................................................................................................... 4, 6

*Tecom, Inc. v. United States*
    66 Fed. Cl. 736 (Ct. Cl. 2005) ...................................................................................... 12

*Trauma Serv. Group v. United States*
    104 F.3d 1321 (Fed. Cir. 1997) ................................................................................... 6, 7

*Tree Farm Development Corp. v. United States*
    585 F.2d 493 (Cl. Ct. 1978) ............................................................................................. 9

*United States ex rel. Lujan v. Hughes Aircraft Co.*
    243 F.3d 1181 (9th Cir. 2001) ................................................................................. 14, 15

*United States v. Mitchell*
    463 U.S. 206 (1983) ........................................................................................................ 12

*United States v. Navajo Nation*
    537 U.S. 488 (2003) ............................................................................................... 3, 4, 14

*United States v. Testan*
    424 U.S. 392 (1976) ....................................................................................................... 4, 5

*United States v. Westerbrand-Garcia*
    35 F.3d 418 (9th Cir. 1994) ........................................................................................ 8, 10

*United States v. White Mountain Apache Tribe*
    537 U.S. 465 (2003) ................................................................................................ *passim*

*United States v. Winstar*
    518 U.S. 839 (1996) ................................................................................................ 8, 9, 10

*Weinberger v. Salfi*
    422 U.S. 749 (1975) ........................................................................................................ 17

*Wells Fargo Bank, N.A. v. United States*
    88 F.3d 1012 (Fed. Cir. 1996) ............................................................................... 7, 8, 11

*Winstar Corp. v. United States*
    64 F.3d 1531 (Fed. Cir. 1995) ..................................................................... 8

*Wyatt v. Terhune*
    315 F.3d 1108 (9th Cir. 2003) .................................................................... 20

*Zucker v. United States*
    758 F.2d 637 (Fed. Cir. 1985) .................................................................... 13

## STATUTES

10 U.S.C. 1124(f) ......................................................................................... 13

22 C.F.R. § 22.1 ........................................................................................... 11

22 C.F.R. § 22.6(b) ...................................................................................... 15

22 C.F.R. § 51.63 ................................................................................. 4, 6, 15

22 C.F.R. § 51.66 ...................................................................................... 4, 7

12 U.S.C. § 1821(e) ..................................................................................... 14

28 U.S.C. § 1346(a)(2) ............................................................................ 1, 3

59 F.R. 48998-01 ............................................................................ 15, 21, 23

S. Rep. No. 103-309 (1994) ......................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

This is a simple case.  Plaintiff Chattler and the class paid for the expedited processing of their passport applications, and did not receive the three-day processing for which they paid. Defendants breached their express and implied contracts with Plaintiff and the class and breached their regulatory duties to provide the service requested and paid for.  ¶¶ 2-6.[1]  In spite of the obvious breaches of its obligations, Defendant United States Department of State ("Department" or "Government") has failed to refund expedited processing fees as required by regulation and refused to pay damages Plaintiff and other class members incurred as a result of Defendants' breach of their contractual and regulatory obligations.

Defendants do not dispute that they did not provide millions of applicants with expedited processing, despite the collection of the sixty dollar fee.  Rather, Defendants argue that this Court must eliminate particular remedies for lack of jurisdiction or failure to state a claim, that the Government did not intend to contract, and that this Court should not exercise its jurisdiction without requiring the Plaintiff to seek an alleged administrative remedy which is not mandated by statute or regulation, has never been adequately advertised or explained, does not clearly incorporate the correct terms of the Government's obligation and does not provide a full remedy.  On these facts, this Court should exercise its jurisdiction over Plaintiff's claims for full compensatory damages.

**ARGUMENT**

Plaintiff Chattler has properly invoked the jurisdiction of this Court under 28 U.S.C. 1346(a)(2) and has stated claims for relief for breach of contract and under a money-mandating regulation for all her compensatory damages, including special and consequential damages.  The Plaintiff's claims fall squarely within the Tucker Act's grant of jurisdiction and waiver of sovereign immunity.  *See United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).  Plaintiff is entitled to all damages that she can prove flow from the breach of the Government's obligations.  *See Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005).  Defendants' argument that Plaintiff failed to

---

[1]     All "¶ __" references are to the Class Action Complaint for Breach of Contract, Regulatory Violation, and Breach of the Implied Covenant of Good Faith and Fair Dealing ("Complaint"), filed on August 7, 2007.

1    state a claim because the pertinent regulations do not require automatic refunds is also incorrect.

2    Plaintiff adequately stated a claim for relief under a money-mandating regulation.  In addition, the

3    regulation's mandatory language requires an automatic refund.

4         The prudential exhaustion doctrine likewise does not require dismissal.  The issues presented

5    do not require agency expertise, this suit is not likely to encourage the deliberate bypass of

6    administrative procedures, and it is clear that the Department has no intention of changing its process

7    or providing appropriate remedies.  *See Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990).

8    Because the Department's refund scheme is inadequate and does not address the claims of Plaintiff

9    and the class, this Court should not require administrative exhaustion.  *See Laing v. Ashcroft*,

10   370 F.3d 994, 1000 (9th Cir. 2004).

11        A motion for judgment on the pleadings serves to test the legal sufficiency of the complaint.

12   Judgment on the pleadings is appropriate only when the moving party clearly establishes ***on the face***

13   ***of the pleadings*** that there are no material issues of fact and that it is entitled to judgment as a matter

14   of law.  *Hal Roach Studios, Inc. v. Richard Feiner & Co, Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

15   In considering a motion for judgment on the pleadings, "the allegations of the non-moving party

16   must be accepted as true, while the allegations of the moving party which have been denied are

17   assumed to be false."  *Id.*

18   **I.**    **PLAINTIFF'S FULL COMPENSATORY DAMAGES, INCLUDING SPECIAL AND**
             **CONSEQUENTIAL DAMAGES, ARE AVAILABLE**

19
20        Defendants wrongly suggest that the Court does not have jurisdiction over Plaintiff's claims

21   for consequential and special damages resulting from Defendants' failure to provide expedited

22   service.  *See* Defs.' Mem. at 8-10.[2]  Plaintiff has not pled a separate claim or claims for special and

23   consequential damages.  Rather, Plaintiff has alleged facts establishing cognizable claims for breach

24   of contract, breach of the implied covenant of good faith and fair dealing and damages under a

25   money-mandating statute or regulation.  The Tucker Act establishes jurisdiction and waives the

26

27   _____

28   [2]    "Defs.' Mem." refers to Defendants' Notice of Motion for Judgment on the Pleadings and Memorandum of Law
     in Support of Defendants' Motion for Judgment on the Pleadings, filed April 14, 2008.

OPP'N TO MOT. FOR J. ON THE PLEADINGS

– NO. 07-cv-04040 MMC                    - 2 -
001980-11  236639 V2

Government's sovereign immunity for those claims. 28 U.S.C. § 1346(a)(2);[3] *White Mountain Apache*, 537 U.S. at 472; *Fisher*, 402 F.3d at 1172. The Government need not waive sovereign immunity for particular types of damages on such claims, and Plaintiff is entitled to prove what damages flow from the Government's breach of its regulatory and contractual duties.

**A.     Plaintiff Is Entitled to All Damages She Can Prove Under the Applicable Money-Mandating Regulations**

Defendants are incorrect that the court lacks jurisdiction to award special or consequential damages under the Department's regulations. Plaintiff has properly invoked this Court's jurisdiction and stated a claim for damages under pertinent regulations. The Tucker Act confers jurisdiction upon this Court for claims brought against the United States founded upon a statute or regulation and waives the Government's sovereign immunity for those actions. 28 U.S.C. § 1346(a)(2); *Fisher*, 402 F.3d at 1172. A plaintiff bringing a Tucker Act claim must identify a separate statute or regulation that provides a substantive right to such damages. *White Mountain Apache*, 537 U.S. at 472. However, because "the Tucker Act supplies a waiver of immunity . . . the separate statutes and regulations need not provide a second waiver of sovereign immunity, nor need they be construed in the manner appropriate to waivers of sovereign immunity." *Id*. at 472-73.[4]

For a claim based on a money-mandating statute or regulation, "the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action." *Fisher*, 402 F.3d at 1173. A regulation is money-mandating when it is "reasonably amenable to the reading that it mandates a right of recovery in damages." *White Mountain Apache*, 537 U.S. at 473. The analysis must "train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003). The question is whether the regulations can be fairly interpreted as imposing a substantive obligation enforceable by damages. *White Mountain Apache*, 537 U.S. at 474.

---

[3]     28 U.S.C. § 1346(a)(2), sometimes referred to as the "Little Tucker Act," is part of the Tucker Act. Although its provisions have been codified separately, they all arise from the same Act and the grounds for exercising jurisdiction are the same under all sections. *Crocker v. U.S.*, 37 Fed. Cl. 191, 200 (Fed. Cl. 1997). For simplicity, this brief uses the collective term "Tucker Act" to refer to its provisions.

[4]     All emphasis added and all internal quotations and citations removed, unless otherwise stated.

1   Defendants concede that 22 C.F.R. § 51.63 is a money-mandating regulation for the purposes

2   of the Tucker Act and entitles Plaintiff to a refund. Therefore Plaintiff has properly invoked the

3   Court's jurisdiction and stated a valid claim for relief, and Defendants' motion should be denied.[5]

4   In addition, Defendants are incorrect in contending that damages beyond a refund are not

5   available. The provisions of 22 C.F.R. §§ 51.63 and 51.66 required that the Government complete

6   processing of expedited applications within three business days of receipt at a passport agency, and

7   require a refund in the event the Government fails to do so. The regulation further provided for the

8   agency to decline to accept a request if "it is apparent at the time it is made that the request cannot be

9   granted." 22 C.F.R. § 51.66(d). These provisions are intended to facilitate the very contracts that

10  eventually took place. Given the purpose and obligations established, the regulations are reasonably

11  read as establishing a substantive duty, enforceable through monetary redress, to provide expedited

12  service or to alert individuals when the service cannot be performed.

13  The availability of particular categories of redress, such as consequential or special damages,

14  need not be set out explicitly in the statutory or regulatory language. As the Supreme Court observed

15  in *White Mountain Apache*:

16  > To the extent that the Government would demand an explicit provision
    > for money damages to support every claim that might be brought under
17  > the Tucker Act, it would substitute a plain and explicit statement
    > standard for the less demanding requirement of fair inference that the
18  > law was meant to provide a damage remedy for breach of a duty.

19  537 U.S. at 477. *See also Navajo Nation*, 537 U.S. at 506 (the statutes "need not, however, expressly

20  provide for money damages; the availability of such damages may be inferred").

21  In so holding, the Supreme Court considered and limited its earlier holdings in *United*

22  *States v. Testan*, 424 U.S. 392 (1976), and *Army & Air Force Exch. Servs. v. Sheehan*, 456 U.S. 728

23  (1982), noting that in both of those cases the Court had "affirmative reasons to believe that no

---

[5]   Defendants are incorrect in arguing that this is akin to the procedure disapproved of in *Steel Co. v. Citizens for a*
*Better Env't.*, 523 U.S. 83 (1998). The Court in *Steel Co.* addressed the opposite question: whether a plaintiff's ultimate
failure to state a valid cause of action could undermine the subject matter jurisdiction of the court. *Steel Co.*, 523 U.S. at
89-90. The Court noted that it would be folly to address the merits of a case first to determine whether jurisdiction
existed. *Id.* at 94. Here, Plaintiff's reliance on a money-mandating regulation invokes the Court's jurisdiction and states
a cause of action, and the question of what damages Plaintiff is actually entitled to cannot affect jurisdiction. *See id.* at
89 (the district court has jurisdiction if the plaintiff's claim is such that she will recover if the laws are given one
construction and be defeated if the laws are given another construction).

1    damages remedy could have been intended, absent a specific provision." *White Mountain Apache*,

2    537 U.S. at 477-78. The Court noted that a specific authorization was necessary in *Sheehan*

3    "because of a statute that generally granted employees the damages remedy petitioner sought, but

4    expressly denied that cause of action" to the plaintiff. *Id*. at 478. Similarly, in *Testan*, the Court

5    found that there was a "long-standing presumption" against the plaintiff's arguments. *Id*. Because

6    the statute invoked did not clearly abrogate the established rule, the Court in *Testan* found it did not

7    mandate damages. *Testan*, 424 U.S. at 402.

8        Considering these holdings, the Court in *White Mountain Apache* held that "in both *Sheehan*

9    and *Testan* we required an explicit authorization of a damages remedy because of strong indications

10    that Congress did not intend to mandate money damages." *White Mountain Apache*, 537 U.S. at 478.

11    An express provision is required only in such a situation when "the legal current is otherwise against

12    the existence" of a claim. *Id*. It is not required in other circumstances. For example, in *White*

13    *Mountain Apache*, the Court found that a statute declaring that land would be held in trust for the

14    tribe was a money-mandating statute – even though it lacked any specific provision for damages –

15    because it created a fiduciary duty on the part of the United States. *Id*. at 474. According to the

16    Court, "[g]iven this duty on the part of the trustee . . . it naturally follows that the Government should

17    be liable in damages for breach of its fiduciary duties." *Id*. at 475-76. The Court also refused to rule

18    out specific types or measures of damages in making the determination that the statute was money-

19    mandating. *Id*. at 476 n.4.

20        Here, the regulations established a duty enforceable by damages. Defendants have failed to

21    show evidence of any longstanding presumptions or established rules that would deny Plaintiff

22    damages for the Government's breach of its obligations.[6] Indeed, the fact that the return of the

23    refund fee is mandatory under 22 C.F.R. § 51.63(c) is evidence that the duty itself was intended to be

24    enforceable, and it "naturally follows" that the Government should be liable for its breach. The

---

[6]        The lower-court cases on which Defendants rely, decided ten years prior to *White Mountain Apache* and *Navajo Nation*, have no bearing on the legal duties at issue in this case. *See* Defs.' Mem. at 9-10 (relying on *El Dorado Springs v. United States*, 28 Fed. Cl. 132 (1993) and *Shafmaster Fishing Co. v. United States*, 28 Fed. Cl. 699 (1993)). Neither case sheds any light on whether the regulations at issue here can be fairly interpreted as mandating damages, nor can they demonstrate any legal current with regard to the availability of damages for breach of the obligation to provide expedited passport processing.

1    Plaintiff is entitled to those damages she can prove flowed from the Government's failure to perform

2    its duties as required by the regulation. *See White Mountain Apache*, 537 U.S. at 474.

**B.     The Full Range of Contract Damages Are Available Against the Government for Breach of Contract**

**1.     The Complaint Alleges Facts Sufficient to Establish the Formation and Breach of a Contract with the Government**

6    Defendants' argument that the Court lacks jurisdiction over Plaintiff's breach of contract

7    claims because no contract was formed improperly merges two inquiries: whether the Plaintiff has

8    established jurisdiction and whether the Plaintiff has adequately stated a claim for relief. Defendants

9    argue that Plaintiff's allegations do not form a contract, and therefore jurisdiction is lacking.

10   However, the Supreme Court has rejected this type of reasoning, noting that it is "firmly established

11   in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate

12   subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional ***power*** to adjudicate the case."

13   *Steel Co.*, 523 U.S. at 89.

**a.     Plaintiff Has Properly Invoked the Court's Jurisdiction by Pleading All Elements of a Contract and Breach by the Government**

16   Plaintiff properly invoked the jurisdiction of this Court by alleging the formation and breach

17   of a contract with the Government. Jurisdiction under the Tucker Act extends to contracts that are

18   express or implied-in-fact. *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996). The

19   requirements for an express and an implied-in-fact contract with the Government are identical: the

20   complainant must allege mutual intent to contract, including an offer, an acceptance, and

21   consideration, and must also show that the agent making the contract had actual authority to do so,

22   which is precisely what the regulation exists to do. *Trauma Serv. Group v. United States*, 104 F.3d

23   1321, 1325 (Fed. Cir. 1997). To establish jurisdiction, Plaintiff need only properly allege facts

24   showing the elements of formation and breach of a contract. *Id.*; *Ralston Steel Corp. v. United*

25   *States*, 340 F.2d 663, 668 (Ct. Cl. 1965).

26   The Complaint alleges that the Passport Application contains an explicit offer to provide

27   expedited processing in exchange for an additional fee, and that the Department promised that

28   passports receiving expedited processing would be returned within two to three weeks. ¶¶ 63, 80.

1   Plaintiff alleged that she accepted the Government's offer and provided the necessary consideration

2   by payment of the additional fee.  ¶¶ 27, 64, 81.  Furthermore, Plaintiff has shown that the

3   Department had actual authority to make such an offer under the pertinent regulations.  *See* 22 C.F.R.

4   § 51.66.  Plaintiff also alleged that the Government breached its promises.  ¶¶ 29, 66.  These

5   allegations, if true, are sufficient to show both the formation and breach of a contract for expedited

6   processing of her passport application, and establish jurisdiction under the Tucker Act.  *Trauma*

7   *Service Group*, 104 F.3d at 1325.

8          The cases on which Defendants rely, in contrast, involve complaints where the plaintiff did

9   not allege the existence of a contract, and therefore failed to invoke the court's jurisdiction.  *See*

10  *Merritt v. United States*, 267 U.S. 338, 340-41 (1925); *Gardiner Mfg. Co. v. United States*, 479 F.2d

11  39, 40 (9th Cir. 1973).  They do not stand for the proposition that every complaint must successfully

12  show a contract on the merits to establish jurisdiction.  Here, because Plaintiff has properly alleged

13  all elements of a contract, the Court has jurisdiction under the Tucker Act to hear the claims.

14  *Trauma Service Group*, 104 F.3d at 1325.

15              **b.    Plaintiff's Allegations Establish an Express, or Alternatively an Implied-in-Fact, Contract with the Government for Expedited Processing**

16

17         Plaintiff also stated facts sufficient to establish a claim for breach of contract.  Defendants

18  challenge only one aspect of the Plaintiff's claim, arguing that the offers on which Plaintiff relies are

19  insufficiently firm to establish the Government's intent to contract as a matter of law.  Defendants are

    incorrect.
20
           "When the United States enters into contract relations, its rights and duties therein are
21
    governed generally by the law applicable to contracts between private individuals."  *Franconia*
22
    *Assocs. v. United States*, 536 U.S. 129, 141 (2002).  Like private parties, the Government may enter
23
    into a contract by making promissory words which induce action by a private party in reliance on the
24
    Government's promise.  *Wells Fargo Bank, N.A. v. United States*, 88 F.3d 1012, 1018 (Fed. Cir.
25
    1996).  That the Government's promise is contingent upon performance of other conditions by the
26
    private party does not make its promise any less binding.  *Id.* at 1019.  A contract with the
27
    Government may arise out of multiple documents containing promises where there is a clear
28

1    indication of the intent to contract.  *La Van v. United States*, 382 F.3d 1340, 1346 (Fed. Cir. 2004);

2    *see also Winstar Corp. v. United States*, 64 F.3d 1531, 1540-44 (Fed. Cir. 1995), *aff'd*, 518 U.S. 839

3    (1996).  In determining the existence of a contractual obligation, the courts look to the realities of the

4    transaction to determine the principal purpose of the parties.  *United States v. Winstar*, 518 U.S. 839,

5    863-64 (1996) (finding that "the realities of the transaction favored reading those documents as

6    contractual commitments, not mere statements of policy").

7        These traditional rules of contract formation and interpretation apply even where there is an

8    overlying regulatory framework.  *See, e.g.*, *Winstar Corp.*, 518 U.S. at 862-866 (discussing ability to

9    incorporate particular regulatory terms into contract); *Wells Fargo Bank, N.A.*, 88 F.3d at 1014-19

10   (describing the formation of a contract under the purview of the Rural Development Act of 1972);

11   *United States v. Westerbrand-Garcia*, 35 F.3d 418, 421 (9th Cir. 1994) ("The fact that the parties do

12   not bargain for the terms of the agreement, but must take the terms as set forth in [the statute] does

13   not mean that the agreement is not a contract.").

14              **(1)      The Passport Application is a Binding Offer to Process Expedited
                          Applications in Three Working Days**

15

16       Here, Plaintiff has shown that the Government made two express promises or offers forming

17   the contract at issue here.  First, in the Passport Application, the Department stated, "**For faster

18   processing**, you may request expedited service.  <u>Expedited requests will be processed in three

19   workdays from receipt at a passport agency</u>.  The additional fee for expedited service is $60."

20   Complaint, Ex. A (emphasis in original).  This is an unambiguous statement, not a "mere

21   solicitation" as the Government contends.  The promissory words are not qualified in any way and

22   invite the applicant to accept by payment of the fee.  Such an explicit offer is sufficient to form a

23   binding contract upon acceptance through payment of the fee.  *See Wells Fargo Bank, N.A.*, 88 F.3d

24   at 1019; *Nat'l Rural Utils. Coop. Fin. Corp. v. United States*, 14 Cl. Ct. 130, 137 (1988).

25       Defendants' citation to *Girling Health Sys., Inc. v. United States*, 949 F.2d 1145 (Fed. Cir.

26   1991) is inapposite.  There, the instruction form on which the plaintiff relied stated, "[y]ou ***should

27   generally*** receive determination on your election within 60 days," which the court found to be

28   insufficient to manifest intent to be bound.  *Id*. at 1146.  In contrast, the Passport Application

OPP'N TO MOT. FOR J. ON THE PLEADINGS

– NO. 07-cv-04040 MMC                          - 8 -

001980-11 236639 V2

1    promised that the expedited applications "will be" processed in three days.  This language is not

2    merely predictive, it is definite and promissory.  In addition, the form in *Girling* contained a blanket

3    caveat which stated:  "If you are not notified of acceptance or non-acceptance of your election within

4    3 months of date of filing . . . you should take follow-up action," which the court found to clearly

5    indicate there was no binding promise to act in sixty days.  *Id.*  The application at issue in this case

6    has no such qualifying language, caveats or instructions.  There is only the straightforward promise

7    that when the additional fee is paid, the application "will be processed in three workdays."

8        Nor does this case involve a mere invitation to apply for a program, as in *Tree Farm Dev.*

9    *Corp. v. United States*, 585 F.2d 493, 496-97, 500-01 (Cl. Ct. 1978).  That case involved a multi-

10   stage loan application process, and the plaintiff alleged that the Government violated an implied-in-

11   fact contract to consider the application on the merits.  Here, however, the application did not merely

12   invite individuals to apply for expedited processing.  Rather, it promised to provide such processing

13   for a set fee of $60.  The application was a "manifestation of willingness to enter into a bargain, so

14   made as to justify another person in understanding that his assent to that bargain is invited and will

15   conclude it."  *Tree Farm Dev. Corp.*, 585 F.2d at 500.

16       The fact that the promise originates in a regulation also does not preclude a contract.  The

17   cases upon which Defendants rely address the indefiniteness of the offers that were made.  In those

18   cases, the regulations were, based on general contract law, too indefinite to be offers in and of

19   themselves.  They did not hold that a regulatory provision can never become embodied in or give rise

20   to a contract.  *See Cutler-Hammer, Inc. v. United States*, 441 F.2d 1179 (Ct. Cl. 1971) (a regulation

21   establishing an application process for the purchase of silver which did not establish the price or

22   define the terms of the bargain was not an offer to contract); *Last Chance Mining Co. v. United*

23   *States*, 12 Cl. Ct. 551, 555 (1987) (allegations that an implied contract arose out of a "plethora of

24   rules, regulations and statutes involving federal mining law," and that plaintiff's acceptance flowed

25   from its entry, discovery and location of claims were insufficiently firm).  Contracts are routinely

26   found in regulated contexts, and may specifically incorporate regulatory terms, promise particular

27   regulatory treatment, or arise from the regulations themselves.  *See, e.g., Winstar Corp.*, 518 U.S. at

28

1    862-866; *Westerbrand-Garcia*, 35 F.3d at 420-21; *Hughes Commc'ns. Galaxy, Inc. v. United States*,

2    998 F.2d 953, 957-59 (Fed. Cir. 1993); *Hills Material Co. v. Rice*, 982 F.2d 514 (Fed. Cir. 1992);

3    *Nutt v. United States*, 12 Cl. Ct. 345, 351 (1987).

4    In this case, there was an express and unambiguous offer made in the Passport Application

5    which invited applicants to accept through the payment of an additional sixty dollars.  This language

6    constituted a valid and binding contractual offer to process expedited application in three workdays

7    from receipt at a Passport Agency.[7]

8    ### (2)    The Statements on the Department's Website Established a Binding Contractual Obligation

9
10   The statements made on the Department's website similarly constitute a binding promise to

11   return passports to applicants paying for expedited service within about two weeks.  The Department

12   does not dispute that the language on its website stated that if an applicant paid for expedited

13   processing the passport would arrive within about two weeks, but argues that additional language

14   undermines that promise.  However, the language quoted by the Government again confirms that

15   "Currently, Expedite Service takes 2-3 weeks to receive your passport from the date you applied."

16   Defs.' Mem. at 15.  This language is clear and unequivocal, indicating that the Department will

17   return the passports within twenty-one days from the day the applicant applies.  This is a valid and

18   binding offer that could be accepted through payment of the fee.

19   None of the additional language that Defendants purport was on the website alters the binding

20   nature of the promise.  The statement that it may take longer if customers do not mark the envelopes

21   "Expedite" does not affect the promise that a properly submitted application for which the expedite

22

23   ---

24   [7]    Defendants' argument in footnote 10 that the rule of *Testan* prevents the Plaintiff from recovering in contract damages not specifically authorized by statute is meritless.  The test for a money-mandating regulation is separate and distinct from the court's jurisdiction over contract claims.  *See Chevron U.S.A., Inc. v. United States*, 71 Fed. Cl. 236, 259-61 (Ct. Cl. 2006) (rejecting the government's attempt to "impose the money mandating inquiry relevant to claims asserted pursuant to . . . regulations onto claims based on common law contract," and finding that "as a matter of law, [plaintiff] is not required to identify a specific money-mandating provision in the Equity Process Agreement, because inherent in every breach of contract is a right to money damages.").  The cases Defendants cite stand for the unremarkable proposition that an allegation of a contract does not entitle a plaintiff to damages for violation of a regulation, *if* there is no offer sufficient to form a contract.  *Sheehan*, 456 U.S. at 740-41 & n.11; *Baker v. United States*, 50 Fed. Cl. 483, 489-90 (Cl. Ct. 2001).  Both cases note that where the regulation is actually an offer, a contract may be formed.  *Sheehan*, 456 U.S. at 740-41 & n.11; *Baker*, 50 Fed. Cl. at 489-90.  Neither case suggests that where there is a contract, it is subject to a limitation on damages pursuant to the money-mandating regulation case law.

OPP'N TO MOT. FOR J. ON THE PLEADINGS
– NO. 07-cv-04040 MMC                                    - 10 -

1    fee is paid will be returned within twenty-one days.  *See Wells Fargo Bank, N.A.*, 88 F.3d at 1019.

2    Similarly, the statement that applicants traveling within seven days should contact the Department is

3    irrelevant.  That statement is directed at those who had already applied and paid for expedited

4    processing but not gotten their passport.  It does not qualify the promise to return passports within

5    twenty-one days or inform applicants that they may not actually receive their passports within that

6    time if they pay for expedited processing.  At most, it informs applicants who applied for a passport

7    less than two or three weeks prior to their departure date that they may not get their passports in time

8    and should contact the agency.  In this case, Plaintiff did not get her passport for over seven weeks,

9    which – regardless of the construction of the timeframe promised – breaches the contract.

10    The Defendant again relies improperly on *Girling*.  949 F.2d at 1145.  The statements on the

11    website are not qualified predictions, like the "should generally" language in *Girling*.  They are

12    promissory statements that the passports will be returned within a certain amount of time, which

13    only makes sense given that the sole point of the contract relates to time and ensuring faster return of

14    the passport.  The website does not have any blanket caveat that follow-up action would be required

15    by all applicants, as in *Girling*, but only informs applicants that if they did not allow enough time for

16    expedited processing they need to take alternate steps.  Nor does the Schedule of Fees contained in

17    22 C.F.R. § 22.1 have any bearing on the validity of the offer made on the Department's website.

18    The promise to return passports within twenty-one days does not conflict with any regulation, but

19    rather, as the Defendants have repeatedly indicated, reflects the time spent in transit and in the

20    lockbox facilities in addition to the processing time.[8]  Barrett Decl. ¶ 16, Ex. B.2.[9]

21    The Department made a clear and binding offer to return passports to applicants paying for

---

[8]    Defendants' statement, in footnote 9, that a contract cannot be implied in fact where it is contrary to a regulation has no application here.  The cases Defendants cite deal with situations where the promise of the contract was directly contrary to a governing statute.  *See Schism v. United States*, 316 F.3d 1259, 1262, 1272-73 (Fed. Cir. 2002) (military recruiters could not make promises that the government would provide free medical benefits for life to the plaintiffs and their dependents, because it was contrary to statute); *Lavin v. Marsh*, 644 F.2d 1378, 1382-84 (9th Cir. 1981) (principle of equitable estoppel could not create a contract for military pay that was directly contrary to governing statute); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947) (no contract by estoppel for insurance that exceeded that authorized by statute).  Here, the three-day promise in the application is directly authorized by the governing regulation, and the twenty-one day promise is, by Defendants' own arguments, not inconsistent or contrary to that regulation, but rather accurately accounts for the time spent in transit and at lockboxes.

[9]    "Barrett Decl." refers to the Declaration of Ann Barrett in Support of Defendants' Motion to Dismiss, filed February 1, 2008.

expedited service within twenty-one days.  Such promissory words by the Government were sufficient to establish a binding contractual obligation when class members accepted the offer and provided consideration through payment of the additional fee.  Therefore, Plaintiff adequately stated a claim for an express, or in the alternative an implied-in-fact, contract for expedited service with the Government requiring processing within three working days from its arrival at a Passport Agency and return of the passport within twenty-one days of the application.[10]

### 2. Plaintiff Is Entitled to All Damages She Can Prove That Were Reasonably Foreseeable and That Flowed from the Government's Breach of Its Obligations

Defendants' argument that the damages recoverable for breach of contract are "necessarily circumscribed" by the regulations governing expedited passport processing is devoid of merit. "[G]overnment liability in contract is viewed as perhaps the widest and most unequivocal waiver of federal immunity from suit." *United States v. Mitchell*, 463 U.S. 206, 215 (1983).  Moreover, "[o]nce the United States waives its immunity and does business with its citizens, it does so much as a party never cloaked with immunity," and is governed by the same rules of contract law governing private parties. *Franconia Assoc.*, 536 U.S. at 141.  This is true with regard to damages, as the

---

[10]     Contrary to Defendants' assertion in footnote 7, Plaintiff has stated a claim for relief for breach of the implied covenant of good faith and fair dealing.  The covenant of good faith and fair dealing is implicit in every contract, including those made with the government. *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005).  A claim for breach of the implied covenant of good faith and fair dealing alleges that the government acted so as to deprive the contracting party of the fruits of the contract. *Id*. at 1304.  Defendants rely on cases in which the plaintiffs alleged that the government's bad faith conduct in administering a contract or fulfilling a discretionary duty breached a duty. *See Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d 169, 170-71 (Fed. Cir. 1986); *ASCO-Falcon II Shipping Co. v. Unites States*, 32 Fed. Cl. 595, 603 (1994); *Cont'l Collection & Disposal, Inc. v. United States*, 29 Fed. Cl. 644, 651 (1993).  However, a claim for breach of the covenant of good faith and fair dealing is distinct from the claim that the government breached a contract by acting in bad faith. *Rivera Agredano v. United States*, 70 Fed. Cl. 564, 574 n.8 (Ct. Cl. 2006).  "In order to show a breach of the covenant of good faith and fair dealing, the plaintiff need not provide evidence to show that the government acted in bad faith" or with malice. *Id*.  The allegation that the government acted to deny a contracting party its rights or benefits under the contract is a sufficient injury to establish a claim for breach of the implied covenant of good faith and fair dealing. *Centex*, 395 F.3d at 1304-05; *First Nationwide Bank v. United States*, 431 F.3d 1342, 1450 (Fed. Cir. 2005); *Rodriguez v. United States*, 69 Fed. Cl. 487, 498-99 (Ct. Cl. 2006); *Rivera Agredano*, 70 Fed. Cl. at 574.  Plaintiff's allegations that the government accepted expedite fees even when it knew it could not perform the service and failed to provide refunds when it knew it had not provided the service it promised to provide, and therefore deprived Plaintiff and class members of the benefit of the bargain to further its own self interest is sufficient to allege a breach of the implied covenant. ¶¶ 91-97.

Moreover, the presumption of good faith applies only when "it arises in the context of quasi-criminal wrongdoing by government officials acting the course of their public duties." *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002).  In that circumstance, "clear and convincing proof" is required to rebut the presumption. *Id*.  Where there is no allegation of fraud or quasi-criminal wrongdoing, but merely a breach of implied contractual duties, clear and convincing evidence is not needed. *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 769 (Ct. Cl. 2005).

1  federal courts have long recognized.  *See*, *e.g.*, *Indiana Michigan Power Co.*, 422 F.3d at 1369;

2  *Hansen Bancorp Inc. v. United States*, 367 F.3d 1297 (Fed. Cir. 2004).

3          As with an action against a private party, "[t]he remedy for breach of contract is damages

4  sufficient to place the injured party in as good a position as it would have been had the breaching

5  party fully performed."  *Indiana Michigan Power Co.*, 422 F.3d at 1373; *see also Hansen Bancorp,*

6  *Inc.*, 367 F.2d at 1308.  For a breach of contract by the Government, all reasonably foreseeable

7  damages are available ***regardless of whether they were specifically agreed to or were actually***

8  ***foreseen by the breaching party***.  *Precision Pine & Timber, Inc. v. United States*, 72 Fed. Cl. 460,

9  476 (2006).

10          Defendants' argument that, in spite of the wealth of federal law applying contract law to

11  contract claims, this case must be "analyzed by reference to 22 C.F.R. § 51.63, not contract

12  principles" (Defs.' Mem. at 17), is wrong.  Defendants cite to cases addressing the claims of federal

13  employees and military personnel, which find that because those individuals serve by appointment,

14  there is no contract and their claims are governed by their legal status.  *See Zucker v. United States*,

15  758 F.2d 637, 640 (Fed. Cir. 1985); *Schism*, 316 F.3d at 1273-74.  These cases do not hold that every

16  time a regulation exists, contract analysis does not apply.  Such a broad proposition would effectively

17  gut the long-recognized principle that when the Government enters into contracts, it is subject to

18  traditional contract rules.  *See Franconia Assoc.*, 536 U.S. at 141.

19          Nor does the holding in *Griffin v. United States*, 215 Ct. Cl. 710 (1978), mandate a different

20  conclusion.  The statute at issue in that case establishes a maximum award, reading, "The total

21  amount of the award, or awards . . . ***may not exceed*** $25,000, regardless of the number of persons

22  who may be entitled to share therein."  10 U.S.C. 1124(f).  Because the contract arose directly out of

23  the statute and the implementing regulations, this express limitation was a limit on the Government's

24  liability.  There is no such limitation here.  The refund regulation has no language expressly limiting

25  the Government's liability, stating only that the fee will be refunded.  It does not say, as the

26  Government would have it, that in the event the Government fails to provide expedited service, its

27  liability will not exceed sixty dollars, and this Court cannot read such language into the regulation.

28

OPP'N TO MOT. FOR J. ON THE PLEADINGS
– NO. 07-cv-04040 MMC                                            - 13 -
001980-11 236639 V2

1    As the statute at issue in *Griffin* establishes, the Government knows how to limit is liability when it

2    so desires, and it did not do so here. *See also Alltel Info. Servs., Inc. v. Fed. Deposit Ins. Corp.*,

3    194 F.3d 1036 (9th Cir. 1999) (discussing and enforcing the express limitations on damages

4    contained in 12 U.S.C. § 1821(e)). Under the principles of contract law, Plaintiff is entitled to all

5    damages that she can prove were reasonably foreseeable and flowed from Defendants' breach of

6    their contract in this case.

7    **II.    PLAINTIFF ADEQUATELY STATES A CLAIM FOR DAMAGES UNDER A**
       **MONEY-MANDATING REGULATION**

8
           A claim for damages under a money-mandating regulation requires only that there be an

9    applicable statute or regulation that is fairly interpreted as mandating damages. *White Mountain*

10   *Apache*, 537 U.S. at 472. The question is whether the statute or regulation establishes rights or duties

11   on the part of the Government, the breach of which entitles the plaintiff to damages. *Navajo Nation*,

12   537 U.S. at 506; *White Mountain Apache*, 537 U.S. at 474. Just as there is no requirement that the

13   statute or regulation have an express provision for damages, there is no requirement that there be an

14   express provision for **automatic** payment of damages. The question is simply whether the regulation

15   is fairly read as imposing a substantive obligation enforceable by damages; if it is, a plaintiff is

16   entitled to bring suit to collect them. *See id.* This is particularly true where, as here, there is no

17   statutory duty to exhaust any administrative remedies; in such a situation, the plaintiff has a right

18   under the Tucker Act to sue in damages.

19         In any event, the language of the regulation plainly places the burden of refunding the fee on

20   the Agency. In construing regulations and statutes, courts look first to the plain language. *United*

21   *States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001). Where "an

22   alternative reading is compelled by the regulation's plain language or by other indications of the

23   [agency's] intent at the time of the regulation's promulgation" a court need not defer to an agency's

24   interpretation of a regulation. *Dep't of Health & Human Serv. v. Chater*, 163 F.3d 1129, 1134 (9th

25   Cir. 1998); *see also McCoog v. Hegstrom*, 690 F.2d 1280, 1284 (9th Cir. 1982) ("the deference due

26   an administrative interpretation depends upon its consistency with earlier agency pronouncements,

27   the purpose and wording of other agency regulations, and the purposes of the relevant statutes"). In

28

1    this case, the regulation's plain language compels an automatic refund, contrary to Defendants'

2    urgings.  The regulation uses the mandatory phrase "will be," thus establishing an affirmative duty

3    on the part of the Government to refund the fee when it has not provided the service as promised.

4    *Cf.*, *e.g.*, *Forest Guardians v. Babbitt*, 164 F.3d 1261, 1268-69 (10th Cir. 1998) (noting that directive

5    words like "shall" are mandatory, citing cases).   The Government seeks to escape this conclusion on

6    the grounds that the regulation does not have the word "automatic" in it.  Defs.' Mem. at 19.

7    However, the Government's argument is belied by its own citation to multiple regulations that

8    expressly state that a refund will be provided only when requested by the individual.  Defs.' Mem. at

9    19 n.11.  Following the Defendants' own reasoning, the exclusion of words such as "upon request"

10   from 22 C.F.R. § 51.63(c) is significant and demonstrates that the mandatory phrase "will be"

11   requires the Government to provide the refund of its own accord without placing a burden on the

12   individual to apply.

13        The Government's reliance on a selective quotation from 22 C.F.R. § 22.6(b) is misguided.

14   That section, in its entirety, states:  "Refunds of $5.00 or less ***will not be paid to the remitter unless a***

15   ***claim is specifically filed*** at the time of payment for the excess amount. An automatic refund on

16   overpayments due to misinformation or mistakes on the part of the Department of State will be

17   made."  22 C.F.R. § 22.6(b).  Given that 22 C.F.R. § 22.6(b) uses the word "automatic" only to

18   distinguish one type of refund from another which must be requested, it cannot be read to mean that

19   the omission of the word "automatic" from 22 C.F.R. § 51.63(c) is in any way significant.

20        To the extent the Court finds the regulation to be ambiguous, it may refer to the regulation's

21   history.  *United States ex rel. Lujan*, 243 F.3d at 1187.  Here, the legislative history is plain.  In

22   publishing the interim final rule establishing the pertinent regulations, the Department of State wrote,

23   "There will be situations in which expedited passport processing cannot be completed within three

24   days. . . . .  In such circumstances, the applicant ***will be notified*** and the fee ***will be refunded***."  59

25   F.R. 48998-01.  This is language of mandate, referring to an automatic obligation to notify and return

26   money to the applicant, who could not reasonably be expected to ask to be notified of information

27

28

1    which will usually be in the exclusive possession of the Department.[11]  The language of the

2    regulation and its history shows that the onus is on the Government to automatically inform

3    individuals of the failure to provide the required service and refund the fee.

## III.    THE PRUDENTIAL EXHAUSTION DOCTRINE DOES NOT REQUIRE DISMISSAL OF PLAINTIFF'S CLAIMS

### A.    A Balancing of Factors Does Not Support Applying the Prudential Exhaustion Doctrine

6          Where there is no statute requiring exhaustion, as in this case, "sound judicial discretion

7    governs" the application of such a requirement.  *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).

8    Courts should not lightly divest themselves of jurisdiction, however, as "federal courts are vested

9    with a virtually unflagging obligation to exercise the jurisdiction given them."  *Id.*  The mainstay of

10   the judicially-developed doctrine of "prudential exhaustion" is a case-by-case "balancing analysis

11   which considers both the interests of the agency . . . and the interests of private parties in finding

12   adequate redress for their grievances."  *Montgomery v. Rumsfeld*, 572 F.2d 250, 253 (9th Cir. 1978).

13   *See also McGee v. United States*, 402 U.S. 479, 485 (1971) (instructing courts to engage in a

14   "discrete analysis . . . to see whether there is a Governmental interest compelling enough to justify

15   the forfeiting of judicial review").  Courts "may" require exhaustion under the prudential exhaustion

16   doctrine if:

17              (1) agency expertise makes agency consideration necessary to generate
18              a proper record and reach a proper decision; (2) relaxation of the
              requirement would encourage the deliberate bypass of the
19              administrative scheme; and (3) administrative review is likely to allow
              the agency to correct its own mistakes and to preclude the need for
20              judicial review.

21   *Montes,* 919 F.2d at 537.  Defendants acknowledge these factors, (Defs.' Mem. at 23) but fail to

22   actually discuss their application to this case (Defs.' Mem. at 23-25).  In fact, consideration of those

23   factors does not support, much less "compel," this Court's exercise of its discretion to decline

24   jurisdiction under the prudential exhaustion doctrine.[12]

25

---

26   [11]      Defendants' factual assertions concerning the Department's alleged long-standing practice should not be
     considered as it depends on documents outside the pleadings.  However, should the Court consider such material, the
27   statements are also incorrect.  *See* Section III (B), *infra.*

28   [12]      Defendants have failed to articulate the impact of the prudential exhaustion doctrine on the four causes of action
     in the Complaint.  Even if this Court were to apply the prudential exhaustion doctrine to the broadest extent allowed

**1.    Agency Expertise Is Not Necessary to Resolve Legal Issues or Generate a Proper Record for Subsequent Judicial Review**

Because this Court is being asked to determine legal issues only, no agency expertise is necessary here.  *Montes*, 919 F.2d at 537.  Courts apply this factor to ensure that agencies, not Courts, maintain primary responsibility for administering programs, particularly where the agency's "special expertise" is relevant.  *See McCarthy*, 503 U.S. at 145.

This case involves legal matters, such as (a) whether the Government breached its contracts or regulatory duties for expedited processing; and (b) if so, what damages (including refunds) are to be awarded for such breaches, which are ideally suited to resolution by this Court.  *See, e.g., Montes*, 919 F.2d at 537 (legal issues not within the particular expertise of the Attorney General); *Morris v. Commodity Futures Trading Comm'n*, 980 F.2d 1289, 1293 (9th Cir. 1992) (deference to agency expertise not warranted where courts have special competence, such as in the common law).  They are not complex or technical issues requiring the development of a factual record for judicial review.  *Cf. McCarthy*, 503 U.S. at 145; *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

**2.    Permitting the Case to Proceed in this Court Will Not Encourage Deliberate Bypass of Administrative Procedures**

Courts are also instructed to consider whether hearing the plaintiff's case will encourage future litigants to bypass the agency's own procedures.  *See Montgomery*, 572 F.2d at 253.  The Supreme Court has warned that the fear of "frequent and deliberate flouting" should not be overblown, "since in the normal case a registrant would be foolhardy indeed to withhold a valid claim from administrative scrutiny."  *McGee*, 402 U.S. at 485.

Because Plaintiff Chattler has challenged the actions of the Department on behalf of a class, and does not simply request relief from the Court for her individual claims, this factor carries little weight.  *See El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 747 (9th Cir. 1992); *see also Bowen v. New York*, 476 U.S. 476, 473-74, 477, 484 (1986); *Johnson v. Shalala*, 2 F.3d 918, 920-22 (9th Cir. 1993); *Nehmer v. United States Veterans Admin.*, 118 F.R.D.

---

under the law, however, it would still only apply to Plaintiff's claims for refunds of the expedited processing fee. Defendants' refund scheme does not address Plaintiff's additional claims for damages, including those for consequential and special damages, and thus, at a minimum, these claims would continued.

113, 123 (N.D. Cal. 1987) (no exhaustion required where a "challenge to the agency action is collateral to, or independent of, the individual class member's" claims).

Here, Plaintiff challenges a systemic policy – Defendants' collection of fees for the expediting of passport applications, failure to process passports within required time periods, failure to apply the appropriate refund standard, and failure to refund money. ¶¶ 1-18. This challenge is collateral to any redress available to any one person, including Plaintiff Chattler. Accordingly, the doctrine of administrative exhaustion does not apply.

Moreover, there is obviously very little risk that this case will cause numerous other individuals to file their own lawsuits and bypass administrative channels. Indeed, as Defendants have acknowledged in every case management statement filed, there are no other known lawsuits filed on this issue, despite the fact that this case was announced in the Andrews Class Action Reporter. *See, e.g.*, Joint Case Management Statement at 13, filed April 4, 2008; Carey Decl., Ex. A.[13] Furthermore, if successful, this class action will obviate the need for separate judicial or administrative actions to resolve individual claims of class members.

### 3. Administrative Exhaustion is Unlikely to Cause the Department to Correct Its Own Mistakes or Preclude the Need for Subsequent Judicial Review

The exhaustion doctrine also allows agencies the opportunity to correct their own mistakes before being called into court. *See McCarthy*, 503 U.S. at 145. Where resort to the agency would likely be futile, however, it is not in the interests of efficiency to require exhaustion. *Nehmer*, 118 F.R.D. at 122. Futility exists where the agency's "established position [would] render administrative review meaningless." *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 500 (9th Cir. 1980). Even if the agency had the authority to change the challenged procedures, "exhaustion is not necessary when it is unrealistic to expect that the agency would consider substantial changes in the current administrative procedures at the behest of a single applicant." *El Rescate*, 959 F.2d at 747.

Here, Defendants' motion states unequivocally that "The Department's Existing Refund Process Is Preferable to Any Alternative System This Court Might Establish**.**" Defs.' Mem. at 24;

---

[13]     "Carey Decl." refers to the Declaration of Robert B. Carey in Support of Opposition to Defendants' Motion for Judgment on the Pleadings, filed concurrently herewith.

1     *see also* Barrett Decl., ¶¶ 48-55.  Because the Department has declared that this Court cannot

2     establish a better refund process than the one that currently exists, it is obvious that the Department

3     will not substantially change in its procedures at the behest of Plaintiff Chattler or any other

4     individual applicant.[14]

5          Even if the Department were to correct its procedures from this point forward, that would not

6     preclude the need for judicial review, as it would not provide refunds to class members who, in past

7     months and years, were not given expedited service in accordance with the law and were not

8     thereafter given refunds.  The Department has not expressed any intent to provide notice of the

9     availability of refunds to those individuals.  Moreover, the Department has taken the position that,

10    apart from a refund of the expedited processing fee, no applicant will receive compensation for any

11    damages such as costs incurred for express mail charges.  *See* Defs.' Mem. at 8-19.

12         The Department is asking this Court to decline jurisdiction in order to delay and ultimately

13    avoid remedial action, not to effectuate it.  There is no agency expertise needed to resolve the issues

14    presented, no legitimate concern that this suit will encourage the deliberate bypass of administrative

15    procedures, and – most importantly – no likelihood that the Department will, on its own, correct its

16    own procedures or provide appropriate remedies to those class members whose contractual and

17    regulatory rights have been violated.

18    **B. This Court Should Not Require Administrative Exhaustion Because the Department's
      Policy is Inconsistent with Established Regulations**

19

20         Where an agency "applies a systemwide policy that is inconsistent in critically important

21    ways with established regulations, nothing is gained from permitting the compilation of a detailed

22    factual record, or from agency expertise." *Johnson*, 2 F.3d at 922.  Here, Plaintiff is challenging the

23    Department's systemwide policies and practices which are, and have been in the past, inconsistent

24    with its own regulations. *See, e.g.,* ¶¶ 71-76.  This question does not depend on the particular facts of

25    _____

      [14]       The Defendants also rely on affirmative averments in its Answer concerning its inability to process refunds
26    automatically with the current information systems.  As noted in Plaintiff's Motion to Exclude Improper Factual
      Allegations, Plaintiff has been deprived of any opportunity to conduct discovery into the Defendants' information
27    systems and ability to process refunds.  In general, on a motion for judgment on the pleadings, such affirmative
      averments must be deemed false.  *Hal Roach Studios, Inc.*, 896 F.2d at 1550.  To the extent the Court determines to
28    consider such factual issues in relation to prudential exhaustion, Plaintiff must be given the opportunity to discover
      factual information concerning the Department's systems and procedures and present such evidence to the court.

1    any one case, so there is no benefit from "permitting the compilation of a detailed factual record,"

2    and administrative exhaustion is therefore inappropriate and unnecessary *See Bowen*, 476 U.S. at

3    485.

4         Defendants' own documents demonstrate that the Department's original intent and own

5    internal instructions require that an expedite fee will be refunded where the expedited service is not

6    provided.[15]  In 1994, Congress gave the Department of State authorization to retain all receipts

7    received from a new charge for expedited passport processing, in response to concerns that the

8    increased charges incurred by the Department in processing passports on an expedited basis should

9    be borne by those receiving that service.  *See* S. Rep. No. 103-309, at 124 (1994).

10        The initial guidelines for expedited passport processing placed a number of limitations on

11   who could receive the service, requiring that applicants document imminent departure and a need to

12   travel on an urgent basis in addition to paying the extra fee.  *See* Carey Decl., Ex. B, at DOS 000044.

13   As the Passport Services Instruction noted, the "criteria for expedited service have intentionally been

14   crafted to limit this service to applicants with a genuine need."  *Id*., at DOS 000048.

15        The Instruction strictly construed the meaning of Expedited Service, noting that "[p]ayment

16   of the Expedite Fee guarantees that passports will be processed within three business days or less (if

17   promised)."  *Id*., at DOS 000045.  When that three-day guarantee was not fulfilled, Instruction 2075

18   ***required*** agency personnel to process a refund, stating:  "If the EF has been collected and we are

19   unable to process a passport within the required three day period FOR ANY REASON, a refund

20   should be issued."  *Id*., at DOS 000050.  For cases where the Agency believed the three-day

21   ───────────────
       [15]     As noted in Plaintiff's Motion to Exclude Improper Factual Allegations from Motion for Judgment on the
22   Pleadings; Alternative Motion to Convert to Summary Judgment and Allow Discovery; Objections to Walter Declaration,
     filed on April 18, 2008, Defendants' motion should be denied based on the law and the pleadings, without reference to the
23   materials and information beyond the pleadings that were included with Defendants' motion.  Defendants have failed to
     apply the factors governing prudential exhaustion to this case at all, much less show that they mandate dismissal of
24   Plaintiff's claims, and resolution of disputed factual issues at this is therefore unnecessary.  In addition, although the
     Ninth Circuit has historically held that Rule 12(b) is the proper mechanism for resolving questions of fact relating to the
25   exhaustion of administrative remedies (*Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003)), the rationale underlying that
     decision has been undermined by the Supreme Court.  In *Jones v. Bock*, 549 U.S. 199, (2007), the Supreme Court clarified
26   that failure to exhaust administrative remedies is an affirmative defense which Defendants have the burden of pleading
     and proving.  Federal courts must consider affirmative defenses on summary judgment.  Resolving the current disputed
27   issues of fact on the pleadings would be improper.  *See, e.g., Hines v. Nuckle*, No. CIV S-03-2385 GEB EFB P, 2008 U.S.
     Dist. Lexis 17457 (E.D. Cal. Mar. 6, 2008); *Bryant v. Sacramento County Jail*, No. CIV S-06-0688 GEB EFB P, 2008
28   U.S. Dist. Lexis 10273 (E.D. Cal. Feb. 12, 2008).  As a number of outstanding discovery disputes between the parties still
     remain, resolution of this affirmative defense is premature at this time.

obligation was met, the Instruction also allowed an applicant to request a refund if she or he believed one was owed, stating: "If the applicant believes a refund is due, a letter should be written stating the particulars, or, if the applicant is in the agency, the form at Attachment E may be used." *Id.*, at DOS 000050. In addition, in publishing the interim final rule, the Department of State indicated that when expedited service is not provided, "the applicant will be notified and the fee will be refunded." 59 F.R. 48998-01.

In 1996, Passport Services Instruction 2060 was issued, and stated with regard to refunds:

> **Criteria for Refunding the Expedite Fee.** If the expedite fee has been collected and we are unable to process a passport within the required three-day period FOR ANY REASON, a refund should be issued. *Applicants should not be asked to provide a written request for a refund when an agency has not met the three day commitment.*

Carey Decl., Ex. C, at DOS 000095.

The guidance in Instruction 2060 on refunds was never amended or altered. *See* Carey Decl., Ex. D at 7-11 (Defendants' Response to Special Interrogatory No. 9 stating that the refund process was governed by Passport Services Instruction 2060, which was not reissued after 1996).[16] However, over time the Department strayed from the clear guidance of the regulation and the governing instruction in implementing the refund policy. An e-mail in 2001 stated that "Customers requesting a refund of the Expedite Fee must do so in writing." Carey Decl., Ex. E, at DOS 000113. Another e-mail stated that "Expedite fees are refundable **only** if we do not respond to an applicant with either a letter or phone call (documented) within the three workday window after receipt by an Agency. This includes denials to HHS applicants. As long as we respond within the proper time frame, this fee would then be non-refundable," and does not state that the application must be *processed* within three days. Carey Decl., Ex. F, at DOS 000132.

However, as recently as 2005, personnel were instructed that refunds should be issued automatically without a request from a customer when expedited service was not provided. Carey Decl., Ex. G, at DOS 000139. An e-mail sent in response to an inquiry from an adjudication supervisor stated: "If an applicant pays the EF fee and the book is not issued in 3-5 days, they can be

---

[16]    Although the Department references two memoranda amending aspects of the instruction, neither memorandum addresses the criterion for issuing refunds of the expedite fee.

1    refunded without the applicant requesting it.  Since in taking the $60 we expected to issue in that

2    time frame.  If the application was denied then yes we still refund the EF but not the application fee

3    since it is now a processing fee." [17]  Carey Decl., Ex. G, at DOS 000139.  Another e-mail requested

4    that applicants who need to refile not stop payment on checks for expedite fees, as the fees will be

5    refunded.  Carey Decl., Ex. H, at DOS 000435.  In addition, guidelines issued in 2003 instructed

6    personnel to automatically refund expedite fees when due on abandoned applications.  Carey Decl.,

7    Ex. I, at DOS 000433.

8    　　　　The procedures for handling the applications themselves also changed.  When the expedited

9    processing service was initially introduced, applications for expedited processing on form DSP-11

10   for new passports were not sent to a central sorting facility – referred to as the lockbox – but were

11   sent directly to the regional passport agency.  Carey Decl., Ex. J, at DOS 000381, Ex. K, at

12   DOS 000415.  In 1996, the Department stopped requiring documentation of the need for expedited

13   departure, allowing applicants to self-certify their need.  Carey Decl., Ex. L, at DOS 000035.  In

14   1997, the Department experienced a backlog in processing passport applications.  Carey Decl., Ex.

15   K, at DOS 000415-16.  Following this backlog, the Department altered its procedures and began

16   routing expedited applications through the lockbox facilities, even though it increased the time it

17   took to get the passport to the applicant.  *Id*., at DOS 000415.  A newsletter to acceptance agents

18   reiterated that agents should not ask for any proof of urgent departure for expedited service:

19   "*SIMPLY COLLECT THE EXPEDITE FEE!!*"  *Id*., at DOS 000416.  It also noted an expected

20   increase in requests for expedited service.  In 2005, The Department again experienced major delays

21   and backlogs due to problems with processing expedited requests at the lockbox facility (referred to

22   as the Mellon Bank at that time).  Carey Decl., Ex. H, at DOS 000435.

23   　　　　The latest round of delays occurred in 2007, due to the Agency's failure to correctly

24   anticipate the number of applications it would receive in the early months of 2007 as a result of the

25   Western Hemisphere Travel Initiative.  Carey Decl., Ex. M, at DOS 000248.  Due to these delays, in

26   the first half of 2007, over a million people paying for expedited processing did not receive it.  Carey

27

28

---

[17]    This is also an incorrect statement of the timeframe for expedited passport processing, as the regulation requires
three-day processing, and not "3 to 5 days."

OPP'N TO MOT. FOR J. ON THE PLEADINGS
– NO. 07-cv-04040 MMC                              - 22 -
001980-11 236639 V2

1   Decl., Ex. N, at DOS 000494.  In spite of this failure, the Department has failed to even consider

2   providing refunds automatically to those people who did not receive the service mandated by

3   regulation.  Carey Decl., Ex. O, at DOS 000477 (noting the options considered by the Department in

4   response to the backlog, none of which involve refunding the fees to those who did not receive three-

5   day processing).  It has not notified any of the individuals entitled to refunds of its failure, as it

6   affirmed it would when the regulation was published.  *See* 59 F.R. 48998-01.  In fact, as the

7   Department admits in its Answer, its refund instructions do not even inform applicants of the legal

8   basis or criteria for determining when a refund is due.  Defendants' Answer at ¶ 43 (filed April 14,

9   2008).  Over and over, in its public statements and answers to Congress, the Department has

10  obscured the meaning of expedited service, claiming that every individual who paid for it received it

11  because they were "given a higher priority in the queue."  Carey Decl., Ex. P, at DOS 000340, Ex. Q,

12  at DOS 000342, Ex. R, at DOS 000344, Ex. S, at DOS 000346, Ex. T, at DOS 000458; *see also*

13  Carey Decl., Ex. U, at DOS 000345, Ex. O, at DOS 000476, Ex. N, at DOS 000494.  These

14  statements ignore that as a matter of law over a million applicants are entitled to refunds because the

15  Department failed to provide the service mandated by its own regulations, and can only be intended

16  to deter those individuals from applying for refunds they are owed.[18]

17        In July 2007, the Department decided to continue to only process and issue refunds of the

18  expedite fee when requested by the applicant.  Carey Decl., Ex. V, at DOS 000355.  As justification

19  for its recommendation, the Action Memo stated that providing refunds on a significant portion of

20  expedite fees "could significantly reduce funding for Department priorities," because the expedite

21  fee, unlike the bulk of the other passport fees, is retained by the Department instead of going to the

22  general treasury.  *Id*., at DOS 000356.  Citing the small number of requests by applicants received,

23  and the proportionally smaller cost of providing those refunds, the memo recommended only

24  providing refunds on a case-by-case basis on request.  *Id*., at DOS 000355.

25

26  [18]        Defendants falsely state that Plaintiff concedes that the Department provides refunds when due upon request.
    (Defs.' Mem. at 21-22.)  Plaintiff has consistently contended that the Department's process is procedurally inadequate
27  because it improperly places the burden on the applicant and fails to explain when a refund will be given.  On the
    information received thus far, it is impossible to determine whether the Department is in fact providing refunds on
28  request when it should, further highlighting the deficiencies in the Department's purported remedy.

OPP'N TO MOT. FOR J. ON THE PLEADINGS
– NO. 07-cv-04040 MMC                    - 23 -

1    Through a series of informal e-mails and memoranda, the Department has adjusted its policy

2    to prevent large numbers of applicants from receiving refunds of the expedite fee as required by law.

3    The result of these policy changes is that Defendants have retained millions of dollars of unearned

4    revenue for its own purposes, in spite of the clear obligations established in governing regulations,

5    the Federal Register, its own instructions, and its contracts with American citizens.  Because these

6    flawed procedures are inconsistent with applicable regulations and are being applied to all class

7    members in an identical way, there is no benefit to be gained from requiring administrative

8    exhaustion.  *See Bowen*, 476 U.S. at 485; *Johnson*, 2 F.3d at 921-22.

9    **C. This Court Should Not Require Administrative Exhaustion Because The Existing Administrative Remedy Is Inadequate**

10   In addition, this Court should reject the purported administrative remedy because it is

11   inadequate.  *See Laing*, 370 F.3d at 1000.  *See also Kelly v. City & County of San Francisco*, No.

12   C 05-1287 SI, 2005 U.S. Dist. Lexis 31110 (N.D. Cal. Nov. 19, 2005) (finding that where there was

13   no adequate administrative remedy, the requirement to exhaust administrative remedies did not

14   apply).  Where the "challenge is to the adequacy of the agency procedure itself, such that the

15   question of the adequacy of the administrative remedy . . . is for all practical purposes identical with

16   the merits of the plaintiff's lawsuit," exhaustion should not be required.  *McCarthy*, 503 U.S. at 148.

17   Where, as here, the plaintiff raises a legal question that is more suited to resolution by a federal court

18   than by the agency, access to the district court provides greater redress and broader opportunity to

19   develop the claims and should not be delayed.  *See, e.g., Bowen v. Massachusetts*, 487 U.S. 879, 904

20   (1998); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496-97 (1991); *Bowen v. Michigan*

21   *Acad. of Family Physicians*, 476 U.S. 667, 670 (1986).

22   Plaintiff has alleged that for years the Government has refused to automatically refund

23   expedite fees when the three-day standard is not met (a fact bolstered by the Government's website,

24   which implies that only those whose passport took three or more ***weeks*** are entitled to a refund) and

25   that it fails to notify applicants it concedes are owed refunds of the right to a refund.  In addition, the

26   Government has consistently failed to accurately inform the public of the facts concerning expedited

27   passport processing and applicants' entitlement to refunds.  Carey Decl., Ex. P, at DOS 000340, Ex.

28

Q, at DOS 000342, Ex. R, at DOS 000344, Ex. S, at DOS 000346, Ex. T, at DOS 000458; *see also* Carey Decl., Ex. U, at DOS 000345, Ex. O, at DOS 000476, Ex. N, at DOS 000494.  It failed to even consider the possibility of automatically refunding expedite fees to those who did not receive three-day processing, instead considering a variety of options that are flatly contrary to the governing regulation, including refusing to provide refunds at all.  Carey Decl., Ex. O, at DOS 000477.  Given the Department's continued refusal to accurately inform the public of its three-day obligation and its intentionally confusing statements about who is owed a refund, relying on the Government's proposed remedy will ensure that a large proportion of the people who did not receive the service for which they paid and are also deprived their rightful remedy – to the benefit of the Department's budget.

The Government's proposed remedy is that citizens of the United States entitled to their money back will not get it unless they ascertain that, contrary to the Government's representations, the processing was insufficient – which requires knowledge outside of their control and wholly within the Government's – and then assume the burden of providing the Government with information unrelated to the refund obligation.  A class action lawsuit, on the other hand, would ensure that all citizens who are entitled to a refund as a matter of law receive one.  The Government's remedy is really no remedy for virtually every individual who is concededly owed a refund – it is a transparent attempt to avoid refunding monies not earned by ignoring the obligation.

## CONCLUSION

For all the reasons stated above, Plaintiff respectfully requests that Defendants' motion for judgment on the pleadings be denied in its entirety.

DATED:  May 2, 2008        HAGENS BERMAN SOBOL SHAPIRO LLP

            /s/ Robert B. Carey
            ROBERT B. CAREY

HAGENS BERMAN SOBOL SHAPIRO LLP
2425 East Camelback Road, Suite 650
Phoenix, AZ  85016
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob.carey@att.net

1

2        Reed R. Kathrein (139304)
         Shana E. Scarlett (217895)
3        HAGENS BERMAN SOBOL SHAPIRO LLP
         715 Hearst Avenue, Suite 202
         Berkeley, CA  94710
4        Telephone: (510) 725-3000
         Facsimile: (510) 725-3001
5        reed@hbsslaw.com
         shanas@hbsslaw.com
6
         Steve Berman (*Pro Hac Vice*)
7        HAGENS BERMAN SOBOL SHAPIRO LLP
         1301 Fifth Avenue, Suite 2900
8        Seattle, WA  98101
         Telephone: (206) 623-7292
9        Facsimile: (206) 623-0594
         steve@hbsslaw.com
10
         Megan E. Waples (*Pro Hac Vice*)
11       THE CAREY LAW FIRM
         2301 East Pikes Peak Avenue
12       Colorado Springs, CO  80909
         Telephone:  (719) 635-0377
13       Facsimile:  (719) 635-2920
         mwaples@careylaw.com
14
         Attorneys for Plaintiff
15
             I, Shana E. Scarlett, am the ECF User whose ID and password are being used to file this
16  Opposition to Motion for Judgment on the Pleadings.  In compliance with General Order 45, X.B., I
    hereby attest that Robert B. Carey has concurred in this filing.
17

18

19

20

21

22

23

24

25

26

27

28

OPP'N TO MOT. FOR J. ON THE PLEADINGS
– NO. 07-cv-04040 MMC                    - 26 -
001980-11  236639 V2

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<pre>
                    /s/ Shana E. Scarlett
                 SHANA E. SCARLETT
</pre>

# Mailing Information for a Case 3:07-cv-04040-MMC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Steve W. Berman**
  steve@hbsslaw.com,robert@hbsslaw.com,heatherw@hbsslaw.com,carrie@hbsslaw.com

- **Robert B. Carey**
  rob.carey@att.net

- **Jacqueline E. Coleman Snead**
  Jacqueline.Snead@usdoj.gov

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Shana E. Scarlett**
  shanas@hbsslaw.com

- **Megan Waples**
  mwaples@careylaw.com,agostnell@careylaw.com

## Manual Notice List

The following is the list of attorneys who are **not**
on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)