GREGORY G. KATSAS
Acting Assistant Attorney General
Civil Division

JOSEPH P. RUSSONIELLO
United States Attorney
Northern District of California

VINCENT M. GARVEY
Deputy Branch Director

JACQUELINE COLEMAN SNEAD
Trial Attorney
Federal Programs Branch, Civil Division
U.S. Department of Justice
20 Massachusetts Avenue, N.W. Rm 7214
Washington, DC 20530
Tel: (202) 514-3418

Attorneys for the Defendants.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JULIA CHATTLER,** | Case No. 07-4040-MMC |
| **PLAINTIFF** | |
| **v.** | Reply In Support of Defendants' Motion for Judgment on the Pleadings |
| **UNITED STATES OF AMERICA, DEPARTMENT OF STATE,** | Hon. Maxine M. Chesney Hearing Date: May 23, 2008, 9:00am |
| **DEFENDANTS.** | |

*Chattler v. United States of America,* Case No. 07-4040-MMC
Defendants' Reply in Support of Motion for Judgment on the Pleadings

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES. .................................................................................... -ii-

INTRODUCTION.................................................................................................... 1

ARGUMENT. ........................................................................................................ 2

I.    THE COURT SHOULD DISMISS PLAINTIFF'S REGULATORY
      CLAIM FOR LACK OF JURISDICTION OR, ALTERNATIVELY,
      FAILURE TO STATE A CLAIM. ........................................................... 2

      A.    The Court Lacks Jurisdiction Over Plaintiff's Claim Based
            on 22 C.F.R. § 51.63 to the Extent She Seeks Special and
            Consequential Damages................................................................ 3

      B.    Plaintiff Has Failed to State a Claim of a Violation of 22 C.F.R.
            § 51.63(c). ................................................................................. 5

      C.    If the Court Determines That Plaintiff's Refund Claim
            Withstands Dismissal Under Rule 12(b)(6), the Court
            Nevertheless Should Dismiss That Claim for Failure to
            Exhaust Administrative Remedies. ............................................... 7

            1.    The Department's Policy of Requiring a Request for
                  a Refund is Consistent with 22 C.F.R. § 51.63............................ 8

            2.    Plaintiff's Claims of the Futility of Administrative
                  Exhaustion Are Unfounded.................................................... 9

            3.    Plaintiff's Claims that the Department's Refund Process
                  Is Inadequate Are Unsubstantiated......................................... 10

II.   THE COURT SHOULD DISMISS PLAINTIFF'S CONTRACT
      CLAIMS FOR LACK OF JURISDICTION OR, ALTERNATIVELY,
      FAILURE TO STATE A CLAIM. ........................................................... 10

      A.    The Department's Explanations of Its Expedited Processing
            Service on Its Passport Application and Website Are Not Open
            Contract Offers to the Public. ................................................... 11

            1.    The Department's statements in the passport application
                  and on its website about the timetable for expedited
                  passport processing are mere statements of intention
                  not contract offers. ........................................................ 12

            2.    The Department did not invite acceptance of any contract
                  offer through submission of expedited passport applications....... 13

      B.    Plaintiff Cannot Evade the Limitation on Her Recovery Imposed
            by Regulation by Claiming a Breach of Contract. ...................... 14

CONCLUSION......................................................................................................... 15

1

# TABLE OF AUTHORITIES

2 **CASES**                                                                          **PAGE(s)**

3  *Alliance of Descendants of Texas Land Grants v. United States,*

4      37 F.3d 1478 (Fed. Cir. 1994). ........................................................................ 11

5  *Ancman v. United States,*

6      77 Fed. Cl. 368 (2007). ..................................................................................... 5

7  *Army & Air Force Exch. Serv. v. Sheehan,*

8      456 U.S. 728, 102 S. Ct. 2118, 72 L. Ed. 2d 520 (1982). .................................... 2, 3, 5, 15

9  *Baker v. United States,*

10     50 Fed. Cl. 483 (2001). ..................................................................... 12, 13, 15

11 *Beverage Distribs., Inc. v. Olympia Brewing Co.,*

12     440 F.2d 21 (9th Cir. 1971). ......................................................................... 13

13 *Carr v. Pacific Maritime Ass'n,*

14     904 F.2d 1313 (9th Cir. 1990). ..................................................................... 10

15 *City of Erie v. Pap's A.M.,*

16     529 U.S. 277, 120 S. Ct. 1382, 146 L. Ed. 2d 265 (2000). ................................ 6

17 *Clawson v. United States,*

18     24 Cl. Ct. 366 (1991). ........................................................................... 12, 15

19 *Cutler-Hammer, Inc. v. United States,*

20     441 F.2d 1179 (Ct. Cl. 1971). ................................................................... 12, 13

21 *Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust,*

22     50 F.3d 1478 (9th Cir. 1995). ..................................................................... 10

23 *El Dorado Springs v. United States,*

24     28 Fed. Cl. 132 (1993). ...................................................................... 3, 4, 12

25 *Foothill Presbyterian Hosp. v. Shalala,*

26     152 F.3d 1132 (9th Cir. 1998). .................................................................... 7

27

28                                          ii

*Girling Health Sys., Inc. v. United States*,

    22 Cl. Ct. 66 (1990). ........................................................................ 11, 12, 13

*Hanlin v. United States,*

    50 Fed. Cl. 697 (2001). ........................................................................ 12, 13

*Helash v. Ballard,*

    638 F.2d 74 (9th Cir. 1980). ........................................................................ 11

*Hercules, Inc. v. United States,*

    516 U.S. 417, 116 S. Ct. 981, 134 L. Ed. 2d 47 (1996). ................................. 11

*Hoeft v. Tucson Unified Sch. Dist.,*

    967 F.2d 1298 (9th Cir. 1992). ........................................................................ 10

*Hudson v. Reno,*

    130 F.3d 1193 (6th Cir. 1997). ........................................................................ 4

*Jogi v. Voges,*

    480 F.3d 822 (7th Cir. 2007). ........................................................................ 6

*Johnson v. Shalala,*

    2 F.3d 918 (9th Cir. 1993). ........................................................................ 8

*Last Chance Mining Co. v. United States*,

    12 Cl. Ct. 551 (1987). ........................................................................ 12

*Lomas & Nettleton Co. v. United States*,

    1 Cl. Ct. 641 (1982). ........................................................................ 11

*National By-Prods., Inc. v. United States,*

    405 F.2d 1256 (Ct. Cl. 1969). ........................................................................ 13

*National Rural Utils. Co-op. Fin. Corp. v. United States*,

    14 Cl. Ct. 130 (1988). ........................................................................ 14

*Primary Metal & Mineral Corp. v. United States,*

    556 F.2d 507 (Cl. Ct. 1977). ........................................................................ 13

iii

*Sanford v. United States,*

     32 Fed. Cl. 365 (1994). ................................................................. 5

*Sun v. Ashcroft,*

     370 F.3d 932 (9th Cir. 2004). ...................................................... 10

*Tenet HealthSystems HelthCorp. v. Thompson,*

     254 F.3d 238 (D.C. Cir. 2001). ..................................................... 7

*Testan v. United States,*

     424 U.S. 392, 96 S. Ct. 948, 47 L. Ed. 2d 114 (1976)........................................ 2, 3, 4, 15

*Tree Farm Dev. Corp. v. United States,*

     585 F.2d 493 (Cl. Ct. 1978). ..................................................... 12, 13

*United States v. White Mountain Apache Tribe,*

     537 U.S. 465, 123 S. Ct. 1126, 155 L. Ed. 2d 40 (2003)............................................. 3, 4

*Wells Fargo Bank v. United States,*

     88 F.3d 1012 (Fed. Cir. 1996)........................................................ 14

*Whitman v. American Trucking Ass'ns,*

     531 U.S. 457, 121 S. Ct. 903, 149 L. Ed. 2d 1 (2001). ..................................................... 6

## STATUTES

22 C.F.R. § 22.6(b). ................................................................. 5, 6

22 C.F.R. § 51.63. ................................................................. passim

22 C.F.R. § 51.66. ................................................................. 3, 7, 8

59 Fed. Reg. 48998 (Sept. 26, 1994). ...................................................... 6, 7

1

**INTRODUCTION**

2        Plaintiff urges upon this Court an unprecedented expansion of the doctrine of waiver of

3   sovereign immunity.  It is well established that as a sovereign, the United States cannot be sued for

4   money damages except as it so consents, and that such consent must be unequivocal and

5   unambiguous.  Plaintiff, however, contends that the United States intends to be *contractually* bound

6   – and therefore liable for monetary damages – to every individual who submits an application for

7   government services or fails to receive such services within the estimated time frames published on

8   the government's website.  Specifically, Plaintiff claims that instructions on a passport application

9   and estimated timetables for passport issuance on the Department of State's website constituted open

10  contract offers to the American public that, upon her submission of a passport application,

11  established a binding contract to process her passport application in a certain amount of time.  The

12  far-reaching implications of that claim on a government that provides countless public services upon

13  application belies its plausibility.  Further undermining that suggestion is a federal regulation

14  providing only for recovery of a refund of the expedite fee if the Department fails to provide

15  expedited processing.  Plaintiff's expansive reading of that regulation and the information on the

16  Department's website and passport application as entitling her to money damages is not supported

17  either in fact or in law.  However, in an effort to persuade the Court otherwise, Plaintiff's Opposition

18  cobbles together principles from inapposite cases involving express written contracts and trust

19  obligations to Indians and thus falls woefully short of establishing the requisite waiver of sovereign

20  immunity for the money damages she seeks.  Alternatively and independently, Plaintiff's contract

21  and regulatory claims fail for failure to state a claim.

22        If Plaintiff is entitled to any recovery at all here, it is limited to a refund of the $60.00

23  expedite fee.  Although the Court may exercise jurisdiction over Plaintiff's refund claim, the Court

24  should dismiss that claim as a prudential matter and require Plaintiff first to submit that claim to the

25  Department.  Since the Department has an established process for issuing such refunds, there is no

26  need to litigate that claim.  Plaintiff's unsubstantiated claims of that process' inadequacy and futility

27  *Chattler v. United States of America,* Case No. 07-4040-MMC
    Defendants' Reply in Support of Motion for Judgment on the Pleadings

28

1   are insufficient bases for excusing her continued refusal to invoke that process.  Accordingly, the

2   Court should dismiss this action in its entirety and enter judgment in favor of Defendants.

3                                          **ARGUMENT**

4   **I.    THE COURT SHOULD DISMISS PLAINTIFF'S REGULATORY CLAIM FOR LACK
         OF JURISDICTION OR, ALTERNATIVELY, FAILURE TO STATE A CLAIM.**

5
6           Notwithstanding the clear language of the Department's expedited processing regulation,

    Plaintiff contends that by invoking 22 C.F.R. § 51.63, she "has properly invoked the Court's
7
    jurisdiction" under the Tucker Act and is "entitled to those damages she can prove flowed from the
8
    Government's failure to perform its duties as required by the regulation."  Plaintiff's Opposition to
9
    Motion for Judgment on the Pleadings ("Pl. Opp.") at 4-6. [1/]  The Supreme Court, however, has
10
    rejected the argument that the Tucker Act "waives sovereign immunity with respect to any claim
11
    invoking a constitutional provision or a federal statute or regulation, and makes available any and all
12
    generally accepted and important forms of redress, including money damages."  *Testan v. United*
13
    *States*, 424 U.S. 392, 400, 96 S. Ct. 948, 954, 47 L. Ed. 2d 114, 122 (1976).  Rather, the rule in
14
    *Testan* requires that the basis for the damages claim "*in itself* . . . [must be] fairly [] interpreted as
15
    mandating compensation by the Federal Government for the damages sustained."  *Id.* at 401-02, 96
16
    S. Ct. at 954, 47 L. Ed. 2d at 123 (emphasis added); *see also Army & Air Force Exch. Serv. v.*
17
    *Sheehan*, 456 U.S. 728, 739, 102 S. Ct. 2118, 2125, 72 L. Ed. 2d 520, 529 (1982) ("As *Testan* makes
18
    clear, jurisdiction . . . cannot be premised on the asserted violations of regulations that do not
19
    specifically authorize awards of money damages.").  The regulatory provision Plaintiff invokes here
20
    clearly cannot be interpreted as entitling her to "those damages she can prove."  Pl. Opp. at 6.
21

22

23

24  ────────────────

25       [1/]  In clear violation of the Local Civil Rules governing the length of opposition briefs, Plaintiff
    has submitted an eight-page separate motion opposing Defendant's Motion and an Opposition that but
26  for Plaintiff's manipulation of the font of her footnotes would exceed 25 pages.  The Court should strike
    the excessive pages from consideration.
27  *Chattler v. United States of America,* Case No. 07-4040-MMC
    Defendants' Reply in Support of Motion for Judgment on the Pleadings
28                                             2

1

2

**A.    The Court Lacks Jurisdiction Over Plaintiff's Claim Based on 22 C.F.R. § 51.63 to the Extent She Seeks Special and Consequential Damages.**

Plaintiff here has invoked a regulation that only entitles her to a refund of the expedite fee if the Department fails to provide expedited processing of her passport application.  *See*  22 C.F.R. § 51.63(c) ("The passport expedite fee will be refunded if the Passport Agency does not provide the requested expedited processing as defined in § 51.66.").  The plain language of that regulation permits no other interpretation.  Thus, to the extent that Plaintiff is seeking more than the return of the expedite fee based on that provision, this Court lacks jurisdiction.  *See* Defendants' Motion for Judgment on the Pleadings ("Def. Mot.") at 8-10; *see, e.g., El Dorado Springs v. United States*, 28 Fed. Cl. 132, 134-36 (1993) (concluding that the court has jurisdiction over claim for return of application fee but not lost profits and other consequential damages).  Plaintiff's claim to the contrary is based on her contrived application of *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 123 S. Ct. 1126, 155 L. Ed. 2d 40 (2003), to the facts here, (*see* Pl. Opp. at 4-5), and her complete disregard of the factually similar cases cited in Defendants' Motion, (*see* Def. Mot. at 9).

*White Mountain Apache* involved a claim for damages by an Indian tribe that alleged that the United States had breached its fiduciary duty to maintain land held in trust for the tribe.  The tribe contended that jurisdiction under the Tucker Act was conferred by the 1960 Act which provided that the "'former Fort Apache Military Reservation'" would be "'held by the United States in trust for the White Mountain Apache Tribe.'"  *White Mountain Apache*, 537 U.S. at 469, 123 S. Ct. at 1130, 155 L. Ed. 2d at 47.  The Supreme Court held that under the "fair interpretation" rule, that Act "permits a fair inference that the Government is subject to duties as a trustee and is liable in damages for breach" even without "an explicit provision for money damages."  *Id.* at 474, 472-73, 477, 123 S. Ct. at 1132-34, 155 L. Ed. 2d at 49-50, 52.  In reconciling that ruling with *Testan* and *Sheehan* where explicit authorization for damages was required, the *White Mountain Apache* Court noted the significance of the trust relationship in that case.  *See id.* at 477-78, 123 S. Ct. at 1135, 155 L. Ed. 2d at 52 (explaining that "Sheehan and Testan are not to the contrary; they were cases without any trust

*Chattler v. United States of America,* Case No. 07-4040-MMC
Defendants' Reply in Support of Motion for Judgment on the Pleadings

3

relationship in the mix of relevant fact"). The Court concluded that a "specific provision for damages" was not required under the circumstances in *White Mountain Apache* because "if a specific provision for damages is needed, a trust obligation and trust law are not." *Id.* at 477; 123 S. Ct. at 1134-35; 155 L. Ed. 2d at 52 (expressing concern that such a requirement "would read the trust relation out of Indian Tucker Act analysis"). Here, where there is no trust relationship, *White Mountain Apache* is inapposite.

Plaintiff nevertheless urges this Court to read the rationale of *White Mountain Apache* out of its context and to relieve her of the obligation to predicate this Court's Tucker Act jurisdiction on a regulation that provides a *substantive right to money damages.* [2/] That obligation, however, was established long ago in *Testan,* and the *White Mountain Apache* Court clearly did not overrule *Testan. See id.* at 477-78, 123 S. Ct. at 1135, 155 L. Ed. 2d at 52. As already discussed, Plaintiff has not met that obligation here. Rather, she has invoked a regulation that supports a single interpretation – a right to recover only a refund of the expedite fee. Plaintiff has cited no cases where a court construed a regulation providing a specific remedy – here a fee refund – as affording all forms of redress. Such an approach is contrary to the well-established principle that waivers of sovereign immunity should be narrowly construed. *See, e.g., Hudson v. Reno*, 130 F.3d 1193, 1207 n.11 (6th Cir. 1997). [3/] Thus, to the extent Plaintiff seeks special and consequential damages based on 22 C.F.R. § § 51.63, this Court is without jurisdiction, and her claim should be dismissed. *See, e.g., El Dorado Springs*, 28 Fed. Cl. at 134-36.

---

[2/]  In her Opposition, Plaintiff erroneously equates the right to expedited processing of her application with the right to money damages. Clearly, if the two could be equated, the rule in *Testan* would not require that the regulation invoked authorize money damages. *See Testan*, 424 U.S. at 400, 96 S. Ct. at 954, 47 L. Ed. 2d at 122 (rejecting claim that the Tucker Act "waives sovereign immunity with respect to any claim invoking a constitutional provision or a federal statute or regulation").

[3/]  In *Hudson*, the court refused to construe a statutory provision allowing recovery for "actual damages" broadly explaining that because "actual damages" "has no plain meaning or consistent legal interpretation, [] when it is being applied against the government it must be narrowly interpreted – here that requires finding that actual damages only mean out-of-pocket losses, not emotional distress." *Hudson*, 130 F.3d at 1207 n.11.

*Chattler v. United States of America,* Case No. 07-4040-MMC
Defendants' Reply in Support of Motion for Judgment on the Pleadings

4

1    Plaintiff's Opposition does not address – let alone, refute – Defendants' alternative argument

2    that, even if the Court concludes it has jurisdiction, her regulatory claim for special and

3    consequential damages nevertheless should be dismissed for failure to state a claim because 22

4    C.F.R. § 51.63 clearly is not "the appropriate mechanism for the relief requested." *Ancman v. United*

5    *States*, 77 Fed. Cl. 368, 375 (2007) (dismissing Tucker Act claim on that basis); *see also* Def. Mot.

6    at 10-11.  Thus, dismissal of her regulatory claim to the extent she seeks more than a refund of the

7    expedite fee is alternatively warranted on that independent ground.

8    **B.    Plaintiff Has Failed to State a Claim of a Violation of 22 C.F.R. § 51.63(c).**

9    Even if the Court concludes that it has jurisdiction over any aspect of Plaintiff's regulatory

10   claim, that claim should be dismissed for failure to state a claim of a regulatory violation.  A

11   cognizable regulatory claim under the Tucker Act must be premised on a *violation* of a regulation

12   that authorizes money damages.  *See Sheehan*, 456 U.S. at 739, 102 S. Ct. at 2125, 72 L. Ed. 2d at

13   529; *see, e.g., Sanford v. United States*, 32 Fed. Cl. 365, 366 (1994) (dismissing Tucker Act claim

14   for failure to state a claim where plaintiff failed to allege facts demonstrating a regulatory violation).

15   The Department, however, has not violated 22 C.F.R. § 51.63.  Indeed, Plaintiff concedes that the

16   expedite fee "will be refunded" upon request if the Department fails to provide expedited processing.

17   *See* Class Action Complaint for Breach of Contract, Regulatory Violation, and Breach of the Implied

18   Covenant of Good Faith and Fair Dealing ("Compl.") ¶ 14.  Her claim of a violation is predicated

19   entirely on her erroneously reading into 22 C.F.R. § 51.63 the requirement of automatic refunds.

20   [4]/ Nothing in 22 C.F.R. § 51.63 requires the Department to issue automatic refunds or prohibits it

21   from requiring a written request before the "passport expedite fee will be refunded."  In stark

22   contrast to 22 C.F.R. § 22.6(b), the term "automatic" appears nowhere in the Department's

23   regulation governing refunds of the expedite fee.  *Compare* 22 C.F.R. § 51.63(c) *with* 22 C.F.R. §

24

25   [4]/  Apparently misapprehending Defendants' argument here, Plaintiff contends "[j]ust as there

26   is no requirement that the statute or regulation have an express provision for damages, there is no requirement that there be an express provision for automatic payment of damages."  Pl. Opp. at 14.

27   *Chattler v. United States of America,* Case No. 07-4040-MMC
     Defendants' Reply in Support of Motion for Judgment on the Pleadings

28                                            5

22.6(b) ("An *automatic* refund on overpayments due to misinformation or mistakes on the part of the Department of State will be made." (emphasis added)).  Well-established principles of regulatory construction require that the Court attach significance to that omission and not supply the term "automatic" when the Department excluded it.  *See* Def. Mot. at 20 (citing cases).  Thus, Plaintiff's allegations that the Department has not issued automatic refunds fail to state a claim of a violation of 22 C.F.R. § 51.63(c).

Plaintiff seeks to avoid that result by suggesting that the exclusion of the phrase "upon request" from that provision "is significant and demonstrates that the mandatory phrase 'will be' requires the government to provide the refund of its own accord without placing a burden on the individual to apply."  Pl. Opp. at 15.  That suggestion is without foundation.  Plaintiff has not identified any Department regulation that includes the phrase "upon request."  Instead she points to regulations from *other federal agencies* and invites the Court to infer from their regulations the Department's intent in 22 C.F.R. § 51.63 – an illogical suggestion.  *See* Pl. Opp. at 15.  As Defendants' Motion demonstrated, this Court need only look at the language of the Department's *own regulations* to conclude that intent to provide automatic refunds is expressed in 22 C.F.R. § 22.6(b) but not in 22 C.F.R. § 51.63.

Plaintiff next invites the Court to find such intent in the preamble to the Department's interim final rule on the fee for expedited passport processing.  *See* Pl. Opp. at 15.  "It is a mistake to allow general language of a preamble to create an ambiguity in specific [regulatory] . . . text where none exists."  *See Jogi v. Voges*, 480 F.3d 822, 834 (7th Cir. 2007); *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 483, 121 S. Ct. 903, 917, 149 L. Ed. 2d 1, 73 (2001); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 290-91, 120 S. Ct. 1382, 1392, 146 L. Ed. 2d 265, 279 (2000).  But even if the Court were to look to the preamble, it repeats the phrase "will be refunded" and says nothing whatsoever about whether the refunds will be refunded automatically.  *See* 59 Fed. Reg. 48998,

*Chattler v. United States of America,* Case No. 07-4040-MMC
Defendants' Reply in Support of Motion for Judgment on the Pleadings

6

1  48999 (Sept. 26, 1994). [5/]  The more telling then-contemporaneous evidence of the regulation's

2  meaning is the 1994 Passport Instruction issued to passport services employees.  *See* Pl. Opp. Ex. B

3  (expressly instructing employees that "[i]f the applicant believes a refund is due, a letter should be

4  written stating the particulars or, if the applicant is in the agency, the form at Attachment E may be

5  used").  Although Plaintiff might prefer an automated refund system, the existing system whereby

6  the expedite fee "will be refunded" upon request is not in violation of  22 C.F.R. § 51.63. [6/]  Thus,

7  Plaintiff has failed to state a claim of a regulatory violation.

8         **C.**     **If the Court Determines That Plaintiff's Refund Claim Withstands Dismissal**
   **Under Rule 12(b)(6), the Court Nevertheless Should Dismiss That Claim for**
9                **Failure to Exhaust Administrative Remedies.** [7/]

10       Plaintiff could have applied for *and received* a refund of the expedite fee she allegedly paid

11  in the time it has taken this Court to hear Defendants' arguments. [8/]  Instead she prefers to rest her

12

13      [5/]  Plaintiff's quotation from the preamble contains ellipses in place of text that suggests that the

14  types of circumstances in which the applicant will be notified and the fee will be refunded are limited
   to (1) when "the applicant does not submit adequate documentation;" (2) "the applicant is the subject
   of an unresolved civil or criminal law enforcement matter;" or (3) the "passport equipment breaks

15  down." 59 Fed. Reg. at 48999. Referring back to these examples, the preamble states: "The Department
   expects that these situations will be very rare. In such circumstances, the applicant with be notified and

16  the fee will be refunded." *Id.*  The complete passage from the preamble does not remove the ambiguity
   that Plaintiff alternatively suggests exists in 22 C.F.R. § 51.63.  In any event, where an "agency

17  regulation is silent or ambiguous with respect to the specific point at issue," the Court "must defer to the
   agency's interpretation as long as it is reasonable." *Tenet HealthSystems HelthCorp. v. Thompson*, 254

18  F.3d 238, 248 (D.C. Cir. 2001) (citing *Foothill Presbyterian Hosp. v. Shalala*, 152 F.3d 1132, 1134-35
   (9th Cir. 1998)).

19

20      [6/]  As the discovery in this case has demonstrated – and none of the numerous exhibits to
   Plaintiff's Opposition belies – since 1994, the Department's longstanding practice has been to issue

21  refunds upon request. During periods of time not relevant to Plaintiff's claims, the Department accepted
   requests that were not in writing, (*see, e.g.*, Pl. Opp. Ex. L), but in June 2007, the requirement of a

22  written request was reinstated. *See* Defendants' Answer ("Ans.") ¶ 14; *see also* Pl. Opp. Ex. D at 7-11.

23      [7/]  Plaintiff misapprehends Defendants' prudential exhaustion argument as advocating that the
   legal issues discussed earlier be presented to the Department. *See* Pl. Opp. at 16-19.  Defendants

24  contend that Plaintiff's *refund claim* should be dismissed and first presented to the Department. *See* Def.
   Mot. at 19-22. Plaintiff's arguments against exhaustion are mostly directed to her other claims and thus

25  are beside the point. *See* Pl. Opp. at 16-19.

26      [8/]  In the April 9, 2008 meet and confer of counsel to discuss each party's responses to discovery
                                                                                                (continued...)

27  *Chattler v. United States of America,* Case No. 07-4040-MMC
   Defendants' Reply in Support of Motion for Judgment on the Pleadings

28

1   Opposition on unsubstantiated claims of the inadequacy and futility of the Department's refund

2   process.  *See* Pl. Opp. at 16-25.  Judicial economy as well as prudence dictate that Plaintiff submit

3   her refund claim to the Department first before maintaining an action in federal court.  Requiring

4   administrative exhaustion here likely would obviate any court action because the only relief to which

5   Plaintiff might be entitled – refund of the expedite fee – is available through the Department's refund

6   process.  Moreover, since her entitlement to a refund is based entirely on whether the Department

7   provided the service set forth in its own 22 C.F.R. § 51.66, the Department clearly has the requisite

8   expertise to make that decision. [9/]  Such factors dictate that the Court dismiss Plaintiff's refund claim

9   for lack of administrative exhaustion.  *See* Def. Mot. at 22-25.  Nothing in Plaintiff's Opposition

10   belies that result.

### 1.   The Department's Policy of Requiring a Request for a Refund is Consistent with 22 C.F.R. § 51.63.

12   Plaintiff uses an out-of-context quote from *Johnson v. Shalala*, 2 F.3d 918, 920-22 (9th Cir.

13   1993), a case involving judicial waiver of a *statutory* exhaustion requirement, (*see* Pl. Opp. at 19), as

14   a spring board for her attempted reconstruction of the history of the Department's policies on

15   refunding the expedite fee.  *See* Pl. Opp. at 19-24.  For all of Plaintiff's cobbling together of excerpts

16   from documents produced during discovery in this case – and at times, her contrived interpretations

17

18

_____

19      [8/]  (...continued)

20   pertinent to administrative exhaustion, Plaintiff's counsel represented that Plaintiff regards the instant lawsuit as an effort to obtain a refund.  By letter of April 23, 2008, attached as an exhibit to Defendants'

21   Opposition to Plaintiff's Motion to Exclude (filed May 2, 2008) [Dkt.79], defense counsel requested clarification on whether by that representation, Plaintiff intended to invoke the Department's refund

22   process because if so, the Department would commence processing her request.  Plaintiff's counsel never provided the requested clarification or any other response to that letter.

23      [9/]  Plaintiff, who has not invoked the Department's refund process, erroneously contends that applicants must "ascertain that . . . the processing [they received] was insufficient" before they will

24   receive a refund.  Pl. Opp. at 25.  *But see* Ans. ¶ 16.  The applicant only needs to submit a request providing basic information such as her name, passport number (if available), approximate date her

25   application was submitted, and current contact information.  That request in turn triggers an inquiry into the processing history of a given individual application to determine whether the Department provided

26   the service set forth in 22 C.F.R. § 51.66.  *See* Ans. ¶ 16.

27   *Chattler v. United States of America,* Case No. 07-4040-MMC
     Defendants' Reply in Support of Motion for Judgment on the Pleadings

28                                        8

of the same [10/]  – none of that discovery belies Defendants' claim that since 1994, the Department's

longstanding practice has been to issue refunds upon request.  *See, e.g.,* Pl. Opp. Ex. B (1994

Instruction) (instructing employees that if an applicant believes a refund is due "a letter should be

written stating the particulars"); Pl. Opp. Ex. L (Decision Memorandum preceding 1996 Passport

Instruction) (adopting policy that "the expedite fee will be refunded upon the applicant's verbal or

written request"); Pl. Opp. Ex. D at 9 (Certified Interrogatory Response No. 9) (explaining that

following issuance of the 1996 Passport Instruction, passport agencies "accepted refund requests by

phone, in person at the agency or center, in writing, or by inquiry through the Department's call

center" and "[o]ccasionally, where agents realized that an applicant did not receive expedited

processing, they themselves initiated expedite refund requests"); Pl. Opp. Ex. V (Action Memo of

July 18, 2007) (approving "continuing to process expedite fee refunds only when the applicant

requests").  Since June 2007, when Plaintiff applied for her passport, the Department reinstated the

original 1994 requirement of a written request.  *Compare* Pl. Opp. Ex. V *with* Pl. Opp. Ex. B.  Thus,

Plaintiff's suggestion of an inconsistency between the expedite regulation and the Department's

practices is unsupported and provides no basis for excusing her from presenting her refund claim

first to the Department.

### 2. Plaintiff's Claims of the Futility of Administrative Exhaustion Are Unfounded.

Plaintiff apparently misapprehends the doctrine of futility in invoking it here as excusing her

failure to submit her refund claim to the Department.  *See* Pl. Opp. at 19 (contending that "[b]ecause

the Department has declared that this Court cannot establish a better refund process than the one that

currently exists, it is obvious that the Department will not substantially change in its procedures at

the behest of Plaintiff Chattler or any other individual applicant").  Courts generally do not require

---

[10/]  *Compare, e.g.,* Pl. Opp at 21 (erroneously stating that "as recently as 2005, personnel were instructed that refunds *should* be issued automatically" and citing Pl. Opp. Ex. G (emphasis added)) *with* Pl. Opp. Ex. G. (email to Colorado employee explaining that the expedite fee "*can* be refunded without the applicant requesting it" (emphasis added)).

*Chattler v. United States of America,* Case No. 07-4040-MMC
Defendants' Reply in Support of Motion for Judgment on the Pleadings

9

1  exhaustion "where resort to the agency would be futile." *Sun v. Ashcroft*, 370 F.3d 932, 943 (9th

2  Cir. 2004) (noting that "where the agency's position on the question at issue appears already set, and

3  it is very likely what the result of recourse to administrative remedies would be, such recourse would

4  be futile and is not required"). Here, Plaintiff contends that resort to the Department's refund

5  process is futile "as it would not provide refunds to class members who, in past months and years,

6  were not given expedited service in accordance with the law and were not thereafter given refunds."

7  [11/] Pl. Opp. at 19. However, where as here, the complained of conduct is "pegged entirely to [those

8  individuals'] failure to [] pursue[] the administrative route," futility is not demonstrated. *Diaz v.*

9  *United Agricultural Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1485 (9th Cir. 1995).

10  Indeed, the Ninth Circuit has rejected Plaintiff's argument as "circular." *See id.* "[B]are assertions

11  of futility are insufficient to bring a claim within the futility exception, which is designed to avoid

12  the need to pursue an administrative review that is demonstrably doomed to fail." *Id.* Since such

13  assertions are all Plaintiff has advanced here, her failure to exhaust her administrative remedies

14  cannot be excused as futile.

15          **3.**     **Plaintiff's Claims that the Department's Refund Process Is Inadequate**
                 **Are Unsubstantiated.**

16

17         This Court should not excuse Plaintiff's failure to exhaust her administrative remedies based

18  on her unsubstantiated claims that the Department's refund process is inadequate. *See* Pl. Opp. at

19  24-25. A claim of inadequacy of administrative remedies "in the normal situation, require[s] that

20  [Plaintiff] make some attempt to implement the procedures and find them inadequate." *Carr v.*

21  *Pacific Maritime Ass'n*, 904 F.2d 1313, 1325 (9th Cir. 1990); *see, e.g., Hoeft v. Tucson Unified Sch.*

22  *Dist.*, 967 F.2d 1298, 1310 (9th Cir. 1992) (concluding that judicial involvement was unwarranted

23  and noting that had "plaintiffs first sought administrative relief and been denied that relief, this case

24  would be before us in an entirely different posture"). Plaintiff here also has not done so and

---

25        [11/] Plaintiff also erroneously claims that the "Department has not expressed any intent to provide
notice of the availability of refunds." Pl. Opp. at 19. As Plaintiff well knows, the Department has

26  published on its website the availability of refunds and the process for requesting them. *See* Ans. ¶ 14.

27  *Chatter v. United States of America,* Case No. 07-4040-MMC
Defendants' Reply in Support of Motion for Judgment on the Pleadings

28                         10

1   therefore her claim of inadequacy is unfounded.  Accordingly, no aspect of her regulatory claim

2   withstands dismissal.

3   **II.    THE COURT SHOULD DISMISS PLAINTIFF'S CONTRACT CLAIMS FOR LACK OF JURISDICTION OR, ALTERNATIVELY, FAILURE TO STATE A CLAIM.**

4           Plaintiff's contract claims also are not properly before the Court.  Her allegations are

5   insufficient as a matter of law to establish a predicate contract for this Court's jurisdiction under the

6   Tucker Act.  *See* Compl. ¶¶ 80-81 (alleging that "[t]he Department of State's promise in its forms

7   and on its website that applicants who paid for expedited service and mailing would receive their

8   passports 'within about two weeks' constituted a valid offer"); Compl. ¶¶ 63-64 (alleging a contract

9   offer in the Department's alleged "promise in the passport application . . . to provide expedited

10  service within a set amount of time in exchange for a fee").  None of these allegations demonstrates

11  that the Department intended to be *contractually* bound.  *See Alliance of Descendants of Texas Land*

12  *Grants v. United States*, 37 F.3d 1478, 1483 (Fed. Cir. 1994) ("An implied-in-fact contract with the

13  Government requires: (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity

14  in offer and acceptance."); *see also Hercules, Inc. v. United States*, 516 U.S. 417, 424, 116 S. Ct.

15  981, 986, 134 L. Ed. 2d 47, 56 (1996); *Helash v. Ballard*, 638 F.2d 74, 75 (9th Cir. 1980).  Here,

16  because the existence of a contract is not merely a pleading requirement but indispensable to this

17  Court's subject-matter jurisdiction, Plaintiff's insufficient contract allegations require dismissal of

18  her contract claims for lack of jurisdiction.  *See, e.g., Girling Health Sys. v. United States*, 22 Cl. Ct.

19  66 (1990) (dismissing Tucker Act claim for lack of jurisdiction because plaintiff's allegations based

20  on instructions on an IRS form were insufficient as a matter of law to establish a predicate contract).

21  **A.    The Department's Explanations of Its Expedited Processing Service on Its Passport Application and Website Are Not Open Contract Offers to the Public.**

22

23          In urging the Court to allow her contract claims to proceed, Plaintiff ignores a long line of

24  authorities arising under circumstances similar to those here where courts have held that government

25  applications are not contract offers.  Courts have "repeatedly held that invitations from the

26  Government to submit applications are not, alone, offers to contract."  *Lomas & Nettleton Co. v.*

27  *Chattler v. United States of America,* Case No. 07-4040-MMC
    Defendants' Reply in Support of Motion for Judgment on the Pleadings

28                                          11

1    *United States*, 1 Cl. Ct. 641, 648 (1982); *see also Girling Health*, 22 Cl. Ct. at 72  (same); *Tree Farm*

2    *Dev. Corp. v. United States*, 585 F.2d 493, 500 (Cl. Ct. 1978) (same); *Cutler-Hammer, Inc. v. United*

3    *States*, 441 F.2d 1179, 1182-83 (Ct. Cl. 1971) (same).  "It requires a distortion of plain English to

4    infer that making an application in conformity with the terms of [a r]egulation would constitute an

5    acceptance of an offer whereby the United States intended to bind itself."  *Id.* at 1183.  Indeed, to

6    hold otherwise, "would do violence to traditional contract theory, not to mention the operation of

7    government."  *Girling Health*, 22 Cl. Ct. at 72; *Clawson v. United States*, 24 Cl. Ct. 366, 370 (1991)

8    (same); *Last Chance Mining Co. v. United States*, 12 Cl. Ct. 551, 556 (1987) (same); *see also El*

9    *Dorado Springs*, 28 Fed. Cl. at 137 (refusing to base jurisdiction under the Tucker Act over a

10   contract claim based on plaintiff's payment of an application fee because "[t]o do otherwise is to risk

11   finding a waiver of sovereign immunity where none was intended").  Plaintiff ignores these

12   overarching principles and purports to distinguish such cases based on the absence of "qualifying

13   language" from the Department's passport application and website.  *See, e.g.,* Pl. Opp. at 9

14   (contending that passport application has "straightforward promise that when the additional fee is

15   paid the application 'will be processed in three workdays'"); *id.* at 11 (contending that "[t]he

16   statements on the website are not qualified predictions, like the 'should generally' language in

17   *Girling*").  Thus, she contends that the Department "invite[d] the applicant to accept by payment of

18   the fee."  *See* Pl. Opp. at 8.  Here, again, Plaintiff's contention is not supported by the relevant case

19   law.

20          **1.      The Department's statements in the passport application and on its
              website about the timetable for expedited passport processing are mere
21            statements of intention not contract offers.**

22          Plaintiff's allegations at best demonstrate statements of intention.  *See* Pl. Opp. at 8 (alleging

23   that the statement "Expedited requests will be processed in three workdays" is "an explicit offer");

24   *id.* at 10 (alleging that the website language "that the Department will return [] passports within

25   twenty-one days" "is a valid and binding offer").  "[N]ot every statement of intention may be

26   considered promissory in character."  *Hanlin v. United States*, 50 Fed. Cl. 697, 700 (2001); *Cutler-*

27   *Chattler v. United States of America,* Case No. 07-4040-MMC
     Defendants' Reply in Support of Motion for Judgment on the Pleadings

28                                                    12

*Hammer*, 441 F.2d at 1182; *see also Beverage Distribs., Inc. v. Olympia Brewing Co.*, 440 F.2d 21, 29 (9th Cir. 1971). "Whether a promise is intended depends as much upon the nature of the parties' dealings as upon the words themselves." *Hanlin*, 50 Fed. Cl. at 700. Thus, courts have held that statements of intent containing "shall" or "will" are not *contractual* promises where there are "no background facts to draw upon that would permit . . . [an] infer[ence] that the [government] intended a promise" or where the "whole of the [government's] intention is displayed in words," *id.*, lacking "any language sounding in contract whatsoever," *Primary Metal & Mineral Corp. v. United States*, 556 F.2d 507, 508 (Cl. Ct. 1977). *See, e.g., Hanlin*, 50 Fed. Cl. at 700 (holding that "regulation's representation that a qualifying fee agreement '*will be honored* by the Department' are words of intention, but not commitment" (emphasis added)). Plaintiff even acknowledges that in "determining the existence of a contractual obligation, [] courts look to the realities of the transaction to determine the principal purpose of the parties," (Pl. Opp. at 8), yet she urges the Court to ignore those realities here in suggesting that the Department's passport application or website contained open offers to contract with every American applying for expedited passport processing. The Court, however, should reject that suggestion out of hand.

### 2. The Department did not invite acceptance of any contract offer through submission of expedited passport applications.

Plaintiff also cannot transform the Department's mere statements of intent into contract offers simply because she submitted a passport application. [12]  *See, e.g.,* Pl. Opp. at 15. Courts have rejected such a proposition where the "only effort to be expended by the[] plaintiffs was to fill in the blanks of a Government prepared form." *Cutler-Hammer*, 441 F.2d at 1183; *Girling Health*, 22 Cl. Ct. at 72; *see, e.g., Tree Farm*, 585 F.2d at 500 (noting that "invitations by the Government to file applications do not necessarily equal an operative offer, the acceptance of which will result in a

---

[12]  At best, Plaintiff's allegations demonstrate that the Department's representations on its website and in the passport application are "subject to two reasonable interpretations:" one, that the representations are contract offers; the other, that they are statements of intent. *National By-Prods., Inc. v. United States*, 405 F.2d 1256, 1264 (Ct. Cl. 1969). Where "the parties ch[o]ose opposite ones, *there is no contract* covering th[e] representation[s]." *Id.* (emphasis added).

*Chattler v. United States of America,* Case No. 07-4040-MMC
Defendants' Reply in Support of Motion for Judgment on the Pleadings

13

binding contract" and concluding that not even payment of an application fee was "helpful to plaintiff's case, in view of the total absence of a meeting of the minds"). Indeed, as even the authorities on which Plaintiff relies demonstrate, a more substantial expenditure of effort by plaintiff is required before the government will be found to have invited acceptance of a contract offer by performance. *See Wells Fargo Bank v. United States*, 88 F.3d 1012, 1017-18 (Fed. Cir. 1996) (noting that "a contractual relationship arises between the government and a private party if promissory words of the former induce *significant action* by the latter in reliance thereon" (emphasis added)), *cited in* Pl. Opp. at 8; *National Rural Utils. Co-op. Fin. Corp. v. United States*, 14 Cl. Ct. 130, 137 (1988), *cited in* Pl. Opp. at 8 (concluding that plaintiff was invited to accept government offer in letter by signing loan agreement and advancing $8 million dollars to third party). Moreover, in both cases, the government offers were qualitatively different from those alleged here. In each, the contract found was predicated on a written communication from the government to the plaintiff not, as here, statements made to the general public in a standard government form or on a website. *See Wells Fargo*, 88 F.3d at 1019 (concluding that statement in Conditional Commitment that "United States . . . hereby agrees that . . . it will execute . . . 'Loan Note Guarantee' subject to the conditions and requirements specified" was "binding promise" inviting acceptance by performance). Thus, under no theory of contract law, are Plaintiff's allegations sufficient to demonstrate the existence of a contract on which to predicate this Court's jurisdiction under the Tucker Act. [13]

**B.    Plaintiff Cannot Evade the Limitation on Her Recovery Imposed by Regulation by Claiming a Breach of Contract.**

In the unlikely event that Plaintiff's complaint allegations are deemed sufficient, her alleged contract with the Department to provide expedited passport processing would be circumscribed by

---

[13] This same analysis alternatively compels dismissal of her contract claims in their entirety for failure to state a claim.

*Chattler v. United States of America,* Case No. 07-4040-MMC
Defendants' Reply in Support of Motion for Judgment on the Pleadings

14

1   its regulations, and her recovery limited to a refund of the $60.00 expedite fee. [14/]  *See* Def. Mot. at

2   17.  Indeed, such a claim should be analyzed by reference to 22 C.F.R. § 51.63, not contract

3   principles.  *See* Def. Mot. at 17 (citing cases); *see also Clawson*, 24 Cl. Ct. at 370 ("Where rights and

4   obligations are prescribed by statute and regulation rather than determined through the mechanics of

5   a bilateral exchange, there is no contract in the usual sense of that word.").  Plaintiff dismisses such

6   authorities and contends that "[u]nder [] principles of contract law, [she] is entitled to all damages

7   that she can prove."  Pl. Opp. at 14.  That contention, however, runs afoul of well-established

8   principles in Tucker Act jurisprudence.  "The rule in *Testan* – that jurisdiction under the Tucker Act

9   cannot be premised on the asserted violation of regulations that specifically do not authorize awards

10  of money damages – cannot be avoided simply by characterizing the applicable statute or regulation

11  as creating an implied contract."  *Baker v. United States*, 50 Fed. Cl. 483, 489 (2001); *see also*

12  *Sheehan*, 456 U.S. at 740, 102 S. Ct. at 2125, 72 L. Ed. 2d at 530 (observing that "if [the]

13  employment statutes and regulations [in *Testan*] create[d] an implied-in-fact contract, surely the

14  Court would have so noted . . . instead of directing that the complaint be dismissed").  That

15  effectively is what Plaintiff attempts to do here.  *See* Pl. Opp. at 9 (conceding that the alleged

16  contract "originates in a regulation" but nevertheless contending that that fact does not "preclude a

17  contract"); *see also* Compl. ¶¶ 63-64.  Thus, to the extent Plaintiff seeks to recover more than the

18  $60.00 fee she paid, this Court is without jurisdiction over her contract claims alternatively on that

19  independent ground.

20                                        **CONCLUSION**

21       For the foregoing reasons and those explained more fully in Defendants' Motion for

22  Judgment on the Pleadings, Defendants respectfully request that the Court grant their motion,

23  dismiss this action in its entirety, and enter judgment in favor of Defendants.

24  _____

25      [14/]  Plaintiff's contention that "[c]ontracts are routinely found in regulated contexts, and may
    specifically incorporate regulatory terms, promise particular regulatory treatment, or arise from the
26  regulations themselves" is beside the point.  Pl. Opp. at 9.  That contention is based on authorities in
    which there was an express, written contract with the government, which clearly is not the case here.
27  *Chattler v. United States of America,* Case No. 07-4040-MMC
    Defendants' Reply in Support of Motion for Judgment on the Pleadings

28                                            15

1  Date: May 9, 2008                      Respectfully submitted,

2

3                                         GREGORY G. KATSAS
                                          Acting Assistant Attorney General
4                                         Civil Division

5
                                          JOSEPH P. RUSSONIELLO
6                                         United States Attorney
                                          Northern District of California
7

8                                         VINCENT M. GARVEY
                                          Deputy Branch Director
9                                         Federal Programs Branch

10
                                              /s /Jacqueline Coleman Snead
11
                                          JACQUELINE COLEMAN SNEAD
12                                        (D.C. Bar No. 459548)
                                          Trial Attorney
13                                        Federal Programs Branch, Civil Division
                                          U.S. Department of Justice
14                                        20 Massachusetts Avenue, N.W. Rm. 7214
                                          Washington, DC 20530
15                                        Tel: (202) 514-3418

16                                        **Attorneys for Defendants**

17

18

19

20

21

22

23

24

25

26

27  *Chattler v. United States of America,* Case No. 07-4040-MMC
     Defendants' Reply in Support of Motion for Judgment on the Pleadings
28                                              16

1

**CERTIFICATE OF SERVICE**

2       This is to certify that a true and correct copy of the foregoing Reply in Support of

3  Defendants' Motion for Judgment on the Pleadings was served electronically on May 9, 2008

4  through the Northern District of California Electronic Case File System (ECF) and that the document

5  is available for viewing and downloading on that system.

6                                        /s /Jacqueline Coleman Snead
                                         Jacqueline Coleman Snead
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  *Chattler v. United States of America,* Case No. 07-4040-MMC
    Defendants' Reply in Support of Motion for Judgment on the Pleadings

28