Pages 1 - 50

United States District Court

Northern District of California

Before The Honorable Maxine M. Chesney

```
Julia Chattler             )
                           )
          Plaintiff,       )
                           )
    vs.                    )          No. C07-4040 MMC
                           )
United States Department    )
of State,                  )
                           )
          Defendant.       )
_____)
```

San Francisco, California
Friday, May 23, 2008

**Reporter's Transcript Of Proceedings**

**Appearances**:

For Plaintiff:        Hagens Berman Sobol Shapiro LLP
                      715 Hearst Avenue, Suite 202
                      Berkeley, California  94710
                 **By: Robert B. Carey, Esquire**

For Defendant:        U.S. Department of Justice
                      20 Massachusetts Avenue, NW, Room 7214
                      Washington, DC  20530
                 **By: Jacqueline E. Coleman Snead, Esquire**

*Reported By:*        *Sahar McVickar, RPR, CSR No. 12963*
                      *Official Reporter, U.S. District Court*
                      *For the Northern District of California*

(Computerized Transcription By Eclipse)

```
 1   Friday, May 23, 2008                                   9:00 a.m.

 2                    P R O C E E D I N G S

 3           THE CLERK:  Calling civil case No. 07-4040,

 4   Julia Chattler versus United States Department of State.

 5           Counsel, please state your appearances for the

 6   record.

 7           MR. CAREY:  Good morning.

 8           Rob Carey on behalf of Julia Chattler and the

 9   putative class.

10           THE COURT:  Thank you.

11           MS. COLEMAN SNEAD:  Good morning, Your Honor.

12           Jacqueline Coleman Snead appearing on behalf of the

13   Government.

14           THE COURT:  Thank you.

15           This matter is before the Court on the motion for

16   judgment on the pleadings, and the plaintiff also has a motion,

17   I guess, to exclude certain improper, or at least certain

18   improper matter that were submitted.

19           I see a problem with this case, or at least with the

20   motion in the context that we are considering it at this time,

21   and I'll just start with that.  This is a motion for judgment

22   on the pleadings; that means on the plaintiff's pleadings, not

23   on the defendant's pleadings.  If the plaintiff made a motion

24   for judgment in plaintiff's favor based on the full state of

25   the pleadings, for example, the plaintiff might have said, we
```

1    asserted "X," and the defendant didn't deny it in their answer;

2    therefore, it's admitted; therefore, we win; then, that could

3    be a consideration of all the pleadings.

4            But, in the context of this particular motion, the

5    Court cannot consider the defendant's answer, in any way, as

6    evidence to be used against the plaintiff.  The plaintiff could

7    use the defendant's answer against the defendant as an

8    admission, but that is it.

9            So, we are looking at the plaintiff's pleadings in

10    that regard. And, the real question is whether or not it is so

11    clear, from the plaintiff's pleadings, that they cannot

12    essentially marshal any set of facts on which they could

13    recover on one or both of their claims that the placement

14    essentially should be dismissed at this stage.

15            I think that that is a problem, in particular with

16    respect to what I think you are referring to as the regulatory

17    violation here.  The breach of contract claim is a little

18    different because the defendant, there, is not arguing that the

19    plaintiff could never bring a -- hasn't brought a claim in this

20    instance, but rather, is arguing that you can never bring a

21    breach of contract claim based on a regulation of this nature.

22    So, that is a little bit more of a legal issue.  And, we could

23    perhaps talk about that, briefly, in that regard.

24            But, I think the more problematic of the causes of

25    action, for purposes of this particular vehicle that is being

1  used -- motion for judgment on the pleadings as the regulatory

2  violation -- that also dovetails a bit with the plaintiff's

3  concern that they haven't had full discovery with respect to

4  certain issues, which is another reason why I would not

5  consider converting this motion into a motion for summary

6  judgment.

7         If we are going to have a motion for summary

8  judgment, then it ought to be called that.  Everybody should

9  just be on board that they can put in whatever is legitimate

10  evidence and not have one side saying, as the plaintiff did

11  here, I object to the defendant's evidence because the

12  plaintiff didn't incorporate it into her complaint, but just in

13  case you are going to consider it, Judge, let me put in my own

14  evidence, to a certain extent, but I don't know they have all

15  my evidence, because they haven't given me all the discovery.

16  And this is too awkward.

17         Okay, so that's where we are.  I just wanted to say

18  that, at the beginning, so that you all know.  That doesn't

19  mean that we shouldn't discuss some of these matters, because I

20  think that it previews the coming attraction.

21         With respect to breach of contract, I'm leaning

22  toward granting the motion, however, because it doesn't seem to

23  me that we have a contract based on what the Government has

24  presented and what you also have presented on behalf of the

25  plaintiff, Mr. Carey, which I thought was distinguishable.

```
 1   But, I'm willing to hear some argument on the breach of

 2   contract.

 3             Much of the Government's concern is this thing is

 4   going to be blown wide open with consequential damages and

 5   somebody making an argument, such as you didn't expedite, I

 6   missed my plane, I missed a great job opportunity, my life is

 7   over, I'll never make a substantial salary, and it's all your

 8   fault, Government, and you'll have to pay me future damages in

 9   some format.

10             So, I think that we probably don't have a breach of

11   contract claim, but I'm willing to hear, in particular, if

12   plaintiff wants to start on that, I'll hear that argument for a

13   little while.  But, I want to get to the regulatory claim after

14   that.

15             Do you want to add anything to the case law

16   Mr. Carey, that you have already provided in further argument

17   on that point in the breach of contract claim?

18             THE COURT:  You can't just nod.  We have a court

19   reporter here.

20             MR. CAREY:  Yes, Your Honor.

21             Are you saying would I like the opportunity to do

22   so, or do I have some today --

23             THE COURT:  No.  This is your hearing on this

24   motion.  We are not expanding the record.  I just want to know

25   whether you wanted to argue anything more than you've argued.
```

```
 1              In other words, you've already presented; you said,
 2    look, here are cases that allow for contract suits, however,
 3    there were contracts in those cases.  The Government actually
 4    entered into contracts.  There were agreements.  Here, you are
 5    just relying the regular regulatory language, which, according
 6    to the Government's case, is -- would not, in and of itself,
 7    imply a contract, but, rather, some other species of
 8    obligation, but not a contractual one.
 9              So, that is how I'm reading the law.  If you've got
10    something that you think is particularly provocative or
11    persuasive along those lines, I'll hear it, briefly, but not at
12    great length, because you've read all the papers.
13              So, you are on.
14         MR. CAREY:  You want me to start?
15         THE COURT:  Well, you are losing at the moment, so
16    I'm giving you a chance --
17         MR. CAREY:  I didn't know I was losing in the
18    entirety.
19         THE COURT:  No, no, no.  I'm just saying on the
20    contract point.
21         MR. CAREY:  Sure.
22         THE COURT:  You're winning on the regulatory, you
23    are losing on the contract, and so, I figure, she is not going
24    to say anything, she might mess it up, so she has figured she
25    is winning, she has nothing to say on the contract matter.  So,
```

```
 1    it's up to you if you think you can change my mind, in some

 2    way, on that.  But, you probably won't.

 3              MR. CAREY:  Certainly, Your Honor.  I would start

 4    out -- and, if the Court has any opinion to the contrary,

 5    please feel free to correct me, that you don't agree with my

 6    premise.  But, the premise is that you can generally contract

 7    with the Government, in the same way you can contract with a

 8    private party.

 9              THE COURT:  I have no disagreement with that,

10    assuming there is a contract.

11              MR. CAREY:  Okay.

12              THE COURT:  Okay.

13              MR. CAREY:  And then, so what we have here, let's

14    just talk about factually what we have.

15              We have a person who goes in --

16              THE COURT:  You can't start with "a person who goes

17    in."  You don't have a person who went in; you have a

18    regulation.

19              MR. CAREY:  Well, certainly, but I'm just saying,

20    factually, what you have is you have a person that goes into

21    the passport office.

22              THE COURT:  Well, maybe, maybe not.  Did your client

23    go into the passport office?

24              MR. CAREY:  Well --

25              THE COURT:  Not at the time of the claim she is
```

 1  making.  She said something --

 2       **MR. CAREY:**  A passport agent, passport office agent.

 3  She can go to the Post Office.  They can go to the passport

 4  office.  They tender their application.  I'm just pointing out,

 5  at the start of the day, they get their application; their

 6  application is for a governmental process related to a

 7  passport.

 8       Now, as an adjunct to that, what you have with the

 9  regulation is the Government decided it wanted to provide,

10  essentially, a compensated, paid-for financial service where

11  they would expedite.  Has nothing to do with your actual right

12  to a passport or your processing, in the sense of do you get

13  one or not get one, it's simply related to how quickly do you

14  get it after the Government does its processing.

15       And, when they passed the regulation, they made it

16  abundantly clear, the point of it was to say, look, we'll let

17  you go out into the marketplace and do this proprietary

18  function, this profit function, to make the money, provided one

19  thing, if you don't do it, you have to give the money back to

20  the consumer.  It's not a ministerial function, in that sense;

21  it is a commercial function.  And, they are doing it for

22  profit.

23       And so, the person goes in, and they say I want my

24  passport.  They say, great, would you like to also purchase

25  expedited processing.  Now, the Government's own case in

1    *Griffin* is a case right on point which supports plaintiff's

2    argument on the contract theory.  What they said in *Griffin*

3    was, hey, look, there is more here than a regulation, there is

4    an implied -- in that case, an implied-in-fact contract --

5    based on fact that certain things were said and certain things

6    were done.

7         And *Griffin* specifically said, yeah, you got more

8    than just -- this is not just a barren regulation they didn't

9    comply with, this is an implied-in-fact contract where they

10   said certain things that caused people to believe certain

11   things and caused them to take certain acts.  In that case, it

12   was to provide suggestions to save the Government money.

13        They said you are stuck with those.  Even though

14   they are in a regulation, even though they are in a handbook,

15   even though they are out there for people to understand, you're

16   stuck with them.  It's an implied-in-fact contract, not an

17   express contract.

18        And so, *Griffin* rebuts that argument that you can't

19   do it.  So, if you start with the premise that you can do

20   anything with a person -- with the Government -- that you can

21   do with a person, in contracting, what happens is the applicant

22   goes in, fills out their application, and then decides to take

23   this proprietary function and take them up on their $60 price

24   for expediting the passport.  They say on there: would you like

25   to do this.

1          The Government's position, it's too vague, too

2    ambiguous, there is no meeting of the minds; well, the fact is,

3    at some point, there is a contract for the person to pay $60 to

4    have it sent to him, or her, quicker than it otherwise would

5    arrive.  So, other than that, Your Honor, I mean, the basic

6    premise that you can contract in the same way you would with an

7    individual, I think the elements of a contract are shown here.

8          And now, if I recall correctly, the Government,

9    actually, in the first go-round on this, stated that they

10   didn't disagree that a contract was going to take place, what

11   they disputed was that there was no meeting of the minds on

12   consequential damages.  And, under contract law, that has

13   nothing to do with anything.  You either have a contract, and

14   that could be deemed a material term, in which case it wouldn't

15   be a contract, or it's just an element that has to be filled in

16   with the reasonable expectation for usage and custom, or those

17   types of things, but the contract, in fact, exists.

18         So, the offer here is plain and simple, I will

19   provide you expedited processing if you pay me $60.  It was

20   accepted by the action of paying $60, so there is consideration

21   on both sides.  The Government is going to speed it up when

22   they don't have to, and the applicant is going to be out of

23   pocket $60, when they don't have to.  It's not illegal, the

24   person has capacity to contract, so, under basic common

25   contract law there would be a contract here.  The elements are

1    shown.

2         The case law makes it abundantly clear that you can

3    have either an implied-in-fact contract or an express contract.

4    It has to be express in the sense of written down, formalistic,

5    it means you have to have words.  And the words are on the

6    application, and the conduct of acceptance is the payment of

7    the money.

8         So, I think, based on contract law and based on

9    *Griffin*, and I would be happy, if I could, to submit other

10   cases that show that you can have an implied-in-fact contract

11   on facts like these --

12        **THE COURT:**  Well, I assume you submitted your best

13   cases.  I mean, you either submitted them in connection with

14   this motion or not, so, no, there is not going to be any

15   further cases.

16        **MR. CAREY:**  Okay.

17        **THE COURT:**  I think we should decide it on the

18   record that was presented.

19        What you are saying is the Government's own case

20   recognized a contract under similar circumstances.  They, of

21   course, were arguing it for a different point, and so are you,

22   at the time.  But, I'll ask the Government about that.

23        Let me just ask you:  Let's say you go in and you

24   apply for a driver's license, you pay the fee, you don't get

25   the license for some reason, it gets hung up somewhere in the

```
1   computer system; if there -- if you don't get the license, can
2   you sue the Government for breach of contract, or just get your
3   money back.
4            MR. CAREY:  I don't know, Your Honor.
5            THE COURT:  Or the license?  One way or the other?
6            MR. CAREY:  I would say this, I don't know the
7   specific contract, specific statutes on those, but if it's a
8   ministerial function of providing the driver's license, I would
9   say no.  A better example would be what if you paid the
10  Government $50 to get a pets-enrich-our-lives license plate and
11  they don't give it to you; do you have, in contract, to sue to
12  get your money back?  I would think you did.
13           THE COURT:  You think there is a case -- well,
14  that's your example.  We don't have a case on that, right?
15           MR. CAREY:  Right.
16           THE COURT:  Well, the Government would say, no, you
17  don't.  You can sue them for violating the regulation, some
18  administrative snafu, whatever, but you can't call it a
19  contract because they didn't agree in that respect.
20           I'll ask them about Griffin --
21           MR. CAREY:  Okay.
22           THE COURT:  -- in light of what you have cited.
23           MR. CAREY:  Okay.
24           THE COURT:  And then, I think, what I should do is
25  just look at it again, in light of what you said.
```

```
 1              And then, I just want to get the regulatory part
 2   because that seems to me to have a lot more detail.  You either
 3   have a contract, that is recognized by law, or you don't.  You
 4   can say it has the earmarks of a contract in many respects, and
 5   yet, it may still not be a contract, because of the nature of
 6   how it was developed.  There was no bilateral -- yeah, there is
 7   no bilateral agreement.  There is no negotiation.  It doesn't
 8   have the traditional contract background in the same way.
 9              And so, the question there, then, is whether it has
10   enough that is similar that courts have recognized and do
11   recognize an implied agreement.  Obviously, it's not express;
12   as you point out, you are not relying on that.
13              MR. CAREY:  Two things, Your Honor --
14              THE COURT:  Don't interrupt.
15              MR. CAREY:  I'm sorry.
16              THE COURT:  I listened to you for a great period of
17   time and didn't say anything.
18              It seems to me that's what you have at the moment.
19   You either make it or you don't on the law.  If you don't you
20   don't, and that's the end of it.
21              The other, you clearly could bring a claim, it's
22   just a question of whether or not you have the better position
23   on it.  And we'll talk about that afterwards.
24              Now, you can make your other two points, and I'm
25   going to hear from counsel for the Government, and then we are
```

```
 1   going to go to the regulation.

 2                MR. CAREY:  Thank you.

 3                First, on the bilateral aspect, the negotiated

 4   aspect, I'm not sure -- I think there is apparent consideration

 5   in the complaint that's pleaded.

 6                THE COURT:  I didn't say consideration.  I didn't

 7   say you lack consideration, in the sense she has paid her

 8   money.

 9                MR. CAREY:  Right.

10                THE COURT:  If this were a contract, no one would be

11   saying that she didn't meet the one-peppercorn standard.

12                Okay, what's your next point?

13                MR. CAREY:  Well, just on the standard form

14   contract.  Form contracts are commonly entered into as binding

15   contracts, even though they are non-negotiated and adhesive.

16                THE COURT:  Okay, all right, and sometimes enforced,

17   or not.  But they are recognized as contracts, so, okay.

18                So again, we just have a question of whether or not,

19   given the nature of how the obligation arises, it can be called

20   a contract, and even if it can be, whether the courts have said

21   that it can't, all right?  In other words, you could argue that

22   it should be a contract, but if the case law is to the

23   contrary, then, you lose that point, even if you could make a

24   very logical good argument.  So, we are going to look again at

25   this from the standpoint, just as I say, of whether or not
```

1  there is any case, that comes remotely close to this one, that

2  supports your position.

3          You have emphasized *Griffin*, which I want to go back

4  and look at, particularly since it wasn't really focused on for

5  the particular point you are making, which is the starting

6  point.  It was cited for an issue, that was coming up down the

7  line, of a cap, if you will, on damages once a contract has

8  been implied.  So, let me turn to your opposition for a moment

9  and see what she says about *Griffin* in this context.

10         **MS. COLEMAN SNEAD:**  Good morning, Your Honor.

11         I would like to point out that most of the cases

12  that plaintiffs have cited, as Your Honor recognized, do not

13  remotely have facts that are similar to these.  There are a

14  long line of case that provide that Government applications are

15  not contract offers.  And here, despite what plaintiff has

16  described, plaintiff simply filled in forms, blanks on a

17  Government form, and submitted an application fee.  We cited a

18  number of cases where the courts held that a Government

19  standard form is not a contract offer.

20         **THE COURT:**  I'm sorry, the Government's what?

21         **MS. COLEMAN SNEAD:**  A Government standard.

22         **THE COURT:**  Oh, standard form.

23         **MS. COLEMAN SNEAD:**  Or application is not a contract

24  offer.

25         **THE COURT:**  What would you say is your best case on

1    that particular point?

2            *MS. COLEMAN SNEAD:*  Sure.

3            I would suggest that the ***Hanlon versus United States***

4    case that we cited in our reply, as well as the ***Girling Health***

5    ***Systems versus United States***, It's Girling Health Care, Inc.

6    which relies in turn on the ***Cutler-Hammer*** case versus United

7    States, as well as ***Last Chance Mining Company***.  There are a

8    whole series starting with ***Cutler-Hammer***.

9            *THE COURT:*  Okay.  Now, ***Last Chance*** is a little

10   different than what we have here, right, in the sense that --

11   you just said the word "applications"; ***Last Chance*** involves a

12   mining claim, so it's a little different.

13           What about the facts in ***Girling***.

14           *MS. COLEMAN SNEAD:*  The facts in ***Girling***, the

15   plaintiff was claiming, based on an IRS form, as well as the

16   instructions for the form, that a contract had been formed to

17   provide a response within a period of 60 days as to her

18   election for corporate status for tax purposes.  And, the Court

19   there, looking only at the form and the instructions, held

20   that, as a matter of law, that there wasn't a contract form.

21           And, one of the points that the Court noted was that

22   there were no allegations by plaintiff that she had interacted

23   personally with any Government official or that any official

24   had agreed to or sent it to anything.  And, on the basis of

25   that absence of allegation, the Court held that one of the

```
 1   essential elements of a contract, namely, the meeting of the
 2   minds, was not present.
 3            THE COURT:  Um-hmm.  But, couldn't you say, in some
 4   of those cases that you are relying on, that you don't have the
 5   clear type of obligation that is being relied on by Mr. Carey,
 6   here, on behalf of his client?  There is some ambiguity as to
 7   what was required.  There isn't, like -- there isn't a
 8   situation where someone says pay your money, we'll give you a
 9   faster service, essentially.  So that -- the terms, you might
10   say, of the contract, if there were a contract, would be
11   relatively clear here, what each party is required to do.  I
12   think that's what he is arguing would make those different.
13            But, so, in looking at some of the facts, it doesn't
14   seem like either of you have got facts exactly like ours, but I
15   will say that the Government has some language in their cases
16   that seems to be more reaching, broad reaching, than just on
17   the facts.  In other words, they don't have a case, and I don't
18   think that the plaintiff does, that essentially says the reason
19   that we are not finding a contract is because there is some
20   ambiguity in the terms alone, that, if the regulation had been
21   clear, we might have found a contract.  They seem to be saying,
22   as a policy matter, that we don't want to require the
23   Government to be placed in the position of defending against
24   contract suits in these matters.
25            But, I do want to go back and look at -- what about
```

```
1   Griffin?  He is citing Griffin to you.

2              MS. COLEMAN SNEAD:  Sure.

3              Your Honor, I think Griffin -- as you recognized, we

4   cited Griffin for a different point, but the Court, in Griffin,

5   found an implied contract.  There, it was based on the fact

6   that the language of the regulation statute, in the Court's

7   view, induced significant conduct on the part of the plaintiff

8   entitling the plaintiff to believe that, in fact, a contract

9   had been formed.

10             In that case, the statute that is involved provides

11  that a serviceman can recover up to $25,000 in return for a

12  valuable suggestion to the Government that is, in turn,

13  adopted.  And there, there was no dispute that the particular

14  arm of the military had accepted the plaintiff's suggestion.

15  And, the facts of that case were that it, in turn, had saved, I

16  believe it was the Navy, approximately $45 million.

17             So, there wasn't a question that the plaintiff had

18  provided valuable consideration.  And, the Court held that

19  these -- the language of the statute invited significant

20  conduct on the part of the plaintiff, and an implied contract

21  there was formed.

22             THE COURT:  Why do you think that case is different

23  than the facts you have here?

24             MS. COLEMAN SNEAD:  I think that's right --

25             THE COURT:  No, no, I said, "Why do you think?
```

1              **MS. COLEMAN SNEAD:**  Oh, I'm sorry.  Sure, because

2     here the regulation that's being relied upon is not inviting

3     significant action on the part of the plaintiff.

4              We have cited cases, in particular the **Cutler-Hammer**

5     **versus United States** case where the Court held that merely

6     filling in the blanks on a Government application is not

7     inviting acceptance by performance.

8              And, in the **Tree Farm Development** case, the Court

9     noted that the fact that, in that case, the plaintiff had paid

10    a $10,000 application fee didn't change the fact that no

11    contract was formed, because, again, there was an absence of

12    the meeting of the minds, and there wasn't significant

13    inducement of action by the regulation.

14             So, here, the point is that although the regulation

15    provides that the plaintiff pays $60, under, you know, a long

16    line of cases, courts have held that that's not enough to

17    invite acceptance by performance on behalf of the plaintiff.

18             **THE COURT:**  All right, so that your distinction is

19    that the payment of a fee, so to speak, of a fairly modest

20    nature, is not the same as requiring someone to engage in

21    certain behaviors that are different than the simple paying of

22    a monetary sum.

23             **MS. COLEMAN SNEAD:**  I think that's right.  And

24    plaintiff, in fact, cites a case that supports our position,

25    which is the **Wells Fargo versus United States** case, where, in

1  that case, the plaintiff, based on a direct communication from

2  the Government, it was a conditional commitment letter, the

3  language in that letter, plaintiff contended, induced it to

4  make a multi-million dollar loan.

5         And, the Court, in that case, said that the

6  communication to the plaintiff had invited acceptance by

7  performance.  And, it went on to say that where promissory

8  language by the Government induces significant action by the

9  plaintiff that a contract may be formed.

10        And taking **Wells Fargo**, along with the numerous

11 cases that we have cited, where the courts have held that it

12 would do violence to traditional contract theory as well as the

13 performance of Government to hold that an application, and

14 completing an application, is a contract, we would say that

15 there is no contract formed on the facts here.

16        **THE COURT:**  All right, well, I think I understand

17 your argument in distinguishing the case here, which involves

18 the payment of a modest fee, from a case that -- in which there

19 is an inducement to substantially change one's position, shall

20 we say, by reason of certain behavior, be it artistic or

21 monetary, okay?

22        Then, if you want a last word on this, having

23 started with the first one, I'll give you a chance to do that,

24 Mr. Carey, and, then, I do want to go on to the regulatory

25 issue.

```
 1              MR. CAREY:  Thank you, Your Honor.
 2              Well, first, I would say that, just as a general
 3     rule, under the Government's own cases the Hercules case, The
 4     Alliance of Texas Land Grants, the contract elements are the
 5     same, regardless of the sufficiency or adequacy of the
 6     consideration.  It doesn't matter how much consideration you
 7     give, it only matters that you did give consideration.
 8              While everybody may call the $60 nominal, in
 9     Griffin, the person, all he did was -- the efforts were to
10     create the structure of the regulations.  All the person in
11     Griffin did, the plaintiff, was submit his idea.  If you are
12     talking nominal, that is far less nominal to me than millions
13     of people paying $60 to not get the service promised.
14              THE COURT:  Well, we can't go millions of people, we
15     are only talking about your client at the moment.  Each of
16     these contracts would be individual, essentially.
17              MR. CAREY:  Certainly.
18              THE COURT:  Okay.
19              MR. CAREY:  The Government's position, they say
20     there is no meeting of the minds, there's no induced conduct,
21     there is no significant conduct; well, again the payment is
22     one.  But the meeting-of-the-mind problem, which is what they
23     have said the problem with the contract action is, in the
24     brief, and I'm not sure if that is the same problem that the
25     Court envisions, but the problem with the meeting-of-the-minds
```

1    issue is that, at some point, that had to be resolved, that has

2    to be over, because the money is in their pocket, and they

3    concede they have the obligation to provide three-day

4    processing to Ms. Chattler, they concede they owe her the three

5    days, they concede the reg applies.

6            At some point the meeting-of-the-mind issue went

7    away; whether it was when it was paid, whether it was when she

8    agreed to pay, whether it was when they cashed the check, at

9    some point, in this case, that should not be a problem because,

10   obviously, both parties understood what they were doing.

11           **THE COURT:**  Okay.

12           **MR. CAREY:**  Thank you.

13           **THE COURT:**  All right, thank you.

14           I'm taking this particular issue under submission.

15   I do want to go back and look.

16           It may be that you are not going to be able to come

17   up with a case, and haven't, that is exactly on point.  So, the

18   Court will have to extrapolate from what you have given me and

19   place this particular regulation as close to one body of case

20   law or the other and make a decision, right or wrong on that.

21           Then, going to the regulatory claim, what we have,

22   in the Court's view, contrary to both your arguments, is an

23   ambiguous regulation, which isn't unusual.  I don't know who

24   they find to write these things, all right?  But, it creates a

25   whole cottage industry of litigation over ambiguous

1    regulations.  And, this is just one more example of it.  And,

2    we can all now spend a lot of our time dealing with this.

3         I do not think that the regulation makes, in any

4    way, clear, from its face, whether there is an obligation to

5    refund, on the natural and automatically, or whether it

6    requires a request.  Ultimately, the money will be given back,

7    according to the regulation, but it doesn't provide the process

8    by which it will be given back.

9         Each of you has looked to various authority -- not

10   authority, really, ancillary evidence, in an effort to try to

11   shed some light on what they might have been thinking.  The

12   practice of the Agency, under the regulation, to the extent

13   there is one, the position asserted by the agency, at this

14   time, in this litigation, and whether it's a new idea on their

15   point or consistent -- on their part -- or consistent with

16   something they have done in the past, the equivalent of

17   legislative history, what was said at the time the regulation

18   was promulgated, and other regulations that have or have not

19   used language of a similar nature that make things clearer,

20   arguably.

21        So, that is all the various types of evidence that

22   the Court tried to look at.  It didn't seem to me -- I'll just

23   say, at the outset, it didn't seem to me that I could say as a

24   matter of law, based on what I have and what can be judicially

25   noticed as part of a motion for judgment on the pleadings, that

1    the plaintiff has definitely lost this claim at the time that

2    they brought it, which is, essentially, a judgment on the

3    pleadings.

4         The plaintiff may be able to make a showing that is

5    greater than what has been made to date, by either one of you,

6    or the defendant may be able to make a better showing, but, at

7    this stage, I would be hard pressed to say that the plaintiff

8    has to lose automatically, that the handwriting is on the wall.

9         What you have, as I've analyzed it, is an ambiguous

10   regulation.  And, I've looked at other documents that you have

11   asked me to look at, to the extent that I'm entitled to.  But

12   even if I looked at all of the ones, even those that are

13   objected to by the plaintiff, I still think that we have some

14   ambiguity here.

15        So, I'll just indicate:  With respect to the

16   regulations that the Court can judicially notice -- somehow

17   I've lost one that I wanted to look at -- here it is.

18        We have our regulation, 51.63, and 51.66 of 22

19   C.F.R.  We also have the Government asking me to look at 22

20   C.F.R., 22.6, which is a regulation that is referenced in

21   51.63.  That's another ambiguous regulation.  So, what we end

22   up with is an ambiguous regulation that somebody is asking me

23   to look at, in order to interpret another ambiguous regulation.

24        B uses the word "automatic refund," subsection (b)

25   of 22.6, but, in a context that is very different than what

1  we're dealing with here.  And, it isn't clear exactly what they

2  are even talking about.

3          Subsection (b) in 22.6 says "Refunds of five dollars

4  or less will not be paid to the remitter unless a claim is

5  specifically filed at the time of payment for the excess

6  amount," quote/unquote.  That's all a quote.

7          It sounds like they're saying that if there's a

8  very, very small amount of a refund due, it simply isn't worth

9  it to the Government, as an economic matter, to return the

10  money unless there was a protest made at the time that the

11  overpayment was actually made because they say "unless there is

12  a claim specifically filed at the time of payment."  So it

13  sounds like a protest.

14          Then they go on to say, quote, "An automatic refund

15  on overpayments due to misinformation or mistakes on the part

16  of the Department of State will be made," closed quote.

17          Now, does that only refer, then, to five-dollar

18  refunds?  That's the section that they're talking about.  Does

19  it refer to all refunds?  You could each argue whatever you

20  want here, in terms of what it means, but, it seems like they

21  are talking about apples and oranges.

22          There are a million gaps here.  What if there is a

23  mistake made by the Department, and the mistake is of five

24  dollars or less and there was no protest made at the beginning;

25  does this mean that they will automatically refund five dollars

1    anyway?  I don't know, maybe you all have some idea of exactly

2    what they're talking about here.

3            But there seemed to be a segue missing of some sort

4    to get from sentence 1 to sentence 2.

5            If anybody has some thought about how you would fill

6    in the blank, you're welcome to tell me.  But, I don't think

7    that it helps in totally resolving the issue that we have here.

8    That's one.

9            Then, we have the position taken by the regulatory

10   agency today that, ordinarily, under case law is given

11   significant deference, since it's their regulation, unless, of

12   course, it's a newly adopted position for purposes of something

13   that is developed since the time of the promulgation of the

14   regulation, and that that is made clear, in some way, either by

15   the fact that their idea is simply inconsistent with what they

16   said in the regulation or some other extrinsic evidence.

17           Here, I've already found that it's not totally

18   inconsistent because this is, in my view, an ambiguous

19   regulation that could be interpreted reasonably in either

20   direction.  So we have that, and that is something the Court

21   can consider.

22           But then, we have this request for comment, which is

23   the 1994 statement by the Department when they were putting the

24   regulation out for public comment.  And, they have a section

25   which I think is quite beneficial to the plaintiff that says,

1   quote, "There will be situations in which the expedited

2   passport processing cannot be completed within three days.

3   Such circumstances could include cases in which the applicant

4   does not submit adequate documentation; the applicant is the

5   subject of an unresolved civil or criminal law enforcement

6   matter; or passport equipment breaks down.   The Department

7   expects that these situations will be very rare.   In such

8   circumstances, the applicant will be notified, and the fee will

9   be refunded," closed quote.

10          Now, if it had simply said, again, the fee will be

11   refunded, then we're back to the same ambiguity; however, they

12   say the applicant will be notified and the fee will be

13   refunded, suggesting that the laboring oar here will be taken

14   up by the Government, who will tell the applicant that they

15   can't do what the applicant wants done, and they'll send their

16   check back, or whatever.

17          In the same light, the circumstance that we are

18   facing is not one of the identified circumstances in the

19   comment here or information being provided.   And so those

20   circumstances are very different.   In fact, in the first two,

21   the person couldn't even get a passport at all, I assume.   In

22   other words, they are not going to give somebody a chance to go

23   on the lam, by leaving the country, while there is a criminal

24   prosecution going on.   So, they are not going to give them a

25   passport, let alone an expedited passport.

 1          If their application is incomplete, they are not

 2    going to give him any kind of passport, in all likelihood.

 3    Although, if this is just the application for the expedited

 4    aspect, that might be a little different.  It's hard to tell

 5    what they meant here.

 6          And then, lastly, this breakdown of equipment, you

 7    could argue the system broke down here, but it's not quite the

 8    same as mechanical failure.  And, they obviously were thinking,

 9    when they wrote this, that this would be a couple of things on

10    an individual basis, or an aberrant situation.  And, we don't

11    want the person sitting there thinking that they are going to

12    get out of the country in a short period of time, so we'll let

13    them know, and we'll give them the money back.

14          So that's -- but that's a very beneficial piece of

15    evidence for the plaintiff, it seems to the Court, and

16    certainly balances out, if not outweighs, some of the other

17    evidence that's been presented by the Government.

18          We also have, however, other evidence, in fact, one

19    thing put in by the plaintiff that really caught my attention.

20    Each of you is arguing for your various purposes things the

21    other side put in; here, I found one that caught my attention,

22    which is Exhibit V to Mr. Carey's declaration, the last of his

23    exhibits, where --

24          *MR. CAREY:*  "B" as in boy, Your Honor?

25          *THE COURT:*  V, as in Victor, yeah.

1    This is a more recent document that's come up in the

2   context of the recent flap over people not getting their

3   expedited passports, because of the volume of people who

4   applied after Congress changed the rules regarding getting in

5   and out of the country from Mexico, Canada, the Caribbean.

6    Here is a quote here, and this is from the -- you

7   know, the agency, essentially, and I grant you that it's not

8   while they're under fire, but they say, quote "Traditionally,

9   CA has refunded the expedited fee when a written refund request

10  was received and we determined that the expedited application

11  was not processed within that time frame," closed quote.  And

12  "that time frame" is referring to the three business days after

13  they get the application.

14    And they go on and say, quote, "Some members of

15  Congress have urged the State Department to refund everyone who

16  paid the fee due to the generalized delay in service," closed

17  quote.

18    Now, there they seem to be saying, although it's

19  after there's been some concern about how they've been

20  proceeding, that their traditional process had been to require

21  a refund, and now someone is saying that you should change that

22  and make these automatic.  And then, they don't feel that's a

23  good idea for a variety of reasons.  So that's evidence going

24  toward their practice having been not in accord with whatever

25  was stated in the information that went out to the public.

 1          The Government had argued, well, you don't get to

 2    consider that kind of information when you have a clear

 3    statute, but I've already found that we don't have a clear

 4    statute that is in conflict with that interpretation.

 5          The plaintiff had some E-mails that went back and

 6    forth between employees, I think those are problematic.  If we

 7    could look at everybody, at whatever level, and see their

 8    chit-chat and hold any party responsible for that, speaking for

 9    the Agency, that might be a bad idea and isn't acknowledged

10    under the law.  I can't tell who these people are and whether

11    they can be deemed to be people who can essentially admit

12    anything on behalf of the defendant here.

13          Then, let's see what other things we had, just to

14    quickly go through those -- and I recognize that there are some

15    objections because these would not necessarily be judicially

16    noticeable.

17          There was Exhibit C that is arguably a web site

18    screenshot, I think.

19          Is that C?

20          **MR. CAREY:**  Yes, Your Honor.

21          **THE COURT:**  And, it's argued that it's not

22    authenticated, I believe.  Was that your argument?  And, it

23    wasn't part of the body of evidence a court could necessarily

24    consider, perhaps.  But, it isn't authenticated in a proper

25    way.  But, there the Government is telling people that, if you

 1   don't think you got expedited service, let the Department know.

 2          That, even if it comes in later, isn't the end of

 3   the discussion, of course, but, I think, your objection is well

 4   taken on that, Mr. Carey.

 5          Then we had D, which was a '94 instruction sheet

 6   that went out to the Agency.  This is an interagency --

 7   intra-agency, I think, document.  It says, quote -- this is

 8   Section 9(a), quote, "If the EF has been collected and we are

 9   unable to process a passport within the required three-day

10   period for any reason, a refund should be issued.  If the

11   applicant believes a refund is due, a letter should be written

12   stating the particulars.  Or, if the applicant is in the agency

13   the form at Attachment E may be used."

14          That's another ambiguous statement, as far as the

15   Court's concerned.  Are they contrasting, for example, in some

16   way, errors -- not errors, but an inability to process with

17   some other complaint the applicant has, or is it all flowing to

18   mean that, if you are unable to process, that you should give

19   them a refund, if there's a letter received?

20          Once more, the Court felt -- that's me, feeling

21   it -- ambiguous.

22          Then you had a '96 instruction sheet.  That was

23   exhibit -- whoops, sorry, E that says, deep into the document

24   at Bates DOS95, quote, "If the expedite fee has been collected

25   and we are unable to process a passport within the required

1   three-day period, for any reason, a refund should issued.

2   Applicants should not be asked to provide a written request for

3   a refund when an Agency has not met the three-day commitment,"

4   closed quote.

5           Well, this seems to help the plaintiff.  So the

6   Government argues, well, there we are not distinguishing

7   between requests and automatic returns, we are distinguishing

8   between oral and written requests.  Well, there is really no

9   way to know that, on the record that we have now.  And so, my

10  feeling, although I've been speaking for some time, is that we

11  are heaping ambiguity upon ambiguity.  At some point, there's

12  got to be some kind of a tiebreaker here.

13          Now, you know, in private contracting, which we may

14  not have in this instance, but, in private contracting on

15  occasion the tiebreaker is to find against the party who

16  created the ambiguity by writing the bad document, in the first

17  place.  I don't know of any similar doctrine in connection with

18  regulations, but, if there is one, you can call it to my

19  attention, Mr. Carey, essentially, interpreting against the

20  drafter, who made everyone go through all this trouble in the

21  first place.  But, I don't believe there is such a punitive, if

22  you will, rule.  But, there might be.  You can look for it.

23          So, at some point, the Court has to make a

24  determination as a matter of law.  And, the only time a jury

25  would become involved, is if there were some disputed

1  underlying fact that in some way is material to the Court's

2  legal determination, a kind of did-not, did-too example in

3  connection with something that might be material here.

4          Usually, in private contracting that comes up with

5  respect to whatever the negotiations were to start with unless

6  they were memorialized.  You could have one person saying

7  whatever they discussed, and the other person disagreeing with

8  that is what that people talked about.  And, a jury would

9  probably have to resolve that factual dispute, if the Court

10  were interested and found it dispositive as to what the

11  negotiations were to shed light on an ambiguous contract.

12  Anyway, so, I don't see how I can grant the motion under these

13  circumstances, but I don't know how much else is out there,

14  either.

15          The Government also has the prudential idea of,

16  okay, even if you are right, Mr. Carey, and even if

17  Ms. Chattler should have gotten this back automatically, all

18  she had to do was ask for it.  Let's not make a federal case

19  out of it.  So, that's an argument that will have to be dealt

20  with.  And, one of your concerns is that you haven't really

21  been shown that they had a procedure that would adequately

22  allow her to do that.  And so, that's something that could well

23  be the product of discovery.

24          The defendant currently is pointing to their answer;

25  I've already said that doesn't count.  And, they also point to

1    some of these intra-departmental publications about telling

2    people to write, or people can write in and also as the public

3    was notified on the web site.  And, I'm assuming they don't

4    take those letters and put them in the round file, but that may

5    be a false assumption, or, they may not honor them in some way.

6            They do, apparently, have a feeling, as the

7    plaintiff pointed out, that there was at least some expedition

8    that was provided, and that those persons who jumped to the

9    head of the queue, even if they didn't get the passports within

10   the limited time of the regulation, still got a boost and that

11   that has to be worth something.

12           Now, that may only go to their idea that we are not

13   going to give you the money back automatically, since we don't

14   have to, and, anyway, it doesn't seem equitable since you got

15   some benefit.  Or, it may go on to their whole idea of whether

16   you should get the money back even if you asked for it.  So,

17   you can be looking into that as to how strong a position they

18   have taken, if they've taken one, on these.  So there's a lot

19   you could bring up, but I don't think we can do it in the

20   context of this motion.

21           So, you have my views about what I consider to be

22   the ambiguities and the strengths and weaknesses on this

23   record.  To the extent that I can even consider it, I certainly

24   could not make a determination as a matter of law based on

25   what's been shown.  And, I think, in fairness to the plaintiff

```
1    that they should be allowed to marshal other evidence if it's

2    out there.  They've not really been given that chance.

3           I'll just tell you now, I'm denying on this

4    regulatory motion; in other words, I'm denying the motion.  I

5    will deny it, you'll get that order.

6           I want to go back and look at the contract claim

7    again, in light of what you have said.  But, I just don't see

8    there is anything, unless something has come up, new evidence

9    since the time that you filed.  If there's anything new, then I

10   should know it now on the regulatory claim.  If there is no new

11   evidence -- no one offered any, then you've got what you've

12   got, and that's my tentative that will be memorialized.

13           MS. COLEMAN SNEAD:  May I speak?

14           THE COURT:  Very briefly.

15           I don't want to hear all about the other part,

16   because you already know what I think.

17           MS. COLEMAN SNEAD:  No, I understand.

18           What I did want to say is that, in our briefs, we do

19   take the position that Your Honor can decide, as matter of law,

20   that plaintiff is not entitled to consequential and punitive or

21   special damages under the regulation that she has invoked.

22   And, we have pointed to the fact that under the rule and tested

23   that the basis for the damages that are sought must be in the

24   regulation itself.

25           THE COURT:  Okay, in other words, you are just
```

```
1   reminding me, essentially, that it isn't an all-or-nothing

2   issue with respect to the contract claim.

3           MS. COLEMAN SNEAD:  Well, actually, this is -- this

4   is purely about the regulatory claim.

5           THE COURT:  Oh, on the regulatory claim it appears

6   that she is only entitled to the $60 if she -- if she prevails

7   on that claim.

8           MS. COLEMAN SNEAD:  Well, that's the Government's

9   position.  Plaintiff's position is that she is entitled to

10  consequential and special damages.

11          THE COURT:  Well, I would be hard pressed to find

12  that she could be entitled to damages --

13          MS. COLEMAN SNEAD:  Okay.

14          THE COURT:  -- if she doesn't have a contract claim.

15          MS. COLEMAN SNEAD:  Okay, I just wanted to -- excuse

16  me.

17          THE COURT:  So, you are not actually going back to

18  the contract claim, which itself is bifurcated, because there

19  could be a contract, but not consequential damages, or there

20  could be a contract claim that brings into play

21  consequential --

22          MS. COLEMAN SNEAD:  That's correct.  I was looking

23  purely as at the regulatory claim --

24          THE COURT:  Oh, okay.

25          MS. COLEMAN SNEAD:  And her complaint does seek
```

1  special and consequential damages based on the regulatory

2  violation.  And the Government's position is that the

3  regulations she has invoked only provides for recovery of this

4  $60 expedite fee.

5          **THE COURT:**  Well, that would be more of a legal

6  issue.  And maybe I ought to hear from Mr. Carey on that

7  because I had been thinking of the consequential as only going

8  along with the contract claim.  I haven't really thought about

9  it as going along with the regulatory claim.

10          I'm denying the motion as to the claim on liability.

11 But, you're saying, irrespective of whether there is liability,

12 there would still be a limitation on the damages?

13          **MS. COLEMAN SNEAD:**  That's correct.

14          **THE COURT:**  Okay.  So, let me ask Mr. Carey that.

15 That is a fair question.

16          **MR. CAREY:**  Your Honor, can I ask one question on

17 that?

18          **THE COURT:**  Sure.

19          **MR. CAREY:**  I wasn't sure whether the Court was

20 saying you wanted to hear from me on the prudential issue now,

21 or, you are just saying later?

22          **THE COURT:**  No, I think later is fine because, at

23 this point, the prudential goes -- comes into play only if the

24 Court finds that there was a violation of the regulation.  It's

25 a nonetheless kind of idea, so that you say, all right, there

1    is a violation, nevertheless, the plaintiff could have resolved

2    all this easily by just writing a letter and getting her money

3    back.

4            That is an issue that we don't really have to

5    address here because I've not found any violation and don't

6    feel that the Government is entitled to a ruling as a matter of

7    law, on the record, that I have that there was no violation.

8    In fact, I haven't found either way.  And the prudential,

9    again, was something you wanted to do discovery on, so I

10   think --

11           *MR. CAREY:*  Correct.

12           *THE COURT:*  -- rather than hear on that, it would be

13   better just to put all that aside until the complete record is

14   available.

15           *MR. CAREY:*  Okay.

16           *THE COURT:*  And leave you, then, with just something

17   that was just brought up that I overlooked, essentially, which

18   is, whether you are claiming, then, damages on the regulatory

19   claim beyond the $60.  And then, if you are, it is the position

20   of Ms. Snead that you are not entitled to it, and she should at

21   least get that prayer stricken, if you will, or something to

22   that effect.

23           *MR. CAREY:*  Okay.  And let me turn to that, then.

24   The --

25           First, I'm not sure it's appropriate for a motion

1  for judgment on the pleadings to discuss whether or not a

2  particular form of damage is compensable or not.  It's not a

3  claim.

4          **THE COURT:**  Well, it could be.  I suppose someone

5  could make a motion for judgment -- in other words, you are

6  saying you couldn't reach -- for example, let's say you asked

7  for punitive damages and you can't get punitive damages; are

8  you saying that they could not have a vehicle of this nature to

9  either strike the claim for punitive damages or adjudicate that

10  in their favor?

11          **MR. CAREY:**  Yes.

12          **THE COURT:**  Oh, I don't know about that.

13          Why do you think that's the case?

14          **MR. CAREY:**  Because -- well, first, I don't think

15  they pled it, for one.  And second, because --

16          **THE COURT:**  I'm sorry?  You don't believe?

17          **MR. CAREY:**  I don't believe they've pled it that

18  way.

19          **THE COURT:**  They don't plead.

20          **MR. CAREY:**  It's not in their motion.  I'm sorry.

21          **THE COURT:**  Oh.  Well, that is a different issue.

22          **MR. CAREY:**  Yes.

23          **THE COURT:**  That is a question of whether you were

24  on notice of that particular argument.  I had not picked up on

25  it.  I thought it was, in, fact, my oversight, but perhaps it

1  wasn't in there at all, and I just gave Ms. Snead credit for

2  having put it in.  That would be a legitimate ground for you to

3  say I'm not really ready to argue it because no one told me I'd

4  have to.

5          Secondly, however --

6          **MR. CAREY:**  Secondly, however, I believe that the

7  law is clear that the money-mandating regulation, once it's

8  deemed to be a money-mandating regulation, there is an

9  obligation, a substantive obligation that is enforceable, that

10  it's the standard damage format.

11          And, this is where, again, not to bring contract

12  stuff back in, but the contract and the regulation work

13  hand-in-hand.  And, we cited a number of our cases that show

14  that you typically go out and enter into a contract predicated

15  on a regulation.  So, the terms of the regulation get

16  incorporated into the contract, and the two work hand-in-hand.

17          **THE COURT:**  But, they didn't have a contract,

18  though.  In other words, there was a regulation that provided

19  for a contract and they went ahead --

20          **MR. CAREY:**  Well, if you mean a written contract, we

21  did.  That is what the application that says --

22          **THE COURT:**  Okay, but I'm just saying that --

23          **MR. CAREY:**  Right.

24          **THE COURT:**  -- in the majority of the cases that you

25  cited in the first instance, what I might call a traditional

```
 1   contract was entered into.  There was a contract; in other
 2   words, the parties entered into something separate and distinct
 3   from the regulation that provided "X" and "Y."  The regulation
 4   could provide that the people will enter into a contract, for
 5   example, and then they do.  And now, you are dealing with a
 6   contract that was the product of the regulation, but not the
 7   regulation directly.
 8           Now, if you feel that it's not appropriate to argue
 9   this particular point -- and just stop right there, okay?
10           Ms. Snead, where in your moving or reply papers is
11   the argument made with respect to the regulation that
12   Ms. Chattler cannot recover damages beyond the $60?
13           MS. COLEMAN SNEAD:  Your Honor, the discussion is at
14   pages 8 through 11 of our motion for judgment on the pleadings.
15           THE COURT:  Okay, let's see.
16           MS. COLEMAN SNEAD:  There is also a discussion in
17   the reply.  It's under the heading, "Plaintiff Cannot Recover
18   Special and Consequential Damages Under the Regulation
19   Governing Expedited Passport Processing."
20           THE COURT:  Well, I understood -- and I may have
21   misunderstood this, that this was part of contract argument
22   because it seemed to come under that discussion.  But, I may
23   have read that too narrowly.  But, that's essentially how I
24   read it.  Hmm.
25           Well, I suppose you start with Item A, and then you
```

1  launch into Item B, which has to do with the contract.  But,

2  all of this is under Roman 1, appearing to be related to the

3  contract claim, and Roman II, what I would call the regulatory

4  claim.  And then, 3 is this -- really is part of II while we're

5  outlining this, but, anyway.

6                       **(Reviewing.)**

7            ***THE COURT:***  I guess you would have intended this to

8  start with the damages idea, separate from your contract

9  argument.  In fact, the first sentence of B is "Plaintiff's

10  claim for damages under an implied contract theory" fares no

11  better.  So, A was intended to be an argument with respect to

12  the regulation.  And, let me just look at the opposition again

13  in that respect.

14                   **(Reviewing document.)**

15           ***THE COURT:***  Yes, the plaintiff has addressed,

16  similarly to the defendant, in Item A of their first section.

17           Okay, I must say that I think that I had sort of

18  merged those, which is not correct given the nature of the

19  argument.

20           But, my impression was that you would not be able to

21  get consequential damages for breach of a regulation.  If there

22  is nothing beyond what's in the papers to argue, then what I'll

23  just do is go back over that and also to consider whether the

24  motion is an appropriate vehicle.  I think it could be to chip

25  away at parts of a complaint, whether they be a theory of

1   liability that supports a claim.  There may be three theories,

2   and one goes down and the other two stay.  And I think that

3   could be equally applicable for claims for damages.  But, I

4   want to go over that part again.

5           Maybe I absorbed, by osmosis, the argument and

6   accepted the Government's in some subconscious way and not

7   realizing that I was thinking about it in terms of the

8   regulation as well as the contract.  Anyway, so I -- but I do

9   understand the positions here, and that is an interesting set

10  of issues.

11          I will issue an order.  It may not go into great

12  detail on some of the matters; it may just cross-reference what

13  our discussion has been today, to the extent there's been one.

14  And, I'll try and get an order out relatively quickly on this.

15          I'm just trying to think where we are, then.  Is

16  there another date that you are due to come back?

17          *MS. COLEMAN SNEAD:*  No, Your Honor -- actually, I

18  did want to bring up that issue.

19          We currently have a case-management conference

20  scheduled for June 6.  We also have hearing on plaintiff's

21  motion to compel on June 13th.

22          *THE COURT:*  So, I think we should move the

23  case-management or status conference to another day.

24          *MS. COLEMAN SNEAD:*  That's what I would request.

25          *THE COURT:*  Are you in accord with that, Mr. Carey?

```
 1              MR. CAREY:  That's fine.

 2              THE COURT:  Do you want to speak between yourselves

 3   off the record and try and find a date that you think would be

 4   appropriate that both of you are available?

 5              MR. CAREY:  Well, I think she was referring to just

 6   doing it all on June 16th --

 7              THE COURT:  Oh, all on June 16th?  Oh, I'm sorry.

 8              MS. COLEMAN SNEAD:  Actually, I was going to request

 9   that the conference be continued.  Certainly, if your order is

10   out in time to resolve some of the issues, then we could

11   proceed on the 13th as with their motion as well as the

12   case-management conference.

13              THE COURT:  Well, the motion that's on the 13th is

14   what, again?

15              MS. COLEMAN SNEAD:  Motion to compel discovery.

16              THE COURT:  Right, but that's before the magistrate

17   judge, it's not in front of me.  And, I think that until you

18   know what the discovery is going to be -- now, is that motion

19   -- let me ask you a question.  And that's what I had understood

20   you to be saying, and that's why I was thinking we would put

21   our case-management conference over until that motion was

22   completed.

23              I don't know, are you going to appear on that

24   physically?  Are you expecting to show up on that motion?

25              MS. COLEMAN SNEAD:  The Government's position is
```

1   that that can probably be decided on the paper.

2           **THE COURT:**  I would think that it probably would be

3   decided on the papers.

4           Who's your magistrate judge on that; do you

5   remember?

6           **MR. CAREY:**  I don't.

7           **THE COURT:**  I don't either, at this point.  Those

8   assignments for discovery come out of their own discovery

9   wheel, essentially.

10          But, you are just thinking you don't want to show up

11  on, you know, one week and then another week, I can understand

12  that, but a different question, that I have in mind is, is the

13  manner in which we would conduct our case-management conference

14  in any way affected by the magistrate judge's ruling on this

15  motion to compel?

16          **MS. COLEMAN SNEAD:**  I think it is, Your Honor.  I

17  think that the Government's position is that they can't take

18  positions on some of the issues that are covered in the

19  case-management conference until all of these issues are

20  resolved.

21          **THE COURT:**  Well, if you are anticipating that there

22  may be some effect on whatever you want to tell me in the

23  case-management conference, then perhaps we should allow for

24  some -- for the hearing, in whatever fashion it is, either on

25  the papers or in person, with some lead time to resolve the

```
 1   issue.
 2           Have you had other contested matters yet in front of
 3   the magistrate judge?
 4           MS. COLEMAN SNEAD:  No.  This will be the first one.
 5           THE COURT:  Okay.
 6           Ms. Lucero, are you able to see who got that one?
 7           THE CLERK:  I'm looking it up.
 8           THE COURT:  She's looking it up.
 9           THE LAW CLERK:  There is no referral yet.
10           THE COURT:  Pardon?
11           THE LAW CLERK:  There's no referral yet.
12           THE COURT:  Oh.
13           Someone from my staff thinks there hasn't been a
14   referral.
15           When was the motion filed?
16           MS. COLEMAN SNEAD:  I believe it was May 9th.
17           THE COURT:  Well, I would have thought that we would
18   have referred it already.  There is something funny about that.
19   Ordinarily, I would refer that when it comes in.
20           Do you have any referral yet?
21           THE CLERK:  No.
22           THE COURT:  Oh.
23           Well, that's got to get to somebody.  I'm not quite
24   sure what happened because we're already, you know, well past
25   that date.  So -- by referral has my chambers referred the
```

1     matter yet?

2            **THE CLERK:** No.

3            **THE COURT:** No? Oh, well, that -- I'm not quite

4     sure why, unless there is something unusual. I will have to

5     look into that.

6            But, the question is, then, do we move this, for

7     example, a month from the 6th to sometime in July, in around

8     the same period? If that's still hanging fire for some reason

9     with the magistrate judge, or somewhere -- I have to look into

10     this now that you're calling that to my attention.

11            You might, then, have a very brief stipulation, with

12     a place for me to sign off on it, saying we are not ready for

13     the case-management conference because..., and we agree that it

14     should stand over to -- put some date down.

15            **MS. COLEMAN SNEAD:** Okay.

16            **THE COURT:** And, I'll probably go with it. I won't

17     be here in the early part of August, I just want you to know

18     that.

19            Well, maybe we should just pick something, just

20     arbitrarily. We are pretty heavily booked, though, I know in

21     July.

22            Ms. Lucero, can you take a look at your calendar and

23     see if there is a date that is not too bad?

24            **THE CLERK:** July 18th is good.

25            **THE COURT:** She thinks July 18 is a workable date;

1    what do you think about that?

2          By the way, if you think, then, that that turns out

3    to be too far off, you could also try to file a stipulation

4    advancing it, if that were better.

5          **MS. COLEMAN SNEAD:**  Your Honor, July 18th does

6    present a problem for me.  I have child care issues.  My

7    husband is out of town.

8          **THE COURT:**  I don't know what else we've got.

9          Let me just see if the clerk.

10          **THE CLERK:**  Twenty-fifth.

11          **THE COURT:**  Twenty-fifth, she says.

12          **MS. COLEMAN SNEAD:**  That would be fine.

13          **THE COURT:**  How about from your standpoint,

14    Mr. Carey?

15          **MR. CAREY:**  July 25th?

16          **THE COURT:**  Uh-huh.  Yes.

17          One of the problems is that the 4th is a holiday, so

18    it collapsed that month a bit for other case managements that

19    are coming in on new cases.

20          **MR. CAREY:**  What time?

21          **THE COURT:**  It would be 10:30.

22          **MR. CAREY:**  That's fine.

23          **THE COURT:**  Okay.

24          All right, so we will continue the case-management

25    conference to July 25 at 10:30.  And, a statement would be due,

1    that's a joint statement, and that would then be due no later

2    than the 18th.

3           Okay, I'll try and get you an order out pretty

4    quickly.  Not too many secrets here, but there are a few things

5    that are still up in the air that I need to resolve.  So, okay.

6           Thank you very much.  We'll be in recess until

7    10:30.

8           **THE CLERK:**  The Court is in recess.

9                    **(Proceedings adjourned at 10:12 a.m.)**

10

11                         **---o0o---**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### <u>CERTIFICATE OF REPORTER</u>

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

**Sahar McVickar, RPR, CSR No. 12963**

**June 10, 2008**