UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE CHATTLER, | No. C-07-4040 MMC (EMC) |
| Plaintiff, | |
| v. | **ORDER REQUIRING FURTHER MEET AND CONFER RE DEFENDANTS'** |
| UNITED STATES OF AMERICA, *et al.*, | **PRIVILEGE LOG** |
| Defendants. | **(Docket Nos. 155-56)** |
| _____/ | |

The parties have submitted separate letters, dated May 6, 2009, regarding a continuing dispute over Defendants' privilege log. Having reviewed the parties' letters, the Court concludes that the parties' meet and confer was insufficient and therefore orders that the parties meet and confer a second time. The Court provides additional guidance to assist the parties in their further meet and confer.

## I. DISCUSSION

Previously, the Court issued an order which required Defendants to supplement and consolidate their various privilege logs, after which the parties were to meet and confer to narrow the scope of their dispute about the privileges asserted. *See* Docket No. 149 (order, filed on 4/15/2009). The parties were to report back to the Court by joint letter. On May 6, 2009, the parties submitted -- contrary to the Court's specific instructions -- separate letters. *See* Docket Nos. 155-56 (letters). While the Court would well reject the letters for failure to comply with its order, and further could sanction both parties, it shall not do so in the interest of moving the dispute forward and toward final resolution.

1    Based on the Court's review of the letters, however, it concludes that there has been a failure
2 to meet and confer in good faith -- *i.e.*, there has been no real attempt to narrow the scope of the
3 dispute.[1]  While neither party is free from blame, it appears to the Court that the majority of
4 challenges made by Plaintiff is without merit.  The Court acknowledges that it may well have been
5 frustrating for Plaintiff to deal with the multiple logs and declarations that preceded the final log and
6 declarations; nevertheless, that does not excuse Plaintiff from going through the final log and
7 declarations and evaluating each individual document.  Plaintiff is forewarned that, should she
8 continue to challenge the privileges without substantial justification, she will be sanctioned.  *See*
9 Fed. R. Civ. P. 37(a)(5).

10   Because the parties have failed to meet and confer in good faith, the Court shall require the
11 parties to meet and confer a second time.  The Court shall not rule on each and every document at
12 issue in the parties' letters of May 6.  However, the Court shall make rulings on some documents so
13 that the parties will have additional guidance for their further meet and confer.  Those rulings are as
14 follows.

15 A.   Documents Addressing Backlog of Passport Applications (Pl.'s Letter at 4)

16   The Court reminds the parties of the basic parameters of the deliberative process privilege.
17 The subject documents must be "pre-decisional," prepared to assist the agency decisionmaker in
18 arriving at a decision.  It is intended to prevent disclosure of the decision-making process in such a
19 way as to discourage candid discussion within the agency.  *Assembly of the State of California v.*
20 *U.S. Dept. of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).  It thus must be "deliberative."  In that
21 regard, whether the documents are factual or instead contain opinions, recommendations,
22 suggestions, or other information which reveal the agency's thought processes serves as a rule of
23 thumb.  *Id.* at 920-22.

24   In its prior order, the Court, in discussing the deliberative process privilege, also made a
25 distinction between policy-type decisions and mere logistical decisions.  It stated as follows:

---

[1] Each party has provided a letter that is more than a dozen single-spaced pages discussing some 200 documents.

> Defendant's assertion of [the deliberative process] privilege is inappropriate or is at least questionable with respect to what appear to be logistical decisions -- *e.g.*, the development of a logistical approach for refund procedures and staffing, *see* Fultz Decl. ¶ 46; preparations related to testimony before Congress or statements to Congress or the public (including press releases), *see* Fultz Decl. ¶¶ 54-68; changes to an informational script, *see* Fultz Decl. ¶ 69; and preparations for dealing with lockbox personnel.  *See* Fultz Decl. ¶ 70; and so forth. Decisions in these areas do not seem to be decisions akin to policymaking.  *See, e.g.*, *Mansourian v. Board of Regents*, No. CIV S-03-2591 FCD EFB, 2007 U.S. Dist. LEXIS 95428, at *16 (E.D. Cal. Dec. 21, 2007) ("Although defendant characterizes the documents at issue in this case as 'predecisional' to UCD's decision as to how the officials would testify before the legislature [regarding Title IX compliance], this is not the kind of decision contemplated by the privilege.  Rather, the documents were used to prepare for a post hoc explanation of past actions.").

Docket No. 149 (Order at 3).

Relying on the Court's statement that it was not inclined to find logistical decisions covered by the privilege, Plaintiff argues that documents addressing the backlog of passport applications are logistical in nature.  The Court rejects this contention.  How to deal with the backlog of passport applications is a policy-type decision.  It is not a mere ministerial decision that simply implements a policy already formulated.[2]  *See* Corrected Fultz Decl. ¶ 43 ("In order to develop a strategy to address the passport backlog, Department personnel needed to identify the causes of the backlog. As the backlog grew, personnel debated the causes, the scope of the problem, and the related potential actions that could be taken to reduce or eliminate the problem and best respond to customer demands.").  Moreover, the documents discussed below appear to be pre-decisional and deliberative, tending to reveal not just factual data but thought processes and decision-making analyses.

---

[2] *See, e.g.*, *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 245 F.R.D. 393, 399 n.6 (S.D. Iowa 2007) ("The [deliberative process] privilege does not protect all decisions made by an agency.  It is intended to protect the process by which policies are formulated and important decisions are made beyond the routine."); *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995) (James, J.) ("The deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy."); *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989) ("This theory of privilege is properly applicable only to communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials.")

3

Consistent with the Court's statement above, the following are examples[3] of documents that are protected by the deliberative process privilege:

- No. 221(c)-(g), (i) (emails proposing question for further analysis to facilitate development of effective policy solution to passport backlog, describing discussions to date and suggesting further discussions are warranted, conveying author's opinion on the parameters of the problem to be addressed by action plan development, requesting preparation of analysis of backlog problem for consideration by working group, and transmitting analysis of backlog problem for consideration by working group).
- No. 245(a) (department principal discussing strategy for how Department would handle routine and expedite passport applications, as part of ongoing debate on what should be Department's policy going forward).
- No. 460(b)-(d) (emails attaching for review latest version of draft action plan consisting of projections and proposed courses of action for addressing agency passport workload).
- No. 463(b)-(g) (assistant regional director, PPT staff members, and deputy assistant secretary giving views on how to deal with passport backlog).
- No. 507(f)-(g) (emails expressing author's suggestions for various proposals related to the Department's refund policy that should be analyzed and his opinion that CA should develop projections and long-term strategies to reduce passport backlog and conveying the author's opinion on relevant considerations in re-evaluations of the Department's refund policy and responding to viewpoints expressed by the author of the originating email).
- No. 754(b) (PPT staff member setting forth views on scope of passport backlog and how to deal with it).
- No. 827(a) (email transmitting for discussion draft proposal for measures the Department might implement to address passport backlog following implementation of WHTI for purpose of developing Department strategy plan).

---

[3] The Court emphasizes that all examples provided in this order are examples only -- *i.e.*, the documents are not an exhaustive list of what is or is not protected by the deliberative process or attorney-client privilege.

1    On the other hand, the Court questions whether the deliberative process privilege is
2 applicable with respect to documents such as:
3 •   No. 802(b) (email suggesting approach to new staffing problems and what policy to take
4     regarding certain types of employees).
5 •   No. 803(b) (email suggesting approach to new staff problems and what policy to take
6     regarding certain types of employees).
7 B.  <u>Documents Addressing a Logistical Approach to Expedite-Fee Refund Procedures (Pl.'s
8     Letter at 4-5)</u>
9    Plaintiff correctly notes that, in its prior order, the Court stated that the development of a
10 logistical approach for refund procedures and staffing seemed to be a logistical decision.  However,
11 many of the documents identified by Plaintiff either:
12 •   are covered by the deliberative process privilege because they are about more than just a
13     logistical approach, *see, e.g.*, No. 152(a) (email transmitting draft action memo
14     recommending the adoption of a new refund policy and procedures); No. 400(h) (email
15     circulating for review and comment draft action memo concerning policy changes to the
16     refund process); No. 769(a) (email discussing policy recommendation regarding the refund
17     policy and amending the expedite regulation that CA staff then was considering making to
18     Department principals in response to passport surge), and/or
19 •   are covered by the attorney-client privilege.  *See, e.g.*, No. 170 (email expressing counsel's
20     opinion on general substance of draft memo and indicating that further comments pursuant to
21     legal review would be forthcoming); No. 171(a)-(b) (email expressing agency counsel's
22     opinion on draft action memo related to refunds from a legal sufficiency basis).
23 C.  <u>Other Logistical Documents (Pl.'s Letter at 5)</u>
24    Plaintiff claims that other documents are also logistical documents at page 5 of her letter but
25 based on the Court's review none seem to fall into that category.  *See, e.g.*, No. 173 (email attaching
26 "Refund Meeting Agenda" that sets forth proposed refund policy scheduled to be discussed at
27 meeting and identifies potential objectives of such a policy and questions for the meeting attendees
28 to consider); No. 351(c) (email requesting legal review of attached action memo related to proposed

policy changes to refund policy); No. 365(b) (email conveying opinion on draft memo following legal review of same at the client's request).

D. <u>Drafts of Website Language (Pl.'s Letter at 5)</u>

  Plaintiff claims that "[t]his Court specifically ruled that . . . draft public statements [are] post hoc explanations of past actions and not protected by the deliberative process privilege." Pl.'s Letter at 5. That is not what the Court held. As indicated above, the Court expressed doubt that, *e.g.*, the development of a logistical approach for refund procedures and staffing, preparations related to testimony before Congress or statements to Congress or the public (including press releases), changes to an informational script, and preparations for dealing with lockbox personnel changes to an informational script would be privileged but only because such matters did not seem to rise to the level of a policy-type decision.

  In any event, the documents identified by Plaintiff seem to have little or nothing to do with simply drafting website language. Furthermore, the documents, even if not covered by the deliberative process privilege appear to be protected by the attorney-client privilege. *See, e.g.*, No. 124(f) (lawyer transmitting track-changes draft with legal comments made directly in draft, of final rule on expedited passport processing for review by PPT/L and clients in PPT and CA, and asking specifically for assistance of CA staff members knowledgeable about the Department's website).

E. <u>Drafts of Congressional Testimony (Pl.'s Letter at 5)</u>

  None of the documents identified by Plaintiff seem to have anything to do with congressional testimony. Moreover, some of the documents identified are clearly covered by the deliberative process privilege. *See, e.g.*, No. 245(a) (department principal discussing strategy for how Department would handle routine and expedite passport applications, as part of ongoing debate on what should be Department policy going forward); No. 482 (email from CA Deputy Assistant Secretary transmitting to Assistant Secretary views of Undersecretary for Management on policy options for refunding passport expedite fee).

  On the other hand, it is questionable whether some of the documents are privileged. For example, drafting a letter to a senator does not appear to be a policy-type decision. *See, e.g.*, No. 727(a) (email conveying author's opinion on draft action memo related to the refund policy and draft

1  letter to Senator Nelson); No. 774 (draft letter to Senator Bill Nelson, in which Department
2  personnel have inserted changes and deletions in track changes to correspond to decision then being
3  made in ongoing deliberative process debate leading up to 8/3/2007 Action Memo on policy of
4  requiring customer request for EF refund).

F.  <u>Draft of Other Public Statements (Pl.'s Letter at 5)</u>

Here, Plaintiff has identified only two documents – *i.e.*, Nos. 183(b) and 861. Each seems to implicate a policy-type decision. *See* No. 183(b) (Florence Fultz posing question to CA staff members on an aspect of draft announcement to public, bearing on ongoing negotiations about whether to change policy of requiring customer-initiated request for expedite-fee refund, predecisional to ultimate decision on 8/7/2007); No. 861(b) (email transmitting for review and clearance redlined draft sections of CA comments on forthcoming GAO report related to future strategies the Department should consider implementing to address passport backlog).

G.  <u>Information Request Letters ("IRL") and Refund Denial Letter Templates (Pl.'s Letter at 6)</u>

Plaintiff seems to have identified at least one document that does not seem to be protected by the deliberative process privilege. *See, e.g.*, No. 132(k) (email attaching draft IRL that incorporates the suggestions from CA staffers and soliciting opinion on same). However, one document arguably is protected by the privilege. *See* No. 165(d) (email transmitting draft denial IRL for review and comment; draft IRL is the product of a deliberative effort among CA staffers to develop *standard protocol* for responding to requests from customers not entitled to refund but including counsel for the purpose of advising on the legality of the information conveyed). Moreover, some of the documents listed by Plaintiff seem to be protected by the attorney-client privilege. *See, e.g.*, No. 133(a) (PPT/L lawyer transmitting to CA client legal language composed, recommended, and cleared by lawyers in PPT/L and L/CA for use in Information Request Letters responding to customers' requests for refunds of passport application and execution fees).

H.  <u>Documents Related to Future Approach to Fee Refunds (Pl.'s Letter at 6-7)</u>

Plaintiff argues that documents related to a future approach to fee refunds are not covered by the deliberative process privilege because a document cannot be protected by the privilege simply by reference to a decision that may be made at some point in the future. The Court has already rejected

Plaintiff's argument. Previously, Plaintiff cited *Maricopa Audubon Society v. United States Forest Service*, 108 F.3d 1089 (9th Cir. 1997), to support her argument. *See* Docket No. 138 (Pl.'s Mot. at 11). The Court noted that it did not agree with Plaintiff's interpretation of *Maricopa*.

Now Plaintiff is citing an additional Ninth Circuit case but that case adds little. It is clear that a document may not be characterized as predecisional simply because it plays into an ongoing audit process and may be referenced to a decision "that possibly may be at some undisclosed time in the future." *Assembly*, 968 F.2d at 921. However, documents which reflect a deliberative process which appears likely lead to a decision may be privileged even if no decision is actually made. That is what occurred in *Maricopa*. Here the documents cited by Plaintiff on page 7 of her letter relate not generally to some unspecified possible future decision, but to a decision-making process that is specific, concrete and well under way. While dramatizing the documents as "pre-decisional" would "warp" the meaning of the privilege (*Assembly*, 968 F.2d at 921), refusing to accord the privilege to deliberative process tied to a concrete impending decision would undermine the purpose of the privilege -- to allow agencies "freely to explore possibilities [or] engage in internal debates" without having to "operate in a fishbowl." *Id.* at 920 (citations omitted).

Finally, it should be noted that many of the documents identified by Plaintiff also seem to be covered by the attorney-client privilege.

I.  <u>Whether Fultz Declaration Is Adequate (Pl.'s Letter at 7-9)</u>

Although Plaintiff contends that the Fultz declaration does not meet the procedural requirements of establishing the deliberative process privilege, her real point of contention is that the Fultz declaration, as corrected, describes documents in a "dramatically different" way than the final privilege log -- *i.e.*, that the descriptions are so different that "it is questionable" that the same documents are at issue. Pl.'s Letter at 7.

Plaintiff has largely overstated her case. Either the "disconnect" is not that significant (the subject matters of the documents, not surprisingly, are all related) or, at times, there is not even any "disconnect" to begin with. For example:

- No. 124. This document, as described in the final privilege log, concerns the drafting of the final rule. This is consistent with -- as referenced in the log -- ¶ 39 of the Fultz declaration.

*See* Fultz Decl. ¶ 39 ("Debate and discussion continued through the fall of 2008 in which Department personnel, especially lawyers, were still working out aspects of the language of the draft final rule and the corresponding language on www.travel.state.gov, through successive rounds of comments and re-drafts.").

- No. 145. The document, as described in the final privilege log, concerns a proposed change to the refund policy. This is not inconsistent with -- as referenced in the log -- ¶ 53 of the Fultz declaration. *See* Fultz Decl. ¶ 53 ("Following the publication of the new interim final rule at 22 C.F.R. § 51.66(b), Department personnel often engaged in discussions on how best to implement certain aspects of the rule in practice and ensure that all relevant Department personnel were aware of the legal dictates of the new rule.").

- No. 173. The document, as described in the final privilege log, concerns a proposed refund policy. This is not inconsistent with -- as referenced in the log -- ¶ 44 of the Fultz declaration. *See* Fultz Decl. ¶ 44 ("As the causes of the problem were identified, Department personnel identified specific options for addressing the backlog and circulated them to others for review and comment, including with respect to individual cases. . . . Other communications reflecting deliberations leading up to the development of these memos are at Document Nos. 173 [and so forth].").

J.  <u>Qualified Nature of Deliberative Process Privilege</u>

Plaintiff is correct that the deliberative process privilege is qualified, not absolute. However, even assuming that Plaintiff did not waive this argument by not raising it in her opening motion,[4] the documents that she seeks do not appear to be relevant or at best have marginal relevance to the case. Central to the case is how the final decision is implemented, interpreted, and so forth. Predecisional discussions would appear to have marginal relevance. Contrary to what Plaintiff argues, the nature of the governmental officials' deliberations is not the issue in this case.

---

[4] Plaintiff waited until her reply brief to make any argument on the qualified nature of the privilege.

### K. Attorney-Client Privilege

Plaintiff's argument on the attorney-client privilege is tenuous. Simply because the final privilege log did not specifically use the words "legal advice" at times does not mean that legal advice was not an issue. *Cf. United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (noting that, "[i]f a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired 'as such' to give 'legal advice' . . . ."). Most documents for which the privilege is claimed appear to be *prima facie* privileged. As for the one specific document called out by Plaintiff as not involving an attorney, the description of the document makes clear that the privilege is still applicable. *See* No. 346(c) (CA staffers *transmitting request for legal advice* on answer to hypothetical Senate Committee question *through* CA Special Assistant).

### L. Lockbox Discovery

Plaintiff argues that Defendants have improperly withheld documents related to lockbox discovery. The problem with this argument is that the Court's order on lockbox discovery (filed on January 7, 2009) did not permit *all* lockbox discovery -- rather, it allowed some but not all. It is not possible to tell from the privilege log whether the documents are being withheld on a basis that is acceptable under the Court's order (*e.g.*, national security).

### M. Other Grounds for Withholding

Here, Plaintiff has the better argument. For example, even though a document may contain some information that is irrelevant or nonresponsive, it may also contain other information that is relevant and responsive. Defendants have not shown that there would be any harm in providing the irrelevant/nonresponsive information to Plaintiff; moreover, Plaintiff might well need the information just to have the document make sense or to give it context.

Also, if a document is, as Defendants assert, confidential, then it is not clear why an attorney's eyes only designation is not enough.

Accordingly, the Court orders that any nonprivileged document listed on Defendants' log be produced. To the extent Defendants believe that there should be additional protections beyond an AEO designation, the parties should meet and confer as to whether additional protections are warranted and, if so, what additional protections are appropriate.

## II. CONCLUSION

The Court orders the parties to meet and confer within one day of the date of this order. The parties shall then file a joint letter not exceeding three (3) pages by May 15, 2009 at 10:00 a.m. Pacific time, with a courtesy copy to be faxed to chambers (FAX 415/522-4200), regarding their meet and confer efforts. A telephonic hearing shall be held on May 15, 2009 at 2:30 p.m. The Court shall initiate the conference call. The Court is mindful of the upcoming summary judgment hearing before Judge Chesney on May 22, 2009. However, as noted above, the bulk of the documents at issue do appear to be privileged.

IT IS SO ORDERED.

Dated: May 12, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge